IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 11-20059-svk |
| ARCHDIOCESE OF MILWAUKEE, | Chapter 11 |
| Debtor. | Hon. Susan V. Kelley |

### AFFIDAVIT OF JOHN J. MAREK IN SUPPORT OF FIRST DAY PLEADINGS

STATE OF WISCONSIN    )
                      )  ss.
COUNTY OF MILWAUKEE   )

John J. Marek, being duly sworn, deposes and states:

1. I am the Treasurer and Chief Financial Officer of the Archdiocese of Milwaukee, (the "Archdiocese" or "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"). As the Treasurer and Chief Financial Officer, I am generally familiar with the Archdiocese's day-to-day operations, business affairs and books and records.

2. On the date hereof (the "Petition Date"), the Archdiocese, a Wisconsin civil corporation, caused its attorneys to file a voluntary petition for relief under Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

3. In order to enable the Debtor to minimize the adverse effects of the commencement of the Chapter 11 Case on its operations, the Debtor has requested various types of relief in "first day" motions (collectively, the "First Day Motions"). The First Day Motions

Daryl L. Diesing
Bruce G. Arnold
Michael E. Gosman
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-4894
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Email: ddiesing@whdlaw.com

seek relief aimed at, among other things, facilitating the transition to Chapter 11, maintaining employee morale, and to preserve value and maximize property available to satisfy the Debtor's stakeholders. All of the First Day Motions are crucial to the Debtor's efforts to reorganize.

4. The Debtor continues to operate its business and manage its properties.

5. Any capitalized terms not expressly defined in this Affidavit (the "Affidavit") shall have the meanings ascribed to such terms in the applicable First Day Motion. All facts set forth in this Affidavit are based on my personal knowledge, upon information supplied to me by others associated with the Archdiocese, upon my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtor's operations, financial condition and present financial outlook. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Affidavit.

6. A critical and necessary element of the Debtor's success in this Chapter 11 Case is the approval on an expedited basis of the Debtor's First Day Motions submitted concurrently herewith.

A. **Debtor's Motion for an Order Authorizing, but not Directing Debtor to (1) Pay Prepetition Employee Compensation (2) Pay Outstanding Paychecks, (3) Make Payments for Which payroll Deductions Were Made, (4) Reimburse Employees for Certain Prepetition Business Expenses, (5) Pay Amounts Withheld for Taxes and (6) Pay All Taxes and costs Incident to the Foregoing Payments and Contributions (the "Employee Compensation Motion")**

7. As of the Petition Date, the Debtor employed approximately one hundred twenty (120) salaried employees, fifty-seven (57) hourly employees, and six (6) counselors paid on a commission basis (collectively the "Employees"). The Employees' skills and their specialized knowledge and understanding of the Debtor's mission and operations are essential to the administration of this case, the preservation of the Debtor's assets, and the Debtor's ability to consummate a successful reorganization. Without the Employees, the Debtor would not be able to provide resources, spiritual leadership, direction, support, planning, programming, leadership

2

WHD/7575232.3

Case 11-20059-svk    Doc 7    Filed 01/04/11    Page 2 of 7

development and other services to individuals of the Roman Catholic faith, parish corporations, and schools in the Region and would not be able to provide necessary support for a plan of reorganization that will benefit all creditors.

8. As of the Petition Date the Debtor had approximately $100,000 in accrued wages, salaries, contractual compensation, overtime pay, and holiday pay.

9. With the assistance of my staff, I have estimated that the Debtor's aggregate amount of accrued vacation liability as of the Petition Date is less than $225,000 and I have determined that no Employee has more than $8,300 in accrued vacation. Most of the accrued vacation liability is for current period vacation time since no more than five (5) days of vacation time may be carried over from year to year and then only with special permission.

10. I have estimated the aggregate amount of accrued sick time liability of the Debtor as of the Petition Date at less than $50,000, and have determined no Employee has more than $5,500 in accrued sick time for which he or she has met the Cash-Out Requirements.

11. I monitor Outstanding Paychecks and have determined that the aggregate amount of the Outstanding Paychecks is less than $2,500.

12. I have calculated the aggregate amount of the Prepetition Compensation owed to individual Employees and have determined that none of the Employees have accrued Prepetition Compensation of more than $11,725.

13. The Debtor's aggregate amount of accrued Prepetition Compensation for its Employees is significantly less than $400,000.

14. The Debtor does not have any Withholdings or Taxes attributable to Prepetition Compensation earned, but not yet remitted to the applicable Taxing Authorities. The Debtor's Prepetition Compensation and Outstanding Paychecks are drawn on identifiable payroll

accounts. The accounting staff is able to clearly identify which Deductions, Prepetition Business Expenses, Withholdings, and Taxes are prepetition and which are postpetition.

**B.    Debtor's Motion for an Order Authorizing, But Not Directing, Debtor to Continue its Participation in the Multiple Employer Partially-Insured Health Insurance Program (the "Health Benefits Motion")**

15.    Approximately one hundred and fifty-nine (159) Employees and their dependents participate in the multiple employer partially-insured health insurance program (the "St. Raphael Health Plan").

16.    The St. Raphael Health Plan is a partially-insured health plan for the exclusive benefit of the employees of the Participating Employers, their spouses and dependants, and is administered by UnitedHealthcare Insurance Company ("UnitedHealthcare"), a third party administrator. Johnson Bank serves as trustee of the St. Raphael Health Plan Trust, established to efficiently pay health insurance premiums and claims, as well as other reasonable expenses associated with the administration of the St. Raphael Health Plan.

17.    Each Participating Employer pays a monthly premium for its participation in the St. Raphael Health Plan to UnitedHealthcare which periodically disburses payments received to the St. Raphael Health Plan Trust. Monthly premiums for the Participating Employers were established by UnitedHealthcare based upon the average projected claims of the participating employees of the Participating Employers and corresponding administrative costs.

18.    The Debtor's monthly premium payment to the St. Raphael Health Plan, which includes contributions of Employee Participants, is approximately $130,000, and the premium payment for January was made, as is the Debtor's customary practice, prior to the start of the month, and therefore prior to the Petition Date.

19.    Monthly premiums paid by Participating Employers to the St. Raphael Health Plan are used to fund prior and future claims. Consequently, if previous month(s) claims against

4

Case 11-20059-svk    Doc 7    Filed 01/04/11    Page 4 of 7

the St. Raphael Health Plan Trust were larger than anticipated, it is possible that current premiums paid by Participating Employers could pay for incurred-but-not-reported ("IBNR") claims from a previous period.

20. In this case, it is theoretically possible though highly unlikely, that up to $130,000 of current premiums paid by the Archdiocese could pay for some prepetition IBNR claims.

21. The Debtor has sufficient funds on hand to pay monthly premiums to the St. Raphael Health Plan, which may include some prepetition IBNR claims, to the extent described herein, as such amounts become due in the ordinary course of its business.

### C. Motion for Order Authorizing A) Maintenance of Existing Bank Accounts, B) Continued Use of Existing Checks and Business Forms, and C) continued use of Existing Cash Management System (the "Bank Account Motion")

22. Before the Petition Date, the Debtor, in the ordinary course of its business, maintained twenty (20) bank accounts.

23. The Debtor's Bank Accounts are maintained at Associated Bank, National Association, JPMorgan Chase Bank, National Association, Johnson Bank, M&I Marshall and Ilsley Bank, Park Bank, U.S. Bank National Association, U.S. Bank Trust National Association, and Waukesha State Bank.

24. I have reviewed the Bank Account Motion and the description of accounts and accounting policies and procedures contained therein, and find it to be accurate.

25. The (20) Bank Accounts maintained by the Debtor contain property of the estate and property held for others which is not property of the estate. Further, many of the funds in the Bank Accounts are subject to charitable restrictions and constitute restricted funds which are not available to the creditors of the estate.

5

26. The current set of Bank Accounts and the processes and procedures used to track the funds in the accounts and transfer money to and from the accounts is carefully designed to keep track of funds in various categories of Debtor funds, restricted funds and funds held for others.

27. It is critical that the Debtor continues to follow its prepetition accounting policies and practices for they allow the Debtor to efficiently coordinate transfers between the Bank Accounts, effectively operate its business, and accurately account for restricted funds and funds held for others. The Debtor's current accounting policies and practices, as well as the vast majority of the Bank Accounts, are tested and familiar to its employees. It functions well for the Debtor in terms of tracking expenditures, matching cash with cash needs, ease of account record keeping, movement of funds, and accounting for funds held in trust or subject to restrictions. Moreover, each year the Debtor's financial statements are audited by a public accounting firm, and the closing of the Debtor's Bank Accounts or any significant switch in accounting policies and practices would unnecessarily complicate that process.

28. Replacement of the Debtor's check stock could take several weeks. It is unrealistic to expect that the Debtor postpone purchases or defer payment pending the stationer's delivery of check stock. A requirement that the Debtor change its checks and business forms would be expensive and burdensome to the Debtor's estate and disruptive to the Debtor's reorganization.

**D.   Motion for Entry of an Order Granting the Debtor Additional Time to File Schedules and Statements**

29. The Debtor's financial affairs are complex and it administers significant assets for the benefit of others. However, the Debtor has a very small staff to carry out its work. The staff has been reduced significantly during recent years for financial reasons, and the Debtor is left with limited resources with which to fulfill its Chapter 11 reporting duties. Certain

6

WHD/7575232.3

Case 11-20059-svk    Doc 7    Filed 01/04/11    Page 6 of 7

information will become available only after monthly billings are received from vendors, including utilities.

30. Due to the complexity of the Debtor's financial affairs and the delay in receiving month end information, as well as the unfamiliarity of the Debtor's staff with bankruptcy forms and schedules, it would be difficult, if not impossible, to complete the Debtor's Statement of Financial Affairs and Schedules accurately within fourteen (14) days.

E. **Motion For Entry of Order Authorizing Debtor to Employ and retain Kurtzman Carson Consultants, LLC as Notice, Plan Solicitation, and Balloting Agent Pursuant to 28 U.S.C. § 156(c) and Fed. R. Bankr. P. 2002**

31. The Debtor has over 2,700 potential creditors and other parties in interest. The retention of Kurtzman Carson Consultants, LLC ("KCC") is the most effective and efficient manner of noticing the creditors and parties in interest of the filing of the chapter 11 case and other developments in the chapter 11 case.

F. **Motion of Debtor for an Order Establishing Case Management and Scheduling Procedures (the "Case Management Motion")**

32. The facts contained in the Case Management Motion regarding the number of creditors and other parties in interest in this Chapter 11 Case are to the best of my knowledge true and correct.

By: John J. Marek
Title: Treasurer and Chief Financial Officer

SUBSCRIBED and SWORN to before me this 4th day of January, 2011.

Notary Public

My Commission Expires: 9/21/14

WHD/7575232.3

7