IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 11-20059-svk |
| **ARCHDIOCESE OF MILWAUKEE,** | Chapter 11 |
| Debtor. | Hon. Susan V. Kelley |

**OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTOR FOR ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICE THEREOF**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") objects to the Motion of the Archdiocese of Milwaukee (the "<u>Archdiocese</u>" or the "<u>Debtor</u>") for Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "<u>Motion</u>").[1] In support of this Opposition, the Committee respectfully represents the following:

## I.

## INTRODUCTION

The overwhelming majority of the general unsecured claims that will be filed in this case are expected to be held by the survivors of alleged sexual abuse perpetrated by priests (and others) employed by the Archdiocese or for whom the Archdiocese is otherwise responsible (the "<u>Abuse Survivors</u>"). While only seventeen Abuse Survivors filed lawsuits pre-petition, the Committee believes there are hundreds of Abuse Survivors with claims against the Debtor. One priest alone, Father Lawrence Murphy, molested as many as two hundred boys while he worked

---

[1] Capitalized terms that are not defined in this Opposition shall have the meaning assigned to them in the Motion.

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
kbrown@pszjlaw.com
gbrown@pszjlaw.com
DOCS_LA:238081.3

at one school in the Archdiocese, St. John's School for the Deaf.[2] Two hundred possible casualties of <u>one</u> priest in <u>one</u> school. There are presently forty-four diocesan priests and former priests with substantiated claims of sexual abuse and one hundred and twenty-five Catholic schools in the Archdiocese.[3] The math is staggering.

Not all Abuse Survivors reported their abuse. Many may still be reluctant to come forward. This reticence is a part of the pathology of sexual abuse, which was exponentially exacerbated by the failure of the Catholic Church and this Archdiocese to respond to sexual abuse reports and protect its young charges from pedophile priests. Father Murphy's victims, for example, began reporting their abuse as early as the 1950s. They told priests. They told nuns. They told the police. They told the district attorney. They reported the abuse to three archbishops, and yet, Father Murphy continued to work with deaf students and young people for another twenty-four years, and when he died, he died a priest.[4]

The Abuse Survivors who reported Father Murphy were both remarkable and rare. They were not telling on the creepy-looking pervert who hangs out at the liquor store across from the park. They were reporting on God's representative on Earth. Imagine how devastating it was when nothing was done to stop him. Perhaps more commonly, Abuse Survivors cope with the trauma by pushing away the memory of it. This denial, combined with the fact that many Abuse Survivors were abused as very young children, often leads to delayed reporting. Other Abuse Survivors do not come forward because of the stigma attached to sexual abuse, especially in the case of boys who are sexually molested by a man which brings with it the fear of homosexuality, a sin in the very church in which the Abuse Survivors were raised. Survivors also fail to come forward out of fear of disappointing family members who are still loyal Catholics, and still others may not have connected their suffering to the abuse. A grown man who was orally copulated as a child may not realize that his alcoholism or depression or inability to keep a job is a result of

---

[2] <u>See</u> Laurie Goodstein, *For Years Deaf Boys Tried To Tell of Priests Abuse*, N.Y. Times, March 26, 2010, at A1, *available at* http://www.nytimes.com/2010/03/27/us/27wisconsin.html (last accessed 5/18/20011), a copy of which is attached hereto as <u>Exhibit A</u>.
[3] <u>See</u> Exhibit E to Motion (List of Substantiated Abusers).
[4] Goodstein, *supra* note 1.

that abuse. Finally, it will often take an Abuse Survivor a long time to actually decide to pursue his or her claim even after he realizes that he has one.

Identifying and notifying individuals holding potential abuse claims is no small task where, as here, there has been a concerted, well-orchestrated, decades-long cover-up, there may be living Abuse Survivors who were abused in the Archdiocese as long ago as 1940, Abuse Survivors may not have connected their suffering to the abuse or may be reluctant to come forward for other reasons, and the abuse may have occurred not just in one church or one parish but in one of the hundreds of Catholic Entities (as defined below) affiliated with the Archdiocese. At the very least, it is going to require much more extensive efforts by the Debtor than those proposed in the Motion to locate and serve Abuse Survivors, a longer notice period and more detailed descriptions of the Alleged Perpetrators (as defined below) in the Abuse Survivor Bar Date Notice. It will also necessitate that Abuse Survivor Proof of Claim Forms are submitted to and handled by a neutral third party Claims Agent, not counsel to the Debtor. For these reasons (and others) which are detailed below, the Committee opposes the Motion.[5]

## II

## **DISCUSSION**

### I. **Terminology**

There are a few terms which should be discussed as they appear in many of the documents and their definitions are important. First, throughout the Debtor's Motion, the Bar Date Order, the Abuse Survivor Proof of Claim and the Abuse Survivor Bar Date Notice, the Debtor refers to the Abuse Survivors as "Victim/Survivors." The Abuse Survivors prefer not to be called "victims," and the Committee would request that all references to "Victim/Survivors" be changed to "Abuse Survivors."

---

[5] To facilitate the Court's consideration of the Motion and the Opposition, the Committee has attached revised versions of the following documents with the Committee's suggested revisions, along with a redline showing the changes from the version filed by the Debtor with the Motion: (1) Bar Date Order; (2) Abuse Survivor Bar Date Notice; (3) Abuse Survivor Proof of Claim Form; (4) List of Substantiated Abusers; and (5) Confidentiality Agreement.. For ease of reference, the location of both the Debtor's versions and the Committee's versions are set forth in a summary chart on Exhibit B.

Second, the Debtor proposes to include a List of Abusers in the Abuse Survivor Bar Date Notice Packages , but limits that list to diocesan priests who have substantiated claims of abuse.[6] The Debtor refers to such individuals as "Abusers." There are quite possibly additional abusers other than diocesan priests with substantiated claims for whose abuse the Archdiocese would be liable. For example, the Debtor might bear responsibility for acts of abuse committed by a priest or a nun from a religious order or a lay teacher that taught in a diocesan school or for a diocesan priest for whom there are not yet any substantiated claims of abuse. For those reasons, the Committee uses the broader term "Alleged Perpetrator," which is:

> Any person who committed or is alleged to have committed an act of abuse upon an Abuse Survivor, including but not limited to any member of the clergy, employee, worker, volunteer, teacher or administrator.

Finally, the Committee contends that the Archdiocese may be liable not only for acts of the Alleged Perpetrators that took place in parish churches, but also for abuse that occurred in other Catholic-affiliated organizations, such as Catholic schools, day care centers and hospitals. The Committee uses the term "Catholic Entities" to describe such places, which term includes:

> (i) All organizations listed in the Official Catholic Directory for the Archdiocese; (ii) all Catholic or Catholic-affiliated entities or organizations including all parishes, missions, churches, cemeteries, schools, hospitals, orphanages, charities, foundations, seminaries, juridic persons, and service organizations existing at any time that either: (a) are or were located within the territorial limits of the Archdiocese; or (b) are or were directly or indirectly under or subject to the supervision or control of the Archbishop or the Archdiocese, and (iii) all Catholic religious orders that are legally responsible for the actions of an Alleged Perpetrator who, pursuant to a grant of faculties was located or working within the territorial limits of the Archdiocese when the Abuse occurred.[7]

As is set forth more fully below, because the Committee contends that the Debtor may be liable for acts of abuse related to Catholic Entities, the Committee requests that certain noticing efforts be directed to those Catholic Entities.

---

[6] See Exhibit E to Motion (Debtor's List of Abusers).
[7] A true and correct copy of the Catholic Directory for the Archdiocese of Milwaukee is attached hereto as Exhibit C.

## II. The notice period for the Abuse Survivor Bar Date is inadequate.

The Debtor proposes September 15, 2011 as the Abuse Survivor Bar Date. Assuming the Court enters the Bar Date Order and the Debtor is able to print and serve the Abuse Survivor Bar Date Packages by June 1, 2011 (a doubtful proposition), this is only three and a half months notice, which is terribly inadequate under the circumstances. Where, as here, it will take time to identify and locate known Abuse Survivors and even after receiving notice Abuse Survivors may need some period of time to decide to come forward and file a claim, a notice period of three-hundred and sixty-five days from the date of service of the Abuse Survivor Bar Date Packages is warranted. The Committee is prepared to submit expert testimony on this issue at an evidentiary hearing on the Motion. In the absence of a bar date that provides constitutionally mandated due process, the Court should decline to set one.[8]

## III. The Abuse Survivor Proof of Claims

### A. *A court-appointed Claims Agent, not Debtor's counsel should act as the repository for the Abuse Survivor Proof of Claim Forms.*

In the interests of confidentiality, the Debtor suggests that Abuse Survivor Proof of Claim Forms be sent to and maintained by counsel to the Debtor instead of being filed with the Court. The Committee agrees that Abuse Survivors should be able to elect to keep their proofs of claim private; however, it strenuously opposes the Debtor or Debtor's counsel as keeper of those claims. After years of abuse and cover-ups, Abuse Survivors understandably have a profound mistrust of the Debtor. Requiring them to submit their proofs of claim, which will contain detailed information regarding their abuse and their abusers, to the very organization (or its counsel) they consider to be responsible for that abuse will have a chilling effect on filings. In addition, it puts Committee counsel in the position of having to ask the Debtor for copies of the Abuse Survivor Proofs of Claim and of having to depend on them to produce those claims in a

---

[8] *In re Congoleum Corporation*, 2008 WL 314699, 3-4 (Bankr. D.N.J. 2008) (declining to set a bar date for filing proofs of claim in asbestos case).

timely manner. For these reasons, a neutral, third-party claims agent should be appointed to maintain the Abuse Survivor Proof of Claim Forms.[9]

### B. *Access to Abuse Survivor Proof of Claims Forms*

The Debtor proposes a list of Permitted Parties that should have access to the Abuse Survivor Proof of Claim Forms upon executing the Confidentiality Agreement attached as Exhibit G to the Motion. While the Committee agrees in principle, the Confidentiality Agreement itself is objectionable on numerous grounds. The Debtor asserts, "The Confidentiality Protocol is for the benefit of the Victims/Survivors."[10] Yet, there are numerous provisions that are clearly intended for the benefit of the Archdiocese, not the Abuse Survivors, which should be struck.

First, the Confidentiality Agreement provides that in the event of a breach, the Archdiocese (not the Abuse Survivors for whose benefit the agreement is allegedly created) is entitled to injunctive relief, specific performance and attorneys fees.[11] If the Confidentiality Agreement is for the benefit of the Abuse Survivors, any damages or remedies should run in their favor, not the Debtors. The Confidentiality Agreement also places restrictions on the internal use of the data in the Abuse Survivor Proof of Claim Forms. Specifically, it states:

> I shall use or cause the Confidential Information only to assist me in performing my functions in the Bankruptcy Case and in a manner consistent with the terms and conditions of this Confidentiality Agreement. At no time shall I use the Confidential Information for the benefit of myself or any other third person. Nor shall I use the Confidential Information for any other purpose or proceeding, including but not limited to, any other legal proceedings of any nature, for purposes of evaluation or compiling demographic or statistical information about victim abuse claims against the Archdiocese or any other organization, or for purposes of evaluating or compiling demographic or statistical information about victim abuse claim settlements paid by the Archdiocese or any other organization.[12]

---

[9] See Exhibit D (Committee's Bar Date Order) at 11; Exhibit E (Committee Abuse Survivor Bar Date Notice) at 2; Exhibit F (Committee's Abuse Survivor Proof of Claim Form).
[10] See Motion at 8.
[11] See G to Motion ([Debtor's Confidentiality Agreement) at ¶ 6.
[12] Id. at ¶ 3.

Again, if the Confidentiality Protocol is for the benefit of the Abuse Survivors (as it should be), there is no need for such restrictions. To protect the Abuse Survivors, the Permitted Party need only agree to keep the information contained in the proof of claim confidential.

The Confidentiality Agreement also requires the Permitted Party to immediately notify the Debtor in the event it is subpoenaed or "otherwise required to give testimony regarding any Confidential Information," and to "assist the Archdiocese and its counsel in preventing the disclosure of any Confidential Information." This Confidential Information belongs to the Abuse Survivors. No Permitted Party should have to undertake the obligation to assist the Debtor in preventing disclosure. They are simply agreeing not to disclose the information themselves. Therefore, the Committee has deleted paragraphs 3, 4 and 6.[13] Finally, the Confidentiality Agreement makes no provision for unsealing the Abuse Survivor Proof of Claim Forms should they need to be used in any proceeding with the consent of the person who filed the claim or upon entry of a court order authorizing disclosure. Therefore, the Committee has added a provision addressing this issue.[14]

### C. *The Abuse Survivor Proof of Claim Form should be more user-friendly*

The Abuse Survivor Proof of Claim Form proposed by the Debtor uses technical, legal language that may not be accessible to Abuse Survivors. Therefore, the Committee has proposed an alternate Abuse Survivor Proof of Claim Form that is less intimidating and easier to understand. The alternate Abuse Survivor Proof of Claim Form also makes clear that Abuse Survivors should not file their claims with the Court and adds contact information for counsel to the Committee.[15]

---

[13] See Exhibit G (Committee's Confidentiality Agreement).
[14] Id.
[15] See Exhibit F (Committee's Abuse Survivor Proof of Claim Form).

### D. *Settling Abuse Survivors and Abuse Survivor Proof of Claim Forms*

Pre-petition, the Debtor conducted a voluntary Mediation Program pursuant to which 192 individuals agreed to settle their abuse claims (the "Settling Abuse Survivors"). One hundred and seventy of those settlements have apparently already been paid by the Debtor and payments remain outstanding on twenty-two, which the Debtor collectively scheduled as a lump sum of $702,000.00. The Debtor refers to these populations as the "Settled Victims/Survivors" and the "In Settlement Victims/Survivors" respectively. The Committee refers to all such parties as the Settling Abuse Survivors.

The Committee believes that Settling Abuse Survivors may have the right to rescind their settlement agreements or affirm their settlement agreements and seek damages against the Debtor if they were fraudulently induced to enter into the settlement (the "Fraudulent Inducement Claims"). If, for example, the Debtor induced a Settling Abuse Survivor to settle by telling him that he was the only individual who was abused or by misrepresenting the assets that were available to pay abuse claims, a Settling Abuse Survivor might have a Fraudulent Inducement Claim. For that reason, the Settling Abuse Survivors should not be listed among the parties who need not file an Abuse Survivor Proof of Claim Form and the Abuse Survivor Bar Date Notice should include the following language:

> Even if you participated in the Archdiocese of Milwaukee Clergy Sexual Abuse Mediation System and executed a settlement agreement releasing the Debtor you may still be entitled to file a Proof of Claim if you believe that your were misled by the Debtor or its representatives in connection with the mediation. For example, if you entered into a mediated settlement with the Debtor based on representations that were made to you concerning the limited resources that the Debtor had to settle your claims or that you were the only individual who was abused, which assertions you believe were untrue, you should file a claim setting forth the reasons you believe the settlement and release of the Debtor is not enforceable and/or why you believe you are entitled to additional payments. If you believe you were misled by the Debtor in connection with the mediation, you may also wish to contact an attorney.[16]

---

[16] See Exhibit D (Committee's Bar Date Order) at 4-5; Exhibit E (Abuse Survivor Bar Date Notice) at 2.

E. *Miscellaneous Issues related to Abuse Survivor Proof of Claims Forms*

The Committee believes that it is inappropriate to require Abuse Survivors to quantify their claims by including a dollar amount on the Abuse Survivor Proof of Claim Form and/or require them to attach the writings upon which their claims are based, and accordingly have deleted those requirements. At this stage of the proceedings, how is one to assign a value to the pain and suffering an Abuse Survivor experienced from being sodomized or a lifetime of alcoholism that followed? In addition, Abuse Survivors should not be required to attach "writings upon which their claims are based." These are not claims based on a contract that the Debtor has breached. These are tort claims and any writings, such as doctors bills and medical records, are simply evidence of the amount of the claim. They are not the basis for the claim itself, which was the Debtor's role in the abuse. Nothing in either Bankruptcy Code section 502 or Federal Rule of Bankruptcy Procedure 3003, both of which address the filing and allowance of claims, require tort claimants to attach writings to their claims or prevent them from filing unliquidated ones and the Bar Date Order should not impose these additional requirements.

## IV. Actual notice of the Abuse Survivor Bar Date to Currently Known Abuse Survivors is Inadequate.

A. *There are more known Abuse Survivors than the Debtor is proposing to serve with actual notice of the Abuse Survivor Bar Date.*

The most serious defect in the Motion is that it basically seeks to limit actual notice to Abuse Survivors that are "currently known to the Chancellor of the Archdiocese or the Archdiocese Victim's Assistance Coordinator." The Debtor proposes the following:

> The Debtor shall provide notice of the Victims/Survivors Bar Date by serving the Victim/Survivor Notice Package on Settled Victims/Survivors, In-Settlement Victims/Survivors, Represented Claimants, and Unrepresented Claimants (as such terms are defined in the Debtor's Motion for Special Confidentiality Procedures to Protect Victims/Survivors [Docket No. 165]) in the fashion approved by any Special Confidentiality Procedures Order approved by this Court. The Debtor will also serve the Victim/Survivor Notice Package on all individuals currently known to the Chancellor of the Archdiocese or the Archdiocese's Victim Assistance Coordinator as having: (i) filed or threatened to file lawsuits against the

Archdiocese that allege they were abused; (ii) contacted the Archdiocese to report that they were victims of abuse, whether or not that individual's claim was considered to be substantiated and whether or not the report was written or verbal; (iii) received payment from the Debtor as a result of an allegation of abuse; (iv) participated in the Mediation Program but not entered into a settlement agreement; and (v) been provided counseling, spiritual direction, or therapy support related to abuse or been referred for same by the Debtor.[17]

The Committee submits, however, that this narrow definition will exclude individuals whose identities are known to the Debtor or who could be easily identified through reasonable efforts on the Debtor's part through outreach to the parishes, schools and other Catholic Entities in the Archdiocese.[18] Suppose, for example, that a priest who taught at one of the one hundred twenty-five Catholic schools in the Archdiocese and oversaw and afterschool program at a Catholic day care center molested four children. Child One reports the abuse to a teacher who puts a note in the child's school file. When the principal talks to Child One, he says that he saw the priest take Child Two into the coat closet alone, which is what he had done with Child One. The principal decides the child is making it up and does not report the allegations to the Archdiocese. Child Three's parents report the abuse to the Archdiocese and threaten to sue. Child Four, abused at the day care center, never reports the abuse. Under the Debtor's proposal only Child Three would receive actual notice of the Abuse Survivor Bar Date, even though the Catholic school and the Catholic daycare center where Children 1, 2 and 4 were abused likely have records of the names and addresses of the students who attended.

---

[17] See Motion at 5-6.

[18] Due process requires that the Debtor go beyond what it has proposed and provide actual notice to claimants whose identities are known or reasonably ascertainable. See *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988) ("Notice must be given to 'all creditors' under Rule 2002(a) of the time set for filing proofs of claim. The term 'all creditors' has no qualifications or limitations. *New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333. This notice must also be given to satisfy due process requirements. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. We are referring to actual notice to known creditors, and these are creditors whose actual identity is known and those within an identified group or category as were the bondholders of the particular bond issue here concerned and whose addresses are "reasonably ascertainable." Something by way of constructive notice must also be given to those bondholders in the same group whose identity and whereabouts cannot be ascertained. The record shows that the indenture trustee, the National Bank of Georgia, had a recent list of most if not all of the bondholders of these bearer bonds.").

Nor does the Debtor's proposal, provide actual notice to Abuse Survivors who might have been identified during the course of an investigation of an Alleged Perpetrator but who did not directly report the abuse themselves. Nor does the Debtor propose to provide actual notice to individuals where "concern" was expressed, but direct abuse may not have been reported. For example, in 1993, the Debtor noted a report from a mother that Father Franklin Beckar "apparently took a liking to [her son], a teenager, and even though he only knew him for two days, he has been seen driving by his home. The mother is concerned."[19] This is a possible Abuse Survivor and yet, the Debtor does not provide actual notice.

For this reason, the Committee submits that the following parties (the "Abuse Survivor Notice Parties") should receive the Abuse Survivor Bar Date Packages:

> (i) All individuals who have filed or ever threatened to file lawsuits against the Archdiocese that allege Abuse by any Alleged Perpetrator.

> (ii) All individuals known to the Archdiocese who contacted the Archdiocese or any Catholic Entity to report that they were Abused by an Alleged Perpetrator, whether or not that individual's claim was considered to be substantiated or unsubstantiated and whether or not the report was written or verbal.

> (iii) All individuals known to the Archdiocese to whom payment has ever been made by or on behalf of the Archdiocese or any Catholic Entity as a result of an allegation of Abuse, including but not limited to the Settling Abuse Survivors (whether they received any or all payments owing as a part of the settlement) as well as all individuals who participated in any mediation or settlement process with the Archdiocese but did not enter into a settlement agreement.

> (iv) All individuals known to the Archdiocese whose names were given to the Archdiocese or to representatives of the Archdiocese or to any Catholic Entity or any representatives of a Catholic Entity by an Alleged Perpetrator or any third party during interviews, counseling sessions, or as a part of an investigation of Abuse.

> (v) All individuals who attended any daycare, preschool, kindergarten, elementary school, middle school or high school, or any seminary, college, or other educational institution (if the individual was under the age of 18 when he or she attended such college, seminary of other educational institution) in the Archdiocese (a "School") during the years in which an Alleged Perpetrator was

---

[19] See Letter dated July 26, 1990, a copy of which is attached hereto as Exhibit N.

present at the School.

(vi) All individuals identified on the latest alumni mailing list for each School.

(vii) All registered Catholics in every parish in the Archdiocese during the years in which an Alleged Perpetrator was present in that parish.

(viii) All individuals known to the Archdiocese who attended or participated in any other Catholic Entity during the years in which an Alleged Perpetrator was present at that Catholic Entity.

(ix) All individuals who contacted the Archdiocese about their children being in close contact with an Alleged Perpetrator or about some problem with the Alleged Perpetrator and their child.

(x) All individuals whom the Debtor has ever provided or referred to for counseling, spiritual direction, or therapy support related to Abuse.

(xi) Where any of the Abuse Survivor Notice Parties listed above have an attorney of record, notice shall also be sent to the attorney of record.[20]

The Committee is aware that this will require the Debtor to ask the schools, parishes and other Catholic Entities in the Archdiocese to provide the requested information in some instances. Therefore, the Bar Date Order should provide for a due diligence period of 45 days and the following due diligence procedure:

> To obtain the information requested above, the Debtor will review the files it has within its possession, custody or control related to all Alleged Perpetrators as well as the records of the following: sexual abuse review boards, the Sexual Abuse Prevention & Response Office, the Victims Assistance Counselor, the Safe Environment Coordinator, Eisenberg Commission, Project Benjamin and the Community Advisory Board. Within five (5) days of the entry of the Bar Date Order, the Debtor will contact each Parish, School and other Catholic Entity and request that they provide the names and addresses of the individuals identified in paragraphs 25(i)-(xi) above and will also ask each School for its latest alumni mailing list (the "<u>Information Request</u>"). The Information Request will be mailed to each Parish, School and other Catholic Entity on the stationary of the Archbishop as a personal request from him. The Debtor will use reasonable efforts to find current addresses for each individual identified by paragraph 25 and will promptly serve each such individual with the Abuse Survivor Bar Date Notice Package. The Debtor will file a declaration attesting to the efforts it made to comply with these procedures (which will include copies of each Information

---

[20] <u>See</u> <u>Exhibit D</u> (Committee's Bar Date Order) at 10-12.

DOCS_LA:238081.3 - 12 -
Case 11-20059-svk    Doc 241    Filed 05/20/11    Page 12 of 20

Request sent by the Debtor) with the Court and serve it on counsel to the Committee within thirty days of service of the Abuse Survivor Bar Date Packages. At the same time, the Debtor will provide the counsel to the Committee the names and addresses of all Abuse Survivor Notice Parties and all Alleged Perpetrators. If additional Abuse Survivors or Alleged Perpetrators are identified to the Debtor after the initial service of the Abuse Survivor Bar Date Packages, the Debtors shall, within 10 days of their identification, serve a copy of the Abuse Survivor Bar Date Package on the additional Abuse Survivors with an amended Abuse Survivor Bar Date Notice that includes the name of any subsequently identified Alleged Perpetrator. The information regarding any subsequently identified Alleged Perpetrator shall also be added to the Publication Notice described below. The Debtor will provide counsel to the Committee the names and addresses of all subsequently identified Abuse Survivor Notice Parties and Alleged Perpetrators.[21]

The Committee is also aware that the parishes are separately incorporated, but this is no bar to obtaining information from them (or the schools or other Catholic Entities) or from the priests or pastors who would be required to review parish files for the names of known claimants. The parishes, while separately incorporated, are under the authority of the Archbishop. The Archbishop both appoints and removes the pastor and approves the assignments for each priest.[22] Indeed, each priest declares an oath of obedience to his bishop.[23]

Furthermore, the Archdiocese exerts an extraordinary amount of control over the parishes and provides a great deal of assistance to them. For example, the Archbishop, as the only trustee of each Roman Catholic church in the Archdiocese, has the power to cause the incorporation of

---

[21] Id. at 12-13.

[22] See Deposition of the Archbishop Rembert G. Weakland, Roeder et al v. Archdiocese of Milwaukee et al., (Case No. 92-CV-D16089) in the Circuit Court for Milwaukee County, State of Wisconsin, at 33:14-22) (September 8, 1993) (the "Weakland Deposition") (Q: And you, as the archbishop, have the power and the duty to appoint the pastor of any particular parish? A: Yes. Q: And you have the power and the ability to remove any pastor from the parish. Correct? A: Not without cause. Q: Okay. But if there is cause, you have the power and the ability to do that? A Yes." True and correct copies of the relevant pages of the Weakland Deposition are attached hereto as Exhibit H; Deposition of Father Paul Lippert, Linneman, et al., v. Archdiocese of Milwaukee et al., (Case No. 05-CV-1351) in the Circuit Court for Milwaukee County, State of Wisconsin, at 28:12-25) (May 10, 2010) (the "Lippert Deposition") (Q: My question, if you go back to the first page of Exhibit A, see at point No. 3 it says, 'Eighty-five recommendations were presented to the Archbishop; a carbon copy for the Chancery staff was enclosed." Is this describing part of the process that you talked about earlier where recommendations were given to the Archbishop in writing about the possible assignments for the priests." A: Yes. Q: And ultimately the only one that could either approve or disapprove of one of the recommendations was the Archbishop? A: Yes."). True and correct copies of the relevant pages of the Lippert Deposition are attached hereto as Exhibit I.

[23] Weakland Deposition at 37: 8-12 (Q: Do diocesan priests then, not have an obligation to observe chastity? A: They do not have an obligation to observe poverty. The promise of obedience is made to the bishop at the date of ordination. The chastity is, they make a promise of permanent celibacy.").

each parish.[24] He is one of the trustees of each parish corporation. Of the other four trustees, the vicar-general and the pastor of each congregation are appointed to the jobs that entitle them to serve as trustees by the Archbishop.[25] The remaining two trustees are elected by parishioners, but the Archbishop, as president of the parish corporation, has the right to approve or disprove any trustee elected by the parish or appointed by the pastor to fill a vacancy.[26]

The Archbishop is also the president of every parish corporation and his appointee (the pastor) is vice-president. The Archbishop is on the board of directors of each parish corporation, along with the vicar-general, the pastor, the treasurer and the secretary.[27] Through the Archbishop's power to appoint the vicar-general of the Archdiocese and the pastor of each congregation, he effectively determines who holds three of five votes on the board of directors.

One of the ways in which the Archdiocese exercises its control over the parishes is by limiting what they can or can not do without the unanimous consent of the board of directors (which, of course, requires the consent of the Archbishop and his two appointees, the pastor and the vicar-general). For example, trustees can not initiate or respond to lawsuits in the name of the parish without the written permission of the Archbishop.[28] They can not sell or encumber parish property, incur debts beyond $300.00, make extraordinary expenditures of funds already "in hand" which is not a regular operation expenditure for any amount of money that exceeds 4%

---

[24] Wisconsin Statutes section 187.19(1) provides, "The bishop of each diocese, being the only trustee of each Roman Catholic church in his diocese, may cause any or all congregations therein to be incorporated by adding four more members as trustees as hereinafter provided." Wis. Stat. § 187.19(1) (2011). A copy of the statute is attached hereto as Exhibit J.

[25] Wisconsin Statutes section 187.19(1) provides, "The bishop and vicar-general of each diocese, the pastor of the congregation to be incorporated, together with two laypersons, practical communicants of such congregation (the latter to be chosen from and by the congregation), shall be such trustees." Id. § 187.19(1).

[26] See Parish Trustee Manual Finance/Administrative Services Committee Handbook 11, 17 (Archdiocese of Milwaukee XXXX) (the "Parish Trustee Manual") ("Nominees who receive the highest number of votes become the trustees subject to the approval of the archbishop. After any trustee is elected or reelected, their name is sent to the chancery for the archbishop's affirmation. The archbishop, president of the Board of Directors, has the right to approve or disapprove any lay trustee elected by the parish or appointed by the pastor to fill a temporary vacancy of an unexpired term."). A copy of the relevant pages of the Parish Trustee Manual are attached hereto as Exhibit K.

[27] Wisconsin Statutes section 187.19(5) provides, "The bishop or administrator, the vicar-general, pastor, treasurer and secretary shall be directors of the corporation." Id. § 187.19(5).

[28] See Parish Trustee Manual at 11.

of the last years' parish revenue, establish an endowment, or enter into any building or renovation process without the Archbishop's consent as a member of the board.[29]

Given the Archbishop's authority over the parishes, the priests and the Christian faithful in the Archdiocese, it is clear that he can ask the parishes, the schools and the Catholic Entities to respond to the Information Request as a part of the Debtor's efforts to identify and notify all known Abuse Survivors.

### B. *The method of service of the Abuse Survivor Bar Date Packages is ambiguous.*

The Debtor proposes to serve the Abuse Survivor Bar Date Packages using "the same confidentiality procedures as those approved by the Court for Unrepresented Claimants, unless such individuals have counsel known to the Debtor, in which case service will be effectuated through such counsel, in the same fashion as approved by the Court for service on the Represented Claimants." However, court has not yet approved the Debtor's requested confidentiality procedures. For Abuse Survivors who are represented, the Debtor should serve the Abuse Survivor Bar Date Packages on their attorneys of record. All other Abuse Survivors should be served, first class mail, at their last known home address, after the Debtor has used reasonable efforts to locate a current address for each Abuse Survivor. The names and addresses of all parties served (including any updated addresses which were discovered when mail was returned or otherwise) should be included on the proof of service, and the proof of service should be filed under seal, with a copy provided to counsel to the Committee, which the Committee will not disclose.

## V. **The Publication Protocol must be expanded.**

### A. *The Publication Protocol is inadequate.*

The Debtor intends to notify unknown Abuse Survivors through a Publication Protocol. The Committee requests that the Publication Protocol be expanded in the following ways: (a)

---

[29] Id. at 19.

Publication in the specified publications be made once in the 30 days after the entry of the Abuse Survivor Bar Date Notice and once 30 days before the Abuse Survivor Bar Date; (b) the following additional publications be added: America Magazine, Hand to Hand, National Catholic Reporter, Saint Anthony Messenger, and (c) and that the Publication Protocol be supplemented as follows:

> (a)  The Debtor will provide the Publication Notice to all parishes and schools located in the Region and each parish and school will post the Publication Notice in a prominent location. The Publication Notice shall be no smaller than 8" X 10" with font no smaller than 10 point. The Publication Notice shall state that it is posted at the request of the Archbishop and is to remain posted within thirty (30) days of entry of the Bar Date Order through the Abuse Survivor Bar Date (the "Publication Period"). The Debtor or someone at the parish or school at the request of the Debtor shall verify that the Publication Notice remains posted until the end of the Publication Period.
>
> (b)  Archbishop Jerome Listecki will prepare and sign a letter notifying Catholics in the Region of the Bar Dates and will request that each parish include said letter in its parish bulletin once a week for every week of the Publication Period. The letter will also be mailed or emailed to registered parishioners.
>
> (c)  The Debtor will post the Publication Notice on the homepage of the following websites: www.archmil.org, www.kccllc.net/archmil; each parish website, each School website, as well as on the homepage of each Publication's web-version. The Publication Notice will remain posted on the websites for the duration of the Publication Period.
>
> (d)  Where Publication Notice is required by these provisions to be published on any website or internet portal, the Debtor shall also provide a videotape upload which provides the Publication Notice for Abuse Survivors in American Sign Language.
>
> (e)  The Debtor and the Committee will maintain toll free numbers which may be used by potential claimants to ask questions or obtain copies of Abuse Survivor Proof of Claim Forms and General Creditor Proof of Claim Form.
>
> (f)  The Debtor will distribute a press release announcing the Abuse Survivor Bar Date to, at a minimum, the programs, schools, ministries, organizations, individuals and media outlets to which it issued press releases, information and fliers in connection with the announcement of the Mediation Program in January 2004 as is further detailed in paragraph 31 of the Motion.
>
> (g)  A priest in each church in each parish will announce the Abuse Survivor Bar Date and the procedure for filing an Abuse Survivor Proof of Claim from the

pulpit one time during each Sunday mass conducted during the Publication Period.

(h)   The Debtors will also mail a copy of the Abuse Survivor Bar Date Notice to each of the following individuals or entities within the Region: all police departments, the offices of all District Attorneys, the office of the Wisconsin attorney general, all licensed therapists who work with survivors of sexual abuse, the regional headquarters of Alcoholics Anonymous and Narcotics Anonymous, all drug treatment centers, hospitals and public libraries.

28.   The Debtor will file a certificate of notice by publication attesting to the efforts it made to comply with these procedures with the Court and serve it on counsel to the Committee within thirty days of service of the Abuse Survivor Bar Date Packages. The Debtor will also file with the Court a declaration attesting to the compliance of the parishes, schools and other Catholic Entities with the Publication Protocol.[30]

This expanded publication is necessary to insure that unknown claimants are reached. In today's world, many people get their news from internet versions of newspapers, so placing the Publication Notice in the print version is not enough. In addition, as mentioned above, many of the Abuse Survivors in this case were students at St. John's School for the Deaf. Hearing impaired people frequently have difficulty reading, and thus, it is terribly important to use videotape uploads with the text of the Abuse Survivor's Bar Date Notice or some other agreed upon script in American Sign Language on the publications' websites. In addition, requiring the Publication Notice to be delivered to registered Catholics and placed, multiple times in parish bulletins and even having the priests announce it from the pulpit is not unprecedented. In fact, very similar efforts were made at the parish level on behalf of the Archdiocese in connection with the its 2011 Catholic Stewardship Appeal to raise money for the Archdiocese, where, for example, the Archdiocese provided to the parishes (through its website) articles, bulletin announcements and cover art, assistance with campaign administration, intercessions for each week of the campaign, pulpit announcements, talking points, testimonials and training

---

[30] See Exhibit D (Committee's Bar Date Order) at 16-17.

webinars.[31]  If the Archdiocese can reach out to the parishioners through the websites, bulletins and priests to raise money, it can do so to publicize the Abuse Survivor Bar Date.

   B.   *The Publication Notice itself needs to be bigger and include language that is likely to speak to Abuse Survivors.*

The content of the Publication Notice is inadequate for many reasons.  It needs to be larger and needs to specifically notify the reader that, among other things, a list of the names, dates, locations and years of service of the substantiated Abusers is available and a statement regarding the Fraudulent Inducement Claims.  It should also include specific descriptions of acts of abuse.  Abuse Survivors may not respond when asked generally if they have an "abuse claim."  The Debtor is prepared to present expert testimony that a noticing program will be much more effective if, for example, the Publication Notice were to ask concrete questions, such as: "Were you fondled? Were you shown pornography? Were you touched on your genitals, either over or under your pants?"

**VI.   The Abuse Survivor Bar Date Notice and Package should be amended.**

The Abuse Survivor Bar Date Notice and the Abuse Survivor Bar Date Package should be amended in a number of ways.

   A.   *The List of Abuser should be supplemented and should include pictures, if available.*

The List of Abusers that the Debtor proposes to send with the Abuse Survivor Bar Date Notice should include the name of the each Abuser, as well as the name of the church, parish, school, or other Catholic Entity for which the Abuser worked or served, the Abuser's position within said church, parish, School or other Catholic Entity and the Abuser's dates of service or employment with such church, parish, school or other Catholic Entity.  It should also include a picture (if available), at least 3" by 5" in dimension, of each Abuser at or close to the time of the

---

[31] See Archdiocese of Milwaukee, http://www.archmil.org/catholicappeal/ParishResources.htm (last visited 5/13/2011). An excerpt from the website is attached hereto as Exhibit L.

abuse. This is necessary because Abuse Survivors often need a connection to their memory of an event that took place many years ago, often to recall the name of their abuser. It should also include the names and information requested above for any religious order priests with substantiated claims of abuse. It should also include the following disclaimer:

> This list is not exhaustive in that there may be additional priests who may have committed acts of abuse but on whom the Archdiocese does not have a report or for whom the Archdiocese determined that an allegation of abuse was not substantiated. In addition, the list does not include other potential offenders who are not members of the clergy, such as teachers, nuns, or religious order priests). The fact that this list may not include the name of the Alleged Perpetrator who abused you does not mean that you should not file an Abuse Survivor Proof of Claim Form.[32]

## VII. Additional Comments.

The Committee also opposes the following language in the proposed Bar Date Order that purports to foreclose the filing of proofs of claim after the Abuse Survivor Bar Date:

> Pursuant to Fed. R. Bankr. P. 3003(c)(2), any holder of a claim whether a General Creditor Claim, Victim/Survivor Claim, Rejection Damages Claim, or Amended Schedules Claim that is not subject to one of the exceptions enumerated above who fails to timely file a proof of claim in the appropriate form be forever barred from (a) asserting such claim against the Debtor or its estate; (b) voting on any plan of reorganization filed in the Reorganization Case, and (c) participating in any distribution in the Reorganization Case on account of such claim, and that the Debtor need not provide further notices regarding such claim.[33]

As the Debtor is aware, a claimant who has not filed a claim prior to the applicable bar date may move the Court to permit the late filing, and a plan of reorganization may provide treatment for late filed claims. Through the above quoted language, the Debtor is, in effect, inappropriately writing discharge terms into a Bar Date Order. In addition, the Motion does not address the impact of a future claims representative who may be appointed under a plan of reorganization and who would oversee the filing of claims that had not accrued as of the Abuse Survivor Bar Date.

---

[32] See Exhibit M (Committee's List of Substantiated Abusers).
[33] See Exhibit H to the Motion (Debtor's Bar Date Order).

# III

# **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court deny the Motion or, alternatively, that the Court schedule an evidentiary hearing on the Motion and consider the Opposition of the Committee, along with any testimony, witnesses or other evidence that the Committee submits at or before the hearing.

Dated: May 20, 2011

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
by its counsel,
Pachulski Stang Ziehl & Jones LLP.

By: */s/ James I. Stang*

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., #1100
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
kbrown@pszjlaw.com
gbrown@pszjlaw.com

-and-

Albert Solochek (State Bar No. 1011075)
Jason R. Pilmaier (State Bar No. 1070638)
Howard, Solochek & Weber, S.C.
324 E. Wisconsin Ave., Suite 1100
Milwaukee, WI 53202
Telephone: (414) 272-0760
Facsimile: (414) 272-7265
E-mail: asolochek@hswmke.com
jpilmaier@hswmke.com

Attorneys for the Committee of Unsecured Creditors