IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHDIOCESE OF MILWAUKEE, | ) | Case No. 11-20059-SVK |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**AFFIDAVIT OF DISINTERESTEDNESS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014; AND
AFFIDAVIT IN SUPPORT OF APPLICATION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FED. R. BANKR.
P. 2014 FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE
EMPLOYMENT OF BUSINESS MANAGEMENT INTERNATIONAL AS A
CONSULTANT TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, NUNC PRO TUNC TO MAY 17, 2011**

I, Laurel Loehlin, declare under penalty of perjury as follows, pursuant to

Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure:

   1. I am the Vice President of Operations of Business Management

International ("BMI"). My office address is 529 W. 42 St., Fourth Floor, Suite L; New

York, New York

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
  kbrown@pszjlaw.com
  gbrown@pszjlaw.com

05058-003\DOCS_LA:238565.6

2.      I am authorized to submit this affidavit on behalf of BMI in support of the Application of the Official Committee of Unsecured Creditors Pursuant to Fed. R. Bankr. P. 2014 for Entry of an Order Authorizing and Approving the Employment of Business Management International as a Consultant to the Official Committee of Unsecured Creditors, Nunc Pro Tunc to May 17, 2011 (the "Application").

3.      BMI was founded in 1987 as a computer consulting firm specializing in emerging business software technology. Today, BMI has taken the lead in delivering complex solutions by providing industry specific knowledge, consulting, systems analysis, system development, and technical services to clients. Solutions from BMI use the latest business management software and leading technologies to create customer specific applications and enterprise-wide solutions. Among BMI's solutions is making readable raw data kept on Microsoft Dynamic GP software[1] and running reports on that data.

4.      As set forth in the Application, the Committee seeks to employ and retain BMI as a consultant in order to perform the following services for the Committee in conjunction with the Committee's proposed financial advisors at BRG:

> a.      Coordinating the export of the Debtor's raw data on Great Plains to BRG and BMI;

---

[1] Microsoft renamed the Great Plains software a few years ago as "Microsoft Dynamics GP" when it acquired four different companies with four different accounting software packages (Great Plains, Navision, Axapta, and Solomon). Microsoft consolidated those software packages under one division and renamed then. Most users in the industry continue to refer to Microsoft Dynamics GP as "Great Plains."

2

05058-003\DOCS_LA:238565.6

    *b.*  Extracting raw data from Great Plains and rendering it readable to BRG;

    *c.*  Running reports of the raw data on Great Plains at the direction of the Committee, its counsel, and BRG. BMI is not being asked to analyze the Debtor's liability to any particular survivor of sexual abuse; and

    *d.*  Providing such other services to the Committee and its professionals as may be necessary in the case.

  5.  The terms of BMI's employment agreed to with the Committee, subject to this Court's approval, are as follows: (i) no retainer has been or will be paid to BMI; (ii) neither the Committee nor any of its members (or their representatives) shall be liable for any fees or costs that BMI incurs; (iii) BMI will charge its regular, hourly rate of $200; and (iv) BMI will seek reimbursement of expenses at cost or as otherwise allowed by the Court.

  6.  In this bankruptcy case, I estimate that the Committee's purchase of Great Plains software and licenses relating to that software would cost between $6000 to $10,000. Alternatively, the Committee's utilization of BMI's services eliminates the need for the Committee to purchase that software and software licenses.

  7.  BMI understands that all of its fees and expenses are subject to Court approval after submission of a fee application. BMI believes that it is qualified to represent the Committee in light of its extensive experience with Great Plains. Two other bankruptcy courts have authorized the retention of BMI to assist the committee and

3

05058-003\DOCS_LA:238565.6

BRG's predecessor entity, LECG, LLC, in providing similar services in Catholic Church-related bankruptcy cases. In *In re Society of Jesus, Oregon Province* (Bankr. D. Or., Case No. 09-30938-elp), the bankruptcy court approved the retention of BMI to provide similar services to that committee with regard to Great Plains. In addition, the bankruptcy court in *In re Catholic Diocese of Wilmington, Inc.* (Bankr. D. Del., Case No. 09-13560), approved the employment of BMI to make readable raw financial data on the debtor's electronic financial software known as Navision. (Whether dealing with Great Plains, as in the instant case and *In re Society of Jesus, Oregon Province*, or else handling Navision software in *In re Catholic Diocese of Wilmington, Inc.*, BMI provided the same services that the Committee and BRG require here, namely extracting financial data from software and running reports at the direction of the Committee and its financial advisors.)

8.     BMI has not received any retainer from any person, or any payment, nor any promise of payment in relation to this case, during the one-year period prior to the filing of the debtor's petition. No post petition compensation has been paid or promised to be paid from a source other than the estate in this case. Neither the Committee nor its members (or any of their representatives) are or will be liable for fees or costs incurred by BMI in its representation of the Committee.

9.     BMI has made the following investigation of disinterestedness prior to submitting this affidavit: in connection with the proposed retention of BMI as financial advisor to the Committee, I reviewed BMI's database of customers, vendors,

4

and prospects to determine whether BMI has not performed work for the Archdiocese of Milwaukee. On behalf of BMI, I have concluded that BMI has no conflicts with this representation and has not previously performed work for the Archdiocese of Milwaukee.

10. Based on the process referred to above, to the best of my knowledge, information, and belief, I am informed and believe as follows:

a. BMI has had no previous contact or ties with the Debtor;

b. BMI is not a creditor, an equity security holder, or an insider of the Debtor;

c. BMI is not and was not an investment banker for any outstanding security of the Debtor;

d. BMI was not, within three years before the Petition Date, an investment banker for a security of the Debtor, or an accountant or consultant to such investment banker in connection with the offer, sale, or issuance of any security of the Debtor;

e. BMI is not and was not, within two years before the Petition Date, a director, officer, or employee of the Debtor or of an investment banker of the Debtor;

f. BMI does not have an interest materially adverse to the interest of the Debtor or of any class of creditors or equity security holders by reason of

5

05058-003\DOCS_LA:238565.6

any direct or indirect relationship with, connection with, or interest in, the Debtor or any investment banker, or for any other reason;

g. Except with respect to certain other bankruptcy engagements where a BMI consultant acts as a trustee for a debtor or as a consultant to a trustee of a debtor, BMI has no connection with the United States Trustee or persons employed by the Office of the United States Trustee; and

h. BMI was not owed any sums by the Debtor for services rendered or costs advanced on behalf of the Debtor prior to the Petition Date.

11. Because of the size of BMI's business, it is possible that BMI has provided, is presently providing, and may in the future provide, consulting services to parties listed on the Conflicts Search List or other creditors or parties in interest in the Debtor's bankruptcy case, which services are unrelated to any matter involving this bankruptcy case. However, to the best of my knowledge, none of those prior and current engagements or other dealings makes BMI an interested person under the bankruptcy laws. If BMI identifies a creditor or other party in interest of the Debtor's bankruptcy estate that BMI has or is providing consulting services to in connection with this bankruptcy matter, it will promptly disclose such information in writing to the Court and to the Office of the United States Trustee.

12. BMI is currently employed in unrelated cases, including bankruptcy cases, as expert witnesses and/or consultants, for which other counsel

6

05058-003\DOCS_LA:238565.6

associated with this case may be involved. BMI has not conducted work in these cases in approximately one year. I believe that such connections do not give BMI an adverse interest to the Debtor and do not affect BMI's "disinterestedness" under 11 U.S.C. §327. BMI and/or principals of BMI who will be involved in this case, have served in numerous matters where PSZJ and BRG's predecessor entity also served, including, but not limited to, the following:

a. *In re Society of Jesus, Oregon Province* (Bankr. D. Or. 09-30938-elp11) (BMI is computer consultant to BRG/Official Committee of Unsecured Creditors; BRG is financial advisor to the Official Committee of Unsecured Creditors; PSZJ is counsel to the Official Committee of Unsecured Creditors); and

b. *In re Catholic Diocese of Wilmington, Inc.* (Bankr. D. Del. 09-13560 (CSS)) (BMI is computer consultant to BRG/Official Committee of Unsecured Creditors; LECG[2] was financial advisor to the Official Committee of Unsecured Creditors; PSZJ is counsel to the Official Committee of Unsecured Creditors);

13. I estimate that BMI has expended less than 5 hours in May 2011 relative to its position as proposed computer consultant to the Committee in this case.

---

[2] The BRG advisors who are expected to serve in the instant case were part of LECG, LLC. Effective on or about March 1, 2011, this group of advisors transferred its practice from LECG, LLC to BRG.

7

05058-003\DOCS_LA:238565.6

14. A true and correct copy of the resume of Susan Spitko, the BMI professional expected to have primary responsibility for this case, is attached hereto as **Exhibit A.**

Dated this _____ day of June, 2011.


Laurel Loehlin

Subscribed and sworn to before me
this ____ day of June 2011.

_____
Notary Public, State of ~~New York~~ TEXAS. *B*
My commission expires: 5-14-14 .

ANDREW S. BAIRD
MY COMMISSION EXPIRES
May 14, 2014

8

05058-003\DOCS_LA:239332.1