IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHDIOCESE OF MILWAUKEE, | ) | Case No. 11-20059-SVK |
| | ) | |
| Debtor. | ) | |
| | ) | |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FED. R. BANKR. P. 2014 FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF THE LAW OFFICES OF PAUL A. RICHLER AS SPECIAL INSURANCE COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned case hereby submits this *Application of the Official Committee of Unsecured Creditors Pursuant to Fed. R. Bankr. P. 2014 for Entry of an Order Authorizing and Approving the Employment of The Law Offices of Paul A. Richler as Special Insurance Counsel to the Official Committee of Unsecured Creditors* (the "Application"). In support of this Application, the Committee relies on the Affidavit of Paul A. Richler (the "Richler Affidavit") and the Affidavit of James I. Stang, filed concurrently herewith, and respectfully represents as follows:

James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
       kbrown@pszjlaw.com
       gbrown@pszjlaw.com

DOCS_LA:245929.3 05058-003

## I. JURISDICTION

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 328, 504, 1102, and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014 and 2016 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

3. On January 4, 2011, the Archdiocese of Milwaukee (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case (the "Bankruptcy Case").

5. On January 24, 2011, (the "Committee Formation Date"), the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee to represent all unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code. *See* Docket No. 86.

2

6. On January 25, 2011, the Committee determined to retain, subject to Court approval, Pachulski Stang Ziehl & Jones LLP ("PSZJ") as counsel to represent the Committee in all matters during the pendency of this Bankruptcy Case. The Court has approved the Committee's retention of PSZJ.

7. The purpose of this Bankruptcy Case is to address the Debtor's liabilities for child sexual abuse perpetrated by priests or others for whom the Archdiocese was responsible. The Debtor has acknowledged that priests and volunteers have sexually assaulted children for decades in the Archdiocese.

8. The Debtor has not been forthcoming with information relating to insurance beyond the Schedules, Statement of Financial Affairs, and copies of certain state court pleadings. Since shortly after the Committee Formation Date, PSZJ has asked the Debtor's counsel several times for a report on the status of the insurance issues as well as the Debtor's authorization for Committee counsel to discuss insurance matters and stay relief strategy with Quarles & Brady LLP ("Q&B"), which is special counsel to the Debtor in the Bankruptcy Case. The Debtor's general bankruptcy counsel initially balked at the idea of Committee counsel's direct communication with Q&B, instead requiring that he be the go-between for any discussion. Subsequently, the Debtor's general bankruptcy counsel provided Committee counsel with copies of state court pleadings related to the insurance coverage actions but Committee counsel still has not been introduced to Q&B. On May 4, 2011, the Committee counsel sent an email to

Debtor's counsel (Bruce Arnold and Daryl Diesing) which stated, in substance, the contents of this paragraph and informed them that the Committee was intending to file this Application. To date, the Committee counsel has not received a response.

9. Additionally, the Debtor is looking into an insurance policy buyback that the Committee believes is premature. In its Schedules and Statement of Financial Affairs, the Debtor has scheduled liability policies issued by at least 16 different insurance carriers. General bankruptcy counsel has billed time in this Bankruptcy Case to insurance policy buyback analyses and discussions. The Committee does not understand the strategy of an insurance policy buyback before the expiration of the period to file proofs of claim, which does not expire until February 1, 2012. The number of abuse claims in the case may increase substantially such that any buyback considerations should reflect the filed claims in order to maximize creditor recoveries. Because the Debtor has initiated discussions with its carriers regarding a policy buyback, this issue is ripe and requires the Committee's analysis and input. The Law Offices of Paul A. Richler ("Richler") can provide that analysis and guidance to the Committee.

10. The Debtor is also the appellant in a case pending before the Wisconsin Supreme Court in which the lower courts have held that a significant portion of the Debtor's liability insurance program does not cover claims for sexual abuse. The recovery for survivors of sexual abuse – who are among the Committee's constituents – may be significantly impacted by the outcome of that pending appeal. The Committee

4

requires legal advice regarding these issues that are critical to constituents' potential recoveries.

11.    After the Committee Formation Date, and because of these issues involving the Plans, the Committee determined to retain, subject to Court approval, Richler as its special insurance counsel in the Bankruptcy Case.

### III. RELIEF REQUESTED AND BASIS FOR RELIEF

12.    By this Application, the Committee seeks to employ and retain Richler as its special insurance counsel on the terms set forth in this Application. The Committee understands that Richler will seek compensation from the Debtor's estate and reimbursement of expenses incurred on the Committee's behalf, subject to Court approval after notice and a hearing.

### A.    Richler as Special Insurance Counsel

13.    The professional services that Richler will render to the Committee in its capacity as special insurance counsel include, but shall not be limited to, advising the Committee regarding the following issues:

    *a.*    Insurance issues relating to any proposed plan(s) of reorganization(s), mediation(s), and/or settlement discussion(s);

    *b.*    Negotiations with insurance companies having potential liability for the Debtor's tortuous acts;

  *c.*  A broad range of insurance issues, including, but not limited to, triggers for insurance coverage for sex abuse, limits of coverage, calculation of the number of occurrences of sex abuse, expected or intended defenses (i.e., coverage may not be available if the Debtor expected or intended the injuries to occur), and other insurance defenses;

  *d.*  Proposed insurance policy buybacks from the Debtor's insurance carriers;

  *e.*  Litigation of insurance coverage issues; and

  *f.*  Other issues as necessary to assist the Committee with respect to issues relating to the Debtor's insurance.

  14.  The Committee needs independent advice to evaluate all issues that impact insurance coverage for unsecured claims. Although the Committee and the Debtor technically share a common interest in pursuing insurance coverage, in all likelihood, the Debtor will be more constrained in pursuing coverage due to its duty to cooperate with its insurers. Unfortunately, insurers regularly (and unjustifiably) invoke that duty in order to hinder insureds' aggressive pursuit of insurance coverage to which the insureds are entitled. The Committee cannot be dependent on advice from counsel for the Debtor that owes duties to its insurers, which may conflict with the Committee's interest in pursuing those insurers.

[remainder of page left intentionally blank]

6

DOCS_LA:245929.3 05058-003

Case 11-20059-svk Doc 478 Filed 11/14/11 Page 6 of 11

B. **Richler Expertise**

15. The Committee is familiar with the professional standing and reputation of Richler, and recognizes that Richler has experience providing legal assistance in the area of insurance issues. Moreover, the Committee is aware that the primary Richler attorney, Paul A. Richler, whom the Committee selected to work on this Bankruptcy Case, has prior experience in other Church-related bankruptcy cases, including retention and legal work performed as special counsel to the official committees of unsecured creditors in (i) *In re Society of Jesus, Oregon Province* (Bankr. D. Or., Case No. 09-30938-elp11); and (ii) *In re Catholic Diocese of Wilmington, Inc.* (Bankr. D. Del., Case No. 09-13560 (CSS)).[1] Paul A. Richler now is the principal of his own law firm, the Law Offices of Paul A. Richler, effective October 1, 2011. During the representations listed above, and until September 30, 2011, Mr. Richler was a partner at Morgan Lewis & Bockius, LLP ("MLB") Mr. Richler's practice then and now focuses on complex litigation, including policyholder insurance recovery. Mr. Richler is also a seasoned trial lawyer.

16. The Committee notes that Attorney Kathy Freberg retained MLB in September 2006 to analyze insurance coverage available to the Archdiocese of Milwaukee in connection with a claim pending against the Archdiocese of Los Angeles and the Diocese of Orange (California). As part of that representation, MLB also

---

[1] PSZJ served as general bankruptcy counsel to the committees in these cases.

attended a mediation at which its client was adverse to the Archdiocese of Milwaukee. Therefore, the Committee has no reason to believe that any prior MLB representation while Mr. Richler was a partner at MLB creates any conflict or would disqualify Richler from representing the Committee in this bankruptcy case.

17. In the course of these engagements, Richler has gained an expertise in the analyses of insurance coverage in the context of Church-related sexual abuse, the conduct of settlement discussions associated with coverage claims, and the litigation of such matters. Based on these facts, the Committee believes that Richler is well-suited to render the services set forth in this Application.

18. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, compensation will be payable to Richler on an hourly basis, plus reimbursement of Richler's actual, necessary expenses and other charges it incurs. The Committee has sought a negotiated hourly rate for this Bankruptcy Case. Richler has agreed that the attorneys working on this Bankruptcy Case will be billed at a maximum hourly rate of $650.00. Richler seeks to reserve rights to seek compensation at a future time for the full hourly rates, in excess of $650.00 per hour, that it charges other clients.

19. Richler charges for all expenses incurred in connection with its clients' cases. These expenses include, among other things, conference call charges, mail and express mail charges, special or hand delivery charges, document retrieval charges, photocopying charges, charges for mailing supplies (including, without limitation,

envelopes and labels) that Richler provides to outside copying services for use in mass mailings, travel expenses, expenses for working meals, computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial overtime and other staffing overtime. Richler will bill for these expenses in a manner and at rates consistent with those charged to other clients, and the rules and requirements of this Court.

### C. Richler's Disinterestedness

20. Neither Richler nor any of its professionals or paraprofessionals, insofar as the Committee has been able to ascertain, represent any interest adverse to the Debtor, its estate, its creditors, and the Committee in the matters upon which Richler is to be engaged. Richler is a "disinterested person," as the Committee understands this term to be defined, within the meaning of section 101(14), as modified by section 1103(b), of the Bankruptcy Code.

21. To the best of the Committee's knowledge, Richler has no prior connection with the Debtor, its creditors, or any other party-in-interest (except as set forth at ¶19, above), or their respective attorneys or accountants in the matters upon which it is to be engaged that would in any way disqualify it from representing the Committee.

22. Richler has indicated a willingness to act as special insurance counsel upon the Committee's behalf, in accordance with the terms of this Application.

9

DOCS_LA:245929.3 05058-003

Case 11-20059-svk    Doc 478    Filed 11/14/11    Page 9 of 11

## IV. COMPENSATION

23.     Pursuant to section 330(a) of the Bankruptcy Code and Local Bankruptcy Rule 2014, the Committee proposes a fee cap for Richler in the amount of $75,000 relating to its work as special insurance counsel. With regard to the specific categories of work that Richler anticipates conducting, it estimates fees in the following amounts, subject to revision as the Bankruptcy Case progresses:

| Task | Est. Fees and Costs |
| --- | --- |
| Insurance issues relating to any proposed plan(s) of reorganization(s), mediation(s), and/or settlement discussion(s) | $25,000 |
| Negotiations with insurance companies having potential liability for the Debtor's tortuous acts | $15,000 |
| A broad range of insurance issues, including, but not limited to, triggers for insurance coverage for sex abuse, limits of coverage, calculation of the number of occurrences of sex abuse, expected or intended defenses (i.e., coverage may not be available if the Debtor expected or intended the injuries to occur), and other insurance defenses | $20,000 |
| Analysis of any proposed insurance policy buybacks from the Debtor's insurance carriers | $15,000 |

## V. NOTICE

24.     Notice of this Motion has been given to (i) the U.S. Trustee; (ii) counsel to the Debtor; and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## VI. PRIOR REQUEST

25. The Committee has not made a similar Application in this Court or in any other court to employ Richler in this Bankruptcy Case.

WHEREFORE, the Committee requests entry of an Order substantially in the form attached hereto, authorizing the Committee to employ and retain Richler as special insurance counsel to the Committee, and granting such other and further relief as is just and proper.

Dated: November 10, 2011

OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ARCHDIOCESE OF MILWAUKEE

By: *Charles W. Linneman*

Chair of the Official Committee of Unsecured Creditors