UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                          Chapter 11
Archdiocese of Milwaukee,                              Case No. 11-20059-svk
    Debtor.

**MEMORANDUM DECISION
ON DEBTOR'S OBJECTIONS TO CLAIMS 76 and 77
FILED BY CLAIMANTS A-12 AND A-13**

The Archdiocese of Milwaukee (the "Debtor") objected to Proofs of Claim number 76, 77, and 131 (the "Claims") filed by three individuals who will be referred to in this decision as Claimants A-12, A-13, and A-49.[1] The Debtor moved for summary judgment, arguing that the Claims should be disallowed as time-barred under Wisconsin's statute of limitations. The summary judgment motion was fully briefed, and the Court heard oral argument on the motion on February 9, 2012. After consideration of the written submissions and the argument of counsel, the Court issued an oral ruling at the hearing, which is memorialized by this decision. For the reasons stated below, the Court grants in part and denies in part the Debtor's Motion for Summary Judgment.

**I.    BACKGROUND**

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 4, 2011. Claimants A-12 and A-13 filed Claims 76 and 77, under seal, on September 6, 2011, alleging that Father Franklyn Becker and Choir Director Robert Schaefer, respectively, sexually abused

---

[1] The Claimants will not be identified by name pursuant to the Order Authorizing Special Confidentiality Procedures to Protect Abuse Survivors. (Order, Docket No. 327). In a separate Memorandum Decision, the Court disallowed Claim 131 filed by Claimant A-49 based on a pre-petition settlement agreement between Claimant A-49 and the Debtor, in which Claimant A-49 released all claims against the Debtor. Because Claimant A-49's Claim has been disallowed, this decision will focus on the Claims filed by Claimants A-12 and A-13, but the statute of limitations analysis would apply equally to the Claim filed by Claimant A-49.

them. On December 20, 2011, the Debtor filed Objections to the Claims, urging disallowance under 11 U.S.C. § 502(b)(1) because the Claims are "unenforceable against the debtor . . . under any agreement or applicable law."[2] In its Motion for Summary Judgment, the Debtor argued that Wis. Stat. § 893.54(1) bars the Claimants' negligence based claims, and that Wis. Stat. § 893.93(1)(b) bars the Claimants' fraud based claims. With respect to the negligence claims, the Debtor maintains that the three-year statute of limitations began to run on the later of the last date of abuse – during 1974 for Claimant A-12 and 1982 for Claimant A-13 – or the date when each Claimant reached 18 years old. Regarding the fraud claims, the Debtor contends that the six-year statute of limitations started no later than July 8, 2004, when the Debtor published a list of abusive priests on its website and disseminated this list via local media. As the Debtor's argument goes, six years from July 8, 2004 is July 8, 2010, and thus, by January 4, 2011 when the Debtor filed bankruptcy, the statute of limitations had expired.

In response, the Claimants filed Affidavits stating that they did not discover that the Debtor was the cause of their injuries until 2009 at the earliest, and argued that the issue of when they reasonably should have discovered the Debtor's role in their injury is not a question that should be decided on summary judgment.

## II. JURISDICTION

Allowance of proofs of claim falls within the core jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334 and 157(b)(2)(B). Unlike the entry of a final order on a State law counterclaim, allowance of claims was not deemed unconstitutional in *Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011). In *Stern,* the Supreme Court reaffirmed that bankruptcy courts have authority to restructure the debtor-creditor relationship and determine "creditors' hierarchically ordered claims to a pro rata share of

---

[2] On December 22, 2011, the Debtor amended its Objection to Claim A-13 and limited the Objection to the issue of the statute of limitations. The Debtor reserved the right to renew its Objection that Claimant A-13's Claim was directed at a non-debtor entity and that the Debtor is not liable for the acts of an employee of a separately incorporated, non-debtor entity.

the bankruptcy res." *Id.* Moreover, at the February 9, 2012 hearing, counsel for the Claimants, the Debtor, and the Creditors' Committee all consented to this Court's entry of a final order on the Debtor's Motion for Summary Judgment. Accordingly, this Court has authority to enter a final order on the Debtor's Claim Objections.[3]

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is governed by Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 56 of the Federal Rules of Civil Procedure, and should be granted if the Debtor can establish that there is no genuine issue of material fact and that the Debtor is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are facts which "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When analyzing a summary judgment motion similar to the one here, the Seventh Circuit Court of Appeals explained: "[I]n the context of a summary judgment based on the statute of limitations, we must find (1) that the statute of limitations has run and (2) there exists no genuine issue of material fact regarding the time at which plaintiff's action accrued." *Kuemmerlein v. Board of Educ.*, 894 F.2d 257, 261 (7th Cir. 1990) (citing *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir. 1984)).

---

[3] Under 28 U.S.C. § 157(b)(5), personal injury tort claims shall be tried in the district court. However, in *Stern v. Marshall*, the Supreme Court confirmed that this provision is waivable. *Stern*, 131 S. Ct. at 2608. Furthermore, an objection to the legal validity of a personal injury tort claim, such as the Objections made here, does not fall within the personal injury exception to the core jurisdiction of the Bankruptcy Court. *In re UAL Corp.*, 310 B.R. 373 (Bankr. N.D. Ill. 2004).

### B. The Claims for Negligent Failure to Warn are "Derivative" and Barred by the Statute of Limitations.

The Claimants frame their negligence-based claims as "negligent failure to warn," as recognized in *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906. *Gritzner* involved a lawsuit brought by the parents of a 4-year old girl whose 10-year old neighbor had sexually assaulted her. The parents sued an adult who knew of the older child's history of inappropriate sexual conduct with other children and yet allowed the 4-year old to play unsupervised with the 10-year old in the adult's home. Relying on *Kelli T-G v. Charland*, 198 Wis. 2d 123, 130, 542 N.W.2d 175 (Ct. App. 1995), the trial court dismissed the "negligent failure to warn" claim against the adult on public policy grounds, finding that "allowance of recovery would enter a field that has no sensible or just stopping point." The Wisconsin Court of Appeals and Wisconsin Supreme Court affirmed this decision. The Supreme Court acknowledged that courts have grappled with:

> [w]hether and under what conditions individuals may be held liable for failing to warn other individuals about the sexually abusive propensities of third parties. We would not foreclose the possibility that under different circumstances a plaintiff could recover based on negligent failure to warn about a known risk of sexual abuse. We would merely hold that under the circumstances of this case, liability for failure to warn is barred by public policy.

*Gritzner*, 2000 WI 68, ¶ 43, 235 Wis. 2d 781, 611 N.W.2d 906. The lawsuit in *Gritzner* was filed well within the applicable statute of limitations, and neither the Court of Appeals nor the Supreme Court addressed the timeliness of a negligent failure to warn claim filed decades after the alleged abuse.

In contrast, the Wisconsin Supreme Court directly confronted this issue in *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶ 13, 303 Wis. 2d 34, 734 N.W.2d 827. *John Doe 1* involved lawsuits filed in 2005 contending that the Archdiocese negligently retained and failed to supervise Father Siegfried Widera, who had been charged and convicted of sexually molesting a child. Two of the plaintiffs alleged that with full knowledge of Widera's conviction, the Archdiocese transferred Widera

4

to another parish, where Widera sexually abused them between 1973 and 1976. A third plaintiff, Charles Linneman, claimed that Father Franklyn Becker abused him in 1982, when Linneman was 12 years old. Similar to the other plaintiffs, Linneman alleged that the Archdiocese knew that Becker had a history of sexually abusing children before Becker abused him. In *John Doe 1*, the courts considered the three plaintiffs' claims against the Archdiocese for negligent supervision and fraud.

The trial court dismissed the complaints, concluding that the applicable statute of limitations barred their claims. The Court of Appeals affirmed in an unpublished decision, and the Wisconsin Supreme Court also affirmed as to the statute of limitations for negligence. The Supreme Court concluded that the negligent failure to supervise claims were "derivative" of the original abuse claims. Therefore, the negligent supervision claims against the Archdiocese accrued at the same time as the claims against the priests, and the same statute of limitations governed them. In its analysis, the Supreme Court relied on two earlier cases involving the Archdiocese: *John BBB Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997), and *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995). The court in *John BBB Do*e summarized:

> Plaintiffs' derivative causes of action against the Archdiocese and the churches accrued at the same time that the underlying intentional tort claims accrued, and similarly would be barred by the statute of limitations. *See Pritzlaff*, 194 Wis. 2d at 312 (statute of limitations period for actions against the Archdiocese begins on same date the cause of action accrued against the individual priest defendant). Finally, without deciding whether Wis. Stat. § 48.981 permits a civil cause of action for failure to report child abuse, such claims by plaintiffs T.C., J.J., A.C., Susan Smith, and John Brown here are merely derivative of the underlying intentional tort claims, and are likewise untimely. Therefore, we conclude that in each case, the respective circuit courts properly held that the claims of each plaintiff are barred by statutes of limitations.

*John BBB Doe*, 211 Wis. 2d at 366, 565 N.W.2d at 115. The *John Doe 1* court conducted a more thorough examination of derivative claims and defined a derivative claim as one "'that derives from, grows out of, or results from an earlier or fundamental state or condition.'" *John Doe 1*, 2007 WI 95, ¶ 24 n. 11, 303 Wis. 2d 34, 734 N.W.2d 827 (quoting Webster's Third New International Dictionary

Unabridged 608 (1961 ed.)).  Broadly portraying the typical derivative claim as one based on an "employee's wrongful act that causes injury to another, which wrongful act is alleged to have been caused by the employer's negligence," the court held that a claim against an employer for negligent supervision of an employee is a derivative claim.  *Id.*  Although the *John Doe 1* court's analysis was more extensive and targeted directly at the Archdiocese as opposed to individual priests, the result echoed that in *John BBB Doe* and *Pritzlaff*:  the statute of limitations barred the negligence claims against the Archdiocese.

The Claimants here attempt to distinguish *John Doe 1* because that case involved a claim for negligent failure to supervise, and this case involves a claim for negligent failure to warn.  However, they concede that no Wisconsin court has recognized the distinction.  In fact, *John BBB Doe* called a claim for failure to report child abuse "derivative of the underlying intentional tort claims."  *John BBB Doe*, 211 Wis. 2d at 366, 565 N.W.2d at 115.  Moreover, conceptually a negligent failure to warn claim fits squarely within the broad *John Doe 1* definition – a claim based on an employee's wrongful act (priest abuse) allegedly caused by an employer's negligence (failing to warn about the abusive priest).

The Claimants suggest that by accepting review of *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, 313 Wis. 2d 294, 752 N.W.2d 862, the Wisconsin Supreme Court signaled an inclination to revisit the statute of limitations for derivative negligence claims.  In *Hornback*, relying on *John BBB Doe* and *Pritzlaff*, the Court of Appeals in an unpublished opinion dismissed a failure to warn claim on statute of limitations grounds.  *Hornback v. Archdiocese of Milwaukee*, 2007 WI App 1, 298 Wis. 2d 248, 726 N.W.2d 357.  On appeal, with one Justice not participating, the Wisconsin Supreme Court was evenly divided over whether to affirm or reverse the decision; as a result, the Court of Appeals' decision on the statute of limitations was affirmed without any analysis by the higher court.  *Hornback*, 2008 WI 98, ¶ 5, 313 Wis. 2d 294, 752 N.W.2d 862.

In the portion of the *Hornback* decision that all participating Supreme Court Justices affirmed, the court dismissed the failure to warn claim against the Diocese of Madison. The court refused to extend Wisconsin law to the type of failure to warn claim that the plaintiffs suggested. The court stated that even if a viable negligence claim had been made, public policy grounds prohibited any recovery because allowing it would send the Court down a slippery slope with no sensible or just stopping point. *Id.* ¶ 64, 313 Wis. 2d 294, 752 N.W.2d 862. Given this analysis, contrary to the Claimants' assertion, *Hornback* actually supports the Debtor's position.

This Court's research uncovered no authority in any jurisdiction establishing a different statute of limitations for a negligent failure to warn claim as opposed to a negligent failure to supervise claim. The Claimants argue that in evaluating a failure to warn claim, the focus is on the potential victims that the Debtor failed to warn, rather than on the Debtor's failure to supervise abusive priests. However, in both claims, the duty is owed to the same plaintiffs (those injured by the abusive priests), and the underlying conduct is the same (the abuse committed by the priests). That underlying conduct formed the basis of a derivative claim in *John Doe 1*, and *John Doe 1* relied on *John BBB Doe*, in which a claim for failure to report child abuse was denominated "derivative." Accordingly, in the absence of any conflicting authority, this Court concludes that the Claimants' negligent failure to warn claims are derivative of and accrued at the same time as the original abuse claims, and thus share the same statute of limitations.

The statute of limitations for the intentional torts committed by Franklyn Becker and Robert Schaefer against Claimants A-12 and A-13 expired long before the Debtor's Chapter 11 bankruptcy petition. Therefore, to the extent the Claims filed by Claimants A-12 and A-13 are based on the Debtor's negligent failure to warn them about Becker and Schaefer, the Claims should be disallowed as a matter of law.

### C. When the Claimants Discovered or Should Have Discovered Their Fraud Claims is a Question of Fact for Trial.

*John Doe 1* recognized that a claim for an employer's negligent supervision is different than a claim for an employer's fraud, which is not a derivative claim.[4] "[F]raud claims are not derivative claims, but rather, intentional torts where the wrongful act is the Archdiocese's fraudulent representation that it did not know of the priests' histories of sexually molesting children and that it did not know the priests were dangerous to children. Fraud claims, if proven, provide a separate cause of the plaintiffs' injuries." *John Doe 1*, 2007 WI 95, ¶ 50, 303 Wis. 2d 34, 734 N.W.2d 827. The statute of limitations for fraud is six years from when the claim accrues. Under the discovery rule, the claim is not deemed to accrue until the aggrieved party's discovery of the facts constituting the fraud. Wis. Stat. § 893.93(1)(b). In *John Doe 1*, the Wisconsin Supreme Court stated that the statute of limitations starts to run "[w]hen the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry." *Id.* ¶ 51, 303 Wis. 2d 34, 734 N.W.2d 827 (quoting *Koehler v. Haechler*, 27 Wis. 2d 275, 278, 133 N.W.2d 730 (1965)).

The *John Doe 1* court addressed the discovery rule as applied in *Stroh Die Casting Co. v. Monsanto Co.*, 177 Wis. 2d 91, 502 N.W.2d 132 (Ct. App. 1993). In that case, Stroh brought a products liability claim against Monsanto, alleging that Monsanto sold PCB-contaminated hydraulic fluid to Stroh. Monsanto moved for summary judgment and argued that the statute of limitations had run. The Wisconsin Court of Appeals first noted that the date of discovery of fraud generally is a question of fact for the jury. However, the court granted Monsanto's summary judgment motion, observing that a 1977 Wisconsin environmental regulation required Stroh to incur substantial expense for PCB testing and incineration. Moreover, the regulation alerted Stroh to the pervasiveness of PCB-containing products,

---

[4] The court also confirmed that *John BBB Doe* did not address the statute of limitations for fraud. *John Doe 1*, 2007 WI 95, ¶ 49 n. 14, 303 Wis. 2d 34, 734 N.W.2d 827.

and the court noted a "tremendous public outcry" about PCBs throughout the mid-1970s. Given all of this information, the Court of Appeals concluded that as of September 1977 (seven years before Stroh sued Monsanto), Stroh should have become suspicious of Monsanto's representations concerning the hydraulic fluid, and that reasonable diligence should have caused Stroh to begin an investigation that would have uncovered Monsanto's alleged fraud. In *John Doe 1*, the Archdiocese urged the court to reach the same result, but the Supreme Court rejected the analogy:

> *Stroh* does not provide sufficient support to cause us to dismiss the fraud claims for at least three reasons. First, Stroh was decided after motions for summary judgment and a full trial for factual development. In contrast, the case now before us presents as a motion to dismiss where the only facts developed are those stated in the complaints or the reasonable inferences that flow from facts pled. Second, Stroh's failure to comply with federal regulations in regard to PCB disposal was a cause of its injuries. By contrast, none of the children who was assaulted by Widera and Becker did anything to cause their own injuries. Third, reasoning about the investigation that reasonably may be required in a business context is not directly transferable to a relationship that is based on trust, particularly when the trust relationship arises in a religious context such as that of priest and parishioner.

*John Doe 1*, 2007 WI 95, ¶ 55, 303 Wis. 2d 34, 734 N.W.2d 827 (internal citations omitted). Like *Stroh,* many of the cases applying the fraud discovery rule involve business people, with courts often describing the plaintiff's sophistication and detailing the amount and nature of representations the plaintiff received from the defendant. For example, *Milwaukee Western Bank v. Lienemann*, 15 Wis. 2d 61, 112 N.W.2d 190 (1961), concerned a bank's claim that a former bank officer committed fraud when he received stock in a company in exchange for arranging a loan for the company from the bank. Testimony was replete that various officers of the bank were told of the former officer's involvement with the company, and the court concluded that the bank was on notice of the potential fraud well before the suit was filed. Similarly, in *Hinkson v. Sauthoff*, 272 Wis. 33, 74 N.W.2d 620 (1956), the plaintiff claimed that he was defrauded by the sale of corporate stock from his father's estate; his mother allegedly repeatedly told him that she held only a life estate in the stock. However, the probate court

9

approved the stock sale, and the plaintiff was the director, president, and manager of the corporation at the time of the sale. In dismissing the case as time-barred, the Court emphasized that the plaintiff was a "competent businessman" who was professing ignorance of facts in the probate court file. *Id.* at 40-41, 74 N.W.2d at 623-24.

In 1884, the Wisconsin Supreme Court described the discovery rule this way:

> Of course, "the facts constituting the fraud" . . . are such facts as are unknown to such aggrieved party, but known, concealed, and kept secret by the party committing the fraud. While such facts are concealed from and unknown to the aggrieved party, the statute will not run against her unless she is chargeable with notice of such facts. When the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry, it is the duty of such party to make the inquiry, and if he fails to do so within a reasonable time he is, nevertheless, chargeable with notice of all facts to which such inquiry might have led. . . . Of course, no person is bound to commence an action on mere suspicion or rumor. The discovery, or the information which, upon diligent inquiry, would lead to the discovery, of facts sufficient to set the statute of limitations in motion, must be such facts as would impress a reasonable person with the belief that the transaction was, in fact, fraudulent.

*O'Dell v. Burnham*, 61 Wis. 562, 569-70, 21 N.W. 635, 639 (1884). In *O'Dell*, *Hinkson,* and *Lienemann,* the courts focused on the information "brought home" to the plaintiffs and determined whether that information was sufficient to start the statute of limitations running. The Debtor urges the Court to apply an "objective test" to determine the date fraud is discovered, but has not cited any case adopting that specific moniker. In emphasizing the information brought home to the aggrieved party and focusing on the sophistication of that party in determining whether the information is sufficient to require an inquiry, Wisconsin courts apply a subjective test.

In this case, the Debtor argues that the Claimants should have investigated the Debtor's alleged fraud no later than July 9, 2004 – the date when the Debtor published a list of 43 Archdiocesan priests who were the subject of at least one substantiated claim of sexual abuse of a child. Father Franklyn Becker, who abused Claimant A-12, is on the list. In addition to the publication of the list, according to

10

the Debtor, the alleged fraud was well publicized in news articles by July 2004. The Debtor attached a sampling of the news articles to its Affidavit in Support of Summary Judgment.

The Claimants respond with their own Affidavits stating that they neither saw the list of 43 priests nor knew about the publication of the list until after the Debtor filed its bankruptcy petition. Claimant A-12 attests that he moved to Minnesota in 1993, did not subscribe to the Milwaukee newspapers, and did not suspect that the Debtor knew that Franklyn Becker was a child abuser until approximately the summer of 2009. Attached to Claimant A-12's Proof of Claim is an exchange of e-mails from April 2010 establishing that Claimant A-12 did not know Franklyn Becker's status at that time. In response to his e-mail asking about Becker's status, the Debtor's representative replied: "[Becker] was laicized at least two years ago." The e-mails corroborate Claimant A-12's representation that he did not see the list. And Robert Schaefer, who allegedly abused Claimant A-13, is nowhere to be found on the list.

After reviewing and considering the submissions and arguments of the parties, the Court concludes that there is a disputed issue of material fact about whether the evidence here put the Claimants on notice of the Debtor's alleged fraud sufficient to start the statute of limitations clock. The Court notes that the Debtor's list contained only the names of the 43 priests and whether they were living and functioning as priests. For example, the entry for Franklyn Becker, who allegedly abused Claimant A-12, merely states: "Franklyn W. Becker, fully restricted from priestly ministry." The list fails to indicate the number of substantiated reports of abuse, when those reports were made, and what, if anything, the Debtor did with that information to prevent Becker from abusing other children. Robert Schaefer, who allegedly abused Claimant A-13, is not on the list at all, and the Debtor's attorney conceded at the hearing that the case for publication of the list as the operative date for the statute of

limitations is weaker for Claimant A-13.  Moreover, Claimants A-12 and A-13 filed Affidavits stating that they did not see the list when it was published.

Publicity about priest abuse alone may not be sufficient to require the Claimants to make an inquiry.  *See John Doe 1*, *supra* (distinguishing *Stroh*'s publicity factor in the discovery rule as occurring in a business context); *Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 685 (Minn. Ct. App. 2010) ("While [publicity about clergy sex abuse] might suggest that appellants should have recognized the possibility of a fraud claim in 1984, it merely raises a factual issue as to which reasonable minds could differ.").  In describing the information that will suffice to require an investigation and start the statute of limitations, Wisconsin cases consistently refer to information "brought home" to the plaintiffs.  The Affidavits of Claimants A-12 and A-13 establish at least a disputed fact that the Debtor's bare bones list of abusive priests combined with the attendant publicity did not "bring home" the requisite information to these Claimants.  *John Doe 1* distinguished *Stroh*, a case in which pervasive publicity played a role in triggering the statute of limitations, based on the sophistication of the plaintiff.  The Claimants here are not sophisticated business people claiming to have been tricked in a stock sale or commercial transaction; rather, they are the survivors of childhood sexual abuse by a priest and a choir director.  The fraud they assert is the alleged misrepresentation that a known child molester was not dangerous to children – an almost unthinkable misrepresentation considering the source is alleged to be the Church hierarchy itself.

Under these circumstances, the Court cannot conclude as a matter of law that the Claimants should have made a fraud inquiry in 2004.  Therefore, the Debtor's Motion for Summary Judgment should be denied to the extent the Claims are grounded in fraud.

## IV. CONCLUSION

For the foregoing reasons and those stated on the record at the February 9, 2012 hearing, the Debtor's Motion for Summary Judgment on Claimants A-12's and A-13's Proofs of Claim is granted as to the negligence claims and denied as to the fraud claims. This decision explains the Court's oral decision made on February 9, 2012 and constitutes the Court's findings of fact and conclusions of law. A separate Order will be entered.

Dated: February 24, 2012

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge