UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                Chapter 11
Archdiocese of Milwaukee,                                            Case No. 11-20059-svk
          Debtor.

**MEMORANDUM DECISION ON THE COMMITTEE'S MOTION FOR STANDING
ON ALTER EGO AND SUBSTANTIVE CONSOLIDATION CLAIMS**

On October 25, 2012, the Official Committee of Unsecured Creditors (the "Committee") filed a Motion to authorize the Committee to assert, litigate, and settle an Adversary Proceeding for a Declaratory Judgment that the Parishes within the Archdiocese of Milwaukee (the "Debtor") are alter egos of the Debtor and/or for substantive consolidation of the Parishes and the Debtor (the "Parish Assets Motion"). In addition to requesting authority to obtain a declaration that the Parishes are the alter egos of the Debtor and that property of the Parishes is property of the Debtor's bankruptcy estate, the Committee also seeks an Order for substantive consolidation of the Parishes and the Debtor. The Debtor responded to the Motion, vigorously disputing the relief requested, and the Committee replied. The Court held a hearing on December 6, 2012 and issues this Memorandum Decision constituting the Court's findings of fact and conclusions of law.

<u>Facts and Arguments of the Parties</u>

In support of its Motion, the Committee argues that the Parishes and the Debtor are part of a single enterprise, both financially and operationally, and that the Parishes are incapable of surviving as independent entities without the Debtor's financial and operational support. It notes an overlap in leadership between the Archbishop of the Debtor and each Parish. The Committee concedes that each of the 210 Parishes are separately incorporated with the Wisconsin Secretary

of State, but alleges that the Debtor and the Parishes do not adhere to typical corporate formalities and separateness.

In response, the Debtor explains that it is a non-stock corporation operating pursuant to Chapter 181 of the Wisconsin Statutes. The Parishes are separately incorporated and organized pursuant to Wis. Stat. § 187.19, and many of the allegedly questionable corporate governance practices actually are required by the statute. The Debtor alleges the following distinguishing characteristics between the Debtor and the separately incorporated Parishes:

> The Parish Corporations located within the [Debtor] are separate civil corporations. Other than a few Parish Corporations which are wholly-owned by religious orders, the Parish Corporations are all organized and operate pursuant to Wis. Stat. § 187.19. In Wisconsin, parish corporations have been separately incorporated since 1883 (Wis. Stat. § 187.19 is based on Chapter '37 of the Laws of Wisconsin (1883), and many of the Parish Corporations came into existence in 1883, with the majority incorporated prior to 1930). In accordance with the Wisconsin Statutes, each Parish Corporation has a designated Board of Trustees as prescribed by statute. **Parish corporations own their own property, finance their own activities, manage their own assets and are responsible for their own corporate activities.**

(1/4/11 Marek Aff., Docket No. 6) (emphasis added).

The Debtor further alleges that it does not hold title to any property of the Parishes; that the Parishes always have been treated as separate corporate entities with separate financial obligations; that the Archbishop is not involved in the daily operations of the Parishes; and that the Parishes are not required to use the central accounting procedures.

The Debtor contends that the Committee's criticism of the operational, financial, and managerial aspects of the Debtor and the Parishes is misplaced, as Wisconsin law expressly requires overlap in leadership between the Debtor and each Parish. The Debtor admits that canon law requires the Debtor to provide some financial guidance to the Parishes, but contends

2

that this does not make the Parishes and the Debtor indistinguishable. The Debtor contends that the Parishes are not simply a sham used to accomplish an improper purpose.

The Debtor also argues that the Committee cannot state a colorable claim for substantive consolidation. It argues that the authority of the Court to substantively consolidate the assets of the Debtor with non-debtor entities is questionable, and even if the Court has authority, such an extraordinary remedy would be inappropriate when the Parishes are statutorily separate from the Debtor, and there is no commingling of funds.

In reply, the Committee contends that granting the Parish Assets Motion would not offend the Wisconsin statutory framework governing corporations because the alter ego doctrine is imposed only when one entity abuses its control over another entity to the detriment of others, and that the Debtor's control of the Parishes far exceeds the basic elements set forth in the Wisconsin Statutes. The Committee insists that it sufficiently pled a substantial overlap of management and the Debtor's restriction of the Parishes' control over property and finances. The Committee also argues that the Court has equitable authority to substantively consolidate the Debtor's case with non-debtors, and that the proposed Complaint alleges sufficient entanglement to support substantive consolidation.

## Analysis

Using the powers granted by Bankruptcy Code § 544, a bankruptcy trustee has the right to bring an alter ego claim under Wisconsin law. *In re Kaiser*, 791 F.2d 73 (7th Cir. 1986). Under § 1107 of the Bankruptcy Code, the Debtor, as debtor-in-possession, can exercise the trustee's powers. In this case, under the exception to the rules vesting the trustee or debtor-in possession with authority to prosecute actions, the Committee seeks to assert the alter ego claim

3

derivatively on behalf of the Debtor. *See Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II)*, 432 F.3d 557, 560 (4th Cir. 2005).

The Committee is entitled to derivative standing if its claim is colorable and if the Debtor unjustifiably refused to pursue it. In the Seventh Circuit, if a debtor-in-possession, with its powers of a trustee, "unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain the permission of the bankruptcy court to bring the action in place of, and in the name of, the trustee." *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000).

A claim is colorable if it could survive a motion to dismiss. *Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 831, 855 (E.D. Wis. 2010); *see also PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.)*, 540 F.3d 892, 900 (8th Cir. 2008) ("[A] creditor's claims are colorable if they would survive a motion to dismiss."). The Court will accept all facts pleaded as true, and the claims will survive if they are plausible. *Fail-Safe LLC*, 744 F. Supp. 2d at 856 n.51. In accepting the facts alleged as true, the Court is not bound to accept as true legal conclusions couched as factual allegations, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the Court finds that the Committee does not state a colorable claim that would survive a motion to dismiss, it need not reach whether the Debtor's refusal to bring an action was unjustifiable.

An alter ego claim is an exception to the rule of limited corporate liability. In general, the corporate form – like the separate corporate status of the Debtor and the Parishes – is respected, and corporations are not liable for the debts of their shareholders or affiliates. In *In re Kaiser*, 791 F.2d at 75, Judge Posner explained: "The principle of limited liability, whereby a

4

corporation's creditors cannot reach the personal assets of the shareholders (the shareholders' liability is limited to their investment in the corporation), is important to our capitalist system. It enables people to invest in business without hazarding their entire wealth on the venture." He went on to discuss the exceptions, variously called "alter ego" or "piercing the corporate veil":

> A common situation in which limited liability is disregarded is where the shareholder has misrepresented his personal assets as corporate assets in order to get some advantage with creditors. Suppose a controlling shareholder . . . persuades a lender to extend credit on favorable terms to the shareholder's corporation by representing that the corporation has substantial net assets, but in fact it is a shell, and all the assets ostensibly owned by the corporation are actually owned by the shareholder. The corporation defaults, and when the lender tries to sue the shareholder to collect his loan -- for the corporation has no assets out of which to collect it -- he is met by the defense of limited liability. This is the paradigmatic case for rejecting the defense [of limited liability].

*Id.*

Judge Posner cited *Wiebke v. Richardson & Sons, Inc.*, 83 Wis. 2d 359, 265 N.W.2d 571 (1978), as an example of a case when the corporate form was disregarded. In that case, the court concluded that the corporation did not have an existence apart from its shareholder and that recognizing its separate existence would be unjust. The *Wiebke* court explained: "Richardson, the sole stockholder, ignored the corporate entity. His finances and those of the corporation were one and the same. He used the corporate checking account as his personal checking account. He seldom took wages. He did not make regular additions to the corporate account to repay the amounts he withdrew."

The Wisconsin Supreme Court had another opportunity to review the elements of an alter ego claim in *Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988):

> The "instrumentality" or "alter ego" doctrine requires proof of the following elements:
>
> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in

5

> respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . .

As suggested by the Committee, although usually employed to reach behind a corporate shell to seize the assets of a shareholder who controls a corporation, the alter ego doctrine can be applied in reverse to reach the assets of a controlled entity. It is appropriate to apply this doctrine in reverse "when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party." *Olen v. Phelps*, 200 Wis. 2d 155, 163, 546 N.W.2d 176 (Ct. App. 1996) (quotation and citation omitted). A court will apply the following factors to determine if a corporation is a sham: "failure to observe corporate formalities, non-payment of dividends, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, and the absence of corporate records." *Id*. (citing *United States v. Pisani*, 646 F.2d 83, 88 (3rd Cir. 1981)).

In *Consumer's Co-op*, the court found that "the respondent has failed to convince us that corporate formalities were so egregiously ignored, or that control so pervasively exercised, such as to constitute a situation where recognition of the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Consumer's Co-op*, 142 Wis. 2d at 488, 419 N.W.2d at 219 (citation and quotation omitted).

Similarly, in this case, the Committee has not stated a plausible claim of "complete domination" of the Debtor over the Parishes. Quite the opposite: the Debtor has attested that the

6

Parishes "own property, finance their own activities, manage their own assets and are responsible for their own corporate activities." (1/4/11 Marek Aff., Docket No. 6). The Committee has failed to state a plausible claim that the Debtor and Parishes failed to observe corporate formalities, that funds were siphoned, that officers or directors of the Parishes were non-functional, or that there was an absence of corporate records. Absolutely no facts were alleged to make plausible a claim that the Debtor and the Parishes "egregiously ignored" corporate formalities or that control was so "pervasively exercised" to apply the alter ego doctrine in this case. The Committee has not stated a colorable claim for the alter ego doctrine that would survive a motion to dismiss, and it is not entitled to derivative standing as a result.

The Committee has failed to state a colorable claim for substantive consolidation. The Bankruptcy Code does not expressly provide for substantive consolidation; it is an equitable doctrine that "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities." *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (internal citations and quotations omitted). Substantive consolidation is appropriate when "an individual or corporation completely dominates a group of affiliated entities, ignores corporate formalities and shuffles money between them as if the entities are mere departments of a larger operation or little more than 'corporate pockets.'" Seth D. Amera and Alan Kolod, *Substantive Consolidation: Getting Back to Basics*, 14 AM. BANKR. INST. L. REV. 1, 37 (2006). Resort to substantive consolidation should be used "sparingly." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 767 (9th Cir. 2000).

Two tests have emerged throughout the circuits for determining whether substantive consolidation is appropriate. First:

> Before ordering consolidation, a court must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on

7

> objecting parties. . . . The proponent must show not only a substantial identity between the entities to be consolidated, but also that consolidation is necessary to avoid some harm or to realize some benefit. . . . At this point, a creditor may object on the grounds that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation. . . . If a creditor makes such a showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation "heavily" outweigh the harm.

*Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.)*, 810 F.2d 270, 276 (D.C. Cir. 1987).

Second, the court in *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988) (citations omitted), focused on "two critical factors": "(i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,' or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. . . ." The Committee has not stated a plausible claim that either of the *Augie/Restivo Baking* factors apply, while it is apparent that the Parishes and their creditors would suffer immense harm if they were forced to participate in this bankruptcy case. Moreover, the Court cannot ignore the outrageous expense and extreme delay that would no doubt accompany substantive consolidation in this case.

The Debtor argues that the Court lacks authority to substantively consolidate the assets and liabilities of the Debtor with the non-debtor Parishes. Even assuming, arguendo, that the Court has the authority, this is not a case for the extraordinary remedy of substantive consolidation of a debtor with non-debtor entities. The Committee failed to show facts suggesting that consolidation of the Debtor with 210 non-debtor entities would offset the significant harm caused to these non-debtor entities; it has not stated a plausible claim of a substantial identity of the parties to be consolidated; it has not demonstrated a sufficient entanglement of affairs warranting consolidation; and it has not plausibly stated that creditors did not rely on the separate identity between the Debtor and the Parishes in extending credit. Given

8

the prejudice to the non-debtor Parishes and their creditors that would result from substantive consolidation, it would be wholly improper in this case to consolidate the Debtor with the non-debtor Parishes. The Committee is not granted derivative standing to pursue a substantive consolidation claim.

## Conclusion

For these reasons, the Committee's Parish Assets Motion should be denied. A separate Order will be entered consistent with this decision.

Dated: December 7, 2012

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge