**Archdiocese of Milwaukee**

**Case No. 11-20059**

**Supplemental Plan Documents to the Chapter 11 Plan of Reorganization Dated February 12, 2014 Proposed by the Archdiocese of Milwaukee**

1.      Insurance Litigation Trust Agreement

2.      Procedure for Nomination of the Insurance Litigation Trustee

3.      LMI Settlement Agreement with Signature Pages and Attachments

# INSURANCE LITIGATION TRUST AGREEMENT

This Insurance Litigation Trust Agreement ("Trust Agreement") is effective as of the Effective Date of the Plan of Reorganization (together with any and all amendments thereto, all exhibits and schedules thereto and all documents incorporated by reference therein, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, (collectively, the "Plan") in *In re Archdiocese of Milwaukee* (Bankr. E.D. Wis.), Case No. 11-20059 (SVK).

This Trust Agreement is entered into pursuant to the Plan.

## RECITALS

A.      On the Petition Date, the Archdiocese of Milwaukee (collectively, the "Archdiocese" or "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its property and has continued to operate and manage its businesses as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.      On [---------] [---], 2014, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"). Copies of the Plan and the Confirmation Order are attached hereto as **Exhibit A** and **Exhibit B,** respectively, and the Plan and the Confirmation Order are incorporated into this Trust Agreement by this reference.

C.      The Plan provides for the creation of the Insurance Litigation Trust (the "Trust") and the transfer and assignment to the Trust of the Insurance Litigation Trust Assets (the "Trust Assets").

D.      The Trust is established for the benefit of the Beneficiaries (as defined in Section 1.2.2 hereof) and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d).

E.      Pursuant to the Plan and the Confirmation Order, [---------] (the "Trustee") was duly appointed as a representative of the Estate pursuant to §§ 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

F.      The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Trustee shall administer and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation § 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service (the "IRS").

G.      The Trustee has reviewed the Claims filed in the Chapter 11 Case and has a list setting forth the holders of Claims filed and/or scheduled that are classified in Class 9.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the premises and the provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Debtor and the Trustee agree as follows:

WHD/10168859.4

## ARTICLE I: DEFINITIONS

1.1.     <u>Defined Terms.</u> Unless otherwise stated herein, capitalized terms used in this Trust Agreement shall have the meanings assigned to them in the Plan. Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

1.2.     <u>Additional Defined Terms.</u> As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

1.2.1.     "Trust Agreement" shall have the meaning set forth in the introductory paragraph hereof.

1.2.2.     "Beneficiary" means the holders of Class 9 Claims and Allowed Unknown Abuse Survivor Claims.

1.2.3.     "Reserves" means the reserves established by the Trustee pursuant to this Trust Agreement and the Plan.

## ARTICLE II: NAME OF THE TRUST

2.1.     The trust created by this Trust Agreement shall be known as the "Archdiocese of Milwaukee Insurance Litigation Trust" and referred to herein as the "<u>Trust</u>."

## ARTICLE III: APPOINTMENT AND ACCEPTANCE OF TRUSTEE

3.1.     [---] hereby accepts the trusteeship of the Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery of assets to the Trust, subject to the terms and conditions set forth in the Plan, the Confirmation Order and this Trust Agreement. The Trustee shall have all the rights, powers and duties set forth in the Plan and this Trust Agreement and available under applicable law for accomplishing the purposes of the Trust.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise, and in accordance with applicable law.  The Trustee shall have the authority to bind the Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## ARTICLE IV: DECLARATION AND ESTABLISHMENT OF THE TRUST

4.1.     Pursuant to the Plan and the Confirmation Order, the Trust is created and the Debtor irrevocably transfers, absolutely grants, assigns, conveys, sets over, and delivers to the Trustee, and at such times as is set forth in the Plan, all of its right, title and interest in and to the Trust Assets to be held in trust and for the uses and purposes stated herein and in the Plan.  The Trustee hereby agrees to accept and hold the Trust Assets in trust for the Beneficiaries subject to the terms of the Plan and this Trust Agreement and, on behalf of the Trust. The Trustee is hereby authorized to file with the governmental authorities any documents necessary or helpful to establish the Trust.

WHD/10168859.4

## ARTICLE V: CORPUS OF THE TRUST

5.1.     The assets of the trust (the "Trust Assets") shall include all property transferred to the Trust pursuant to the Plan or future orders of the Bankruptcy Court including:

5.1.1.     Three Million, Seven Hundred Fifteen Thousand, Three Hundred Ninety-Eight Dollars and Eighty-Three Cents ($3,715,398.83) in cash (the "Initial Cash Assets") from the LMI Settlement;

5.1.2.     One-half of the estimated $569,000 the Archdiocese expects to receive by filing a claim with the United Kingdom's Financial Services Compensation Scheme (but only to the extent of 50% of any recoveries actually received); and

5.1.3.     The right to pursue recoveries against any Non-Settling Insurers, except for any recoveries attributable to payment of defense costs recovered in the OneBeacon Adversary Proceeding or otherwise.

## ARTICLE VI: PURPOSE OF THE TRUST

6.1.     On the Effective Date, and subject to the terms of the Plan, the Trustee of the Trust will assume all of the rights and duties of the Trustee of the Trust contemplated by the Plan. Nothing contained in this Trust Agreement is intended to affect, diminish or impair the Claimants' rights under the Plan.

6.2.     The Trustee will assume responsibility for: (a) establishing the respective Reserves with respect to the Trust; (b) making payments to the holders of Class 9 Claims and Unknown Abuse Survivor Claims that become payable under the Plan and Trust Agreement; (c) receiving, collecting, liquidating, maintaining, and distributing the Trust Assets; and (d) fulfilling all other obligations under the Trust Agreement.  The Trust will be administered consistent with the liquidating purpose of the Trust, and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets (including the prosecution of litigation), or as otherwise provided in the Plan.

6.3.     This Trust Agreement sets forth the terms of the trust contemplated by the Plan. In the event of any inconsistency between the Plan and this Trust Agreement, the provisions of the Plan shall govern.

6.4.     The sole beneficiaries of the Trust are the Beneficiaries.  No other creditors of the Estate have any right, title or interest in the Trust Assets.

## ARTICLE VII: IRREVOCABILITY OF THE TRUST

7.1.     The Trust shall be irrevocable and shall not be subject to amendment except with approval of the Bankruptcy Court as expressly provided herein. The Reorganized Debtor shall not alter, amend, revoke, or terminate the Trust. The Reorganized Debtor shall have no power or authority to direct the Trustee to return any of the Trust Assets to the Reorganized Debtor.

**ARTICLE VIII: ALLOCATION OF TRUST ASSETS COMPRISED OF CASH**

8.1.     Procedure for Determining Amount of Litigation Reserve.

8.1.1.     The Trustee shall meet and confer with the holders of Class 9 Claims and the Unknown Abuse Survivor Representative regarding the allocation of the Initial Cash Assets between funds to prosecute the Insurance Litigation (the "Litigation Reserve"), distributions to holders of Class 9 Claims, and the Unknown Abuse Survivor Reserve.

8.1.2.     Within forty-five (45) days after entry of the Confirmation Order, the Trustee will notify the holders of Class 9 Claims and the Unknown Abuse Representative of the proposed allocation of funds between the Litigation Reserve, the distributions to holders of Class 9 Claims, and the Unknown Abuse Survivor Reserve (the "Allocation Proposal"). The Allocation Proposal must contain the following provisions:

(a)     A minimum of $250,000 of the Initial Cash Assets will be set aside for the Unknown Abuse Survivor Reserve, which amount may be reduced only with the consent of the Unknown Abuse Representative.

(b)     A minimum of five percent (5%) of all gross future recoveries must be set aside for the Unknown Abuse Survivor Reserve, which percentage may be reduced only with the consent of the Unknown Abuse Representative.

8.1.3.     The holders of Class 9 Claims and the Unknown Abuse Survivor Representative shall have fifteen (15) days after the mailing of the notification of the Allocation Proposal to return their votes on the Allocation Proposal. For purposes of voting on the Allocation Proposal, the Unknown Abuse Survivor Representative shall be entitled to ten (10) votes.

8.1.4.     The Allocation Proposal will be adopted by the Trustee if two-thirds (2/3) of the holders of Class 9 Claims and the Unknown Abuse Survivor Representative who vote, vote in favor of the Allocation Proposal, otherwise, the Trustee shall adopt the Default Allocation Protocol (as such term is defined below).

8.2.     Default Allocation Protocol.

8.2.1.     If at least two-thirds of those voting do not accept the Litigation Reserve Proposal, then the Trustee shall allocate the Initial Cash Assets and the future recoveries as follows (the "Default Allocation Protocol"):

(a)     $500,000 of the Initial Cash Assets and five percent (5%) of the gross amount of all future recoveries shall be set aside for the prosecution of the Insurance Litigation and administration of the Trust.

(b)     $250,000 of the Initial Cash Assets and five (5%) of the gross amount of all future recoveries shall be set aside for the Unknown Abuse Survivor Reserve.

(c)     The remaining amount of the Initial Cash Assets ($2,965,398.83), less the amount of Trust Assets spent pursuant to Section 8.3 below and ninety percent (90%) of the gross amount of all future recoveries shall be distributed in accordance with ARTICLE IX below.

8.3.    Expenditures Prior to Establishing the Allocation Protocol.  Notwithstanding Section 8.1 above, the Trustee shall be permitted to spend up to $150,000 prior to establishing the allocation protocol in accordance with Section 8.1 above in order to preserve or maintain any Trust Assets, including commencing or continuing the Insurance Litigation.

## ARTICLE IX: DISTRIBUTION OF TRUST ASSETS

9.1.    Procedure for Determining the Distribution Protocol.

9.1.1.    The Trustee shall meet and confer with the holders of Class 9 Claims and the Unknown Abuse Survivor Representative regarding the distribution to holders of Class 9 Claims and Allowed Unknown Abuse Survivor Claims.

9.1.2.    Within forty-five days (45) days after the entry of the Confirmation Order, the Trustee will notify the holders of Class 9 Claims and the Unknown Abuse Survivor Representation of the proposed distribution protocol (the "Distribution Protocol Proposal"), otherwise the Trustee shall adopt the Default Distribution Protocol (as such term is defined below).  The Distribution Protocol Proposal must contain the following provisions:

(a)     If the Distribution Protocol Proposal is anything other than a per capita distribution, all holders of Class 9 Claims will be permitted a reasonable time after notice, not to exceed forty-five (45) days, to amend or supplement their claims.

(b)     No individual holder of a Class 9 Claims will be allocated or will receive more than two (2) times the minimum amount paid to a holder of an Allowed Class 9 Claim.

(c)     Counsel fees and expenses (for Claimants represented by counsel) will be paid from individual recoveries and may not be paid from the gross amount available for distribution.  Under no circumstances will the amount paid to unrepresented individuals be reduced to pay or account for the fees and expenses incurred by counsel for represented Claimants.

(d)     The distribution protocol will apply to the distribution of all future recoveries.

(e)     The distribution of the Initial Cash Assets (less amounts set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) must take place within one hundred thirty-five (135) days after the Effective Date.  The distribution of any future recoveries (less amounts set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) must occur within sixty (60) days of the Trustee's receipt of the funds; **provided, however that**, if there is a dispute regarding the funds, the Trustee may not distribute the funds until the dispute is resolved in a final non-appealable order, settlement, or otherwise.  Any funds subject to such a

dispute must be distributed within sixty (60) days after the resolution of the dispute in a final non-appealable order, settlement, or otherwise.

9.1.3.   The holders of Class 9 Claims and the Unknown Abuse Survivor Representative shall have fifteen (15) days after the mailing of the notification of the Distribution Protocol Proposal to return their votes on the Distribution Protocol Proposal.  For purposes of voting on the Distribution Protocol Proposal, the Unknown Abuse Survivor Representative shall be entitled to ten (10) votes.

9.1.4.   The Distribution Protocol Proposal will be adopted by the Trustee if two-thirds (2/3) of the holders of Class 9 Claims and the Unknown Abuse Survivor Representative who vote, vote in favor of the Distribution Protocol Proposal, otherwise, the Trustee shall adopt the Default Distribution Protocol (as such term is defined below).

9.2.   <u>Default Distribution Protocol</u>.

9.2.1.   If at least two-thirds (2/3) of those voting do not accept the Distributional Protocol Proposal, then the Trustee shall adopt the following distribution protocol (the "<u>Default Distribution Protocol</u>"):

(a)   The Initial Cash Assets (less any amount set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) and any future recoveries (less amounts set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) shall be distributed per capita to the holders of Class 9 Claims and Allowed Unknown Abuse Survivor Claims.

(b)   Counsel fees and expenses (for Claimants represented by Counsel) will be paid from individual recoveries and may not be paid from the gross amount available for distribution.  Under no circumstances will the amount paid to unrepresented individuals be reduced to pay or account for the fees and expenses incurred by counsel for represented Claimants.

(c)   The Default Distribution Protocol will apply to the distribution of all future recoveries.

(d)   The distribution of the Initial Cash Assets (less amounts set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) must take place within one hundred thirty-five (135) days after the entry of the Confirmation Order.  The distribution of any future recoveries (less amounts set aside for the Litigation Reserve and the Unknown Abuse Survivor Reserve) must occur within sixty (60) days of the Trustee's receipt of the funds; provided, however that, if there is a dispute regarding the funds, the Trustee may not distribute the funds until the dispute is resolved in a final non-appealable order, settlement, or otherwise. Any funds subject to such a dispute must be distributed within sixty (60) days after the resolution of the dispute in a final non-appealable order, settlement, or otherwise.

9.3.   <u>Undeliverable Distributions</u>. If payment or distribution is returned for lack of a current address for the holder or otherwise, the Trustee shall File with the Bankruptcy Court if the Chapter 11 Case is still open, and, if not, mail to the Reorganized Debtor, the last known

name and address of the holder and the reason for its inability to make payment. If, after the passage of ninety (90) days, the payment or distribution still cannot be made, the Trustee may make the payment to the Therapy Fund. All Allowed Claims paid as provided in this Section shall be deemed satisfied and released, with no recourse to the Trustee, or property of the Trustee, upon payment to the Therapy Fund, to the same extent as if payment or distribution had been made to the holder of the Claim. No payment or distribution shall be deemed undeliverable solely because the payee is deceased; rather, in the case of a deceased payee, the payment shall be made to the estate of the deceased payee.

## ARTICLE X: DISSOLUTION AND TERMINATION OF THE TRUST

10.1.    The Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement. The Trust shall terminate no later than the later of: (i) twelve (12) months after the termination of the Insurance Litigation, whether such termination is by a final order by a court of last resort or a settlement between the parties to the Insurance Litigation or (ii) the seventh (7th) anniversary of the Effective Date.

10.2.    After the dissolution of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act in such capacity until its duties hereunder have been fully performed. The Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee until distribution of all the Trust's assets. At the Trustee's discretion, all of such records and documents may be destroyed at any time following the later of (a) the third anniversary of the final distribution of the Trust's assets, and (b) the date until which the Trustee is required by applicable law to retain such records and documents; provided that notwithstanding the foregoing the Trustee shall not destroy or discard any records or documents relating to the Trust without giving the Service Parties, the Reorganized Debtor, and the Unknown Abuse Survivor Representative prior written notice thereof and opportunity to object. Upon request, the Trustee shall deliver the books, records, and files to the Reorganized Debtor rather than destroying such books, records, and files. Notwithstanding the foregoing, any documents received from the Reorganized Debtor shall be returned to the Reorganized Debtor.

10.3.    Upon termination of the Trust, and provided that all fees and expenses of the Trust have been paid or provided for in full, the Trustee will deliver all funds and other investments remaining in the Trust (including amounts in the Litigation Reserve and the Unknown Abuse Survivor Reserve), if any, including any investment earnings thereon, to the holders of Class 9 Claims and Unknown Abuse Survivor Claims in accordance with the distribution protocol adopted pursuant to ARTICLE IX above; **provided, however, that** if the cumulative amount remaining, after payment of all fees and expenses of the Trust is less than $3,000, the Trustee may distribute the funds to the Therapy Fund.

## ARTICLE XI: POWERS OF TRUSTEE

11.1.    The Trustee is vested with all powers described in the Plan and necessary or appropriate to effectuate the purpose of the Trust and to carry out the duties of the Trustee as set forth in the Plan. These powers include, but are not limited to, the following:

11.1.1. Prosecute, collect, comprise and settle the Insurance Litigation for any amount that the Insurance Litigation Trustee, believes in the Trustee's sole discretion, is reasonable.

11.1.2. Open and maintain bank accounts in the name of the Trust, draw checks and drafts thereon on the sole signature of the Insurance Litigation Trustee, and terminate such accounts as the Insurance Litigation Trustee deems appropriate.

11.1.3. Sell or liquidate any Trust Asset, without further approval of or application to the Bankruptcy Court.

11.1.4. Execute any documents, file any pleadings, and take any other actions related to, or in connection with, the liquidation of the Trust Assets and the exercise of the Trustee's powers granted herein, including the exercise of the Debtor's or the Committee's respective rights to conduct discovery and oral examination of any party under Federal Rule of Bankruptcy Procedure 2004.

11.1.5. Hold legal title to any and all rights of the beneficiaries in or arising from the Trust Assets, including the right to vote any Claim or Interest in an unrelated case under the Bankruptcy Code and to receive any distribution thereon;

11.1.6. Protect and enforce the rights to the Trust Assets by any method he or she deems appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity.

11.1.7. Deliver distributions as may be authorized by the Plan.

11.1.8. File, if necessary, any and all tax returns with respect to the Trust; pay taxes, if any, properly payable by the Trust; and make distributions to the beneficiaries net of such taxes in accordance with the requirements hereof.

11.1.9. Request an expedited determination of taxes of the Trust under § 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust.

11.1.10. Make all necessary filings in accordance with any applicable law, statute, or regulation.

11.1.11. Determine and satisfy any and all liabilities created, incurred or assumed by the Trust.

11.1.12. Invest moneys received by the Trust or otherwise held by the Trust in accordance with 11 U.S.C. § 345.

11.1.13. In the event that the Trustee determines that the Beneficiaries or the Trust may, will, or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences.

11.1.14. Utilize the Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Trustee.

### 11.1.15. Retention of Professionals.

The Trust may retain professionals, including counsel, accountants, financial advisors, auditors, and other agents on behalf of the Trust as necessary or desirable to carry out the obligations of the Trustee hereunder and under the Trust Agreement. More specifically, provided such representation is permitted by applicable law, the Trust may retain counsel or financial advisors in any matter related to administration of the Plan, including counsel that has acted as counsel for the Debtor or the Committee in the Chapter 11 Case.

### 11.1.16. Litigation or Other Proceedings.

(a) The Trustee shall be the successor-in-interest to the Debtor, the Estate and the Committee with respect to any Claim and/or Defense that is a Trust Asset until the Trust disposes of them. All such Claims and/or Defenses, including the right to subordinate Claims under § 510 of the Bankruptcy Code, shall be retained and pursued and enforced by the Trustee pursuant to § 1123(b)(3)(B) of the Bankruptcy Code and the terms of the Plan.

(b) The Trustee shall have discretion to pursue or not to pursue any and all such Claims and/or Defenses, as it determines consistent with the purposes of the Trust, and shall have no liability for the outcome of its decision. With respect to any such Claim and/or Defense, the Trust and the Trustee shall be bound by, and shall give effect to, any release, exculpation, waiver, estoppel, or injunction provided by the Plan or the Confirmation Order.

11.1.17. The Trustee is empowered to comply with all requirements imposed by applicable law, rule, or regulation.

11.1.18. The Trustee may file a motion, with notice to the Service Parties, for a modification of the provisions of this Trust Agreement if the Trustee determines that such modifications are necessary to conform to legal and/or administrative requirements and to the purposes of the Trust.

### 11.1.19. Trust Division.

(a) The Trustee is authorized to and shall segregate the monetary Trust Assets into separate accounts, funds or reserves, as required by the Plan, for ease of administration, or for any tax election or allocation. Any segregation shall be made according to the fair market value of the assets of the Trust at the time of segregation; the appreciation or depreciation of the property allocated to each account or fund, including cash, shall be fairly representative of the appreciation or depreciation to the date of each segregation of all property available for allocation; and the segregation shall otherwise be in accordance with applicable tax law. Nothing in this provision shall restrict the Trustee's authority to pool such accounts or funds for investment purposes or require separate bank accounts for such accounts or funds.

(b)     In addition to the Litigation Reserve and the Unknown Abuse Survivor Reserve, the Trustee may establish additional Reserve accounts as the Trustee determines are appropriate and may fund such additional reserve accounts pursuant to the Plan and the Trust Agreement.  If, at any time, the Trustee determines that any reserve is not reasonably likely to be adequate to satisfy purposes of the Reserve, then, the Trustee may increase the amount previously reserved.

11.2.   Limitations on the Trustee.

11.2.1.   Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)     guaranty any debt;

(b)     lend Trust Assets;

(c)     transfer Trust Assets to another trust with respect to which the Trustee serves as trustee; or

(d)     make any transfer or Distribution of Trust Assets, other than those authorized under the Plan, the Confirmation Order or this Trust Agreement.

11.2.2.   Notwithstanding anything in this Trust Agreement to the contrary, the Trustee, acting in its capacity as Trustee, other than to the extent necessary to preserve the liquidation value of the Trust Assets, shall not and shall not be authorized to engage in any trade or business, and shall take such actions consistent with the orderly liquidation of the Trust Assets as are required by applicable law, and such actions permitted hereunder.  Notwithstanding any other authority granted herein, the Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Trust as a Trust within the meaning of Treasury Regulations § 301.7701-4(d) and in accordance with Rev. Proc. 94- 45, 1994-2 C.B. 684.

11.2.3.   The Trust shall not hold 50% or more of the stock (in either vote or value) of any Person that is treated as a corporation for federal income tax purposes, nor have any interest in an Person that is treated as a partnership for federal income tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including through foreclosure of security interests and execution of judgments, in order to preserve the value of the Trust Assets; provided, however, the Trust shall not hold more than 4.9% of the issued and outstanding securities of any public reporting company.

11.2.4.   The Trustee shall be responsible for only that property delivered to it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

11.3.   Insurance Settlement Trust Agreement.  The LMI Settlement Agreement is binding on the Trust and, to the extent of any inconsistencies between this Trust Agreement and LMI Settlement Agreement, the LMI Settlement Agreement will control.

11.3.1.   Perpetuities.  Nothing contained in this Trust Agreement shall extend the ultimate term of the Trust created hereunder or any portion thereof beyond the period limited by applicable law, nor shall any income from such Trust be accumulated beyond the period authorized for such accumulations by applicable law.  If the trust or any part thereof terminates by reason of this provision, the assets thereof shall be distributed pursuant to ARTICLE IXabove to the registry of the Bankruptcy Court.  No provision herein shall be construed as suspending the Trustee's power of alienation.

11.3.2.   Anti-Assignment Clause.  To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to claims of creditors of any beneficiary or others, nor to legal process, nor be voluntarily or involuntarily assigned, alienated or encumbered except as may be ordered by the Bankruptcy Court.

## ARTICLE XII: IMMUNITY AND INDEMNIFICATION OF TRUSTEE

12.1.    Neither the Trustee nor any of the Trustee's duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Trustee in good faith, other than acts or omissions resulting from the recklessness, willful misconduct, knowing and material violation of law, or fraud of the Trustee or the Trustee's designated agents or representatives. The Trustee may, in connection with the performance of the Trustee's functions, and in the Trustee's sole and absolute discretion, consult with the Trustee's attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall be under no obligation to consult with the Trustee's attorneys, accountants, financial advisors or agents, and its good faith determination to not do so shall not result in the imposition of liability on the Trustee, unless such determination is based on the Trustee's recklessness, willful misconduct, knowing and material violation of law, or fraud.

12.2.    The Trust shall defend, indemnify and hold the Trustee harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation or liability made or incurred by the Trustee provided that the Trustee meets the standards of conduct set forth in Section 12.1. Nothing in this Section shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the Trustee pursuant to federal and/or state statutory and common law. Notwithstanding the foregoing, this indemnification, obligation of defense and covenant to hold harmless shall not apply to any liability arising from a criminal proceeding where the Trustee had reasonable cause to believe that the conduct in question was unlawful.

12.3.    No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of this Trust Agreement or the Plan by either the Trustee or the by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities,

covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had against (a) the Trustee's bond or applicable insurance coverage, and, (b) to the extent not covered by such bond, directly against the Trustee.

12.4.   Medicare Secondary Payer Act.  Except as provided in the Plan and the LMI Settlement Agreement, neither the Trust, the Trustee nor the Trustee's agents and professionals shall have any liability to any entity, including any governmental entity pursuant to the Medicare Secondary Payer Act or any state law statute that is substantially similar to the Medicare Secondary Payer Act.

## ARTICLE XIII: TRUSTEE COMPENSATION

13.1.   The Trustee shall be entitled to receive as compensation from the monetary assets of the Trust in such amounts as described in **Exhibit C** attached hereto and as the same may be amended from time to time during the term of this Trust Agreement.  Such amendments to **Exhibit C**, if any, shall be served on the Service Parties.

13.1.1.   Any professional or any Person retained by the Trustee pursuant to the Plan will be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such professional or Person on an hourly basis, at the standard billing rates in effect at the time of service, or such other rate or basis of compensation that is reasonable and agreed upon by the Trustee.

13.1.2.   Any and all reasonable and necessary costs and expenses incurred by the Trustee and any professional or other Person retained by the Trustee, in performing their respective duties under this Trust Agreement, will be reimbursed by the Trustee from the Trust Assets.

13.1.3.   The Trustee and each professional employed by the Trustee shall provide to the Trustee a statement setting forth its aggregate fees and expenses incurred in connection with the engagement not previously billed, together with reasonable documentation of such expenses.

## ARTICLE XIV: SUCCESSOR TRUSTEES

14.1.   Vacancy Caused by Trustee Resignation or Removal.

14.1.1.   Trustee Resignation. The Trustee may resign at any time.  The Trustee may resign by sending its written resignation to the Service Parties. The resignation shall take effect within thirty (30) days of delivery of the notice of resignation to the Service Parties.  The Trustee shall, by the earliest date possible, deliver to the Trustee's successor all of the Trust assets which were in the possession of the Trustee along with a complete record and inventory of all such assets.

14.1.2.   Trustee Removal. The Trustee may be removed by a vote of at least two-thirds (2/3) of the holders of Allowed Class 9 and Unknown Abuse Survivor Claims.  Within thirty (30) days of receiving notice of the vote, the Trustee shall deliver to the Trustee's successor all of the Trust Assets which were in the possession of the Trustee along with a complete record and inventory of all such Trust Assets.

14.1.3.   The death, resignation, or removal of the Trustee shall not operate to terminate the Trust created by this Trust Agreement or to revoke any existing agency (other than any agency of the Trustee as the Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Trustee, and the Trustee agrees that the provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trustee and the Trustee's successors or assigns, as the case may be. In the event of the resignation or removal of the Trustee, the former Trustee promptly shall:

(a)   execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Trustee to effect the termination of the resigning or removed Trustee's capacity under this Trust Agreement and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

(b)   deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee; and

(c)   otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee.

14.1.4.   The resigning, removed or departed Trustee hereby irrevocably appoints the successor Trustee (and any interim Trustee) as its attorney–in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment.

14.2.   Appointment of Successor Trustee.  Any vacancy in the office of Trustee shall be filled in accordance with the following procedures:

14.2.1.   The Committee (notwithstanding the dissolution of the Committee on the Effective Date), may nominate a person to serve as the Trustee (the "Trustee Nomination").  The person nominated must have the following qualifications:

(a)   The Trustee must be an adult citizen of the United States of America.

(b)   The Trustee may not have been convicted of a misdemeanor or felony.

(c)     The Trustee cannot be a beneficiary of the Trust or counsel for any Beneficiary.

(d)     The Trustee cannot be counsel for the Committee or the Debtor.

(e)     The Trustee cannot have any conflicts of interest.

(f)     The Trustee cannot be a current employee of an Insurance Company or otherwise employed by or affiliated with an Insurance Company.

14.2.2.   If the Committee does not nominate a successor within thirty (30) days of the date of the vacancy, which shall be the date of the notice of resignation in the event of a resignation pursuant to 14.1.1 and the date of the vote removing the trustee in the event of removal pursuant to Section 14.1.2, the Reorganized Debtor shall nominate a successor Trustee.

14.2.3.   The Committee shall provide notice of the Trustee Nomination to the holders of Class 9 and Unknown Abuse Survivor Claims and the Unknown Abuse Survivor Representative.

14.2.4.   The holders of Class 9 and Unknown Claims and the Unknown Abuse Survivor Representative shall have seven (7) days to return their votes on the Trustee Nomination.  For purposes of voting on the Trustee Nomination, the Unknown Abuse Survivor Representative shall be entitled to ten (10) votes).

14.2.5.   If at least two-thirds (2/3) of those voting, vote in favor of the Trustee Nomination, then the person nominated will serve as successor Trustee.

14.2.6.   If at least two-thirds (2/3) of those voting do not vote in favor of the Trustee Nomination, then the Debtor shall designate a successor Trustee, provided that the person selected must meet the qualifications set forth above.

14.3.   Acceptance of Appointment of Successor Trustee.  Any successor Trustee's acceptance of appointment as a successor Trustee shall be in writing and shall be mailed to the Service Parties. The acceptance shall become effective upon mailing to the Service Parties. The Trustee shall thereupon be considered a Trustee of the Trust without the necessity of any conveyance or instrument.  Each successor Trustee shall have all of the rights, powers, duties, authority, and privileges as if initially named as a Trustee hereunder. Each successor Trustee shall be exempt from any liability related to the acts or omissions of every Trustee prior to the appointment of the successor Trustee, and the successor Trustee shall be under no duty to examine the actions or inactions of any prior Trustee

14.4.   Preservation of Record of Changes in Trustees.  A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## ARTICLE XV: GRANTOR TRUST ELECTION

15.1.   The Debtor shall elect to treat the Trust as a grantor trust pursuant to Treasury Reg. § 1.468B-1(k). Payment of taxes, if any, attributable to Trust income shall be the obligation of the Trust.

## ARTICLE XVI: SECTION 468B SETTLEMENT FUND

16.1.   <u>Generally</u>.

16.1.1.   In accordance with the Plan, the Trustee will take all reasonable steps to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of §468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations promulgated pursuant thereto. The Debtor is the "transferor" within the meaning of Treasury Regulations §1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

16.1.2.   It is further intended that the transfers to the Trust will satisfy the "all events test" and the "economic performance" requirement of § 461(h)(1) of the Tax Code, and Treasury Regulation § 1.461-1(a)(2).

16.2.   <u>Employer Identification Number</u>.  Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust pursuant to Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

16.3.   <u>Relation-Back Election</u>.  If applicable, the Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

16.4.   <u>Reporting Requirements</u>.  The Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations §1.468B-2(k)(1). The Debtor shall file an election statement(s) satisfying the requirements of Treasury Regulation §1.468B-1(k)(2)(ii) so that the Trust is treated as a grantor trust under §671 of the Tax Code and the regulations promulgated thereunder. The Debtor's election statement shall be made on the Trust's first timely filed trust income tax return. The Debtor (or some other person on behalf the Debtor) shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Debtor (or some other person on behalf of the Debtor) makes a transfer to the Trust.

16.5.   <u>Broad Powers of the Trustee</u>.  The Trustee is empowered to take all such actions, including such actions as may be inconsistent with those expressly set forth above, as he deems necessary to reasonably ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under §468B of the Tax Code, and the regulations promulgated pursuant thereto. Further, the Trustee may amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

## ARTICLE XVII: BENEFICIARIES

17.1.    Identification of Beneficiaries.  The Beneficiaries are the parties identified in Section 1.2.2 of this Trust Agreement.

17.2.    Names and Addresses. The Trustee shall keep a register (the "Register") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries, and the awards made to the Beneficiaries pursuant to the Plan.  The Trustee may rely upon this Register for the purposes of delivering distributions or notices.  In preparing and maintaining this Register, the Trustee may rely on the name and address of each holder of a Claim as set forth in a proof of claim filed by such holder in the Chapter 11 Case, or (ii) proper notice of a name or address change has been delivered by such Beneficiary to the Trustee.  The Trustee is subject to the orders of the Bankruptcy Court regarding confidentiality of the filed proofs of claim and the Register is confidential under the terms of such orders.

17.3.    Rights of Beneficiaries.  Each Beneficiary will be entitled to participate in the rights due to a Beneficiary hereunder and under the Plan.  The rights of a Beneficiary shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of such Beneficiary and such death, insolvency or incapacity shall not terminate or affect the validity of this Trust Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust Assets, or any right to call for a partition or division of the Trust Assets. Title to all the Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Trust Agreement and the Plan.

## ARTICLE XVIII: REPORTS BY TRUSTEES

18.1.1.    Interim Reports. If requested in writing, the Trustee shall furnish a summary of any material developments affecting the Trust Assets and detail of any expenses of the Trust to any Beneficiary, the Reorganized Debtor, or the Unknown Abuse Survivor Representative.

18.1.2.    Annual Report. Within forty-five (45) days of the end of the calendar year, the Trustee shall furnish a summary of any material developments affecting the Trust Assets and detail of any expense to the Trust to the Beneficiaries, the Reorganized Debtor, and the Unknown Abuse Survivor Representative.

18.1.3.    Final Report. Prior to termination of the Trust, the Trustee shall prepare a final report (the "Final Report"), which shall contain the following information: (a) all Trust Assets including assets originally charged under the Trustee's control; (b) all funds transferred into and out of the Litigation Reserve and the Unknown Abuse Survivor Reserve; (c) an accounting of all purchases, sales, gains, losses, and income and expenses in connection with the Trust Assets during the Trustee's term of service (including any predecessor Trustee); (d) a statement setting forth the total distributions to the Beneficiaries (but not the Distributions to individual Beneficiaries); (e) the ending balance of all Trust Assets; (f) a narrative describing actions taken by the Trustee in the performance of its duties which materially affect the Trust; and (g) schedule(s) reflecting that:

(a)     all Trust Assets (including Claims and/or Defenses) have been either: (i) reduced to Cash; or (ii) abandoned by the Trustee; and

(b)     all expenses of the Trust have been paid (or will be paid) and all payments; and

(c)     and final Distributions to be made to Beneficiaries have been made (or will be made) by the Trustee in accordance with provisions of this Trust Agreement and the Plan.

18.1.4.   Final Report and Discharge of the Trustee. The Trustee's Final Report shall be served on the Service Parties, the Beneficiaries, the Reorganized Debtor, and the Unknown Abuse Survivor Representative.  Within sixty (60) days of receipt of such information, any Beneficiary, the Reorganized Debtor, or the Unknown Abuse Survivor Representative may object in writing as to the reasonableness of such expenses and may make application to the Bankruptcy Court or any other court with jurisdiction, for such Court to determine the reasonableness of the same.  If no such objections are filed, the Trustee shall be discharged from all liability to the Trust or any Person who or which has had or may then or thereafter have a claim against or the Trust for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement or the Plan.

18.1.5.   Exclusivity of Trust Agreement Terms Concerning Reports. The Trustee's duty to provide or file notices, reports, statements, or accounts shall be solely as provided in this Trust Agreement irrespective of the provisions of any applicable state law now or hereafter in effect. Without limiting the foregoing, Wisconsin Statutes section 701.0813, effective July 1, 2014, as enacted by 2013 Wisconsin Act 92, shall not apply to the Trust.

## ARTICLE XIX: MISCELLANEOUS PROVISIONS

19.1.   Interpretation.  As used in this Trust Agreement, words in the singular include the plural and words in the plural include the singular. The masculine, feminine and neutral genders shall be deemed to include all genders. The descriptive heading for each paragraph and subparagraph of this Trust Agreement are for the reader's convenience and shall not affect the interpretation or the legal efficacy of this Trust Agreement.

19.1.1.   Notices.

(a)     The Trustee shall maintain a list of service parties. The list shall consist of all persons who submit a request in writing to the Trustee (the "Service Parties"). Such requests shall include the requestor's street address and may include the requestor's fax number and email address.

(b)     All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given on the first of the following dates: (a) when personally delivered; (b) when actually received by means of facsimile transmission or e-mail; (c) when received by overnight express courier delivery; (d) when delivered and receipted for by certified mail, postage prepaid, return receipt requested (or in the event of attempted delivery and refusal of acceptance, then on the date of the first attempted delivery).

WHD/10168859.4

19.1.2.   <u>Choice of Law</u>.  This Trust Agreement shall be administered, governed by, construed, and enforced according to the internal laws of the State of Wisconsin applicable to contracts and Trust Agreements made and to be performed therein, except that all matters of federal tax law, shall be governed by federal income tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

19.1.3.   <u>Invalidity and Unenforceability</u>.  If any term or provision of this Trust Agreement shall be invalid or unenforceable, the remainder of this Trust Agreement shall not be affected thereby, and each remaining term and provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

19.2.   <u>Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

19.3.   <u>Tax Identification Numbers</u>.  The Trustee may require any Beneficiary to furnish to the Trustee (a) its employer or taxpayer identification number as assigned by the IRS, and (b) such other records or documents necessary to satisfy the Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Trustee may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.

19.4.   <u>Headings</u>.  The Section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

19.5.   <u>Reimbursement of Costs</u>.  If the Trustee or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Trustee or the Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action. To the extent that the Trust has advanced such amounts, the Trust may recover such amounts from the non-prevailing party.

19.6.   <u>Entirety of Trust Agreement</u>. This Trust Agreement supersedes any and all prior oral discussions and Trust Agreements with respect to the subject matter hereof. This Trust Agreement, together with the Exhibits hereto, the Plan, and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed therein.

19.7.   <u>Counterparts</u>.  This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19.8.   <u>Independent Legal and Tax Counsel</u>.

**ALL PARTIES TO THIS TRUST AGREEMENT HAVE BEEN REPRESENTED BY COUNSEL AND ADVISORS (COLLECTIVELY REFERRED TO AS "COUNSEL") OF THEIR OWN SELECTION IN THIS MATTER. CONSEQUENTLY, THE PARTIES AGREE THAT THE LANGUAGE IN ALL PARTS OF THIS TRUST AGREEMENT SHALL IN ALL CASES BE CONSTRUED AS A WHOLE ACCORDING TO ITS FAIR MEANING AND NEITHER STRICTLY FOR NOR AGAINST ANY PARTY. IT IS SPECIFICALLY ACKNOWLEDGED AND UNDERSTOOD THAT THIS TRUST AGREEMENT HAS NOT BEEN SUBMITTED TO, NOR REVIEWED OR APPROVED BY, THE INTERNAL REVENUE SERVICE OR THE TAXING AUTHORITIES OF ANY STATE OR TERRITORY OF THE UNITED STATES OF AMERICA.**

19.8.1. <u>Jurisdiction</u>.

(a)     For as long as the Chapter 11 Case is pending, the United States Bankruptcy Court for the Eastern District of Wisconsin retains exclusive original jurisdiction over all matters related to the Plan and this Trust Agreement, including jurisdiction over any litigation regarding Insurance Policies. Notwithstanding such exclusive original jurisdiction, the Trustee, upon notice to the Service Parties, may seek permission of the Bankruptcy Court for commencement of an action in the Wisconsin state courts or in any other state court of original jurisdiction for relief in any matter concerning the interpretation or resolution of any dispute related to the Trust, or for enforcement of any rights claimed by the Trustee. If the Bankruptcy Court concludes, in the exercise of its discretion, that the Trustee would be aided in the administration of the Trust by referral of the matter to state court, the Bankruptcy Court may grant the Trustee permission to commence an action in the Wisconsin state courts or any other state court of original jurisdiction.

(b)     If the Chapter 11 Case is closed, the provisions of the Trust may be interpreted, enforced, or determined by the Milwaukee County Circuit Court or the United States District Court for the Eastern District of Wisconsin.

IN WITNESS WHEREOF, the Trustee executes this Trust Agreement as of the date set forth in the opening paragraph.

[Signature Page Follows]

**DEBTOR:**

**Archdiocese of Milwaukee,**
**Debtor.**

By:

Name:          John J. Marek

Title:          Treasurer and Chief Financial Officer

**TRUSTEE:**

**[-----].**

By: _____

Name:              [-------------------------]
Title:              [-------------------------]

WHD/10168859.4

**EXHIBIT C**

**COMPENSATION FOR TRUSTEE**

WHD/10168859.4

## Procedure for Nomination of the Insurance Litigation Trustee

### I. Overview

Pursuant to the Plan, the Debtor is required to nominate a person to serve as the trustee (the "Trustee") of the Insurance Litigation Trustee (the "Trust"). The Debtor hereby adopts the following procedures for selecting the Trustee:

The Committee (and its counsel), the holders of Class 9 Claims (and their counsel), and the Unknown Abuse Survivor Representative shall consult regarding the selection of the Trustee.

If the Committee, the holders of Class 9 Claims, and the Unknown Abuse Survivor Representative agree on the selection of the Trustee in accordance with Section II below, then the Debtor shall nominate the person selected by the Committee, the holders of the Class 9 Claims, and the Unknown Abuse Survivor Representative to serve as the Trustee.

The Committee, the holders of Class 9 Claims, and the Unknown Abuse Survivor Representative have until fifteen (15) days prior to the Confirmation Hearing to select the Trustee. If the Committee, the holders of Class 9 Claims, and the Unknown Abuse Survivor Representative do not agree on the selection of the Trustee, then the Debtor will nominate a person to serve as Trustee and will serve all of the parties with a notice of the nomination at least five (5) days prior to the Confirmation Hearing.

### II. Procedure for Selecting the Trustee

The Committee, after consultation with the holders of Class 9 Claims (or their counsel), and the Unknown Abuse Survivor Representative, shall nominate a person to serve as the Trustee (the "Trustee Nomination"). The person nominated must have the following qualifications:

1. The Trustee must be an adult citizen of the United States of America.

2. The Trustee may not have been convicted of a misdemeanor or a felony.

3. The Trustee cannot be a beneficiary of the Trust or counsel for any beneficiary.

4. The Trustee cannot be counsel for the Committee or the Debtor;

5. The Trustee cannot have any conflicts of interest.

6. The Trustee cannot be a current employee of an Insurance Company or otherwise employed by or affiliated with an Insurance Company.

The Committee shall provide notice of the Trustee Nomination to the holders of Class 9 Claims and the Unknown Abuse Survivor Representative.

The holders of Class 9 Claims and the Unknown Abuse Survivor Representative shall have seven (7) days to return their votes on the Trustee Nomination. For purposes of voting on the Trustee Nomination, the Unknown Abuse Survivor Representative shall be entitled to ten (10) votes.

If at least two-thirds (2/3) of those voting, vote in favor of the Trustee Nomination, then the Committee shall forward the name of the person nominated as Trustee to the Debtor. Provided that the person nominated has the qualifications listed above, the Debtor will file the necessary paperwork with the Bankruptcy Court to nominate the person selected by the Committee, the holders of Class 9 Claims, and the Unknown Abuse Survivor Representative.

The Committee, the holders of Class 9 Claims, and the Unknown Abuse Survivor Representative shall have the exclusive ability to select the trustee until fifteen (15) days prior to the Confirmation Hearing.

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

This Confidential Settlement Agreement and Release (hereinafter the "Agreement") is made this ___ day of _____, 2014, by and between the Archdiocese of Milwaukee ("ADOM", as defined below) and the "Related Entities" (as defined below) (collectively, ADOM and the Related Entities are referred to herein as the "Catholic Entities"), on one hand, and certain Underwriters at Lloyd's, London, and certain London Market Insurance Companies (collectively, "London Market Insurers", as defined below), on the other hand, (the aforementioned parties being referred to hereinafter collectively as the "Parties" or individually as a "Party").

**WITNESSETH THAT:**

WHEREAS, London Market Insurers severally subscribed certain policies providing insurance to the Catholic Entities ("Subject Insurance Policies", as defined below);

WHEREAS, certain of the Catholic Entities have incurred and may incur in the future certain liabilities, expenses, and losses arising out of certain claims;

WHEREAS, to attempt to address its liabilities for such claims, on January 4, 2011 ("Petition Date"), ADOM filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Wisconsin ("Bankruptcy Court") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* ("Bankruptcy Code"), Case Number 11-20059 ("Bankruptcy Case");

WHEREAS, the Subject Insurance Policies are property of the bankruptcy estate;

WHEREAS, ADOM and the Related Entities claim coverage under the Subject Insurance Policies;

WHEREAS, certain Catholic Entities tendered demands to London Market Insurers for coverage under the Subject Insurance Policies for such claims, and London Market Insurers dispute whether, and to what extent, coverage may attach with respect to any such claims under the Subject Insurance Policies ("Dispute");

WHEREAS, in an effort to obtain an adjudication of its rights for coverage under certain of the Subject Insurance Policies, on November 13, 2012, ADOM filed an action captioned *Archdiocese of Milwaukee, et al. v. Stonewall Insurance Co., et. al.*, in the Bankruptcy Court ("Declaratory Judgment Action");

WHEREAS, Donald Marshall and Dean Weissmuller, the alleged holders of Abuse Claims, were also named Plaintiffs on the Complaint for Declaratory Relief that initiated the Declaratory Judgment Action;

WHEREAS, several London Market Insurers are named defendants in the Declaratory Judgment Action;

WHEREAS, on February 22, 2013, the Declaratory Judgment Action was removed to the District Court of the Eastern District of Wisconsin by Order of the District Court;

WHEREAS, London Market Insurers have denied and continue to deny all substantive allegations and claims asserted against them in the Declaratory Judgment Action;

WHEREAS, on April 26, 2012, claimant John Doe 21 commenced an action in the Circuit Court for Racine County, Wisconsin, Case No. 12-CV-1464, against St. Louis Parish, alleging that he was abused by Father Daniel Budzynski, a parish priest at St. Louis Parish (one of the "Related Entities") between 1984 and 1986 ("State Court Action"), and that claim was tendered to certain of the London Market Insurers on May 21, 2012;

WHEREAS, whether or not they were subject to claims and whether or not they tendered demands to London Market Insurers, all Catholic Entities are settling with and release London Market Insurers pursuant to this Agreement;

WHEREAS, it is the intention of the Parties that the Subject Insurance Policies be sold, assigned, and transferred to London Market Insurers and that London Market Insurers shall buy back the Subject Insurance Policies by payment of the "Buy-Back Payment" (as defined below);

WHEREAS, it is the intention of the Parties that any and all interests of the Catholic Entities in the Subject Insurance Policies shall be extinguished, ended, and forever terminated;

WHEREAS, it is the intention of the Parties that the Catholic Entities shall (i) not retain any right, title, or interest in or to the Subject Insurance Policies, and (ii) release London Market Insurers from all "Claims" (as defined below), and that no London Market Insurer shall have any remaining duty or obligation of any nature whatsoever to any Catholic Entity;

WHEREAS, London Market Insurers are also making a contribution to support the "Plan" (as defined below) and the transactions

contemplated thereunder ("Plan Payment", as defined below), and in exchange will receive the "Settling Insurers Release" (as defined below), pursuant to the Plan;

WHEREAS, the Catholic Entities agree to sell their "Interests" (as defined below) under the Subject Insurance Policies back to London Market Insurers; that the Buy-Back Payment shall be transferred to the "Insurance Litigation Trust" (as defined below); and that, in exchange, the Related Entities will receive the "Related Entities Release" (as defined below), pursuant to the Plan; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without London Market Insurers' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates all rights, obligations, and liabilities of London Market Insurers and the Catholic Entities with respect to the Subject Insurance Policies, including all rights, obligations, and liabilities relating to the aforesaid Claims, without prejudice to their respective positions on policy wordings or any other issues in the Dispute, the Declaratory Judgment Action, the State Court Action, or any other action.

**AGREEMENTS:**

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

## 1. Definitions

The following definitions and the definitions used above apply to this Agreement as well as in any exhibits or attachments hereto. Where the listed terms are also further defined elsewhere in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. The words "include," "includes" or "including" shall be deemed to be followed by the words "without limitation," and the phrase "relating to" means "with regard to, by reason of, based on, arising out of, relating to,

or in any way connected with". (The words "include," "includes" and "including", and the phrase "relating to" are not capitalized herein.) All attachments hereto are incorporated herein to the same extent as if fully set forth herein. All references to "Sections" are references to sections of this Agreement unless otherwise specified.

## A. **Abuse Claim**

The term "Abuse Claim" means any Claim relating to (a) sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia or sexually-related physical, psychological or emotional harm, or contacts or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult; (b) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, or intimidation; or (c) fraud, fraud in the inducement, misrepresentation, concealment, unfair practice, or any other tort relating to the acts and/or omissions listed in subparts (a) and (b) of this sentence, for which a Catholic Entity is or was allegedly legally responsible under any legal theory whatsoever, including any act or omission by a Person (a) whom a Catholic Entity failed to control, direct, train or supervise; (b) about whose acts and propensities a Catholic Entity failed to warn, disclose or provide information; or (c) whom a Catholic Entity allegedly negligently hired or retained. A child or nonconsenting adult is abused whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological or emotional harm to the child or nonconsenting adult.

## B. **ADOM**

The term "ADOM" means:

(i) the Archdiocese of Milwaukee; its predecessors and successors; all its past and present subsidiaries and the predecessors and successors of such subsidiaries; its past and present affiliates and joint ventures and their predecessors and successors; and all its past, present and future assigns; and,

(ii) any other "Person" (as defined below) that was in the past or is now affiliated with, related to, or associated with ADOM, including any corporations that

have been acquired by, merged into, or combined with ADOM or its predecessors, or ADOM's past and present subsidiaries, affiliates, successors and assigns; and,

(iii) any and all Persons named as insureds, other insureds, or otherwise insured or claimed to be insured under the Subject Insurance Policies and those Persons', subsidiaries', affiliates', successors' and assigns' directors, officers, agents and employees; *provided, however,* those Persons within the definition of "Related Entities" are not within the definition of "ADOM".

C. **Approval Order**

The term "Approval Order" shall mean an order entered by the Bankruptcy Court, upon a hearing upon Bankruptcy Notice, containing all of the following provisions but no provision that is contrary to or inconsistent with the following provisions. The wording of the Approval Order shall be mutually acceptable to ADOM and London Market Insurers. The Approval Order shall contain provisions:

(i) approving this Agreement, in its entirety, pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and, if applicable, 105(a), and Bankruptcy Rules 6004 and 9019;

(ii) authorizing the sale of the Subject Insurance Policies to London Market Insurers free and clear of all Interests of all Persons, with all rights under and Claims against the Subject Insurance Policies being fully extinguished without reservation;

(iii) authorizing and directing the Parties to perform their respective obligations under this Agreement;

(iv) entering the Bar Order;

(v) ordering that all Claims against and Interests in the Subject Insurance Policies are extinguished upon the date of entry of the Approval Order;

(vi) ordering that any Claims or Interests that any Person, including "CMS" (as defined below), might have against the Subject Insurance Policies or London Market Insurers relating to Claims paid or to be paid from the Buy-Back Payment attach to the Buy-Back Payment;

(vii) ordering any trustee appointed to administer any post-confirmation trust, including the Insurance Litigation

Trust, to perform the obligations imposed upon him or her, if any, by this Agreement; and,

(ix) incorporating the following separately entered findings of fact and conclusions of law adequately supporting the sale and buy-back of the Subject Insurance Policies and as necessary to enter the Bar Order:

a. ADOM demonstrated sound business reasons for the sale of the Subject Insurance Policies to London Market Insurers;

b. This Agreement was negotiated extensively, at arms-length, and in good faith between ADOM and London Market Insurers. London Market Insurers are purchasers in good faith within the meaning of Bankruptcy Code § 363(m), and are entitled to all of the protections of that statute;

c. London Market Insurers are bona fide good faith purchasers of the Subject Insurance Policies, for value;

d. The terms of the transactions contemplated by this Agreement, as well as the genesis and background of this Agreement, have been disclosed to the Bankruptcy Court;

e. The terms and conditions of this Agreement (including the consideration to be realized by ADOM's bankruptcy estate) are fair and reasonable;

f. The transactions contemplated by this Agreement are in the best interests of ADOM's bankruptcy estate, its creditors, and other stakeholders;

g. The only potential holders of Interests in or against the Subject Insurance Policies are the Catholic Entities and Persons who hold Claims against the Catholic Entities, whose Claims might be covered by the Subject Insurance Policies;

h. The Related Entities are parties to the relief sought in the motion to approve this Agreement, and hence are deemed to have consented to the sale within the meaning of Bankruptcy Code § 363(f)(2);

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 30 of 140

i. The Abuse Claims are subject to bona fide dispute, hence the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(4);

j. All holders of Claims against the Subject Insurance Policies could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Claims, therefore the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(5);

k. The compromises and settlements embodied in the Agreement have been negotiated in good faith, and are reasonable, fair and equitable;

l. In light of the: (1) probability of success in the litigation of the Declaratory Judgment Action; (2) difficulties, if any, to be encountered in the matter of collection; (3) complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) paramount interest of the creditors and a proper deference to their reasonable views, this Agreement is fair and equitable and in the best interest of ADOM's bankruptcy estate and its creditors;

m. The Buy-Back Payment is fair, adequate, and reasonable consideration for (1) the sale and buy-back by London Market Insurers of all of the Catholic Entities' Interests in the Subject Insurance Policies and any Interests of holders of Abuse Claims or other Claims in the Policies, directly or indirectly, and (2) the release of London Market Insurers contained in the Plan;

n. ADOM provided due and adequate notice of the (1) sale of the Subject Insurance Policies; (2) terms and conditions of this Agreement; and, (3) hearing on the sale, in accordance with Bankruptcy Rules 2002 and 6004 to all known and unknown creditors;

o. It would be impractical to divide the Subject Insurance Policies between ADOM and the Related Entities, therefore, to realize the value of the Subject Insurance Policies for ADOM's bankruptcy

estate requires that the sale include all Persons' Interests in the Subject Insurance Policies;

p. The sale of the Subject Insurance Policies outside the ordinary course of business satisfies the requirements of Bankruptcy Code § 363(b);

q. The sale of the Subject Insurance Policies free and clear of Interests satisfies the requirements of § 363(f);

r. The Claims of any Persons holding Claims that would be covered by the Subject Insurance Policies that are being acquired by the London Market Insurers pursuant to this Agreement are deemed to be "interests" as that term is used in Bankruptcy Code § 363(f); and,

s. The Agreement may be approved pursuant to Bankruptcy Rule 9019(a).

The entry of the Approval Order containing all of the provisions set out in above sub-paragraphs (i)-(ix), but no provision that is contrary to or inconsistent with them, is a condition precedent to the performance of London Market Insurers' obligations under this Agreement.

### D. **Bankruptcy Notice**

The term "Bankruptcy Notice" means notice as required under Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")2002, 6004(a) and (c), and applicable local rules, sent to (a) all holders of Claims against the Catholic Entities, including Abuse Claims, and their attorneys, if any, who are known to ADOM; (b) the Future Claims Representative; (c) the Committee of Unsecured Creditors; (d) all insurers of the Catholic Entities; (e) the Secretary of the Department of Health and Human Services; (f) the Centers for Medicare & Medicaid Services, 7500 Security Boulevard, Baltimore, MD 21244-1850; (g) the United States Attorney for the Eastern District of Wisconsin; (h) all Persons who, in the opinion of any of the Parties, might reasonably be expected to be affected by the sale; and (i) all other Persons as directed by the Bankruptcy Court. Notice shall also be given by (1) publication in the national editions of the New York Times, the Chicago Tribune, the Los Angeles Times and U.S.A. Today; (2)local publication within Milwaukee and the surrounding areas, including every county in which a Catholic Entity is located; (3) publication in three newspapers with the largest

circulation in the State of Minnesota; and (4) publication in
the largest newspapers in Arizona, California, Florida and
Illinois.

### E. **Bar Order**

The term "Bar Order" means an order barring, estopping, and
permanently enjoining all Persons from asserting any (a) Claims
against the Subject Insurance Policies; (b) Claims against
London Market Insurers relating to the Subject Insurance
Policies; and (c) Medicare Claims. The terms of the Bar Order
must be set forth in any motion or brief seeking approval of
this Agreement and the Approval Order.

### F. **Business Day**

The term "Business Day" means any day that is not a
Saturday, Sunday, or legal holiday in the State of Wisconsin or
the United Kingdom.

### G. **Buy-Back Payment**

The term "Buy-Back Payment" means the payment by the London
Market Insurers to the Insurance Litigation Trust of a sum equal
to fifty percent (50%) of their respective, allocated, several
shares of the Settlement Amount, as set forth on Attachment D,
for the buy-back of all Interests of the Catholic Entities in
the Subject Insurance Policies.

### H. **Claim**

The term "Claim" means (a) a claim as that term is defined
in § 101(5) of the Bankruptcy Code; or (b) any claim, assertion
of right, complaint, cross-complaint, counterclaim, liabilities,
rights, request, allegation, arbitration, mediation, lawsuit,
litigation, direct action, administrative proceeding, cause of
action, suit, action, lien, debt, bill, indemnity, equitable
indemnity, right of subrogation, equitable subrogation,
injunctive relief, controversy, contribution, exoneration,
covenant, agreement, promise, act, omission, trespass, variance,
damages, judgment, compensation, set-off, reimbursement,
restitution, cost, expense, loss, exposure, execution,
attorneys' fee, obligation, order, affirmative defense, writ,
demand, inquiry, request, directive, obligation, Proof of Claim
in a bankruptcy proceeding or submitted to a trust established
pursuant to the Bankruptcy Code, government claim or action,
settlement, and/or any liability whatsoever, whether past,
present or future, known or unknown, asserted or unasserted,

foreseen or unforeseen, fixed or contingent, matured or
unmatured, liquidated or unliquidated, direct, indirect or
otherwise consequential, whether in law, equity, admiralty or
otherwise, whether currently known or unknown, whether
compromised, settled or reduced to a consent judgment, that may
exist now or hereinafter for property damages, compensatory
damages (such as loss of consortium, wrongful death,
survivorship, proximate, consequential, general and special
damages), punitive damages, bodily injury, personal injury,
public and private claims, or any other right to relief whether
sounding in tort, contract, strict liability, equity, nuisance,
trespass, statutory violation, wrongful entry or eviction or
other eviction or other invasion of the right of private
occupancy. For avoidance of doubt, "Claim" includes any Abuse
Claim, any Contribution Claim, any Direct Action Claim, any
Extra-Contractual Claim, any Medicare Claim and any Trust Claim.

### I. CMS

The term "CMS" means the Centers for Medicare and Medicaid
Services of the United States Department of Health and Human
Services, and/or any other agent or successor Person charged
with responsibility for monitoring, assessing, or receiving
reports made under MMSEA and pursuing Claims under MSP,
including Claims for reimbursement of payments made to Trust
Claim holders who recover from the Insurance Litigation Trust
(**"Medicare Claims"**).

### J. Confirmation Order

The term "Confirmation Order" means a confirmation order
entered by the Bankruptcy Court after a confirmation hearing
upon Bankruptcy Notice, in a form and substance as required by
this Agreement, which has not been stayed. The wording of the
Confirmation Order shall be mutually acceptable to ADOM and
London Market Insurers. The Confirmation Order shall contain
all of the following provisions but no provision that is
contrary to or inconsistent with this Agreement:

(i) confirming the Plan;

(ii) specifically and individually ordering all Persons as
set forth in the Plan to act or refrain from acting as specified
in the Plan;

(iii) incorporating the terms and provisions of the Bar
Order as though fully set forth therein;

(iv)   ordering  the  entry  of  the  Related  Entities  Release
and the Settling Insurers Release;

(v)  ordering  that  ADOM  is  discharged  from  all  Claims,
including all Abuse and Trust Claims;

(vi) including the Insurance Neutrality provision set forth
in the Plan;

(vii) including  the  judgment  reduction  language  set  forth
in Section 8 and in the Plan; and,

(viii)   incorporating  the  separately  entered  findings  of
fact  and  conclusions  of  law,  which  are  required  under
§§ 1129(a),  and,  if  applicable,  105(a)  and  1129(b),  of  the
Bankruptcy Code, to confirm the Plan and as necessary to dismiss
with  prejudice  the  State  Court  Action,  and  making  the  following
findings:

a.   This   Agreement   is   the   fruit   of   long-term
negotiations  amongst  the  Catholic  Entities  and  London
Market Insurers, which began in July 2012;

b.   The  Plan  Payment  paid  by  London  Market  Insurers
under   the   Agreement   provides   good   and   valuable
consideration  to  ADOM's  bankruptcy  estate,  and  enables
unsecured  creditors  such  as  the  holders  of  Abuse
Claims and Trust Claims to realize distributions;

c.   This   Agreement   is   therefore   an   essential
component of the Plan;

d.   The  Subject  Insurance  Policies  are  property  of
ADOM's  bankruptcy  estate  and  are  therefore  subject  to
the core jurisdiction of the Bankruptcy Court;

e.   The  Abuse  and  Trust  Claims  against  the  Related
Entities  are  within  the  jurisdiction  of  the  Bankruptcy
Court  because  the  Related  Entities  are  insured  under
the same insurance policies as ADOM;

f.   Because  it  would  be  impractical  to  divide  the
Subject  Insurance  Policies,  it  was  necessary  for  ADOM
to  obtain  the  Related  Entities'  participation  in  this
Agreement;

g.   The  Related  Entities  would  not  release  their
Interests  under  the  Subject  Insurance  Policies  unless

they obtained the benefits of the Related Entities Release, because to do so would have left them exposed to Abuse and Trust Claims, whether or not such Claims be valid and whether or not coverage exists under the Subject Insurance Policies for such Claims;

h.  Therefore, the Related Entities Release is necessary to the Agreement;

i.  The Agreement is necessary to the Plan because it provides significant funding for the Plan, and therefore the Related Entities Release is necessary to the Plan;

j.  The Related Entities Release is narrowly tailored because it requires that only Abuse and Trust Claims against the Related Entities be released; other Claims, such as contract Claims or tort Claims that are not Abuse or Trust Claims, may still be asserted against the Related Entities;

k.  The Claims against the Subject Insurance Policies are within the jurisdiction of the Bankruptcy Court because the Subject Insurance Policies are property of ADOM's bankruptcy estate;

l.  London Market Insurers required that they obtain the benefits of the Settling Insurers Release, as a condition of entering into this Agreement, otherwise, without such protection, there would be no reason for them to contribute the Plan Payment;

m.  Therefore, the Settling Insurers Release is necessary to this Agreement and the Plan;

n.  The Settling Insurers Release is narrowly tailored because it only releases Claims relating to the Subject Insurance Policies;

o.  London Market Insurers repurchased the subject Insurance Policies pursuant to this Agreement.  London Market Insurers did not purchase any other assets of ADOM and are not a continuation of ADOM or engaging in a continuation of ADOM's business.  London Market Insurers shall not have any responsibility or liability with respect to any of ADOM's other assets; and,

p. London Market Insurers are not, and shall not be deemed to be, a successor to ADOM by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement, the Plan, or otherwise. London Market Insurers shall not assume, or be deemed to have assumed, any liabilities or other obligations of ADOM.

The entry of the Confirmation Order containing all of the provisions set out in above sub-paragraphs (i)-(xv), but no provision that is contrary to or inconsistent with them, is a condition precedent to the performance of London Market Insurers' obligations under this Agreement.

### K.    Contribution Claim

The term "Contribution Claim" means any Claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, by one insurer against another insurer for the reimbursement of money paid by the first insurer for having paid a debt, expense, or liability of its insured in a situation where two or more policies by different insurers cover the same insured for the same loss, and the first insurer contends it has paid more than its proper or proportionate share.

### L.    Direct Action Claim

The term "Direct Action Claim" means any Claim by any Person against London Market Insurers, which is identical or similar to, or arises out of the same or similar acts or omissions giving rise to a Trust Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

### M.    Equitas Entities

The term "Equitas Entities" means Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Policyholders Trustee Limited, and any other company from time to time in the Equitas Group.

### N.    Extra-Contractual Claim

The term "Extra-Contractual Claim" means any Claim against London Market Insurers, seeking any type of relief, including compensatory, exemplary, or punitive damages, or attorneys'

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 37 of 140

fees, interest, costs or any other type of relief, on account of bad faith; failure to provide insurance coverage under any Subject Insurance Policy; failure or refusal to compromise and settle any Claim insured under any Subject Insurance Policy; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; under any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of alleged misconduct or any other act or omission of any type for which the claimant seeks relief other than coverage or benefits under an insurance policy. Extra-Contractual Claims include any Claim relating to London Market Insurers' (a) handling of any request for insurance coverage for any Claim; and (b) conduct relating to the negotiation of this Agreement.

### O. **Final Order**

The term "Final Order" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to ADOM and London Market Insurers, and their counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Final Order". For the avoidance of doubt, if the Plan is substantially consummated as defined in § 1101(2) of the Bankruptcy Code ("Substantial Consummation"), and any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order.

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 38 of 140

### P.    **Future Claims Representative**

The term "Future Claims Representative" or "FCR" means Stephen S. Gray, or any other representative appointed by the Court in the Bankruptcy Case with the duties and obligations set forth in the Order Pursuant to §§ 105 and 1109 of the Bankruptcy Code Appointing Stephen S. Gray as Legal Representative for Future Claimants, Dated September 20, 2013, Docket Number 2393, in the Bankruptcy Case.

### Q. **Insurance Litigation Trust**

The term "Insurance Litigation Trust" means the trust established under the Plan, which assumes liability for, and is established to pay, in whole or in part, "Trust Claims" (as defined below), pursuant to the Plan and, if applicable, § 105 of the Bankruptcy Code.

### R.    **Interests**

The term "Interests" means all liens, Claims, encumbrances, interests and other rights of any nature, whether at law or in equity, including Abuse, Contribution, Direct Action, Extra-Contractual, Medicare and Trust Claims.

### S.    **Lloyd's Underwriters**

The term "Lloyd's Underwriters" means:

(i)    All Underwriters, members, or Names at Lloyds, London (including former underwriters, members or Names) who through their participation in syndicates (including those identified on Attachment B-Section I and B-Section II), severally subscribed, each in his own proportionate share, to one or more of the Subject Insurance Policies. Lloyd's Underwriters shall also include all Underwriters, members or Names at Lloyd's, London, (including former underwriters, members and Names) whether or not they participated in the syndicates identified in Attachment B-Section I and B-Section II, who, through their participation in syndicates (including those identified on Attachment B-Section I and B-Section II) severally subscribed any of the Subject Insurance Policies in favor of the Catholic Entities: (a) the existence of which has not presently been established; or (b) the existence of which has been established but as to which identities of names, members, or syndicates are not presently known;

(ii) All the past, present and future employees (if any), representatives, attorneys, and agents of the Persons set forth in Section 1.S.(i), and their respective predecessors and successors, if any, solely in such capacity; and,

(iii) All the respective heirs, executors, successors (including Equitas Insurance Limited ("EIL") to the extent EIL is a successor to any of the Persons identified in Section 1.S.(i) with respect to the subject matter of this Agreement), assigns (including any administrator, receiver, trustee, personal representative, or equivalent appointee/s under relevant insolvency law), reinsurers and retrocessionaires (as such) of any of the Persons identified in Section 1.S.(i).

(iv) For the avoidance of doubt, the Underwriter Third Party Beneficiaries, who receive certain specified benefits under this Agreement, are not Lloyd's Underwriters for the purpose of this definition.

**T.**   **<u>London Market Companies</u>**

The term "London Market Companies" means all the companies doing business in the London Insurance Market, which severally subscribed, each in its own proportionate share, one or more of the Subject Insurance Policies (such insurers are identified in Attachment B to this Agreement).  London Market Companies shall also include those companies doing business in the London insurance markets (but only those companies identified in Section I of Attachment B hereto and that make the payment called for in Attachment D hereto) who subscribed any insurance policies (a) the existence of which has not presently been established but which provided insurance to the Catholic Entities or (b) the existence of which has been established but the identity of such company as a subscribing insurer is not presently known.  As used herein, "companies" shall mean the named corporate entity and all predecessors, successors, affiliates, pool companies as such, and subsidiaries. It is further expressly understood that "companies" are parties to this Agreement only with respect to the policies issued or subscribed by them in the London insurance markets (as opposed to insurance markets located elsewhere).

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 40 of 140

**U.**   **London Market Insurers**

The term "London Market Insurers" means Lloyd's Underwriters and the London Market Companies.

**V.**   **Medicare**

The term "Medicare" means Title XVIII of the Social Security Act, 42 U.S.C. § 1395, et seq., enacted July 1, 1966, including all subsequent amendments thereto.

**W.**   **Medicare Beneficiary**

The term "Medicare Beneficiary" means any individual who has received or is eligible to receive benefits under Medicare and is the holder of a Trust Claim.

**X.**   **MSP or Medicare Secondary Payor Act**

The term "Medicare Secondary Payor Act" or "MSP" means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

**Y.**   **MMSEA**

The term "MMSEA" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173)", which imposes reporting obligations on those Persons with payment obligations under the MSP.

**Z.**   **Person**

The term "Person" means an individual, a corporation, a partnership, an association, a trust, any other entity or organization, and any federal, state or local government or any governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

**AA.**   **Plan**

The term "Plan" means a plan of reorganization that contains all of the following provisions but no provision that is contrary to or inconsistent with this Agreement or any of the following provisions; allows all of the acts and transactions under, and envisioned by, this Agreement to occur with binding legal effect; and does not materially and adversely affect the rights, duties, or interests under this Agreement of London

Market Insurers or the Catholic Entities.  The wording of the Plan shall be mutually acceptable to ADOM and London Market Insurers.  The Plan shall contain provisions:

(i)   incorporating this Agreement;

(ii)  prohibiting plaintiff John Doe 21 from continuing to pursue the State Court Action;

(iii)    requiring (a) ADOM to dismiss its Claims against London Market Insurers in the Declaratory Judgment Action with prejudice, within three (3) Business Days after the entry of the Confirmation Order, (b) prohibiting plaintiffs Donald Marshall and Dean Weissmuller from continuing to pursue the Declaratory Judgment Action against London Market Insurers; and (c) requiring ADOM to move, jointly with the London Market Insurers, for a dismissal with prejudice of the claims of Donald Marshall and Dean Weismuller against London Market Insurers, with prejudice, in the Declaratory Judgment Action;

(iv)  barring the Insurance Litigation Trust from making any payment in respect of any Trust Claim belonging to (a) John Doe 21 until the State Court Action has been dismissed, with prejudice, and (b) Donald Marshall and Dean Weissmuller before their Claims in the Declaratory Judgment Action have been dismissed, with prejudice.  The Insurance Litigation Trust shall provide a certification of its compliance with this Section 1.AA.(iv) to each of the Catholic Entities and the Settling Insurers, and permit reasonable audits by such Persons, to confirm the Insurance Litigation Trust's compliance with this Section 1.AA.(iv);

(v)   setting forth the Related Entities Release and the Settling Insurers Release;

(vi)  establishing the Insurance Litigation Trust, appointing a trustee, and binding both of them to perform those requirements imposed upon them by this Agreement;

(vii)    describing the role of the FCR and seeking the appointment of the FCR to continue in his duties;

(viii)    channeling all allowed Trust Claims to the Insurance Litigation Trust;

(ix) denominating London Market Insurers as Settling Insurers;

(x) requiring that each claimant receiving a payment from the Insurance Litigation Trust sign a written general release that remises, releases, covenants not to sue, and forever discharges all Settling Insurers and the Related Entities from and against all Claims;

(xi) including judgment reduction provisions identical to Section 8;

(xii)    including the following provisions:

a. It is the position of ADOM that neither the Catholic Entities, the Insurance Litigation Trust, nor the Settling Insurers will have any reporting obligations in respect of their contributions to the Insurance Litigation Trust, or in respect of any payments, settlements, resolutions, awards, or other claim liquidations by the Insurance Litigation Trust, under the reporting provisions of MSP or MMSEA. Prior to making any payments to any claimants, the Insurance Litigation Trust shall seek a statement or ruling from the United States Department of Health and Human Services ("HHS") that neither the Insurance Litigation Trust, the Catholic Entities nor the Settling Insurers have any reporting obligations under MMSEA with respect to payments to the Insurance Litigation Trust by the Catholic Entities or the Settling Insurers or payments by the Insurance Litigation Trust to claimants. Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Seventh Circuit or the United States Supreme Court), or a letter from the Secretary of Health and Human Services confirming that the Catholic Entities and the Settling Insurers have no reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Insurance Litigation Trust or with respect to contributions the Catholic Entities and the Settling Insurers have made or will make to the Insurance Litigation Trust, the Insurance Litigation Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the Catholic Entities and the Settling Insurers,

and shall timely submit all reports that would be required to be made by the Catholic Entities or any of the Settling Insurers under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Insurance Litigation Trust or with respect to contributions to the Insurance Litigation Trust, including reports that would be required if the Catholic Entities and the Settling Insurers were determined to be "applicable plans" for purposes of MMSEA, or any of the Catholic Entities and the Settling Insurers were otherwise found to have MMSEA reporting requirements. The Insurance Litigation Trust, in its role as reporting agent for the Catholic Entities and the Settling Insurers, shall follow all applicable guidance published by CMS to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

b. If the Insurance Litigation Trust is required to act as a reporting agent for the Catholic Entities or the Settling Insurers pursuant to the provisions of Section 1.AA.(xii)a., the Insurance Litigation Trust shall provide a written certification to each of the Catholic Entities and the Settling Insurers within ten (10) Business Days following the end of each calendar quarter, confirming that all reports to CMS required by Section 1.AA.(xii)a. have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance, and (b) any payments to Medicare Beneficiaries that the Insurance Litigation Trust did not report to CMS.

c. With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Insurance Litigation Trust shall, upon request by any Catholic Entity or any of the Settling Insurers, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however,* that the Insurance Litigation Trust may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, claimants,

guardians, conservators, and/or other personal
representatives, as applicable. With respect to any
such reports, the Insurance Litigation Trust shall
reasonably undertake to remedy any issues of
noncompliance identified by CMS and resubmit such
reports to CMS, and, upon request by the Catholic
Entities or the Settling Insurers, provide the
Catholic Entities or the Settling Insurers copies of
such resubmissions; *provided, however,* that the
Insurance Litigation Trust may redact from such copies
the names, Social Security numbers other than the last
four digits, health insurance claim numbers, taxpayer
identification numbers, employer identification
numbers, mailing addresses, telephone numbers, and
dates of birth of the injured parties, claimants,
guardians, conservators, and/or other personal
representatives, as applicable. In the event the
Insurance Litigation Trust is unable to remedy any
issue of noncompliance, the provisions of Section
1.AA.(xii)g. shall apply.

   d. If the Insurance Litigation Trust is required to
act as a reporting agent for the Catholic Entities or
the Settling Insurers pursuant to the provisions of
Section 1.AA.(xii)a., with respect to each Claim of a
Medicare Beneficiary that was paid by the Insurance
Litigation Trust and not disclosed to CMS, the
Insurance Litigation Trust shall, upon request by the
ADOM or any of the Settling Insurers, promptly provide
the last four digits of the claimant's Social Security
number, the year of the claimant's birth and any other
information that may be necessary in the reasonable
judgment of the Catholic Entities or any of the
Settling Insurers to satisfy their obligations, if
any, under MMSEA, as well as the basis for the
Insurance Litigation Trust's failure to report the
payment. In the event the Catholic Entities or any of
the Settling Insurers inform the Insurance Litigation
Trust that it disagrees with the Insurance Litigation
Trust's decision not to report a Claim paid by the
Insurance Litigation Trust, the Insurance Litigation
Trust shall promptly report the payment to CMS. All
documentation relied upon by the Insurance Litigation
Trust in making a determination that a payment did not
have to be reported to CMS shall be maintained for a
minimum of six (6) years following such determination.

e. If the Insurance Litigation Trust is required to act as a reporting agent for the Catholic Entities or the Settling Insurers pursuant to the provisions of Sec Section 1.AA.(xii)a., the Insurance Litigation Trust shall make the reports and provide the certifications required by Sections 1.AA.(xii)a. and b. until such time as the Catholic Entities and each of the Settling Insurers determine, in their reasonable judgment, that they have no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Insurance Litigation Trust or contributions to the Insurance Litigation Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 1.AA.(xii)a., and if the Catholic Entities or any of the Settling Insurers reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Insurance Litigation Trust shall promptly perform its obligations under Sections 1.AA.(xii)a. and b.

f. Section 1.AA.(xii)a.is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the Catholic Entities and/or the Settling Insurers are in fact "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Insurance Litigation Trust or contributions to the Insurance Litigation Trust under MMSEA or any other statute or regulation.

g. In the event that CMS concludes that reporting done by the Insurance Litigation Trust in accordance with Section 1.AA.(xii)a. is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Insurance Litigation Trust, the Catholic Entities or any of the Settling Insurers a concern with respect to the sufficiency or timeliness of such reporting, or there appears to the Catholic Entities or any of the Settling Insurers a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section

1.AA.(xii)b., c., or d., or other credible information, then each of the Catholic Entities and the Settling Insurers shall have the right to submit its own reports to CMS under MMSEA, and the Insurance Litigation Trust shall provide to any party that elects to file its own reports such information as the electing party may require in order to comply with MMSEA, including the full reports filed by the Insurance Litigation Trust pursuant to Section 1.AA.(xii)a. without any redactions. The Catholic Entities and the Settling Insurers shall keep any information they receive from the Insurance Litigation Trust pursuant to this Section 1.AA.(xii)g. confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

   h. Notwithstanding any other provisions hereof, if the Insurance Litigation Trust is required to act as a reporting agent for the Catholic Entities or the Settling Insurers, then such Persons shall take all steps necessary and appropriate as required by CMS to permit any reports contemplated by this Section 1.AA.(xii) to be filed. Furthermore, until the Catholic Entities or the Settling Insurers provide the Insurance Litigation Trust with any necessary information that may be provided by the CMS's Coordination of Benefits Contractor to effectuate reporting, the Insurance Litigation Trust shall have no obligation to report under Section 1.AA.(xii)a. with respect to any such Person that has not provided such information, but only so long as such Person has not provided such information; and the Insurance Litigation Trust shall have no indemnification obligation under Section 1.AA.(xii)k. to Catholic Entities or any Settling Insurer for any penalty, interest, or sanction that may arise solely on account of any Catholic Entity's or any Settling Insurer's failure to timely provide such information to the Insurance Litigation Trust in response to a timely request by the Insurance Litigation Trust for such information.

   i. In connection with the implementation of the Plan, the Trustee(s) of the Insurance Litigation Trust shall obtain prior to remittance of funds to claimants' counsel or the claimant, if pro se, in

respect of any Trust Claim a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Trust Claim; otherwise the Insurance Litigation Trust shall withhold from any payment to the claimant funds sufficient to assure that any obligations owing or potentially owing under MSP relating to such Trust Claim are paid to CMS. The Insurance Litigation Trust shall provide a quarterly certification of its compliance with this Section 1.AA.(xii) to each of the Catholic Entities and the Settling Insurers, and permit reasonable audits by such Persons, no more often than quarterly, to confirm the Insurance Litigation Trust's compliance with this Section 1.AA.(xii). For the avoidance of doubt, the Insurance Litigation Trust shall be obligated to comply with the requirements of this Section 1.AA.(xii) regardless of whether the Catholic Entities or any of the Settling Insurers elects to file its own reports under MMSEA pursuant to Section 1.AA.(xii)g.

j. Compliance with the provisions of this Section 1.AA.(xii) shall be a material obligation of the Insurance Litigation Trust in favor of the Settling Insurers under any settlement agreements between any of those insurers and ADOM, which authorizes funding to the Insurance Litigation Trust.

k. The Insurance Litigation Trust shall defend, indemnify and hold harmless the Catholic Entities and the Settling Insurers from any Claims in respect of Medicare Claims reporting and payment obligations in connection with Trust Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Insurance Litigation Trust's obligations under Section 1.AA.(xii); and,

(xiii)   including the following provision, to be entitled "Insurance Neutrality":

Nothing in the Plan, any exhibit to the Plan, any confirmation order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (a) shall affect,

impair or prejudice the rights and defenses of any insurer, any Catholic Entity, the Insurance Litigation Trust, or any other insureds under any insurance policy in any manner; (b) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on any party's legal, equitable, or contractual rights or obligations under any insurance policy in any respect; (c) shall determine the reasonableness of the Plan or any settlement embodied by the Plan, in any way whatsoever; (d) shall be subject to, controlled or affected by, *UNR Ind. v. Continental Cas. Co.*, 942 F.2d 1101 (7th Cir. 1991); or (e) shall otherwise determine the applicability or nonapplicability of any provision of any insurance policy and any such rights and obligations shall be determined under the insurance policy and applicable law. Additionally, any action against any insurer related to any insurance policy shall be brought in a court of competent jurisdiction other than the Bankruptcy Court; *provided, however,* that nothing herein waives any right of any Catholic Entity, the Insurance Litigation Trust, or any insurer to require arbitration to the extent the relevant insurance policy provides for such.

For purposes of this Agreement, the term "Plan" includes all documents, exhibits, attachments, appendices, or other documents filed with or in support of the Plan and necessary for its implementation, and any documents relating to the establishment and operation of the Insurance Litigation Trust.

**BB.** **Plan Payment**

The term "Plan Payment" means the payment by the London Market Insurers to ADOM's bankruptcy estate of a sum equal to fifty percent (50%) of their respective, allocated, several shares of the Settlement Amount, as set forth on Attachment D, for the releases and other provisions contained in this Agreement.

**CC.** **Related Entities**

The term "Related Entities" means:

(i) Those Persons listed on Attachment E, their predecessors and successors; all their past and present subsidiaries

and the predecessors and successors of such
subsidiaries; their past and present affiliates and
joint ventures and their predecessors and successors;
and all their past, present and future assigns; and,

(ii) any other Person that was in the past or is now
affiliated with, related to or associated with the
Related Entities including any corporations that have
been acquired by, merged into or combined with a Related
Person or its predecessors, or the Related Entities'
past and present subsidiaries, affiliates, successors
and assigns; *provided, however*, Persons within the
definition of "ADOM" are not within the definition of
"Related Entities".

**DD.  Related Entities Release**

The term "Related Entities Release" means the release,
remise, and discharge of all Abuse and Trust Claims by all
Persons who now hold or in the future may hold such Claims,
pursuant to § 105 of the Bankruptcy Code.

**EE.  Resolute**

The term "Resolute" means Resolute Management Services
Limited (formerly known as Equitas Management Services Limited).

**FF.  Settlement Amount**

The term "Settlement Amount" means the gross sum of Eight
Million United States Dollars ($8,000,000), which comprises the
Buy-Back Payment and the Plan Payment. Each London Market
Insurer shall pay its respective, allocated several share
pursuant to the terms of Section 2. Each London Market
Insurer's respective, allocated several share of the Settlement
Amount is set forth on Attachment D.

**GG.  Settling Insurers**

The term "Settling Insurers" means London Market Insurers
and any other insurer of ADOM that settles after the Petition
Date and which seeks and obtains the protection of the Settling
Insurers Release as part of its settlement with ADOM.

**HH.  Settling Insurers Release**

The term "Settling Insurers Release" means the release,
remise, and discharge of all Claims relating to the Subject

Insurance Policies, including all Abuse, Contribution, Direct Action, Extra-Contractual, Medicare and Trust Claims, by all Persons who now hold or in the future may hold such Claims against the Settling Insurers, pursuant to § 105 of the Bankruptcy Code.

## II.  Subject Insurance Policies

The term "Subject Insurance Policies" means:  (i) all insurance policies listed in Attachment A hereto; and (ii) all known and unknown insurance policies subscribed by one or more of the London Market Insurers and providing insurance to the Catholic Entities whether or not listed in Attachment A hereto.

## JJ.  Trust Claims

The term "Trust Claims" means (a) all Abuse Claims; and (b) all other Claims against ADOM or any of the Settling Insurers, the liability for which is transferred to the Insurance Litigation Trust.

## KK.  Underwriter Third-Party Beneficiaries

The term "Underwriter Third-Party Beneficiaries" means:

(i)   Resolute and the Equitas Entities;

(ii)  EIL to the extent it is not a successor to the Persons identified in Section 1.S.(i) with respect to the subject matter of this Agreement;

(iii) Any Person from time to time retained by or on behalf of Lloyd's Underwriters to act as their claims handling agent and/or service provider, solely in such capacity;

(iv)  The past, present and future reinsurers and retrocessionaires of the Equitas Entities or any of them, including National Indemnity Company and any other Person from time to time controlled (whether directly or indirectly), by Berkshire Hathaway, Inc., that provides retrocessional reinsurance to any one or more of the Equitas Entities, solely in such capacity;

(v)   All past, present and future trustees, officers, directors, employees, subsidiaries, affiliates, representatives, attorneys and agents of the Persons set

forth in Sections 1.KK.(i) to (iv) (inclusive), if any, solely in such capacity; and,

(vi) The respective heirs, executors, successors and assigns (including any administrator, receiver, trustee, personal representative, liquidator (provisional or otherwise) or equivalent appointee/s under relevant insolvency law), of any of the Persons identified in Sections 1.KK.(i) to (v) (inclusive) above.

## 2. <u>Payment of the Settlement Amount</u>

The total of the Settlement Amount shall be paid upon the completion of two separate steps. The first step shall be the sale of the Subject Insurance Policies back to London Market Insurers, pursuant to §§ 363(b), (f), and (m) and, if applicable, 105(a) of the Bankruptcy Code, and Bankruptcy Rules 6004 and 9019, free and clear of all Claims and Interests of all Persons. Bankruptcy Notice of the sale shall be given as required by the Bankruptcy Code or as ordered by the Bankruptcy Court. If, after a hearing, the Bankruptcy Court does not enter an approval order that meets the definition of "Approval Order" set forth in Section 1.C., this Agreement shall terminate automatically and become void. If, after a hearing, the Bankruptcy Court enters the Approval Order and subsequently enters the Confirmation Order, then, except as provided below, on the date that is thirty (30) Business Days after the first Business Day after the date that the Confirmation Order becomes a Final Order, London Market Insurers shall pay to the Insurance Litigation Trust the Buy-Back Payment. The Buy-Back Payment shall be used by the Insurance Litigation Trust for the payment of Trust Claims.

The second step shall be the Confirmation Order becoming a Final Order. If, after a confirmation hearing upon Bankruptcy Notice, the Bankruptcy Court does not enter a confirmation order that meets the definition of "Confirmation Order" set forth in Section 1.J., London Market Insurers, in their sole discretion, may either: (a) terminate this Agreement, at which point it will become void; or (b) continue this Agreement in effect temporarily while the Parties attempt to negotiate an alternative settlement that could be incorporated into a different plan of reorganization for confirmation by the Bankruptcy Court or an alternative Confirmation Order. If, after a confirmation hearing upon Bankruptcy Notice, the Bankruptcy Court enters a confirmation order that meets the definition of "Confirmation Order" set forth in Section 1.J.,

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 52 of 140

and the Confirmation Order subsequently becomes a Final Order, then, except as provided below, on the date that is thirty (30) Business Days after the first Business Day after the date that the Confirmation Order becomes a Final Order, London Market Insurers shall pay to the bankruptcy estate of ADOM the Plan Payment. The Plan Payment may be used by the bankruptcy estate of ADOM for any legal purpose, including the payment of administrative expenses incurred by ADOM (including ADOM's share of any mediation-related costs, fees, and expenses).

No London Market Insurer entitled to the benefits of this Agreement shall have obligation to pay any amount set forth in Attachment C.

In the event that any Catholic Entity later agrees that any individual London Market Insurer listed in Attachment B may make a lesser payment or may make its payment on terms which differ from the foregoing, then the Catholic Entities shall offer the same payment terms to all other London Market Insurers listed in Attachment B. It is the purpose of this provision to ensure that all London Market Insurers listed in Attachment B shall have the same payment terms.

On the date that the Bankruptcy Court enters the Confirmation Order, the sale, assignment, and transfer of the Subject Insurance Policies by the Catholic Entities to London Market Insurers free and clear of all Interests of all Persons, including the Catholic Entities, shall be effective and binding, with the intent that no Person shall retain anything whatsoever with respect to the Subject Insurance Policies.

If, before the Settlement Amount has been paid in full, a Related Entity becomes a debtor in a bankruptcy case or insolvency proceeding, under the Bankruptcy Code or otherwise, and any London Market Insurer has not satisfied its respective several payment obligation, then such London Market Insurers shall be excused from performance under this Agreement until such time as such Related Entity obtains, subject to the limitations imposed by the Bankruptcy Code and subject to the equitable powers of the Bankruptcy Court, an order from the Bankruptcy Court approving this Agreement under § 363(b), (f) and (m) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 and authorizing the assumption by such Parish or Related Entity (or any successor thereto) of this Agreement under Bankruptcy Code § 365 ("Assumption"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case

approving this Agreement and confirming the binding effect
thereof.  Each Related Entity agrees that in the event of a
bankruptcy or other insolvency proceeding, it will not present
any Claim for payment under this Agreement to any London Market
Insurer, until such time as such Related Entity has made such
Assumption and such Assumption has been approved by an order of
the Bankruptcy Court or other applicable court, and such order
has become a Final Order.

## 3. <u>Several Liability</u>

The Catholic Entities acknowledge that the obligations of
the London Market Insurers are several, and not joint.  The
Catholic Entities agree that no London Market Insurer entitled
to the benefits of this Agreement shall be liable for any
settlement amount allocable to any other London Market Insurer.
Accordingly, each identified London Market Insurer listed in
Section I of Attachment B agrees to pay only its individual,
respective, allocated share of the settlement amount, which
amount is set forth in Attachment D, as applicable. The Catholic
Entities shall not seek to recover from any individual London
Market Insurer an amount in excess of its stated, respective,
allocated share as set forth in Attachment D.  Upon receipt of
payment, the Catholic Entities shall be deemed to have released
each paying London Market Insurer pursuant to the terms of
Section 4 of this Agreement.

## 4. <u>Mutual Releases</u>

1.    By the Catholic Entities

Upon the Insurance Litigation Trust's receipt of each
London Market Insurer's respective Buy-Back Payment, each
Catholic Entity, and any subsequently appointed trustee or
representative acting for each Catholic Entity, shall be deemed
to remise, release, covenant not to sue, and forever discharge
the following:   (i) the London Market Insurer making such
payment; (ii) each of that London Market Insurer's present and
former officers, directors, employees, partners, limited
partners, shareholders, members, subsidiaries, affiliates,
representatives, attorneys and agents (a) in such capacity and
(b) in their individual capacity and; (iii) the respective
heirs, executors, administrators, successors, assigns and
reinsurers (as such) of any of the Persons identified in
subparagraphs (i) and (ii) hereof as follows: from and against
all Claims that each Catholic Entity ever had, now has, or

hereafter may have from the beginning of time to the date that the Confirmation Order becomes a Final Order ("Release").

Those London Market Insurers entitled to the Release but not identified on Attachment B to this Agreement, namely, those Underwriters at Lloyd's and those London Market Companies described in the definition of London Market Insurers as Persons which subscribed a Subject Insurance Policy either not presently known, or known but to which the identity of the subscribers is not presently known, shall be entitled to all of the terms of the Release (and to the Indemnity set forth in Section 5), one-hundred twenty (120) days after the Insurance Litigation Trust's first receipt of a Buy-Back Payment described in Section 2.

It is the intention of each Catholic Entity to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies with respect to any past, present, or future Claims and to assure the settling London Market Insurers their peace and freedom from such Claims and from all assertions of rights in connection with such Claims, including the amounts set forth on Attachment C; *provided, however,* nothing in this Agreement shall affect the rights of the Catholic Entities to collect the amounts listed on Attachment C from those insurance companies listed on Attachment C.

Upon the Insurance Litigation Trust's receipt of each London Market Insurer's respective Buy-Back Payment, any and all rights, duties, responsibilities, and obligations of such London Market Insurer created by or in connection with the Subject Insurance Policies is hereby terminated. As of the date of such payment the Catholic Entities have no insurance coverage under the Subject Insurance Policies. The Release is intended to operate as though the London Market Insurers which pay their respective Buy-Back Payments had never subscribed the Subject Insurance Policies.

The Release extends to all those London Market Insurers that subscribed any of the Subject Insurance Policies, which include both known and unknown policies. The Release also extends to all those London Market Companies identified in Section I of Attachment B that pay their respective Buy-Back Payments as regards their subscription of any of the Subject Insurance Policies, which include both known and unknown policies.

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 55 of 140

The Release also extends to the Underwriter Third-Party Beneficiaries, all of which are third-party beneficiaries of the terms of the Release.

Each Catholic Entity understands and acknowledges that by signing this Agreement, it, among other things, is releasing all Claims against the London Market Insurers, including Claims that it does not know or suspect to exist in its favor, which, if known by such Catholic Entity, must have materially affected its settlement with the London Market Insurers, and expressly waives all rights it might have under any federal, state, local, or other law or statute that would in any way limit, restrict, or prohibit such general release.

Each Catholic Entity expressly assumes the risk that acts, omissions, matters, causes or things may have occurred which it does not know or does not suspect to exist. Each Catholic Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (i) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or, (ii) which restricts or prohibits the releasing of such claims.

**LL.   By London Market Insurers**

At the same time the Release described in Section 4.A. becomes effective, each London Market Insurer so released, and any subsequently appointed trustee or representative acting for such London Market Insurer shall be deemed to remise, release, covenant not to sue, and forever discharge: (i) each Catholic Entity; (ii) each of such Catholic Entity's present and former officers, directors, employees, partners, limited partners, shareholders, members, subsidiaries, affiliates, representatives, attorneys and agents (a) in such capacity and (b) in their individual capacity; and (iii) the respective heirs, executors, administrators, successors, and assigns of any of the Persons identified in subparagraphs (i) and (ii) hereof as follows: from and against all Claims, which each such London Market Insurer ever had, now has or hereinafter may have from the beginning of time to the date that the Confirmation Order becomes a Final Order.

It is the intention of each London Market Insurer released under the Release to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies.

## 5. <u>Indemnification</u>

A.    The Insurance Litigation Trust shall indemnify and hold harmless London Market Insurers in respect of any and all Claims arising under or relating in any way to the Subject Insurance Policies, including all Claims, whether Abuse, Contribution, Direct Action, Extra-Contractual, Medicare or Trust Claims, or otherwise, made by:  (i) other insurers of the Catholic Entities; (ii) any Person claiming to be insured under the Subject Insurance Policies; (iii) any Person who has made, will or can make a Claim; (iv) any Person who has acquired or been assigned the right to  make a Claim under the Subject Insurance Policies; or (v) any federal, state or local government or any political subdivision, agency, department, board or instrumentality thereof, including the State of Minnesota, pursuant to the Minnesota Landfill Cleanup Act, Minn. Stat. § 115B.39 *et seq*. or the Minnesota Insurance Recovery Act of 1996, Minn. Stat. § 115B.441 *et seq*.  This indemnification includes Claims made by Persons over whom the Insurance Litigation Trust does not have control, including the Catholic Entities, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts Claims against or rights to coverage under the Subject Insurance Policies.  For purposes of the indemnification obligation of the Insurance Litigation Trust, the term "Claim" also includes amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

B.    The London Market Insurers shall have the right to defend, with counsel of their choice, all Claims identified under Section 5.A.  London Market Insurers may begin the defense of any Claim upon receipt of such a Claim.  London Market Insurers agree to notify the Insurance Litigation Trust as soon as practicable of Claims identified under Section 5.A. and of its choice of counsel.

C.    The Insurance Litigation Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the London Market Insurers in defending such Claims.  London Market Insurers shall defend any such Claim in good faith.  In defense of any such Claim, London Market Insurers may settle or otherwise resolve a Claim without the prior consent of the Insurance Litigation Trust.

D.    This indemnification and hold harmless undertaking (Sections 5.A., B. and C.) shall also extend to the benefit of the Underwriter Third-Party Beneficiaries, all of which are

third-party beneficiaries of the terms of this indemnification and hold harmless undertaking.

## 6. Bankruptcy Obligations

A.    ADOM shall provide to London Market Insurers an initial draft of the proposed approval order, proposed findings of fact and conclusions of law in support of the Approval Order, and the proposed bar order twenty (20) days before ADOM submits the foregoing to the Bankruptcy Court, so that London Market Insurers may provide comments and suggestions.  In the event that ADOM makes material revisions to any of the foregoing documents, then, as soon as possible, ADOM shall provide a copy of such material revisions to London Market Insurers.  London Market Insurers reserve the right to object to, inter alia, (i) any proposed approval order or findings of fact and conclusions of law in support thereof that do not satisfy all of the requirements of the definition of "Approval Order" set forth in Section 1.C., and (ii) any proposed bar order that does not satisfy all of the requirements of the definition of "Bar Order" set forth in Section 1.E.

B.    ADOM shall provide to London Market Insurers an initial draft of the proposed confirmation order and proposed findings of fact and conclusions of law in support of the confirmation order twenty (20) days before ADOM submits the foregoing to the Bankruptcy Court, so that London Market Insurers may provide comments and suggestions.  In the event that ADOM makes material revisions to any of the foregoing documents, then, as soon as possible, ADOM shall provide a copy of such material revisions to London Market Insurers.  London Market Insurers reserve the right to object to, inter alia, any proposed confirmation order or findings of fact and conclusions of law in support thereof that do not satisfy all of the requirements of the definition of "Confirmation Order" set forth in Section 1.J.

C.    ADOM shall provide to London Market Insurers an initial draft of the proposed plan of reorganization and proposed findings of fact and conclusions of law in support of the plan of reorganization ten (10) days before ADOM submits the foregoing to the Bankruptcy Court, so that London Market Insurers may provide comments and suggestions.  In the event that ADOM makes material revisions to any of the foregoing documents, then, as soon as possible, ADOM shall provide a copy of such material revisions to London Market Insurers.  London Market Insurers reserve the right to object to, inter alia, any

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 58 of 140

proposed plan of reorganization or findings of fact and conclusions of law in support thereof that do not satisfy all of the requirements of the definition of "Plan" set forth in Section 1.AA. ("Non-Compliant Plan"). If ADOM proposes a Non-Compliant Plan, then London Market Insurers may contest such plan, and ADOM shall not request a hearing date on confirmation of such plan which is less than one hundred and twenty (120) Business Days after the date upon which such plan is filed in the Bankruptcy Court.

D. ADOM will seek entry of the Confirmation Order together with supporting findings of fact and conclusions of law as set forth in Section I.J., including any required findings and conclusions under the Bankruptcy Code.

E. ADOM shall serve Bankruptcy Notice of the hearing(s) on confirmation of the Plan and approval of this Agreement and the time for filing objections thereto. The proposed form of notice shall be submitted to London Market Insurers for their approval no later than ten (10) days prior to the actual service of notice, such approval not to be unreasonably withheld.

F. In the event that any Person attempts to prosecute a Claim against London Market Insurers before the Confirmation Order becomes a Final Order, including an Abuse Claim, a Contribution Claim, a Direct Action Claim, an Extra-Contractual Claim, a Medicare Claim, a Trust Claim, a Claim relating to the Subject Insurance Policies, or a Claim made, or that could have been made, in the Coverage Litigation, then promptly following notice from London Market Insurers to do so, ADOM will file a motion and supporting papers to obtain an order from the Bankruptcy Court, pursuant to Bankruptcy Code S 105(a), staying such Claims until the date that the Confirmation Order becomes a Final Order, or, alternatively, this Agreement is terminated under Section 2. *Provided, however*, if ADOM is unable to obtain a stay of any such action pending the confirmation of the Plan, and a claimant obtains a judgment against London Market Insurers, then ADOM and London Market Insurers agree that ADOM may, at its sole option, agree to reduce the Settlement Amount by the amount of any such judgment or, if ADOM does not reduce the Settlement Amount, London Market Insurers may terminate this Agreement, at which time it shall become void.

G. In the event that any Person attempts to prosecute an Abuse or Trust Claim against any Related Entity before the Confirmation Order becomes a Final Order, then promptly following notice from such Related Entity to do so, ADOM will

file a motion and supporting papers to obtain an order from the Bankruptcy Court, pursuant to Bankruptcy Code § 105(a), staying such Claims until the date that the Confirmation Order becomes a Final Order, or, alternatively, this Agreement is terminated under Section 2.

## 7. <u>Representations and Warranties</u>

A.    ADOM represents and warrants that the notice required under the definition of "Bankruptcy Notice" includes all claimants whose names and addresses are known to ADOM or are readily ascertainable.

B.    ADOM acknowledges and warrants that no Person other than a Catholic Entity has legal title or rights as an insured, other insured, or otherwise insured or claims to be insured under the Subject Insurance Policies.

C.    Each Catholic Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation.

D.    ADOM represents and warrants that each Catholic Entity has the authority to execute this Agreement as a binding and legal obligation.

E.    Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

F.    Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

## 8. <u>Judgment Reduction Clause.</u>

A.    In any proceeding, suit, or action, including the Declaratory Judgment Action, to the extent the Declaratory Judgment Action remains pending against insurers that are not Settling Insurers and is assigned to the Insurance Litigation Trust pursuant to the Plan, involving the Insurance Litigation Trust and one or more other insurers, where any insurer has asserted, asserts, or could assert any Contribution Claim against a London Market Insurer, then any judgment obtained by the Insurance Litigation Trust against such other insurer shall be automatically reduced by the amount, if any, that the London

Market Insurers would have been liable to pay such other insurer as a result of that insurer's Contribution Claim so that the Contribution Claim by such other insurer against such London Market Insurer is thereby satisfied and extinguished entirely. In order to effectuate this clause in any action against another insurer where London Market Insurers are not parties, the Insurance Litigation Trust shall obtain a finding from that court of what amount such London Market Insurers would have been required to pay such other insurer under its Contribution Claim, before entry of judgment against such other insurer.

B. In any settlement agreement between the Insurance Litigation Trust and another insurer, where such insurer has asserted, asserts, or could assert any Contribution Claim against a London Market Insurer, then any settlement amount agreed by the settling parties shall be automatically reduced by the amount, if any, that such London Market Insurer would have been liable to pay such other insurer as a result of that insurer's Contribution Claim so that the Contribution Claim by such other insurer against such London Market Insurer is thereby satisfied and extinguished entirely. In the event that the settling parties are unable to agree on the amount of the Contribution Claim being extinguished, the settling parties shall obtain a finding from the Court of what amount such London Market Insurer would have been required to pay such other insurer under its Contribution Claim.

C. Each London Market Insurer agrees that it will not pursue any Contribution Claim that it might have against any insurer (a) described in Sections 8.A. or B., whose Contribution Claim against London Market Insurers is satisfied and extinguished entirely; or (b) that does not make a Contribution Claim against London Market Insurers. Notwithstanding the foregoing, if a Person pursues a Contribution Claim against a London Market Insurer, then such London Market Insurer shall be free to assert its Contribution Claims against such Person.

D. The Insurance Litigation Trust shall use its best efforts to obtain from all other insurers with which it executes a settlement after the date this Agreement has been fully executed, agreements similar to those contained in this Section 8.

## 9. Reasonably Equivalent Value

The Parties acknowledge and agree that: (i) this Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations; (ii) based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of maintaining the Declaratory Judgment Action, the payments received by the Insurance Litigation Trust pursuant to this Agreement constitute a fair and reasonable settlement of ADOM's Claims asserted in the Declaratory Judgment Action, and the Claims raised in the Dispute; (iii) the payments and other benefits received under this Agreement by the Insurance Litigation Trust and the Catholic Entities constitute reasonably equivalent value for the Release, indemnity, and other benefits received by London Market Insurers under this Agreement; and (iv) this Agreement constitutes a full and final resolution of all issues in the Declaratory Judgment Action.

## 10. Confidentiality

Except as necessary to obtain approval of this Agreement in the Bankruptcy Court, the Parties agree that all matters relating to the terms, negotiation, and implementation of this Agreement shall be confidential and are not to be disclosed except by order of court or agreement, in writing, of the Parties, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to: (i) reinsurers of any London Market Insurers directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or allegedly subscribing one or more of the Subject Insurance Policies, which insurer is, has been or may become insolvent in the future, including any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered Persons acting for such insurer. This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law.

In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall decline to provide the requested information on the ground that this Agreement prevents such disclosure. In the event such private

litigant seeks an Order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall immediately give written notice by facsimile or hand-delivery to the other Party, and shall immediately provide copies of all notice papers, orders, requests or other documents in order to allow each Party to take such protective steps as may be appropriate. Notice shall be made under this paragraph to the persons identified in Section 16.

Material protected by this paragraph shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 11. <u>Co-operation</u>

The Catholic Entities will undertake all reasonable actions to co-operate with London Market Insurers in connection with their respective reinsurers, including responding to reasonable requests for information and meeting with representatives of reinsurers. Furthermore, the Parties shall use their reasonable best efforts and cooperate as necessary or appropriate to effectuate the objectives of this Agreement.

## 12. <u>Non-Prejudice and Construction of Agreement</u>

This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the policies that are the subject of the Declaratory Judgment Action.

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to positions taken by London Market Insurers with regard to other insureds, and without prejudice with regard to positions taken by the Catholic Entities with regard to other insurers. Except for the express references to the Underwriter Third-Party Beneficiaries herein, the Parties

specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will assert that any ambiguity in this agreement shall be construed against another Party.

If any provision of the Plan, or any trust agreement or trust distribution procedures proposed thereunder conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Plan nor any trust agreement shall be construed or interpreted to modify or affect any rights or obligations of London Market Insurers under this Agreement.

## 13.  No Modification

No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties.

## 14.  Execution

There will be two signed originals of this Agreement.

## 15.  Governing Law

This Agreement shall be governed by and shall be construed in accordance with the laws of Wisconsin.

## 16.  Notices

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the following person:

ADOM:                          Archbishop Jerome E. Listecki
                               Archdiocese of Milwaukee
                               3501 South Lake Drive
                               Milwaukee, WI  53207-0912

                               Mr. John J. Marek, Chief
                               Financial Officer
                               Archdiocese of Milwaukee
                               3501 South Lake Drive
                               Milwaukee, WI  53207-0912

| With copies to: | Whyte Hirschboeck Dudek S.C. |
| | Daryl L. Diesing, Esq. |
| | 555 East Wells Street |
| | Suite 1900 |
| | Milwaukee, WI 53202-3819 |
| | Tel: 414.978.5523 |

THE RELATED ENTITIES LISTED ON EXHIBIT F:

Foley & Lardner LLP
Thomas L. Shriner, Jr., Esq.
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: 414.297.5601

EACH RELATED ENTITY LISTED ON EXHIBIT G

THE RESPECTIVE OFFICE AND/OR PERSON LISTED ON EXHIBIT G AS APPROPRIATE FOR NOTICE FOR SUCH ENTITY

LONDON MARKET INSURERS

For Resolute:

Martin Futter, Esq. LLB (Hons)
PGDip (LPC)
Account Manager
Resolute Management Ltd.
London Underwriting Centre
6th Floor, 3 Minster Court
Mincing Lane
London EC3R 7DD
England
Tel: +44 (0) 207 342 2455

For Company Leader:

Steve Paton
Senior Claims Handler
Dominion Insurance Company
6th Floor
5-10 Bury Street
London
EC3A 5AT
England
Tel: + 44 (0) 207 256 3980

With copies to:

Catalina J. Sugayan, Esq.
Sedgwick LLP
One North Wacker Drive
Suite 4200
Chicago, IL 60606-2841

Tel: 312.849.1974

Russell W. Roten, Esq.
Duane Morris LLP
865 South Figueroa Street
Suite 3100
Los Angeles, CA 90017-5450
Tel: 213.689.7439

This Agreement, including the attachments, constitutes the entire Agreement between London Market Insurers and the Catholic Entities, with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect thereto.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their duly authorized representatives.

The London Market Insurers identified in Section I of Attachment B have respectively designated _____ *(law firm)* as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[Signature Pages Follow]

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 66 of 140

```
Signed:_____
      Archdiocese of Milwaukee


Signed:_____
      (For the London Market Insurers)



Signed:_____
      (Statutory Designee)

Most Reverend Archbishop Jerome E.
Listecki, pursuant to Wisconsin
Statutes section 187.19(11), on behalf
of defunct or dissolved Roman Catholic
churches, or related societies or
religious corporations, specifically
including but not limited to
Consolidated School District, Holy
Angels (Milwaukee), Mary Help of
Christians (West Allis), Our Lady of
Mt. Carmel (West Allis), St. Agnes
(Milwaukee), St. Anne (Milwaukee), St.
Boniface (Milwaukee), St. Emeric
(Milwaukee), St. Gall (Milwaukee), St.
Gerard (Milwaukee), St. John de Nepomuc
Parish (Milwaukee), St. Joseph (West
Allis), St. Leo (Milwaukee), and St.
Therese (Powers Lake)
```

Annunciation Congregation
(Fox Lake) (a/k/a
Annunciation Parish), on its
own behalf and as successor
in interest to the insurance
rights of to St. Gabriel
(Randolph), St. Mary's (Fox
Lake), and St. Mary's (Lost
Lake)

By:_____
     (Name)
Title:_____
Date:_____, 2014

Blessed Sacrament
Congregation (Milwaukee)
(a/k/a Blessed Sacrament
Parish), on its own behalf
and as successor in interest
to the insurance rights of
Corpus Christi (Milwaukee),
Mother of Perpetual Help
(Milwaukee), Our Lady of
Sorrows (Milwaukee), St.
Philip Neri (Milwaukee), and
St. Stephen (Milwaukee)

By:_____
     (Name)
Title:_____
Date:_____, 2014

Blessed John Paul II
Congregation (Milwaukee)
(a/k/a Blessed John Paul II
and Holy Wisdom), on its own
behalf and as successor in
interest to the insurance
rights of St. Alexander
(Milwaukee), St. Helen
(Milwaukee), and St. John
Kanty (Milwaukee)

By:_____
     (Name)
Title:_____
Date:_____, 2014

Blessed Teresa of Calcutta
Congregation (North Lake)
(a/k/a Blessed Teresa of
Calcutta), on its own behalf
and as successor in interest
to the insurance rights of St.
Clare (North Lake) and St.
John (Monches)

By:_____
     (Name)
Title:_____
Date:_____, 2014

44 of 116

Blessed Savior Parish
(Milwaukee)(a/k/a Blessed
Savior School), on its own
behalf and as successor in
interest to the insurance
rights of Corpus Christi
(Milwaukee), Mother of
Perpetual Help (Milwaukee),
Our Lady of Sorrows
(Milwaukee), St. Philip Neri
(Milwaukee), and St. Stephen
(Milwaukee)

Calvary Cemetery (Fond du Lac)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

Blessed Trinity Congregation
(Sheboygan Falls) (a/k/a
Blessed Trinity), on its own
behalf and as successor in
interest to the insurance
rights of St. George (St.
George) and St. Mary
(Sheboygan Falls) and St.
Rose Lima (Sheboygan Falls)

Congregation of St. John's
Cathedral (Milwaukee) (a/k/a
Cathedral of St. John the
Evangelist)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

Catholic Charities of the
Archdiocese of Milwaukee, Inc.
(a/k/a Catholic Charities;
f/k/a Catholic Social Services
of the Archdiocese of
Milwaukee, Inc. And Catholic
Social Welfare Bureau)

Calvary Cemetery
Calvary Cemetery, Sheboygan,
Wisconsin (a/k/a Calvary
Cemetery)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 69 of 140

Catholic Cemetery Assoc. of
Racine, Inc.

By:_____
    (Name)
Title:_____
Date:_____, 2014

All Saints Catholic East
School System, Inc. (a/k/a
Catholic East Elementary)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Christ Child Christian
Formation Ministry, Inc.
(a/k/a Christ Child Academy)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Catholic Memorial High School
of Waukesha, Inc.(a/k/a
Catholic Memorial High School)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Christ King Congregation
(Wauwatosa)(a/k/a Christ King
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Consolidated Parochial
Elementary School Johnsburg
Marytown-Mt. Calvary-St.
Cloud, Inc. (a/k/a
Consolidated Parochial
Elementary)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Good Shepherd Congregation
(Eden) (a/k/a Congregation of
Good Shepherd), on its own
behalf and as successor in
interest the insurance rights
of to Our Lady of Angels
(Armstrong) and St. Mary
(Eden) and St. Michael
(Dotyville) and St. Michael      DeSales Preparatory Seminary,
(Mitchell)                       Inc. (a/k/a DeSales Prep/ACCC)


By:_____      By:_____
   (Name)                            (Name)
Title:_____      Title:_____
Date:_____, 2014       Date:_____, 2014


                                  Divine Savior Congregation
                                  (Fredonia) (a/k/a Divine
                                  Savior), on its own behalf and
                                  as successor in interest to
                                  the insurance rights of Holy
                                  Cross (Holy Cross) and Mother
                                  of Sorrows (Little Kohler) and
Cristo Rey Congregation           St. Mary (Belgium) and St.
(Racine) (a/k/a Cristo Rey        Rose of Lima (Fredonia)
Parish)


By:_____      By:_____
   (Name)                            (Name)
Title:_____      Title:_____
Date:_____, 2014       Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 71 of 140

Divine Mercy Congregation
(South Milwaukee) (a/k/a
Divine Mercy), on its own
behalf and as successor in
interest to the insurance
rights of St. John (South
Milwaukee) and St. Mary
(South Milwaukee) and St.
Sylvester (South Milwaukee)
and St. Adalbert (South
Milwaukee)

Gesu Parish Inc.
(Milwaukee)(a/k/a Gesu Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

Good Shepherd Congregation
(Menomonee Falls (a/k/a Good
Shepherd Parish)

Congregation of the Holy
Assumption (West Allis) (a/k/a
Holy Assumption Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

Holy Family Congregation (Fond
Du Lac) (a/k/a Holy Family),
on its own behalf and as
successor in interest to the
insurance rights of Sacred
Heart (Fond Du Lac) and St.
Joseph (Fond Du Lac) and St.
Louis (Fond Du Lac) and St.
Patrick (Fond Du Lac) and St.
Peter (Whitewater)

Congregation of the Holy
Apostles (New Berlin (a/k/a
Holy Apostles Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 72 of 140

Holy Cross Parish (Bristol),
on its own behalf and as
successor in interest to the
insurance rights of Holy Name
of Jesus (Wilmot) and St.
Scholastica (Bristol)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Congregation of the Holy
Family (Reeseville)(a/k/a
Holy Family Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Congregation of the Holy Name
(Sheboygan) (a/k/a Holy Name
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Holy Trinity Congregation
(Kewaskum (a/k/a Holy Trinity
Parish), on its own behalf
and as successor in interest
to the insurance rights of
St. Bridget (Wayne) and St.
Mathias (Auburn)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Holy Family Congregation
(Whitefish Bay) (a/k/a Holy
Family Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Holy Sepulcher Cemetery

By:_____
    (Name)
Title:_____
Date:_____, 2014

Holy Trinity Congregation
(Newburg) (a/k/a Holy Trinity
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Congregation of the Immaculate
Conception (Burlington)(a/k/a
Immaculate Conception Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 73 of 140

The Congregation of the
Immaculate Conception
(Milwaukee) (a/k/a Immaculate
Conception Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Immaculate Conception
Congregation (Sheboygan)
(a/k/a Immaculate Conception
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Immaculate Heart of Mary
Congregation (West Allis)
(a/k/a Immaculate Heart of
Mary)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Mary Queen of Heaven
Congregation (West Allis)
(a/k/a Mary Queen Of Heaven
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Congregation of the Immaculate
Conception (West Bend) (a/k/a
Immaculate Conception Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Lumen Christi Congregation
(Mequon) (a/k/a Lumen
Christi), on its own behalf
and as successor in interest
to the insurance rights of St.
Cecilia (Thiensville) and St.
James (Mequon)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Mary Queen of Saints Catholic
Academy

By:_____
   (Name)
Title:_____
Date:_____, 2014

Milwaukee Catholic Press
Apostolate (a/k/a Milwaukee
Catholic Press/Cath Herald)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 74 of 140

M.H.S., Inc. (a/k/a Messmer
High School)

Nativity of the Lord
Congregation (Cudahy)(a/k/a
Nativity of the Lord), on its
own behalf and as successor
the insurance rights of in
interest to Holy Family
(Cudahy) and St. Frederick
(Cudahy) and St. Joseph
(Cudahy)

By: _____
   (Name)
Title: _____
Date: _____, 2014

By: _____
   (Name)
Title: _____
Date: _____, 2014

Mother of Good Counsel
Congregation (Milwaukee)
(a/k/a Mother of Good Counsel
Parish)

Milwaukee Archdiocesan Office
for World Mission, Inc.
(Milwaukee)(a/k/a Office for
World Missions)

By: _____
   (Name)
Title: _____
Date: _____, 2014

By: _____
   (Name)
Title: _____
Date: _____, 2014

Our Lady of Divine Providence
Congregation (Milwaukee)
(a/k/a Our Lady Of Divine
Providence), on its own behalf
and as successor in interest
to the insurance rights of St.
Casimir (Milwaukee) and St.
Mary of Czestochowa Church
(Milwaukee)

Northwest Catholic School

By: _____
   (Name)
Title: _____
Date: _____, 2014

By: _____
   (Name)
Title: _____
Date: _____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 75 of 140

St. Mary's Congregation
(Milwaukee) (a/k/a Old St.
Mary and St. Mary's (Old)
Church) (Milwaukee)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Our Lady of Good Hope
Congregation (Milwaukee)
(a/k/a Our Lady of Good Hope
Parish)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Our Lady of Lourdes
Congregation (Milwaukee)
(a/k/a Our Lady of Lourdes
Parish)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Our Lady of Guadalupe
Congregation (Milwaukee)
(a/k/a Our Lady of Guadalupe)
on its own behalf and as
successor in interest to the
insurance rights of St.
Wenceslaus (Milwaukee)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Our Lady of Mount Carmel
(Kenosha) (a/k/a Our Lady of
Mt Carmel Parish)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Congregation of Our Lady of
the Lakes (Random Lake) (a/k/a
Our Lady of the Lakes), on its
own behalf and as successor in
interest to the insurance
rights of St. Mary (Cascade)
and St. Mary (Random Lake) and
St. Nicholas (Dacada) St.
Patrick (Adell)

By: _____
   (Name)
Title: _____
Date: _____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 76 of 140

Congregation of the Holy
Rosary of Pompeii (Kenosha)
(a/k/a Our Lady of the Holy
Rosary and Our Lady of
Rosary)

Our Risen Savior
Congregation)(Woodhull) (a/k/a
Our Risen Savior-Woodhull), on
its own behalf and as
successor in interest to the
insurance rights of St. John
the Baptist (Woodhull) and St.
Mary (Eldorado)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

Our Lady, Queen of Peace
Congregation (Milwaukee)
(a/k/a Our Lady Queen of
Peace Parish)

Port Washington Catholic
School, Inc. (Port Washington)
(a/k/a Port Washington
Catholic Schools)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

Prince of Peace/Principe de
Paz Congregation (Milwaukee)
(a/k/a Prince of
Peace/Principe de Paz), on its
own behalf and as successor in
interest to the insurance
rights of St. Lawrence
(Milwaukee) and St. Matthew
(Milwaukee)

Pius XI High School, Inc.
(Milwaukee) (a/k/a Pius XI
High School)

By: _____
    (Name)
Title: _____
Date: _____, 2014

By: _____
    (Name)
Title: _____
Date: _____, 2014

53 of 116

Church of the Presentation
B.V.M. (North Fond Du Lac)
(a/k/a Presentation of the
Blessed Virgin Mary)

By: _____
      (Name)
Title:_____
Date: _____, 2014

Providence Catholic School

By: _____
      (Name)
Title:_____
Date: _____, 2014

Congregation of the
Resurrection (Allenton)
(a/k/a Resurrection Parish),
on its own behalf and as
successor in interest to the
insurance rights of Sacred
Heart (Allenton) and Ss.
Peter & Paul (Nenno) and St.
Anthony (Allenton)

By: _____
      (Name)
Title:_____
Date: _____, 2014

Queen of Apostles Congregation
(Pewaukee) (a/k/a Queen of
Apostles Parish), on its own
behalf and as successor in
interest to the insurance
rights of Ss. Peter & Paul
(Pewaukee) and St. Mary
(Pewaukee)

By: _____
      (Name)
Title:_____
Date: _____, 2014

Sacred Heart of Jesus
Congregation (St. Francis)
(a/k/a Sacred Heart of Jesus
Parish)

By: _____
      (Name)
Title:_____
Date: _____, 2014

Sacred Heart Congregation
(Racine) (a/k/a Sacred Heart
Parish)

By: _____
      (Name)
Title:_____
Date: _____, 2014

54 of 116

Sacred Heart Congregation
(Milwaukee) (a/k/a Sacred
Heart Parish)

Society for the Propagation of
the Faith, Archdiocese of
Milwaukee (Milwaukee) (a/k/a
Society for the Propagation of
the Faith and Office for the
Propagation of the Faith and
Office for the Propagation of
the Faith)

By:_____
   (Name)
Title:_____
Date:_____, 2014

By:_____
   (Name)
Title:_____
Date:_____, 2014

Sacred Heart Congregation
(Horicon) (a/k/a Sacred Heart
Parish-Horicon), on its own
behalf and as successor in
interest to the insurance
rights of Immaculate
Conception (Juneau) and St.
Malachy (Muskego)

Ss. Cyril and Methodius
Congregation (Milwaukee)
(a/k/a Ss. Cyril & Methodius
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

By:_____
   (Name)
Title:_____
Date:_____, 2014

Sons of Zebedee: Ss. James and John Congregation (Byron) (a/k/a Sons of Zebedee), on its own behalf and as successor in interest to the insurance rights of St. James (Oakfield) and St. John (Byron)

By: _____
    (Name)
Title: _____
Date: _____, 2014

Ss. Cyril and Methodius' Congregation (Sheboygan) (a/k/a Ss. Cyril & Methodius Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Adalbert's Congregation (Milwaukee) (a/k/a St. Adalbert Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Aloysius' Congregation (West Allis) (a/k/a St. Aloysius Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

Ss. Peter and Paul (Milwaukee) (a/k/a Ss. Peter & Paul Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Agnes Congregation (Butler) (a/k/a St. Agnes Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Alphonsus Congregation (Greendale) (a/k/a St. Alphonsus Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Andrews Congregation (Leroy) (a/k/a St. Andrew)

By: _____
    (Name)
Title: _____
Date: _____, 2014

56 of 116

St. Alphonsus Congregation
(New Munster) (a/k/a St.
Alphonsus Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Andrew's Congregation
(Delavan) (a/k/a St. Andrew
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Anthony's Congregation
(Pewaukee) (a/k/a St. Anthony
on the Lake Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Anthonys Congregation
(Milwaukee) (a/k/a St.
Anthony Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Anthony's Congregation
(Kenosha) (a/k/a St. Anthony
of Padua Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Anthony's Congregation
(Menomonee Falls) (a/k/a St.
Anthony Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Augustin's Congregation
(Trenton) (a/k/a St. Augustine
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Augustinus Congregation
(Milwaukee) (a/k/a St.
Augustine Parish of Hippo)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 81 of 140

St. Augustin Congregation
(West Allis) (a/k/a St.
Augustine Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Benedict's Congregation
(Fontana) (a/k/a St. Benedict
Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Bernard's Congregation
(Wauwatosa) (a/k/a St.
Bernard Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014




St. Brendan's Congregation
(Brandon) (a/k/a St. Brendan
Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Bernadette Congregation
(Milwaukee) (a/k/a St.
Bernadette Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Bonifacius Congregation
(Germantown) (a/k/a St.
Boniface Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Bruno's Congregation
(Dousman) (a/k/a St. Bruno
Parish)


By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Catherine of Siena
Congregation (Ripon) (a/k/a
St. Catherine of Siena), on
its own behalf and as
successor in interest to the
insurance rights of St.
Patrick (Ripon) and St.
Wenceslaus (Ripon)


By:_____
   (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 82 of 140

St. Catherine's Congregation
(76th Place) (Milwaukee)
(a/k/a St. Catherine of
Alexandria)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Catherine's Congregation
(Mapleton) (a/k/a St.
Catherine Parish and
Catharine's Congregation)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Catherine's Congregation
(Sharon) (a/k/a St. Catherine
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Charles Borromeo
Congregation (Milwaukee)
(a/k/a St. Charles Borromeo
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Catherine's Congregation
(51st and Center) (Milwaukee)
(a/k/a St. Catherine Parish)
on its own behalf and as
successor in interest to the
insurance rights of Holy
Redeemer (Milwaukee) and St.
Albert (Milwaukee) and St.
Nicholas (Kewaskum)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Charles Congregation
(Burlington) (a/k/a St.
Charles Borromeo Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Charles Cemetery
Association

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Charles Youth & Family
Services, Inc. (Milwaukee)
(a/k/a St. Charles, Inc.)

By:_____
    (Name)
Title:_____
Date:_____, 2014

59 of 116

St. Charles Congregation
(Hartland) (a/k/a St. Charles
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Clare Congregation (Wind
Lake) (a/k/a St. Clare
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Columbkill's Congregation
(Elba) (a/k/a St. Columbkille
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014




St. Dominic Congregation
(Sheboygan) (a/k/a St.
Dominic Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Clement's Congregation
(Sheboygan) (a/k/a St. Clement
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Dominic's Congregation
(Brookfield) (a/k/a St.
Dominic Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Edward's Congregation
(Racine) (a/k/a St. Edward
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


Congregation of St. Elizabeth
(Kenosha) (a/k/a St. Elizabeth
Parish), on its own behalf and
as successor in interest to
the insurance rights of St.
Casimir (Kenosha) and St.
George (Kenosha)


By:_____
     (Name)
Title:_____
Date:_____, 2014

Saint Elizabeth Ann Seton
(New Berlin)(a/k/a St.
Elizabeth Ann Seton Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Florian's Congregation (W
Milwaukee) (a/k/a St. Florian
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Congregation of St. Francis
Borgia (Cedarburg) (a/k/a St.
Francis Borgia), on its own
behalf and as successor in
interest to the insurance
rights of Church of Divine
Word(Cedarburg)

St. Eugene Congregation (Fox
Point) (a/k/a St. Eugene
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Frances Cabrini
Congregation (West Bend)
(a/k/a St. Frances Cabrini
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Saint Francis de Sales
Seminary, Inc. (a/k/a St.
Francis de Sales Seminary;
f/k/a St. Francis Seminary)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 85 of 140

Congregation of St. Francis
de Sales (Lake Geneva) (a/k/a
St. Francis de Sales Parish),
on its own behalf and as
successor in interest to the
insurance rights of St. Mary
(Pell Lake)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Francis Xavier (Brighton)
(a/k/a St. Francis Xavier
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Gregory the Great
Congregation (Milwaukee)
(a/k/a St. Gregory the Great
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Isidore Congregation (Mt.
Calvary), on its own behalf
and as successor in interest
to the insurance rights of
Holy Cross (Mt Calvary) and
St. Cloud (St. Cloud) and St.
Joseph (St. Cloud)

By:_____
   (Name)
Title:_____

St. Gabriel Congregation
(Hubertus) (a/k/a St. Gabriel
Parish), on its own behalf and
as successor in interest to
the insurance rights of
Maternity of BVM (Richfield)
and St. Columba(Lake Five) and
St. Hubert (Hubertus)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. Hyacinth's Congregation
(Milwaukee) (a/k/a St.
Hyacinth Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. James Congregation
(Franklin) (a/k/a St. James
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

St. James Congregation
(Mukwonago) (a/k/a St. James
Parish)

By:_____
   (Name)
Title:_____

62 of 116

Date: _____, 2014
St. James Congregation
(Menomonee Falls) (a/k/a St.
James Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

St. James Congregation
(Kenosha) (a/k/a St. James
the Apostle Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

St. Joan of Arc Congregation
(Nashotah) (a/k/a St. Joan of
Arc Parish and St. Joan of
Arc)


By: _____
      (Name)
Title: _____
Date: _____, 2014

St. John Nepomucene
Congregation (Racine) (a/k/a
St. John Nepomuk Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

Date: _____, 2014
St. Jerome's Congregation
(Oconomowoc) (a/k/a St. Jerome
Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

Saint John Neumann
Congregation (Waukesha) (a/k/a
St. John Neumann Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

St. John's Congregation
(Clyman) (a/k/a St. John the
Baptist Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

Congregation of St. John the
Baptist (Plymouth) (a/k/a St.
John the Baptist Parish)


By: _____
      (Name)
Title: _____
Date: _____, 2014

63 of 116

St. John's Congregation
(Rubicon) (a/k/a St. John
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. Johns Congregation
(Johnsburg) (a/k/a St. John
the Baptist Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


Congregation of St. John the
Baptist (Union Grove) (a/k/a
St. John the Baptist Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. John Evangelist
Congregation (Kohler) (a/k/a
St. John the Evangelist
Parish and St. John)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. John, The Evangelist,
Congregation (Greenfield)
(a/k/a St. John the Evangelist
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. John The Evangelist
Congregation (Twin Lakes)
(a/k/a St. John the Evangelist
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. Joseph's Congregation (Big
Bend) (a/k/a St. Joseph
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014


St. Joseph's Congregation
(Lyons) (a/k/a St. Joseph
Parish), on its own behalf and
as successor in interest to
the insurance rights of St.
Kilian (Lyons Township)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. John Vianney Congregation
(Brookfield) (a/k/a St. John
Vianney Parish)


By:_____
      (Name)
Title:_____
Date:_____, 2014

St. Joseph Catholic Academy,
Inc. (Kenosha) (a/k/a St.
Joseph Catholic Academy)


By:_____
      (Name)
Title:_____
Date:_____, 2014

St. Joseph's Congregation
(Waukesha) (a/k/a St. Joseph
Parish)


By:_____
      (Name)
Title:_____
Date:_____, 2014

St. Josephs Congregation
(Wauwatosa) (a/k/a St. Joseph
Parish)


By:_____
      (Name)
Title:_____
Date:_____, 2014

St. Katharine Drexel Parish
(Beaver Dam), on its own
behalf and as successor the
insurance rights of in
interest to St. Michael
(Beaver Dam) and St. Patrick
(Beaver Dam) and St. Peter's
(Beaver Dam) and United
Catholic Parish Schools of
Beaver Dam Educational
Association (Beaver Dam)

St. Joseph's Congregation
(Grafton) (a/k/a St. Joseph
Parish)


By:_____
      (Name)
Title:_____
Date:_____, 2014

By:_____
      (Name)
Title:_____
Date:_____, 2014

St. Joseph's Congregation
(Racine) (a/k/a St. Joseph
Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Josephs Congregation
(Waupun) (a/k/a St. Joseph
Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Jude Congregation
(Wauwatosa) (a/k/a St. Jude
The Apostle Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Lawrence Congregation
(St. Lawrence) (a/k/a St.
Lawrence Parish), on its own
behalf and as successor in
interest to the insurance
rights of St. Mathias (Nabob)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Kilians Congregation
(Hartford) (a/k/a St. Kilian
Parish) on its own behalf and
as successor on interest to
the insurance rights of St.
Patrick (Erin)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Louis' Congregation
(Caledonia)(a/k/a St. Louis
Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mark's Congregation
(Kenosha) (a/k/a St. Mark
Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Martin of Tours
Congregation (Franklin) (a/k/a
St. Martin of Tours Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Leonard Congregation
(Muskego) (a/k/a St. Leonard
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Lucy Congregation
(Racine) (a/k/a St. Lucy
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Margaret Mary
Congregation (Milwaukee)
(a/k/a St. Margaret Mary
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary Magdalen
Congregation (Milwaukee)
(a/k/a St. Mary Magdalen
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's of the Hill
Congregation (Hubertus) (a/k/a
St. Mary of the Hill Parish
and St. Mary of the Hill)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Marys Congregation
(Kansasville) (a/k/a St. Mary
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation
(Lomira) (a/k/a St. Mary
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Port
Washington) (a/k/a St. Mary
Parish)


By: _____
    (Name)
Title: _____
Date: _____, 2014

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 91 of 140

St. Mary Congregation (Hales Corners) (a/k/a St. Mary Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Kenosha) (a/k/a St. Mary Parish) on its own behalf and as successor in interest to the insurance rights of St. Thomas Aquinas (Kenosha)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Marytown) (a/k/a St. Mary Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Menomonee Falls) (a/k/a St. Mary Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

Saint Mary's Congregation (Springvale) (a/k/a St. Mary Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Woodland) (a/k/a St. Mary Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Mary's Congregation (Elm Grove) (a/k/a St. Mary's Visitation)

By: _____
    (Name)
Title: _____
Date: _____, 2014

St. Matthew's Congregation (Neosho) (a/k/a St. Matthew Parish)

By: _____
    (Name)
Title: _____
Date: _____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 92 of 140

St. Marys Congregation
(Racine) (a/k/a St. Mary
Parish and St. Mary by the
Lake)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Mary Congregation
(Waukesha ) (a/k/a St. Mary
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Mary's Springs Academy of
Fond du Lac, Wisconsin, Inc.
(Fond Du Lac) (a/k/a St.
Mary's Springs Academy)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Mathias Congregation
(Milwaukee) (a/k/a St.
Matthias Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Michaels' Congregation
(Kewaskum) (a/k/a St. Michael
Parish and St. Michael), on
its own behalf and as
successor in interest to the
insurance rights of St. John
of God (Farmington)

By:_____
    (Name)
Title:_____
Date:_____, 2014

The St. Michael's Priest Fund
of the Archdiocese of
Milwaukee (Milwaukee) (a/k/a
St. Michael's Priest Fund)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Matthew's Congregation
(Campbellsport) (a/k/a St.
Matthew Parish), on its own
behalf and as successor in
interest to the insurance
rights of St. Kilian (St.
Kilian) and St. Martin
(Ashford)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Matthews Congregation
(Oak Creek) (a/k/a St.
Matthew Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Maximillian Kolbe
Congregation (Milwaukee)
(a/k/a St. Maximilian Kolbe)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Michael's Congregation
(Milwaukee) (a/k/a St.
Michael Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Patrick's Congregation
(Elkhorn) (a/k/a St. Patrick
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Patricks Congregation
(Racine) (a/k/a St. Patrick
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Paul's Catholic Church
(Genesee Depot) (a/k/a St.
Paul Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Paul The Apostle
Congregation (Racine) (a/k/a
St. Paul the Apostle Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

70 of 116

St. Monica's Congregation
(Whitefish Bay) (a/k/a St.
Monica Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Patricks Congregation
(Milwaukee) (a/k/a St.
Patrick Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Patricks Congregation
(Whitewater) (a/k/a St.
Patrick Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014




St. Paul's Congregation
(Milwaukee) (a/k/a St. Paul
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Peter Congregation (Port
Washington) (a/k/a St. Peter
of Alcantara Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Peter's Congregation
(Kenosha) (a/k/a St. Peter
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Pius Congregation
(Wauwatosa) (a/k/a St. Pius X
Parish)


By:_____
     (Name)
Title:_____
Date:_____, 2014

Congregation of St. Richard
(Racine) (a/k/a St. Richard),
on its own behalf and as
successor in interest to the
insurance rights of Holy Name
(Racine) and Holy Trinity
(Racine) and St. Casimir
(Racine) and St. Rose (Racine)
and St. Stanislaus (Racine)


By:_____
     (Name)
Title:_____
Date:_____, 2014

St. Peter Claver Congregation
(Sheboygan) (a/k/a St. Peter
Claver Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Peters Congregation (East
Troy) (a/k/a St. Peter
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Peter's Congregation
(Slinger) (a/k/a St. Peter
Parish and St. Peter)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Rafael the Archangel
Congregation (Milwaukee)
(a/k/a St. Rafael the
Archangel), on its own behalf
and as successor in interest
to the insurance rights of
Holy Spirit (Milwaukee) and
St. Barbara (Milwaukee) and
St. Ignatius (Milwaukee)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Rita's Congregation (West
Allis) (a/k/a St. Rita Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Robert's Congregation
(Shorewood) (a/k/a St. Robert
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

The Congregation of St. Rose
(Milwaukee) (a/k/a St. Rose
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Sebastian Congregation
(Sturtevant) (a/k/a St.
Sebastian Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Rita's Congregation
(Racine) (a/k/a St. Rita
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Robert Bellarmine
Congregation (Union Grove)
(a/k/a St. Robert Bellarmine
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Roman Congregation
(Milwaukee) (a/k/a St. Roman
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

The St. Stanislaus
Congregation (Milwaukee)
(a/k/a St. Stanislaus Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Theresa's Congregation
(Eagle) (a/k/a St. Theresa
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Therese Congregation
(Kenosha) (a/k/a St. Therese
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 97 of 140

St. Thomas Aquinas
Congregation (Elkhart Lake)
(a/k/a St. Thomas Aquinas), on
its own behalf and as
successor in interest to the
insurance rights of St.
Fridolin (Glenbeulah) and St.
George (Elkhart Lake)

St. Sebastian's Congregation
(Milwaukee) (a/k/a St.
Sebastian Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

The St. Sebastian School
Foundation, Inc. (Milwaukee)
(a/k/a St. Sebastian School
Foundation)

St. Thomas Aquinas
Congregation (Waterford)
(a/k/a St. Thomas Aquinas
Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Stephans Congregation
(Oak Creek) (a/k/a St.
Stephen Parish)

St. Veronica's Congregation
(Milwaukee) (a/k/a St.
Veronica Parish)

By:_____
    (Name)
Title:_____
Date:_____, 2014

By:_____
    (Name)
Title:_____
Date:_____, 2014

St. Theresa's Congregation
(Theresa) (a/k/a St. Theresa
Parish)

St. Vincent Pallotti
Congregation (Milwaukee)
(a/k/a St. Vincent Pallotti
Parish), on its own behalf and
as successor in interest to
the insurance rights of Holy
Cross (Milwaukee) and St.
Anthony of Padua (Milwaukee)

By:_____
     (Name)
Title:_____
Date:_____, 2014

By:_____
     (Name)
Title:_____
Date:_____, 2014

Three Holy Women Congregation
(Milwaukee) (a/k/a Three Holy
Women), on its own behalf and
as successor in interest to
the insurance rights of Holy
Rosary Church(Milwaukee) and
St. Hedwig (Milwaukee) and St.
Rita Church (Milwaukee)

St. Therese Congregation
(Milwaukee) (a/k/a St.
Therese Parish)

By:_____
     (Name)
Title:_____
Date:_____, 2014

By:_____
     (Name)
Title:_____
Date:_____, 2014

Saint Thomas More High School,
Inc. (Milwaukee) (a/k/a St.
Thomas More High School; f/k/a
Thomas More High School, Inc.)

St. Thomas Aquinas Academy

By:_____
     (Name)
Title:_____
Date:_____, 2014

By:_____
     (Name)
Title:_____
Date:_____, 2014

Case 11-20059-svk   Doc 2563   Filed 03/03/14   Page 99 of 140

The St. Vincent a Paulo
Congregation (Milwaukee)
(a/k/a St. Vincent de Paul
Parish)

By:_____
   (Name)
Title:_____
Date:_____, 2014

Wauwatosa Catholic School,
Inc. (a/k/a Wauwatosa
Catholic School)

By:_____
   (Name)
Title:_____
Date:_____

St. William Congregation
(Waukesha) (a/k/a St. William
Parish)

By:_____

Title:_____
Date:_____, 2014

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 100 of 140

**SCHEDULE OF ATTACHMENTS TO**

**SETTLEMENT AGREEMENT**

| Attachment A | List of known Subject Insurance Policies |
|---|---|
| Attachment B | List of London Market Insurers ("LMI"), with Part I showing Solvent LMI, and Part II showing Insolvent LMI |
| Attachment C | List of Insolvent LMI and their allocated shares of the Settlement Amount |
| Attachment D | List of Solvent LMI and their allocated shares of the Settlement Amount |
| Attachment E | List of Persons Comprising the Related Entities |
| Attachment F | List of Related Entities Represented by Foley & Lardner LLP |
| Attachment G | Notice Information for Related Entities Not Represented by Foley & Lardner LLP |

**ATTACHMENT A**

**Known Subject Insurance Policies**

**Umbrella Liability Policies effective July 1, 1967 to August 1, 1973**

|  | Policy Year | Policy No. |
|---|---|---|
| 1) | July 1, 1967 to July 1, 1968 | MO 8537 |
| 2) | July 1, 1968 to July 1, 1969 | MO 8537 |
| 3) | July 1, 1969 to July 31, 1970 | MO 8537 |
| 4) | August 1, 1970 to August 1, 1971 | MO 4857/9798 |
| 5) | August 1, 1971 to August 1, 1972 | MO 4857/9798 |
| 6) | August 1, 1972 to August 1, 1973 | MO 10420/5355 |

**1st Excess Umbrella Liability Policies effective July 1, 1967 to August 1, 1973**

|  | Policy Year | Policy No. |
|---|---|---|
| 1) | July 1, 1967 to July 1, 1968 | MO 8539 |
| 2) | July 1, 1968 to July 1, 1969 | MO 8539 |
| 3) | July 1, 1969 to July 31, 1970 | MO 8539 |
| 4) | August 1, 1970 to August 1, 1971 | MO 4862/9799 |
| 5) | August 1, 1971 to August 1, 1972 | MO 4862/9799 |
| 6) | August 1, 1972 to August 1, 1973 | MO 10421/5356 |

**2nd Excess Umbrella Liability Policies effective July 1, 1967 to August 1, 1973**

|  | Policy Year | Policy No. |
|---|---|---|
| 1) | July 1, 1967 to July 1, 1968 | MO 8538 |
| 2) | July 1, 1968 to July 1, 1969 | MO 8538 |
| 3) | July 1, 1969 to July 31, 1970 | MO 8538 |
| 4) | August 1, 1970 to August 1, 1971 | MO 9800/4863 |
| 5) | August 1, 1971 to August 1, 1972 | MO 9800/4863 |
| 6) | August 1, 1972 to August 1, 1973 | MO 10422/5413 |

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 102 of 140

**Excess Umbrella Liability Policies effective August 1, 1977 to August 1, 1979**

| | Policy Year | Policy No. |
|---|---|---|
| 1) | August 1, 1977 to August 1, 1978 | 35 OS 8005 |
| 2) | August 1, 1978 to August 1, 1979 | 35 OS 8015 |

**Package Policies effective May 15, 1982 to July 1, 1987**

| | Policy Year | Policy No. |
|---|---|---|
| 1) | May 15, 1982 to May 15, 1983 | SL 3974 / SLC 5963 |
| 2) | May 15, 1983 to May 15, 1984 | SL 3974 / SLC 5963 |
| 3) | May 16, 1984 to May 15, 1985 | SL 3974 / SLC 5963 |
| 4) | May 15, 1985 to July 1, 1986 | ISL 3317 / ICO 5167 |
| 5) | July 1, 1986 to July 1, 1987 | ISL 3595 / ICO 5338 |

**Excess Broadform Liability Policies effective May 15, 1982 to July 1, 1987**

| | Policy Year | Policy No. |
|---|---|---|
| 1) | May 15, 1982 to May 15, 1983 | SL 3976 / SLC 5965 |
| 2) | May 15, 1983 to May 15, 1984 | SL 3976 / SLC 5965 |
| 3) | May 16, 1984 to May 15, 1985 | SL 3976 / SLC 5965 |
| 4) | May 15, 1985 to July 1, 1986 | ISL 3327 / ICO 5169 |
| 5) | July 1, 1986 to July 1, 1987 | ISL 3651 / GHV 370/486 |

**Excess All Risk Liability Policies effective May 15, 1983 to May 15, 1988**

| | Policy Year | Policy No. |
|---|---|---|
| 1) | May 15, 1983 to May 15, 1984 | SL 3975 / SLC 5964 |
| 2) | May 15, 1984 to May 15, 1985 | SL 3975 / SLC 5964 |
| 3) | May 16, 1985 to May 15, 1986 | ISL 3326 / ICO 5168 |
| 4) | May 15, 1986 to May 15, 1987 | ISL 3326 / ICO 5168 |
| 5) | May 15, 1987 to May 15, 1988 | ISL 3326 / ICO 5168 |
| 6) | July 1, 1986 to July 1, 1987 | ISL 3596 |

THE SUBJECT POLICIES INCLUDE ANY COMBINED PROPERTY, CASUALTY, AND CRIME INSURANCE POLICIES, DROP DOWN POLICIES, ADDITIONAL

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 103 of 140

ORDER POLICIES, AND EXCESS POLICIES SUBSCRIBED SEVERALLY BY
LONDON MARKET INSURERS

## ATTACHMENT B

## Part I: List of London Market Insurers ("LMI")

1. Certain Underwriters at Lloyd's, London.
2. Ageas Insurance Limited (f/k/a Bishopsgate Insurance Company Ltd.).
3. Allianz Suisse Versicherungs-Gesellschaft AG (f/k/a Helvetia Accident Insurance Company, Helvetia Accident Gibbon N.M. Group, and Helvetia Accident Swiss Ins. Co.).
4. Assicurazioni Generali S.p.A (f/k/a General Insurance Company of Trieste and Venice).
5. Delta Lloyd Schadeverzekering NV (f/k/a Delta Lloyd Non Life Ltd.).
6. Dominion Insurance Company Ltd.
7. Excess Insurance Company Limited.
8. Harper Insurance Limited (f/k/a Turegum Insurance Company Ltd.).
9. Helvetia Swiss Insurance Company (f/k/a Alba General Insurance Company Limited).
10. London & Edinburgh Insurance Company Limited (f/k/a London & Edinburgh General Ins. Co. Ltd., London & Edinburgh General Ins. Co., and London & Edinburgh General Ltd.).
11. National Casualty Co.
12. National Casualty Co. of America.
13. National Casualty Co. of America Ltd.
14. NRG Victory Reinsurance Limited (f/k/a New London Reinsurance Ltd.).
15. Ocean Marine Insurance Company Limited (as successor-in-interest to Edinburgh Assurance Company Limited No. 2 A/C).
16. Ocean Marine Insurance Company Limited (as successor-in-interest to World Auxiliary Insurance Corporation Limited).
17. River Thames Insurance Company Limited.
18. Select Market Insurance Company (f/k/a Argonaut Northwest Insurance Company).
19. Stronghold Insurance Company Limited.
20. Winterthur Swiss Insurance Company (f/k/a Accident & Casualty Insurance Company, Accident & Casualty Company, Accident & Casualty No. 2 Account, Accident & Casualty No. 3 Account, Accident & Casualty Ins. Co. of Winterthur, Accident & Casualty Ins. Co. of Winterthur No. 2 Account, and Accident & Casualty Ins. Co. of Winterthur No. 3 Account).
21. Markel International Insurance Company Ltd.(f/k/a Terra Nova Insurance Company Ltd.).

22. Tenecom Ltd. (f/k/a Yasuda Fire & Marine Insurance Company of Europe Ltd.).
23. Sphere Drake Insurance Company, PLC.
24. CNA Reinsurance of London Ltd.
25. CNA Reinsurance Co. Ltd.
26. Unionamerica Insurance Company Limited (f/k/a St. Katherine Insurance Co. PLC)

### ATTACHMENT B (Continued)

### Part II: List of Insolvent LMI

1. Swiss Union Insurance Company Limited.
2. Minster Insurance Company Limited.
3. Orion Insurance Company Limited.
4. Orion Insurance Company "T" Acct.
5. North Atlantic Insurance Co.
6. Bellefonte Insurance Company.
7. Walbrook Insurance Company Ltd.
8. Bermuda Fire & Marine Insurance Company Ltd.
9. Bermuda Fire & Marine Insurance Company.
10. Southern American Ins. Co.
11. Andrew Weir Insurance Company Limited.
12. Highlands Insurance Company.
13. L.T.B. Highlands Insurance Company.
14. London and Overseas Insurance Company Limited.
15. English and American Insurance Company Limited.
16. English and American Insurance Company Limited "M" Account.

**ATTACHMENT C**

**Insolvent LMI Shares**

| London Market Company | Amount |
|---|---|
| 1. Swiss Union Insurance Company Limited | $217,097.25 |
| 2. Minster Insurance Company Limited | $144,976.81 |
| 3. Orion Insurance Company Limited | $43,787.41 |
| 4. Orion Insurance Company "T" Acct. | $0.00 |
| 5. North Atlantic Insurance Co. | $108,426.20 |
| 6. Bellefonte Insurance Company | $27,106.55 |
| 7. Walbrook Insurance Company Ltd. | $23,311.63 |
| 8. Bermuda Fire & Marine Insurance Company Ltd. | $2,499.22 |
| 9. Bermuda Fire & Marine Insurance Company | $0.00 |
| 10. Southern American Ins. Co. | $1,997.21 |
| 11. Andrew Weir Insurance Company Limited | $0.00 |
| 12. Highlands Insurance Company | $0.00 |
| 13. L.T.B. Highlands Insurance Company | $0.00 |
| 14. London and Overseas Insurance Company Limited | $0.00 |
| 15. English and American Insurance Company Limited | $0.00 |
| 16. English and American Insurance Company Limited "M" Account | $0.00 |

**Total to Insolvent LMI**      **$569,202.34**

**ATTACHMENT D**

**Solvent LMI Shares**

| London Market Insurer | Amount |
|---|---:|
| Certain Underwriters at Lloyd's, London | $4,067,101.67 |
| Excess Insurance Company Limited | $419,958.89 |
| Markel International Insurance Company Ltd. | $15,225.92 |
| Tenecom Ltd. | $6,544.78 |
| Sphere Drake Insurance Company, PLC | $40,797.65 |
| CNA Reinsurance of London Ltd. | $1.00 |
| Dominion Insurance Company Ltd. | $1,772,284.75 |
| River Thames Insurance Company Limited | $115,907.85 |
| Ocean Marine Insurance Company Limited | $158,327.30 |
| NRG Victory Reinsurance Limited | $213,241.74 |
| Harper Insurance Limited | $208,094.34 |
| London & Edinburgh Insurance Company Limited | $204,613.68 |
| Assicurazioni Generali S.p.A | $138,738.28 |
| National Casualty Co. | $9,996.90 |
| National Casualty Co. of America | $5,997.05 |
| Winterthur Swiss Ins. Co. (Accident & Cas.) | $25,488.83 |
| Winterthur Swiss Ins. Co. (Accident & Cas. #2) | $1.00 |
| Winterthur Swiss Ins. Co. (Accident & Cas. #3) | $1.00 |
| Select Market Insurance Company | $19,993.79 |
| Delta Lloyd Schadeverzekering NV | $3,994.42 |
| Ageas Insurance Limited | $3,483.84 |
| Stronghold Insurance Company Limited | $1.00 |
| Helvetia Swiss Insurance Company | $1.00 |
| Allianz Suisse Versicherungs-Gesellschaft AG | $1.00 |
| Unionamerica Insurance Company Limited | $1.00 |

**Net to Solvent LMI      $7,430,797.66**

Case 11-20059-svk    Doc 2563    Filed 03/03/14    Page 108 of 140

**ATTACHMENT E**

**LIST OF RELATED ENTITIES**

| Location | City |
|---|---|
| 1.  Annunciation Congregation (Fox Lake) (a/k/a Annunciation Parish), on its own behalf and as successor in interest to the insurance rights of St. Gabriel (Randolph), St. Mary's (Fox Lake), and St. Mary's (Lost Lake) | Fox Lake |
| 2.  Blessed John Paul II Congregation (Milwaukee) (a/k/a Blessed John Paul II and Holy Wisdom Academy), on its own behalf and as successor in interest to the insurance rights of St. Alexander (Milwaukee), St. Helen (Milwaukee), and St. John Kanty (Milwaukee) | Milwaukee |
| 3.  Blessed Sacrament Congregation (Milwaukee) (a/k/a Blessed Sacrament Parish) | Milwaukee |
| 4.  Blessed Savior Parish (Milwaukee)(a/k/a Blessed Savior School), on its own behalf and as successor in interest to the insurance rights of Corpus Christi (Milwaukee), Mother of Perpetual Help (Milwaukee), Our Lady of Sorrows (Milwaukee), St. Philip Neri (Milwaukee), and St. Stephen (Milwaukee) | Milwaukee |
| 5.  Blessed Teresa of Calcutta Congregation (North Lake)  (a/k/a Blessed Teresa of Calcutta), on its own behalf and as successor in interest to the insurance rights of St. Clare (North Lake) and St. John (Monches) | North Lake |
| 6.  Blessed Trinity Congregation (Sheboygan Falls) (a/k/a Blessed Trinity), on its own behalf and as Successor in interest to the insurance rights of St. George (St. George) and St. Mary (Sheboygan Falls) and St. Rose Lima (Sheboygan Falls) | Sheboygan Falls |
| 7.  Calvary Cemetery (Fond du Lac) | Fond Du Lac |
| 8.  Calvary Cemetery, Sheboygan, Wisconsin (a/k/a Calvary Cemetery) | Sheboygan |
| 9.  Congregation of St. John's Cathedral (Milwaukee) (a/k/a Cathedral of St. John the Evangelist) | Milwaukee |
| 10.  Catholic Cemetery Assoc. of Racine, Inc. | Racine |
| 11.  Catholic Charities of the Archdiocese of Milwaukee, Inc. (a/k/a Catholic Charities; f/k/a Catholic Social Services of the Archdiocese of Milwaukee, Inc. and | Milwaukee |

Catholic Social Welfare Bureau)

| | |
|---|---|
| 12. All Saints Catholic East School System, Inc. (a/k/a Catholic East Elementary) | Milwaukee |
| 13. Catholic Memorial High School of Waukesha, Inc.(a/k/a Catholic Memorial High School) | Waukesha |
| 14. Christ Child Christian Formation Ministry, Inc. (a/k/a Christ Child Academy) | Sheboygan |
| 15. Christ King Congregation (Wauwatosa)(a/k/a Christ King Parish) | Wauwatosa |
| 16. Good Shepherd Congregation (Eden) (a/k/a Congregation of Good Shepherd), on its own behalf and as successor in interest to the insurance rights of Our Lady of Angels (Armstrong) and St. Mary (Eden) and St. Michael (Dotyville) and St. Michael (Mitchell) | Eden |
| 17. Consolidated Parochial Elementary School Johnsburg Marytown-Mt. Calvary-St. Cloud, Inc. (a/k/a Consolidated Parochial Elementary) | Mt Calvary |
| 18. Cristo Rey Congregation (Racine) (a/k/a Cristo Rey Parish) | Racine |
| 19. DeSales Preparatory Seminary, Inc. (a/k/a DeSales Prep/ACCC) | Milwaukee |
| 20. Divine Mercy Congregation (South Milwaukee) (a/k/a Divine Mercy), on its own behalf and as successor in interest to the insurance rights of St. John (South Milwaukee) and St. Mary (South Milwaukee) and St. Sylvester (South Milwaukee)and St. Adalbert (South Milwaukee) | South Milwaukee |
| 21. Divine Savior Congregation (Fredonia) (a/k/a Divine Savior), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Holy Cross) and Mother of Sorrows (Little Kohler) and St. Mary (Belgium) and St. Rose of Lima (Fredonia) | Fredonia |
| 22. Gesu Parish Inc. (Milwaukee)(a/k/a Gesu Parish) | Milwaukee |
| 23. Good Shepherd Congregation (Menomonee Falls (a/k/a Good Shepherd Parish) | Menomonee Falls |
| 24. Congregation of Holy Angels (West Bend) (a/k/a Holy Angels Parish) | West Bend |
| 25. Congregation of the Holy Apostles (New Berlin (a/k/a Holy Apostles Parish) | New Berlin |
| 26. Congregation of the Holy Assumption (West Allis) | West Allis |

(a/k/a Holy Assumption Parish)

| | |
|---|---|
| 27. Holy Cross Parish (Bristol), on its own behalf and as successor in interest to the insurance rights of Holy Name of Jesus (Wilmot) and St. Scholastica (Bristol) | Bristol |
| 28. Holy Family Congregation (Fond Du Lac) (a/k/a Holy Family), on its own behalf and as successor in interest to the insurance rights of Sacred Heart (Fond Du Lac) and St. Joseph (Fond Du Lac) and St. Louis (Fond Du Lac) and St. Patrick (Fond Du Lac) and St. Peter (Whitewater) | Fond Du Lac |
| 29. Congregation of the Holy Family (Reeseville)(a/k/a Holy Family Parish) | Reeseville |
| 30. Holy Family Congregation (Whitefish Bay) (a/k/a Holy Family Parish) | Whitefish Bay |
| 31. Congregation of the Holy Name (Sheboygan) (a/k/a Holy Name Parish) | Sheboygan |
| 32. Holy Sepulcher Cemetery | Cudahy |
| 33. Holy Trinity Congregation (Kewaskum (a/k/a Holy Trinity Parish), on its own behalf and as successor in interest to the insurance rights of St. Bridget (Wayne) and St. Mathias (Auburn) | Kewaskum |
| 34. Holy Trinity Congregation (Newburg) (a/k/a Holy Trinity Parish) | Newburg |
| 35. Congregation of the Immaculate Conception (Burlington)(a/k/a Immaculate Conception Parish) | Burlington |
| 36. The Congregation of the Immaculate Conception (Milwaukee) (a/k/a Immaculate Conception Parish) | Milwaukee |
| 37. Congregation of the Immaculate Conception (Saukville) (a/k/a Immaculate Conception Parish) | Saukville |
| 38. Immaculate Conception Congregation (Sheboygan) (a/k/a Immaculate Conception Parish) | Sheboygan |
| 39. Congregation of the Immaculate Conception (West Bend) (a/k/a Immaculate Conception Parish) | West Bend |
| 40. Immaculate Heart of Mary Congregation (West Allis) (a/k/a Immaculate Heart of Mary) | West Allis |
| 41. Lumen Christi Congregation (Mequon) (a/k/a Lumen Christi), on its own behalf and as successor in interest to the insurance rights of St. Cecilia (Thiensville) and St. James (Mequon) | Mequon |
| 42. Mary Queen of Heaven Congregation (West Allis) | West Allis |

(a/k/a Mary Queen Of Heaven Parish)

| | |
|---|---|
| 43. Mary Queen of Saints Catholic Academy | West Allis |
| 44. M.H.S., Inc. (a/k/a Messmer High School) | Milwaukee |
| 45. Milwaukee Catholic Press Apostolate (a/k/a Milwaukee Catholic Press/Cath Herald) | Milwaukee |
| 46. Mother of Good Counsel Congregation (Milwaukee) (a/k/a Mother of Good Counsel Parish) | Milwaukee |
| 47. Nativity of the Lord Congregation (Cudahy)(a/k/a Nativity of the Lord), on its own behalf and as successor in interest to the insurance rights of Holy Family (Cudahy) and St. Frederick (Cudahy) and St. Joseph (Cudahy) | Cudahy |
| 48. Northwest Catholic School | Milwaukee |
| 49. Milwaukee Archdiocesan Office for World Mission, Inc. (Milwaukee)(a/k/a Office for World Missions) | Milwaukee |
| 50. St. Mary's Congregation (Milwaukee) (a/k/a Old St. Mary and St. Mary's (Old) Church) (Milwaukee) | Milwaukee |
| 51. Our Lady of Divine Providence Congregation (Milwaukee) (a/k/a Our Lady Of Divine Providence), on its own behalf and as successor in interest to the insurance rights of St. Casimir (Milwaukee) and St. Mary of Czestochowa Church (Milwaukee) | Milwaukee |
| 52. Our Lady of Good Hope Congregation (Milwaukee) (a/k/a Our Lady of Good Hope Parish) | Milwaukee |
| 53. Our Lady of Guadalupe Congregation (Milwaukee) (a/k/a Our Lady of Guadalupe)on its own behalf and as successor in interest to the insurance rights of St. Wenceslaus (Milwaukee) | Milwaukee |
| 54. Our Lady of Lourdes Congregation (Milwaukee) (a/k/a Our Lady of Lourdes Parish) | Milwaukee |
| 55. Our Lady of Mount Carmel (Kenosha)(a/k/a Our Lady of Mt Carmel Parish) | Kenosha |
| 56. Congregation of the Holy Rosary of Pompeii (Kenosha) (a/k/a Our Lady of the Holy Rosary and Our Lady of Rosary) | Kenosha |
| 57. Congregation of Our Lady of the Lakes (Random Lake) (a/k/a Our Lady of the Lakes), on its own behalf and as successor in interest to the insurance rights of St. Mary (Cascade) and St. Mary (Random Lake) and St. Nicholas (Dacada) and St. Patrick (Adell) | Random Lake |

| | |
|---|---|
| 58. Our Lady, Queen of Peace Congregation (Milwaukee) (a/k/a Our Lady Queen of Peace Parish) | Milwaukee |
| 59. Our Risen Savior Congregation)(Woodhull) (a/k/a Our Risen Savior-Woodhull), on its own behalf and as successor in interest to the insurance rights of St. John the Baptist (Woodhull) and St. Mary (Eldorado) | Woodhull |
| 60. Pius XI High School, Inc. (Milwaukee) (a/k/a Pius XI High School) | Milwaukee |
| 61. Port Washington Catholic School, Inc. (Port Washington) (a/k/a Port Washington Catholic Schools) | Port Washington |
| 62. Church of the Presentation B.V.M. (North Fond Du Lac) (a/k/a Presentation of the Blessed Virgin Mary) | North Fond Du Lac |
| 63. Prince of Peace/Principe de Paz Congregation (Milwaukee) (a/k/a Prince of Peace/Principe de Paz), on its own behalf and as successor in interest to the insurance rights of St. Lawrence (Milwaukee) and St. Matthew (Milwaukee) | Milwaukee |
| 64. Providence Catholic School | Union Grove |
| 65. Queen of Apostles Congregation (Pewaukee) (a/k/a Queen of Apostles Parish), on its own behalf and as successor in interest to the insurance rights of Ss. Peter & Paul (Pewaukee) and St. Mary (Pewaukee) | Pewaukee |
| 66. Congregation of the Resurrection (Allenton) (a/k/a Resurrection Parish), on its own behalf and as successor in interest to the insurance rights of Sacred Heart (Allenton) and Ss. Peter & Paul (Nenno) and St. Anthony (Allenton) | Allenton |
| 67. Sacred Heart of Jesus Congregation (St. Francis) (a/k/a Sacred Heart of Jesus Parish) | St. Francis |
| 68. Sacred Heart Congregation (Milwaukee) (a/k/a Sacred Heart Parish) | Milwaukee |
| 69. Sacred Heart Congregation (Racine) (a/k/a Sacred Heart Parish) | Racine |
| 70. Sacred Heart Congregation (Horicon) (a/k/a Sacred Heart Parish-Horicon), on its own behalf and as successor in interest to the insurance rights of Immaculate Conception (Juneau) and St. Malachy (Muskego) | Horicon |
| 71. Society for the Propagation of the Faith, Archdiocese of Milwaukee (Milwaukee) (a/k/a Society for the Propagation of the Faith and Office for the Propagation of the Faith and Office for the Propagation | Milwaukee |

of the Faith)

| | |
|---|---|
| 72. Sons of Zebedee: Ss. James and John Congregation (Byron) (a/k/a Sons of Zebedee), on its own behalf and as successor in interest to the insurance rights of St. James (Oakfield) and St. John (Byron) | Byron |
| 73. Ss. Cyril and Methodius Congregation (Milwaukee) (a/k/a Ss. Cyril & Methodius Parish) | Milwaukee |
| 74. Sts. Cyril and Methodius' Congregation (Sheboygan) (a/k/a Ss. Cyril & Methodius Parish) | Sheboygan |
| 75. Ss. Peter and Paul (Milwaukee) (a/k/a Ss. Peter & Paul Parish) | Milwaukee |
| 76. St. Adalbert's Congregation (Milwaukee) (a/k/a St. Adalbert Parish) | Milwaukee |
| 77. St. Agnes Congregation (Butler) (a/k/a St. Agnes Parish) | Butler |
| 78. St. Aloysius' Congregation (West Allis) (a/k/a St. Aloysius Parish) | West Allis |
| 79. St. Alphonsus Congregation (Greendale) (a/k/a St. Alphonsus Parish) | Greendale |
| 80. St. Alphonsus Congregation (New Munster) (a/k/a St. Alphonsus Parish) | New Munster |
| 81. St. Andrews Congregation (Leroy) (a/k/a St. Andrew) | Leroy |
| 82. St. Andrew's Congregation (Delavan) (a/k/a St. Andrew Parish) | Delavan |
| 83. St. Anthony's Congregation (Kenosha) (a/k/a St. Anthony of Padua Parish) | Kenosha |
| 84. St. Anthony's Congregation (Pewaukee) (a/k/a St. Anthony on the Lake Parish) | Pewaukee |
| 85. St. Anthony's Congregation (Menomonee Falls) (a/k/a St. Anthony Parish) | Menomonee Falls |
| 86. St. Anthonys Congregation (Milwaukee) (a/k/a St. Anthony Parish) | Milwaukee |
| 87. St. Augustin's Congregation (Trenton) (a/k/a St. Augustine Parish) | Trenton |
| 88. St. Augustin Congregation (West Allis) (a/k/a St. Augustine Parish) | West Allis |
| 89. St. Augustinus Congregation (Milwaukee) (a/k/a St. Augustine Parish of Hippo) | Milwaukee |

90. St. Benedict's Congregation (Fontana) (a/k/a St.    Fontana
Benedict Parish)

91. St. Bernadette Congregation (Milwaukee) (a/k/a St.    Milwaukee
Bernadette Parish)

92. St. Bernard's Congregation (Wauwatosa) (a/k/a St.    Wauwatosa
Bernard Parish)

93. St. Bonifacius Congregation (Germantown) (a/k/a St.    Germantown
Boniface Parish)

94. St. Brendan's Congregation (Brandon) (a/k/a St.    Brandon
Brendan Parish)

95. St. Bruno's Congregation (Dousman) (a/k/a St. Bruno    Dousman
Parish)

96. St. Catherine's Congregation  (76th Place)    Milwaukee
(Milwaukee) (a/k/a St. Catherine of Alexandria)

97. St. Catherine of Siena Congregation  (Ripon) (a/k/a    Ripon
St. Catherine of Siena), on its own behalf and as
successor in interest to the insurance rights of St.
Patrick (Ripon) and St. Wenceslaus (Ripon)

98. St. Catherine's Congregation (Mapleton) (a/k/a St.    Mapleton
Catherine Parish and Catharine's Congregation)

99. St. Catherine's Congregation (51st and Center)    Milwaukee
(Milwaukee) (a/k/a St. Catherine Parish) on its own
behalf and as successor in interest to the insurance
rights of Holy Redeemer (Milwaukee) and St. Albert
(Milwaukee) and St. Nicholas (Kewaskum)

100. St. Catherine's Congregation (Sharon) (a/k/a St.    Sharon
Catherine Parish)

101. St. Charles Congregation (Burlington) (a/k/a St.    Burlington
Charles Borromeo Parish)

102. St. Charles Borromeo Congregation (Milwaukee)    Milwaukee
(a/k/a St. Charles Borromeo Parish)

103. St. Charles Cemetery Association    Fond Du Lac

104. St. Charles Congregation (Hartland) (a/k/a St.    Hartland
Charles Parish)

105. St. Charles Youth & Family Services, Inc.    Milwaukee
(Milwaukee) (a/k/a St. Charles, Inc.)

106. St. Clare Congregation (Wind Lake) (a/k/a St. Clare    Wind Lake
Parish)

107. St. Clement's Congregation (Sheboygan) (a/k/a St.    Sheboygan

Clement Parish)

| | |
|---|---|
| 108. St. Columbkill's Congregation (Elba) (a/k/a St. Columbkille Parish) | Elba |
| 109. St. Dominic's Congregation (Brookfield) (a/k/a St. Dominic Parish) | Brookfield |
| 110. St. Dominic Congregation (Sheboygan) (a/k/a St. Dominic Parish) | Sheboygan |
| 111. St. Edward's Congregation (Racine) (a/k/a St. Edward Parish) | Racine |
| 112. Saint Elizabeth Ann Seton (New Berlin)(a/k/a St. Elizabeth Ann Seton Parish) | New Berlin |
| 113. Congregation of St. Elizabeth (Kenosha) (a/k/a St. Elizabeth Parish), on its own behalf and as successor in interest to the insurance rights of St. Casimir (Kenosha) and St. George (Kenosha) | Kenosha |
| 114. St. Eugene Congregation (Fox Point) (a/k/a St. Eugene Parish) | Fox Point |
| 115. St. Florian's Congregation (W Milwaukee) (a/k/a St. Florian Parish) | W Milwaukee |
| 116. St. Frances Cabrini Congregation (West Bend) (a/k/a St. Frances Cabrini Parish) | West Bend |
| 117. Congregation of St. Francis Borgia (Cedarburg) (a/k/a St. Francis Borgia), on its own behalf and as successor in interest to the insurance rights of Church of Divine Word(Cedarburg) | Cedarburg |
| 118. Congregation of St. Francis de Sales (Lake Geneva) (a/k/a St. Francis de Sales Parish), on its own behalf and as successor in interest to the insurance rights of St. Mary (Pell Lake) | Lake Geneva |
| 119. Saint Francis de Sales Seminary, Inc. (a/k/a St. Francis de Sales Seminary; f/k/a St. Francis Seminary) | St. Francis |
| 120. St. Francis Xavier (Brighton) (a/k/a St. Francis Xavier Parish) | Brighton |
| 121. St. Gabriel Congregation (Hubertus) (a/k/a St. Gabriel Parish), on its own behalf and as successor in interest to the insurance rights of Maternity of BVM (Richfield) and St. Columba(Lake Five) and St. Hubert (Hubertus) | Hubertus |
| 122. St. Gregory the Great Congregation (Milwaukee) (a/k/a St. Gregory the Great Parish) | Milwaukee |

| | |
|---|---|
| 123. St. Hyacinth's Congregation (Milwaukee) (a/k/a St. Hyacinth Parish) | Milwaukee |
| 124. St. Isidore Congregation (Mt. Calvary), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Mt Calvary) and St. Cloud (St. Cloud) and St. Joseph (St. Cloud) | Mt Calvary |
| 125. St. James Congregation (Franklin) (a/k/a St. James Parish) | Franklin |
| 126. St. James Congregation (Menomonee Falls) (a/k/a St. James Parish) | Menomonee Falls |
| 127. St. James Congregation (Mukwonago) (a/k/a St. James Parish) | Mukwonago |
| 128. St. James Congregation (Kenosha) (a/k/a St. James the Apostle Parish) | Kenosha |
| 129. St. Jerome's Congregation (Oconomowoc) (a/k/a St. Jerome Parish) | Oconomowoc |
| 130. St. Joan of Arc Congregation (Nashotah) (a/k/a St. Joan of Arc Parish and St. Joan of Arc) | Nashotah |
| 131. St. John Nepomucene Congregation (Racine) (a/k/a St. John Nepomuk Parish) | Racine |
| 132. Saint John Neumann Congregation (Waukesha) (a/k/a St. John Neumann Parish) | Waukesha |
| 133. St. John's Congregation (Rubicon) (a/k/a St. John Parish) | Rubicon |
| 134. St. John's Congregation (Clyman) (a/k/a St. John the Baptist Parish) | Clyman |
| 135. St. Johns Congregation (Johnsburg) (a/k/a St. John the Baptist Parish) | Johnsburg |
| 136. Congregation of St. John the Baptist (Plymouth) (a/k/a St. John the Baptist Parish) | Plymouth |
| 137. Congregation of St. John the Baptist (Union Grove) (a/k/a St. John the Baptist Parish) | Union Grove |
| 138. St. John, The Evangelist, Congregation (Greenfield) (a/k/a St. John the Evangelist Parish) | Greenfield |
| 139. St. John Evangelist Congregation (Kohler) (a/k/a St. John the Evangelist Parish and St. John) | Kohler |
| 140. St. John The Evangelist Congregation (Twin Lakes) (a/k/a St. John the Evangelist Parish) | Twin Lakes |

| | |
|---|---|
| 141. St. John Vianney Congregation (Brookfield) (a/k/a St. John Vianney Parish) | Brookfield |
| 142. St. Joseph Catholic Academy, Inc. (Kenosha) (a/k/a St. Joseph Catholic Academy) | Kenosha |
| 143. St. Joseph's Congregation (Big Bend) (a/k/a St. Joseph Parish) | Big Bend |
| 144. St. Joseph's Congregation (Grafton) (a/k/a St. Joseph Parish) | Grafton |
| 145. St. Joseph's Congregation (Lyons) (a/k/a St. Joseph Parish), on its own behalf and as successor in interest to the insurance rights of St. Kilian (Lyons Township) | Lyons |
| 146. St. Joseph's Congregation (Racine) (a/k/a St. Joseph Parish) | Racine |
| 147. St. Joseph's Congregation (Waukesha) (a/k/a St. Joseph Parish) | Waukesha |
| 148. St. Josephs Congregation (Waupun) (a/k/a St. Joseph Parish) | Waupun |
| 149. St. Josephs Congregation (Wauwatosa) (a/k/a St. Joseph Parish) | Wauwatosa |
| 150. St. Jude Congregation (Wauwatosa) (a/k/a St. Jude The Apostle Parish) | Wauwatosa |
| 151. St. Katharine Drexel Parish (Beaver Dam), on its own behalf and as successor in interest to the insurance rights of St. Michael (Beaver Dam) and St. Patrick (Beaver Dam) and St. Peter's (Beaver Dam) and United Catholic Parish Schools of Beaver Dam Educational Association (Beaver Dam) | Beaver Dam |
| 152. St. Kilians Congregation (Hartford) (a/k/a St. Kilian Parish on its own behalf and as successor on interest to the insurance rights of St. Patrick) (Erin) | Hartford |
| 153. St. Lawrence Congregation (St. Lawrence) (a/k/a St. Lawrence Parish), on its own behalf and as successor in interest to the insurance rights of St. Mathias (Nabob) | St. Lawrence |
| 154. St. Leonard Congregation (Muskego) (a/k/a St. Leonard Parish) | Muskego |
| 155. St. Louis' Congregation (Caledonia)(a/k/a St. Louis Parish) | Caledonia |
| 156. St. Lucy Congregation (Racine) (a/k/a St. Lucy Parish) | Racine |

157. St. Luke Congregation (Brookfield) (a/k/a St. Luke Parish)    Brookfield

158. St. Margaret Mary Congregation (Milwaukee) (a/k/a St. Margaret Mary Parish)    Milwaukee

159. St. Mark's Congregation (Kenosha) (a/k/a St. Mark Parish)    Kenosha

160. St. Martin of Tours Congregation (Franklin) (a/k/a St. Martin of Tours Parish)    Franklin

161. St. Mary Magdalen Congregation (Milwaukee) (a/k/a St. Mary Magdalen Parish)    Milwaukee

162. St. Mary's of the Hill Congregation (Hubertus) (a/k/a St. Mary of the Hill Parish and St. Mary of the Hill)    Hubertus

163. St. Mary Congregation (Hales Corners) (a/k/a St. Mary Parish)    Hales Corners

164. St. Marys Congregation (Kansasville) (a/k/a St. Mary Parish)    Kansasville

165. St. Mary's Congregation (Kenosha) (a/k/a St. Mary Parish) on its own behalf and as successor in interest to the insurance rights of St. Thomas Aquinas (Kenosha)    Kenosha

166. St. Mary's Congregation (Lomira) (a/k/a St. Mary Parish)    Lomira

167. St. Mary's Congregation (Marytown) (a/k/a St. Mary Parish)    Marytown

168. Saint Mary's Congregation (Mayville) (a/k/a St. Mary Parish)    Mayville

169. St. Mary's Congregation (Menomonee Falls) (a/k/a St. Mary Parish)    Menomonee Falls

170. St. Mary's Congregation (Port Washington) (a/k/a St. Mary Parish)    Port Washington

171. St. Marys Congregation (Racine) (a/k/a St. Mary Parish and St. Mary by the Lake)    Racine

172. Saint Mary's Congregation (Springvale) (a/k/a St. Mary Parish)    Springvale

173. St. Mary Congregation (Waukesha ) (a/k/a St. Mary Parish)    Waukesha

174. St. Mary's Congregation (Woodland) (a/k/a St. Mary Parish)    Woodland

175. St. Mary's Springs Academy of Fond du Lac, Wisconsin, Inc. (Fond Du Lac) (a/k/a St. Mary's Springs Academy) — Fond Du Lac

176. St. Mary's Congregation (Elm Grove) (a/k/a St. Mary's Visitation) — Elm Grove

177. St. Matthew's Congregation (Campbellsport) (a/k/a St. Matthew Parish), on its own behalf and as successor in interest to the insurance rights of St. Kilian (St. Kilian) and St. Martin (Ashford) — Campbellsport

178. St. Matthew's Congregation (Neosho) (a/k/a St. Matthew Parish) — Neosho

179. St. Matthews Congregation (Oak Creek) (a/k/a St. Matthew Parish) — Oak Creek

180. St. Mathias Congregation (Milwaukee) (a/k/a St. Matthias Parish) — Milwaukee

181. St. Maximillian Kolbe Congregation (Milwaukee) (a/k/a St. Maximilian Kolbe) — Milwaukee

182. St. Michaels' Congregation (Kewaskum) (a/k/a St. Michael Parish and St. Michael), on its own behalf and as successor in interest to the insurance rights of St. John of God (Farmington) — Kewaskum

183. St. Michael's Congregation (Milwaukee) (a/k/a St. Michael Parish) — Milwaukee

184. The St. Michael's Priest Fund of the Archdiocese of Milwaukee (Milwaukee) (a/k/a St. Michael's Priest Fund) — Milwaukee

185. St. Monica's Congregation (Whitefish Bay) (a/k/a St. Monica Parish) — Whitefish Bay

186. St. Patrick's Congregation (Elkhorn) (a/k/a St. Patrick Parish) — Elkhorn

187. St. Patricks Congregation (Milwaukee) (a/k/a St. Patrick Parish) — Milwaukee

188. St. Patricks Congregation (Racine) (a/k/a St. Patrick Parish) — Racine

189. St. Patricks Congregation (Whitewater) (a/k/a St. Patrick Parish) — Whitewater

190. St. Paul's Catholic Church (Genesee Depot) (a/k/a St. Paul Parish) — Genesee Depot

191. St. Paul's Congregation (Milwaukee) (a/k/a St. Paul Parish) — Milwaukee

| | |
|---|---|
| 192. St. Paul The Apostle Congregation (Racine) (a/k/a St. Paul the Apostle Parish) | Racine |
| 193. St. Peter Claver Congregation (Sheboygan) (a/k/a St. Peter Claver Parish) | Sheboygan |
| 194. St. Peter Congregation (Port Washington) (a/k/a St. Peter of Alcantara Parish) | Port Washington |
| 195. St. Peters Congregation (East Troy) (a/k/a St. Peter Parish) | East Troy |
| 196. St. Peter's Congregation (Kenosha) (a/k/a St. Peter Parish) | Kenosha |
| 197. St. Peter's Congregation (Slinger) (a/k/a St. Peter Parish and St. Peter) | Slinger |
| 198. St. Pius Congregation (Wauwatosa) (a/k/a St. Pius X Parish) | Wauwatosa |
| 199. St. Rafael the Archangel Congregation (Milwaukee) (a/k/a St. Rafael the Archangel), on its own behalf and as successor in interest to the insurance rights of Holy Spirit (Milwaukee) and St. Barbara (Milwaukee) and St. Ignatius (Milwaukee) | Milwaukee |
| 200. Congregation of St. Richard (Racine) (a/k/a St. Richard), on its own behalf and as successor in interest to the insurance rights of Holy Name (Racine) and Holy Trinity (Racine) and St. Casimir (Racine) and St. Rose (Racine) and St. Stanislaus (Racine) | Racine |
| 201. St. Rita's Congregation (Racine) (a/k/a St. Rita Parish) | Racine |
| 202. St. Rita's Congregation (West Allis) (a/k/a St. Rita Parish) | West Allis |
| 203. St. Robert Bellarmine Congregation (Union Grove) (a/k/a St. Robert Bellarmine Parish) | Union Grove |
| 204. St. Robert's Congregation (Shorewood) (a/k/a St. Robert Parish) | Shorewood |
| 205. St. Roman Congregation (Milwaukee) (a/k/a St. Roman Parish) | Milwaukee |
| 206. The Congregation of St. Rose (Milwaukee) (a/k/a St. Rose Parish) | Milwaukee |
| 207. St. Sebastian's Congregation (Milwaukee) (a/k/a St. Sebastian Parish) | Milwaukee |
| 208. St. Sebastian Congregation (Sturtevant) (a/k/a St. | Sturtevant |

Sebastian Parish)

| | |
|---|---|
| 209. The St. Sebastian School Foundation, Inc. (Milwaukee) (a/k/a St. Sebastian School Foundation) | Milwaukee |
| 210. The St. Stanislaus Congregation (Milwaukee) (a/k/a St. Stanislaus Parish) | Milwaukee |
| 211. St. Stephans Congregation (Oak Creek) (a/k/a St. Stephen Parish) | Oak Creek |
| 212. St. Theresa's Congregation (Eagle) (a/k/a St. Theresa Parish) | Eagle |
| 213. St. Theresa's Congregation (Theresa) (a/k/a St. Theresa Parish) | Theresa |
| 214. St. Therese Congregation (Kenosha) (a/k/a St. Therese Parish) | Kenosha |
| 215. St. Therese Congregation (Milwaukee) (a/k/a St. Therese Parish) | Milwaukee |
| 216. St. Thomas Aquinas Congregation (Elkhart Lake) (a/k/a St. Thomas Aquinas), on its own behalf and as successor in interest to the insurance rights of St. Fridolin (Glenbeulah) and St. George (Elkhart Lake) | Elkhart Lake |
| 217. St. Thomas Aquinas Academy | Milwaukee |
| 218. St. Thomas Aquinas Congregation (Waterford) (a/k/a St. Thomas Aquinas Parish) | Waterford |
| 219. Saint Thomas More High School, Inc. (Milwaukee) (a/k/a St. Thomas More High School; f/k/a Thomas More High School, Inc.) | Milwaukee |
| 220. St. Veronica's Congregation (Milwaukee) (a/k/a St. Veronica Parish) | Milwaukee |
| 221. The St. Vincent a Paulo Congregation (Milwaukee) (a/k/a St. Vincent de Paul Parish) | Milwaukee |
| 222. St. Vincent Pallotti Congregation (Milwaukee) (a/k/a St. Vincent Pallotti Parish), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Milwaukee) and St. Anthony of Padua (Milwaukee) | Milwaukee |
| 223. St. William Congregation (Waukesha) (a/k/a St. William Parish) | Waukesha |
| 224. Three Holy Women Congregation (Milwaukee) (a/k/a Three Holy Women), on its own behalf and as successor in interest to the insurance rights of Holy Rosary Church(Milwaukee) and St. Hedwig (Milwaukee) and St. | Milwaukee |

Rita Church (Milwaukee)

225. Wauwatosa Catholic School, Inc. (a/k/a Wauwatosa     Wauwatosa
Catholic School)

**Attachment F**

**List of Related Entities Represented by Foley & Lardner LLP**

| Location | City |
|---|---|
| Annunciation Congregation (Fox Lake) (a/k/a Annunciation Parish), on its own behalf and as successor in interest to the insurance rights of St. Gabriel (Randolph), St. Mary's (Fox Lake), and St. Mary's (Lost Lake) | Fox Lake |
| Blessed John Paul II Congregation (Milwaukee) (a/k/a Blessed John Paul II and Holy Wisdom Academy), on its own behalf and as successor in interest to the insurance rights of St. Alexander (Milwaukee), St. Helen (Milwaukee), and St. John Kanty (Milwaukee) | Milwaukee |
| Blessed Sacrament Congregation (Milwaukee) (a/k/a Blessed Sacrament Parish) | Milwaukee |
| Blessed Savior Parish (Milwaukee)(a/k/a Blessed Savior School), on its own behalf and as successor in interest to the insurance rights of Corpus Christi (Milwaukee), Mother of Perpetual Help (Milwaukee), Our Lady of Sorrows (Milwaukee), St. Philip Neri (Milwaukee), and St. Stephen (Milwaukee) | Milwaukee |
| Blessed Teresa of Calcutta Congregation (North Lake) (a/k/a Blessed Teresa of Calcutta), on its own behalf and as successor in interest to the insurance rights of St. Clare (North Lake) and St. John (Monches) | North Lake |
| Blessed Trinity Congregation (Sheboygan Falls) (a/k/a Blessed Trinity), on its own behalf and as successor in interest to the insurance rights of St. George (St. George) and St. Mary (Sheboygan Falls) and St. Rose Lima (Sheboygan Falls) | Sheboygan Falls |
| Congregation of St. John's Cathedral (Milwaukee) (a/k/a Cathedral of St. John the Evangelist) | Milwaukee |
| Christ King Congregation (Wauwatosa)(a/k/a Christ King Parish) | Wauwatosa |
| Good Shepherd Congregation (Eden) (a/k/a Congregation of Good Shepherd), on its own behalf and as successor in interest to the insurance rights of Our Lady of Angels (Armstrong) and St. Mary (Eden) and St. Michael (Dotyville) and St. Michael (Mitchell) | Eden |
| Cristo Rey Congregation (Racine) (a/k/a Cristo Rey | Racine |

Parish)

| | |
|---|---|
| Divine Mercy Congregation (South Milwaukee) (a/k/a Divine Mercy), on its own behalf and as successor in interest to the insurance rights of St. John (South Milwaukee) and St. Mary (South Milwaukee) and St. Sylvester (South Milwaukee)and St. Adalbert (South Milwaukee) | South Milwaukee |
| Divine Savior Congregation (Fredonia) (a/k/a Divine Savior), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Holy Cross) and Mother of Sorrows (Little Kohler) and St. Mary (Belgium) and St. Rose of Lima (Fredonia) | Fredonia |
| Gesu Parish Inc. (Milwaukee)(a/k/a Gesu Parish) | Milwaukee |
| Good Shepherd Congregation (Menomonee Falls (a/k/a Good Shepherd Parish) | Menomonee Falls |
| Congregation of Holy Angels (West Bend) (a/k/a Holy Angels Parish) | West Bend |
| Congregation of the Holy Apostles (New Berlin (a/k/a Holy Apostles Parish) | New Berlin |
| Congregation of the Holy Assumption (West Allis) (a/k/a Holy Assumption Parish) | West Allis |
| Holy Cross Parish (Bristol), on its own behalf and as successor in interest to the insurance rights of Holy Name of Jesus (Wilmot) and St. Scholastica (Bristol) | Bristol |
| Holy Family Congregation (Fond Du Lac) (a/k/a Holy Family), on its own behalf and as successor in interest to the insurance rights of Sacred Heart (Fond Du Lac) and St. Joseph (Fond Du Lac) and St. Louis (Fond Du Lac) and St. Patrick (Fond Du Lac) and St. Peter (Whitewater) | Fond Du Lac |
| Congregation of the Holy Family (Reeseville)(a/k/a Holy Family Parish) | Reeseville |
| Holy Family Congregation (Whitefish Bay) (a/k/a Holy Family Parish) | Whitefish Bay |
| Congregation of the Holy Name (Sheboygan) (a/k/a Holy Name Parish) | Sheboygan |
| Holy Trinity Congregation (Kewaskum (a/k/a Holy Trinity Parish), on its own behalf and as successor in interest to the insurance rights of St. Bridget (Wayne) and St. Mathias (Auburn) | Kewaskum |
| Holy Trinity Congregation (Newburg) (a/k/a Holy Trinity | Newburg |

Parish)

| | |
|---|---|
| Congregation of the Immaculate Conception (Burlington)(a/k/a Immaculate Conception Parish) | Burlington |
| The Congregation of the Immaculate Conception (Milwaukee) (a/k/a Immaculate Conception Parish) | Milwaukee |
| Congregation of the Immaculate Conception (Saukville) (a/k/a Immaculate Conception Parish) | Saukville |
| Immaculate Conception Congregation (Sheboygan) (a/k/a Immaculate Conception Parish) | Sheboygan |
| Congregation of the Immaculate Conception (West Bend) (a/k/a Immaculate Conception Parish) | West Bend |
| Immaculate Heart of Mary Congregation (West Allis) (a/k/a Immaculate Heart of Mary) | West Allis |
| Lumen Christi Congregation (Mequon) (a/k/a Lumen Christi), on its own behalf and as successor in interest to the insurance rights of St. Cecilia (Thiensville) and St. James (Mequon) | Mequon |
| Mary Queen of Heaven Congregation (West Allis) (a/k/a Mary Queen Of Heaven Parish) | West Allis |
| Milwaukee Catholic Press Apostolate (a/k/a Milwaukee Catholic Press/Cath Herald and The Catholic Herald) | Milwaukee |
| Mother of Good Counsel Congregation (Milwaukee) (a/k/a Mother of Good Counsel Parish) | Milwaukee |
| Nativity of the Lord Congregation (Cudahy)(a/k/a Nativity of the Lord), on its own behalf and as successor in interest to the insurance rights of Holy Family (Cudahy) and St. Frederick (Cudahy) and St. Joseph (Cudahy) | Cudahy |
| St. Mary's Congregation (Milwaukee) (a/k/a Old St. Mary and St. Mary's (Old) Church) (Milwaukee) | Milwaukee |
| Our Lady of Divine Providence Congregation (Milwaukee) (a/k/a Our Lady Of Divine Providence), on its own behalf and as successor in interest to the insurance rights of St. Casimir (Milwaukee) and St. Mary of Czestochowa Church (Milwaukee) | Milwaukee |
| Our Lady of Good Hope Congregation (Milwaukee) (a/k/a Our Lady of Good Hope Parish) | Milwaukee |
| Our Lady of Guadalupe Congregation (Milwaukee) (a/k/a Our Lady of Guadalupe)on its own behalf and as successor in interest to the insurance rights of St. Wenceslaus | Milwaukee |

(Milwaukee)

| | |
|---|---|
| Our Lady of Lourdes Congregation (Milwaukee) (a/k/a Our Lady of Lourdes Parish) | Milwaukee |
| Congregation of Our Lady of the Lakes (Random Lake) (a/k/a Our Lady of the Lakes), on its own behalf and as successor in interest to the insurance rights of St. Mary (Cascade) and St. Mary (Random Lake) and St. Nicholas (Dacada) and St. Patrick (Adell) | Random Lake |
| Our Lady, Queen of Peace Congregation (Milwaukee) (a/k/a Our Lady Queen of Peace Parish) | Milwaukee |
| Our Risen Savior Congregation)(Woodhull) (a/k/a Our Risen Savior-Woodhull), on its own behalf and as successor in interest to the insurance rights of St. John the Baptist (Woodhull) and St. Mary (Eldorado) | Woodhull |
| Church of the Presentation B.V.M. (North Fond Du Lac) (a/k/a Presentation of the Blessed Virgin Mary) | North Fond Du Lac |
| Prince of Peace/Principe de Paz Congregation (Milwaukee) (a/k/a Prince of Peace/Principe de Paz), on its own behalf and as successor in interest to the insurance rights of St. Lawrence (Milwaukee) and St. Matthew (Milwaukee) | Milwaukee |
| Queen of Apostles Congregation (Pewaukee) (a/k/a Queen of Apostles Parish), on its own behalf and as successor in interest to the insurance rights of Ss. Peter & Paul (Pewaukee) and St. Mary (Pewaukee) | Pewaukee |
| Congregation of the Resurrection (Allenton) (a/k/a Resurrection Parish), on its own behalf and as successor in interest to the insurance rights of Sacred Heart (Allenton) and Ss. Peter & Paul (Nenno) and St. Anthony (Allenton) | Allenton |
| Sacred Heart of Jesus Congregation (St. Francis) (a/k/a Sacred Heart of Jesus Parish) | St. Francis |
| Sacred Heart Congregation (Milwaukee) (a/k/a Sacred Heart Parish) | Milwaukee |
| Sacred Heart Congregation (Racine) (a/k/a Sacred Heart Parish) | Racine |
| Sacred Heart Congregation (Horicon) (a/k/a Sacred Heart Parish-Horicon), on its own behalf and as successor in interest to the insurance rights of Immaculate Conception (Juneau) and St. Malachy (Muskego) | Horicon |
| Sons of Zebedee: Ss. James and John Congregation (Byron) | Byron |

(a/k/a Sons of Zebedee), on its own behalf and as
successor in interest to the insurance rights of St.
James (Oakfield) and St. John (Byron)

| | |
|---|---|
| Ss. Cyril and Methodius Congregation (Milwaukee) (a/k/a Ss. Cyril & Methodius Parish) | Milwaukee |
| Sts. Cyril and Methodius' Congregation (Sheboygan) (a/k/a Ss. Cyril & Methodius Parish) | Sheboygan |
| Ss. Peter and Paul (Milwaukee) (a/k/a Ss. Peter & Paul Parish) | Milwaukee |
| St. Adalbert's Congregation (Milwaukee) (a/k/a St. Adalbert Parish) | Milwaukee |
| St. Agnes Congregation (Butler) (a/k/a St. Agnes Parish) | Butler |
| St. Alphonsus Congregation (Greendale) (a/k/a St. Alphonsus Parish) | Greendale |
| St. Alphonsus Congregation (New Munster) (a/k/a St. Alphonsus Parish) | New Munster |
| St. Andrews Congregation (Leroy) (a/k/a St. Andrew) | Leroy |
| St. Andrew's Congregation (Delavan) (a/k/a St. Andrew Parish) | Delavan |
| St. Anthony's Congregation (Kenosha) (a/k/a St. Anthony of Padua Parish) | Kenosha |
| St. Anthony's Congregation (Pewaukee) (a/k/a St. Anthony on the Lake Parish) | Pewaukee |
| St. Anthony's Congregation (Menomonee Falls) (a/k/a St. Anthony Parish) | Menomonee Falls |
| St. Anthonys Congregation (Milwaukee) (a/k/a St. Anthony Parish) | Milwaukee |
| St. Augustin Congregation (West Allis) (a/k/a St. Augustine Parish) | West Allis |
| St. Augustinus Congregation (Milwaukee) (a/k/a St. Augustine Parish of Hippo) | Milwaukee |
| St. Benedict's Congregation (Fontana) (a/k/a St. Benedict Parish) | Fontana |
| St. Bernadette Congregation (Milwaukee) (a/k/a St. Bernadette Parish) | Milwaukee |
| St. Bernard's Congregation (Wauwatosa) (a/k/a St. Bernard Parish) | Wauwatosa |
| St. Bonifacius Congregation (Germantown) (a/k/a St. | Germantown |

Boniface Parish)

| | |
|---|---|
| St. Brendan's Congregation (Brandon) (a/k/a St. Brendan Parish) | Brandon |
| St. Bruno's Congregation (Dousman) (a/k/a St. Bruno Parish) | Dousman |
| St. Catherine's Congregation (76th Place) (Milwaukee) (a/k/a St. Catherine of Alexandria) | Milwaukee |
| St. Catherine of Siena Congregation (Ripon) (a/k/a St. Catherine of Siena), on its own behalf and as successor in interest to the insurance rights of St. Patrick (Ripon) and St. Wenceslaus (Ripon) | Ripon |
| St. Catherine's Congregation (Mapleton) (a/k/a St. Catherine Parish and Catharine's Congregation) | Mapleton |
| St. Catherine's Congregation (51st and Center) (Milwaukee) (a/k/a St. Catherine Parish) on its own behalf and as successor in interest to the insurance rights of Holy Redeemer (Milwaukee) and St. Albert (Milwaukee) and St. Nicholas (Kewaskum) | Milwaukee |
| St. Charles Congregation (Burlington) (a/k/a St. Charles Borromeo Parish) | Burlington |
| St. Charles Borromeo Congregation (Milwaukee) (a/k/a St. Charles Borromeo Parish) | Milwaukee |
| St. Charles Congregation (Hartland) (a/k/a St. Charles Parish) | Hartland |
| St. Clare Congregation (Wind Lake) (a/k/a St. Clare Parish) | Wind Lake |
| St. Clement's Congregation (Sheboygan) (a/k/a St. Clement Parish) | Sheboygan |
| St. Columbkill's Congregation (Elba) (a/k/a St. Columbkille Parish) | Elba |
| St. Dominic's Congregation (Brookfield) (a/k/a St. Dominic Parish) | Brookfield |
| St. Dominic Congregation (Sheboygan) (a/k/a St. Dominic Parish) | Sheboygan |
| St. Edward's Congregation (Racine) (a/k/a St. Edward Parish) | Racine |
| Saint Elizabeth Ann Seton (New Berlin)(a/k/a St. Elizabeth Ann Seton Parish) | New Berlin |
| Congregation of St. Elizabeth (Kenosha) (a/k/a St. | Kenosha |

Elizabeth Parish), on its own behalf and as successor in
interest to the insurance rights of St. Casimir
(Kenosha) and St. George (Kenosha)

| | |
|---|---|
| St. Florian's Congregation (W Milwaukee) (a/k/a St. Florian Parish) | W Milwaukee |
| St. Frances Cabrini Congregation (West Bend) (a/k/a St. Frances Cabrini Parish) | West Bend |
| Congregation of St. Francis Borgia (Cedarburg) (a/k/a St. Francis Borgia), on its own behalf and as successor in interest to the insurance rights of Church of Divine Word(Cedarburg) | Cedarburg |
| Congregation of St. Francis de Sales (Lake Geneva) (a/k/a St. Francis de Sales Parish), on its own behalf and as successor in interest to the insurance rights of St. Mary (Pell Lake) | Lake Geneva |
| St. Francis Xavier (Brighton) (a/k/a St. Francis Xavier Parish) | Brighton |
| St. Gabriel Congregation (Hubertus) (a/k/a St. Gabriel Parish), on its own behalf and as successor in interest to the insurance rights of Maternity of BVM (Richfield) and St. Columba(Lake Five) and St. Hubert (Hubertus) | Hubertus |
| St. Gregory the Great Congregation (Milwaukee) (a/k/a St. Gregory the Great Parish) | Milwaukee |
| St. Hyacinth's Congregation (Milwaukee) (a/k/a St. Hyacinth Parish) | Milwaukee |
| St. Isidore Congregation (Mt. Calvary), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Mt Calvary) and St. Cloud (St. Cloud) and St. Joseph (St. Cloud) | Mt Calvary |
| St. James Congregation (Franklin) (a/k/a St. James Parish) | Franklin |
| St. James Congregation (Menomonee Falls) (a/k/a St. James Parish) | Menomonee Falls |
| St. James Congregation (Mukwonago) (a/k/a St. James Parish) | Mukwonago |
| St. James Congregation (Kenosha) (a/k/a St. James the Apostle Parish) | Kenosha |
| St. Jerome's Congregation (Oconomowoc) (a/k/a St. Jerome Parish) | Oconomowoc |
| St. Joan of Arc Congregation (Nashotah) (a/k/a St. Joan | Nashotah |

of Arc Parish and St. Joan of Arc)

| | |
|---|---|
| St. John Nepomucene Congregation (Racine) (a/k/a St. John Nepomuk Parish) | Racine |
| Saint John Neumann Congregation (Waukesha) (a/k/a St. John Neumann Parish) | Waukesha |
| St. John's Congregation (Rubicon) (a/k/a St. John Parish) | Rubicon |
| St. John's Congregation (Clyman) (a/k/a St. John the Baptist Parish) | Clyman |
| St. Johns Congregation (Johnsburg) (a/k/a St. John the Baptist Parish) | Johnsburg |
| Congregation of St. John the Baptist (Plymouth) (a/k/a St. John the Baptist Parish) | Plymouth |
| Congregation of St. John the Baptist (Union Grove) (a/k/a St. John the Baptist Parish) | Union Grove |
| St. John, The Evangelist, Congregation (Greenfield) (a/k/a St. John the Evangelist Parish) | Greenfield |
| St. John Evangelist Congregation (Kohler) (a/k/a St. John the Evangelist Parish and St. John) | Kohler |
| St. John The Evangelist Congregation (Twin Lakes) (a/k/a St. John the Evangelist Parish) | Twin Lakes |
| St. John Vianney Congregation (Brookfield) (a/k/a St. John Vianney Parish) | Brookfield |
| St. Joseph's Congregation (Big Bend) (a/k/a St. Joseph Parish) | Big Bend |
| St. Joseph's Congregation (Grafton) (a/k/a St. Joseph Parish) | Grafton |
| St. Joseph's Congregation (Lyons) (a/k/a St. Joseph Parish), on its own behalf and as successor in interest to the insurance rights of St. Kilian (Lyons Township) | Lyons |
| St. Joseph's Congregation (Racine) (a/k/a St. Joseph Parish) | Racine |
| St. Joseph's Congregation (Waukesha) (a/k/a St. Joseph Parish) | Waukesha |
| St. Josephs Congregation (Waupun) (a/k/a St. Joseph Parish) | Waupun |
| St. Josephs Congregation (Wauwatosa) (a/k/a St. Joseph Parish) | Wauwatosa |

| | |
|---|---|
| St. Jude Congregation (Wauwatosa) (a/k/a St. Jude The Apostle Parish) | Wauwatosa |
| St. Katharine Drexel Parish (Beaver Dam), on its own behalf and as successor in interest to the insurance rights of St. Michael (Beaver Dam) and St. Patrick (Beaver Dam) and St. Peter's (Beaver Dam) and United Catholic Parish Schools of Beaver Dam Educational Association (Beaver Dam) | Beaver Dam |
| St. Kilians Congregation (Hartford) (a/k/a St. Kilian Parish) on its own behalf and as successor on interest to the insurance rights of St. Patrick (Erin) | Hartford |
| St. Lawrence Congregation (St. Lawrence) (a/k/a St. Lawrence Parish), on its own behalf and as successor in interest to the insurance rights of St. Mathias (Nabob) | St. Lawrence |
| St. Leonard Congregation (Muskego) (a/k/a St. Leonard Parish) | Muskego |
| St. Louis' Congregation (Caledonia)(a/k/a St. Louis Parish) | Caledonia |
| St. Lucy Congregation (Racine) (a/k/a St. Lucy Parish) | Racine |
| St. Luke Congregation (Brookfield) (a/k/a St. Luke Parish) | Brookfield |
| St. Margaret Mary Congregation (Milwaukee) (a/k/a St. Margaret Mary Parish) | Milwaukee |
| St. Mark's Congregation (Kenosha) (a/k/a St. Mark Parish) | Kenosha |
| St. Martin of Tours Congregation (Franklin) (a/k/a St. Martin of Tours Parish) | Franklin |
| St. Mary Magdalen Congregation (Milwaukee) (a/k/a St. Mary Magdalen Parish) | Milwaukee |
| St. Mary's of the Hill Congregation (Hubertus) (a/k/a St. Mary of the Hill Parish and St. Mary of the Hill) | Hubertus |
| St. Mary Congregation  (Hales Corners) (a/k/a St. Mary Parish) | Hales Corners |
| St. Marys Congregation (Kansasville) (a/k/a St. Mary Parish) | Kansasville |
| St. Mary's Congregation (Kenosha) (a/k/a St. Mary Parish) on its own behalf and as successor in interest to the insurance rights of St. Thomas Aquinas (Kenosha) | Kenosha |
| St. Mary's Congregation (Lomira) (a/k/a St. Mary Parish) | Lomira |

| | |
|---|---|
| St. Mary's Congregation (Marytown) (a/k/a St. Mary Parish) | Marytown |
| Saint Mary's Congregation (Mayville) (a/k/a St. Mary Parish) | Mayville |
| St. Mary's Congregation (Menomonee Falls) (a/k/a St. Mary Parish) | Menomonee Falls |
| St. Mary's Congregation (Port Washington) (a/k/a St. Mary Parish) | Port Washington |
| St. Marys Congregation (Racine) (a/k/a St. Mary Parish and St. Mary by the Lake) | Racine |
| Saint Mary's Congregation (Springvale) (a/k/a St. Mary Parish) | Springvale |
| St. Mary Congregation (Waukesha ) (a/k/a St. Mary Parish) | Waukesha |
| St. Mary's Congregation (Woodland) (a/k/a St. Mary Parish) | Woodland |
| St. Mary's Congregation (Elm Grove) (a/k/a St. Mary's Visitation) | Elm Grove |
| St. Matthew's Congregation (Campbellsport) (a/k/a St. Matthew Parish), on its own behalf and as successor in interest to the insurance rights of St. Kilian (St. Kilian) and St. Martin (Ashford) | Campbellsport |
| St. Matthew's Congregation (Neosho) (a/k/a St. Matthew Parish) | Neosho |
| St. Mathias Congregation (Milwaukee) (a/k/a St. Matthias Parish) | Milwaukee |
| St. Maximillian Kolbe Congregation (Milwaukee) (a/k/a St. Maximilian Kolbe) | Milwaukee |
| St. Michaels' Congregation (Kewaskum) (a/k/a St. Michael Parish and St. Michael), on its own behalf and as successor in interest to the insurance rights of St. John of God (Farmington) | Kewaskum |
| St. Michael's Congregation (Milwaukee) (a/k/a St. Michael Parish) | Milwaukee |
| St. Monica's Congregation (Whitefish Bay) (a/k/a St. Monica Parish) | Whitefish Bay |
| St. Patrick's Congregation (Elkhorn) (a/k/a St. Patrick Parish) | Elkhorn |
| St. Patricks Congregation (Milwaukee) (a/k/a St. Patrick | Milwaukee |

Parish)

| | |
|---|---|
| St. Patricks Congregation (Racine) (a/k/a St. Patrick Parish) | Racine |
| St. Patricks Congregation (Whitewater) (a/k/a St. Patrick Parish) | Whitewater |
| St. Paul's Catholic Church (Genesee Depot) (a/k/a St. Paul Parish) | Genesee Depot |
| St. Paul The Apostle Congregation (Racine) (a/k/a St. Paul the Apostle Parish) | Racine |
| St. Peter Claver Congregation (Sheboygan) (a/k/a St. Peter Claver Parish) | Sheboygan |
| St. Peter Congregation (Port Washington) (a/k/a St. Peter of Alcantara Parish) | Port Washington |
| St. Peters Congregation (East Troy) (a/k/a St. Peter Parish) | East Troy |
| St. Peter's Congregation (Slinger) (a/k/a St. Peter Parish and St. Peter) | Slinger |
| St. Pius Congregation (Wauwatosa) (a/k/a St. Pius X Parish) | Wauwatosa |
| St. Rafael the Archangel Congregation (Milwaukee) (a/k/a St. Rafael the Archangel), on its own behalf and as successor in interest to the insurance rights of Holy Spirit (Milwaukee) and St. Barbara (Milwaukee) and St. Ignatius (Milwaukee) | Milwaukee |
| Congregation of St. Richard (Racine) (a/k/a St. Richard), on its own behalf and as successor in interest to the insurance rights of Holy Name (Racine) and Holy Trinity (Racine) and St. Casimir (Racine) and St. Rose (Racine) and St. Stanislaus (Racine) | Racine |
| St. Rita's Congregation (Racine) (a/k/a St. Rita Parish) | Racine |
| St. Rita's Congregation (West Allis) (a/k/a St. Rita Parish) | West Allis |
| St. Robert Bellarmine Congregation (Union Grove) (a/k/a St. Robert Bellarmine Parish) | Union Grove |
| St. Robert's Congregation (Shorewood) (a/k/a St. Robert Parish) | Shorewood |
| St. Roman Congregation (Milwaukee) (a/k/a St. Roman Parish) | Milwaukee |
| The Congregation of St. Rose (Milwaukee) (a/k/a St. Rose | Milwaukee |

Parish)

| | |
|---|---|
| St. Sebastian's Congregation (Milwaukee) (a/k/a St. Sebastian Parish) | Milwaukee |
| St. Sebastian Congregation (Sturtevant) (a/k/a St. Sebastian Parish) | Sturtevant |
| St. Theresa's Congregation (Eagle) (a/k/a St. Theresa Parish) | Eagle |
| St. Therese Congregation (Kenosha) (a/k/a St. Therese Parish) | Kenosha |
| St. Therese Congregation (Milwaukee) (a/k/a St. Therese Parish) | Milwaukee |
| St. Thomas Aquinas Congregation (Elkhart Lake) (a/k/a St. Thomas Aquinas), on its own behalf and as successor in interest to the insurance rights of St. Fridolin (Glenbeulah) and St. George (Elkhart Lake) | Elkhart Lake |
| St. Thomas Aquinas Congregation (Waterford) (a/k/a St. Thomas Aquinas Parish) | Waterford |
| The St. Vincent a Paulo Congregation (Milwaukee) (a/k/a St. Vincent de Paul Parish) | Milwaukee |
| St. Vincent Pallotti Congregation (Milwaukee) (a/k/a St. Vincent Pallotti Parish), on its own behalf and as successor in interest to the insurance rights of Holy Cross (Milwaukee) and St. Anthony of Padua (Milwaukee) | Milwaukee |
| St. William Congregation (Waukesha) (a/k/a St. William Parish) | Waukesha |
| Three Holy Women Congregation (Milwaukee) (a/k/a Three Holy Women), on its own behalf and as successor in interest to the insurance rights of Holy Rosary Church(Milwaukee) and St. Hedwig (Milwaukee) and St. Rita Church (Milwaukee) | Milwaukee |

# Attachment G

## Notice Information for Related Entities Not Represented by Foley & Lardner LLP

| **Location** | **Notice Address** |
|---|---|
| Calvary Cemetery | Pastor or Parish Administrator c/o Holy Family Parish 271 Fourth Street Way Fond du Lac, WI 54937-7508 |
| Calvary Cemetery, Sheboygan, Wisconsin (a/k/a Calvary Cemetery) | Pastor or Parish Administrator c/o St. Dominic Parish 2133 N. 22nd Street Sheboygan, WI 53081 |
| Catholic Cemetery Assoc. of Racine Inc. | Pastor or Parish Administrator c/o St. Rita Parish 4339 Douglas Avenue Racine, WI 53402-2997 |
| Catholic Charities of the Archdiocese of Milwaukee, Inc. (a/k/a Catholic Charities; f/k/a Catholic Social Services of the Archdiocese of Milwaukee, Inc. and Catholic Social Welfare Bureau) | Executive Director 3501 S. Lake Drive P.O. Box 070912 Milwaukee, WI 53207-0912 |
| All Saints Catholic East School System, Inc. (a/k/a Catholic East Elementary) | Principal 2461 N. Murray Avenue Milwaukee, WI 53211 |
| Catholic Memorial High School of Waukesha, Inc.(a/k/a Catholic Memorial High School) | President 601 E. College Avenue Waukesha, WI 53186-5538 |
| Christ Child Christian Formation Ministry, Inc. (a/k/a Christ Child Academy) | Supervising Pastor 2722 Henry Street Sheboygan, WI 53081 |

| | |
|---|---|
| Consolidated Parochial Elementary School Johnsburg Marytown-Mt. Calvary-St. Cloud, Inc. (a/k/a Consolidated Parochial Elementary) | Principal<br>N9290 County W<br>Fond du Lac, 54937 |
| DeSales Preparatory Seminary, Inc. (a/k/a DeSales Prep/ACCC) | Treasurer<br>3501 S. Lake Drive<br>Milwaukee, WI 53207-0912 |
| Holy Sepulcher Cemetery | Pastor or Parish Administrator<br>c/o Divine Mercy Parish<br>695 College Avenue<br>South Milwaukee, WI 53172 |
| Mary Queen of Saints Catholic Academy | Pastor or Principal<br>c/o St. Aloysius<br>1414 S. 93rd Street<br>West Allis, WI 53214-4299 |
| M.H.S., Inc. (a/k/a Messmer High School) | Vice President<br>742 W. Capitol Drive<br>Milwaukee, WI 53206 |
| Milwaukee Catholic Press Apostolate (a/k/a Milwaukee Catholic Press/Cath Herald) | Executive Editor/General Manager<br>3501 S. Lake Drive<br>PO Box 070913<br>Milwaukee, WI 53207-0913 |
| Northwest Catholic School | Pastor or Parish Administrator<br>c/o St. Bernadette Parish<br>8200 W. Denver Avenue<br>Milwaukee, WI 53233 |
| Milwaukee Archdiocesan Office for World Mission, Inc. (Milwaukee)(a/k/a Office for World Missions) | Director<br>3501 S. Lake Drive<br>Milwaukee, WI 53207-0913 |
| Our Lady of Mount Carmel (Kenosha)(a/k/a Our Lady of Mt Carmel Parish) | Pastor or Parish Administrator<br>1919 54th Street<br>Kenosha, WI 53140 |
| Congregation of the Holy Rosary of Pompeii (Kenosha) (a/k/a Our Lady of the Holy Rosary and Our Lady of Rosary) | Pastor or Parish Administrator<br>2224 45th Street<br>Kenosha, WI 53140 |

| | |
|---|---|
| Pius XI High School, Inc. (Milwaukee) (a/k/a Pius XI High School) | President<br>135 N. 76th Street<br>Milwaukee, WI 53213 |
| Port Washington Catholic School, Inc. (Port Washington) (a/k/a Port Washington Catholic Schools) | Principal<br>1802 N. Wisconsin Street<br>Port Washington, WI 53074 |
| Providence Catholic School | Pastor or Parish Administrator<br>c/o St. John the Baptist Parish<br>1704 240th Avenue<br>Kansasville, WI 53139 |
| Society for the Propagation of the Faith, Archdiocese of Milwaukee (Milwaukee) (a/k/a Society for the Propagation of the Faith and Office for the Propagation of the Faith and Office for the Propagation of the Faith) | Director<br>3501 S. Lake Drive<br>Milwaukee, WI 53207-0913 |
| St. Aloysius' Congregation (West Allis) (a/k/a St. Aloysius Parish) | Pastor or Parish Administrator<br>1414 S. 93rd Street<br>West Allis, WI 53214-4299 |
| St. Augustin's Congregation (Trenton) (a/k/a St. Augustine Parish) | Pastor or Parish Administrator<br>521 Congress Street<br>P.O. Box<br>Newburg, WI 53060-0016 |
| St. Catherine's Congregation (Sharon) (a/k/a St. Catherine Parish) | Pastor or Parish Administrator<br>PO Box 502<br>Sharon, WI 53585 |
| St. Charles Cemetery Association | Pastor or Parish Administrator<br>c/o Holy Family Parish<br>271 Fourth Street Way<br>Fond du Lac, WI 54937-7508 |
| St. Charles Youth & Family Services, Inc. (Milwaukee) (a/k/a St. Charles, Inc.) | President<br>151 S. 84th Street<br>Milwaukee, WI 53214 |

| | |
|---|---|
| St. Eugene Congregation (Fox Point) (a/k/a St. Eugene Parish) | Pastor or Parish Administrator<br>7600 N. Port Washington Road<br>Fox Point, WI 53217-3199 |
| Saint Francis de Sales Seminary, Inc. (a/k/a St. Francis de Sales Seminary; f/k/a St. Francis Seminary) | Director<br>3257 S. Lake Drive<br>St. Francis, WI 53234 |
| St. Joseph Catholic Academy, Inc. (Kenosha) (a/k/a St. Joseph Catholic Academy) | President<br>2401 69th Street<br>Kenosha, WI 53143 |
| St. Mary's Springs Academy of Fond du Lac, Wisconsin, Inc. (Fond Du Lac) (a/k/a St. Mary's Springs Academy) | President<br>255 County Road K<br>Fond du Lac, WI 54937 |
| St. Matthews Congregation (Oak Creek) (a/k/a St. Matthew Parish) | Pastor or Parish Administrator<br>9303 S. Chicago Road<br>Oak Creek, WI 53154 |
| St. Maximillian Kolbe Congregation (Milwaukee) (a/k/a St. Maximilian Kolbe) | Pastor or Parish Administrator<br>2427 S. 15th Street<br>Milwaukee, WI 53215 |
| The St. Michael's Priest Fund of the Archdiocese of Milwaukee (Milwaukee) (a/k/a St. Michael's Priest Fund) | Vice-President<br>3501 S. Lake Drive<br>Milwaukee, WI 53207-0913 |
| St. Paul's Congregation (Milwaukee) (a/k/a St. Paul Parish) | Pastor or Parish Administrator<br>1720 E. Norwich Avenue<br>Milwaukee, WI 53207-4618 |
| St. Peter's Congregation (Kenosha) (a/k/a St. Peter Parish) | Pastor or Parish Administrator<br>2224 S. 30th Avenue<br>Kenosha, WI 53144 |
| The St. Sebastian School Foundation, Inc. (Milwaukee) (a/k/a St. Sebastian School Foundation) | Director<br>5400 W. Washington Blvd.<br>Milwaukee, WI 53208 |

| | |
|---|---|
| The St. Stanislaus Congregation (Milwaukee) (a/k/a St. Stanislaus Parish) | Pastor or Parish Administrator 524 W. Historic Mitchell Street Milwaukee, WI 53204-3599 |
| St. Stephans Congregation (Oak Creek) (a/k/a St. Stephen Parish) | Pastor or Parish Administrator 1441 W. Oakwood Road Oak Creek, WI 53154 |
| St. Therese Congregation (Kenosha) (a/k/a St. Therese Parish) | Pastor or Parish Administrator 9005 22nd Avenue Kenosha, WI 53143 |
| St. Thomas Aquinas Academy | Pastor or Parish Administrator c/o St. Veronica Parish 353 E. Norwich Avenue Milwaukee, WI 53207 |
| Saint Thomas More High School, Inc. (Milwaukee) (a/k/a St. Thomas More High School; f/k/a Thomas More High School, Inc.) | Chief Administrator 2601 E. Morgan Avenue Milwaukee, WI 53207-3725 |
| St. Veronica's Congregation (Milwaukee) (a/k/a St. Veronica Parish) | Pastor or Parish Administrator 353 E. Norwich Avenue Milwaukee, WI 53207 |
| Wauwatosa Catholic School, Inc. (a/k/a Wauwatosa Catholic School) | Pastor or Parish Administrator c/o St. Bernard Parish 7474 Harwood Avenue Wauwatosa, WI 53213-2641 |