IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | Case No. 11-20059-SVK |
| | ) | |
| ARCHDIOCESE OF MILWAUKEE, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Susan V. Kelley |
| | ) | |

**REQUEST FOR STATUS CONFERENCE ON PLAN CONFIRMATION ISSUES AND STATUS CONFERENCE STATEMENT BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors ("**Committee**") hereby requests a status conference to address the timing, sequence and procedures for the Court's disposition of certain of its multiple objections to plan confirmation. In support of this request, the Committee hereby submits this Status Conference Statement and respectfully represents as follows.

The Committee believes that the *Chapter 11 Plan of Reorganization dated February 12, 2014 Proposed by the Archdiocese of Milwaukee* ("**Plan**")[1] is fatally flawed and cannot be confirmed by the Court. Accordingly, the Committee will be objecting to the Plan on multiple

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Disclosure Statement and Plan.

James I. Stang
Kenneth H. Brown
Gillian N. Brown
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: kbrown@pszjlaw.com

grounds. Some of those grounds are based on purely legal defects in the Plan and others are fact intensive and will require discovery and evidentiary hearings. The legal objections to the Plan, if successful, would preclude confirmation of the Plan, and therefore preclude the necessity of expending the resources of the Estate and the Court on further protracted discovery and evidentiary hearings. Moreover, at least one of these purely legal objections,[2] the Archdiocese's lack of standing to settle the Cemetery Trust Litigation, can be briefed by both sides relatively quickly. Therefore, the Committee requests that the Court consider the Committee's purely legal objection to the standing of the Archdiocese to settle the Cemetery Trust Litigation before requiring the parties to engage in what the Committee believes will be substantial discovery and multiple days of evidentiary hearings, which the Committee believes are not likely to be necessary if its standing objection is considered first.

## The Archdiocese Lacks Standing to Settle the Cemetery Trust Litigation.

The proposed settlement of the Cemetery Trust Litigation is a linchpin of the Plan and the Archdiocese has informed the Committee that it will not seek to confirm a plan without it. This proposed settlement was achieved without any input from, or participation by, the Committee. The Archdiocese seeks to settle the Cemetery Trust Litigation as part of the Plan over the Committee's strenuous objections, notwithstanding the fact that it has previously stipulated that the Committee is **the only party** that can settle the litigation, and this Court has so ordered.

---

[2] At the present time, in addition to the standing objection, the Committee is considering several other additional objections to the Plan, which are either purely matters of law, or would not require significant discovery beyond the disclosure of financial information for those non-debtor entities that will be released from the claims of the Abuse Survivors under the Plan, including, without limitation: (i) the Insurance Settlement cannot be approved because (a) it requires improper non-consensual releases of non-debtors (all the Parishes and most other entities related to the Archdiocese) by the Abuse Survivors; and (b) the proposed rescission of the insurance policies is impermissible over the objections of the Abuse Survivors in a direct action state like Wisconsin. Without this Court's approval of both the Insurance Settlement and the Cemetery Trust Settlement, the Plan cannot be confirmed.

On January 30, 2012, the Archdiocese, Committee and Cemetery Trust entered into the "*Second Stipulation Regarding the Official Committee of Unsecured Creditors Standing to Defend the Adversary Proceeding, Bring Avoidance Claims Related to the Amended Complaint, and Litigate or Propose or Accept a Settlement of the Adversary Proceeding*" [Docket No.37) ("**Stipulation**").  A true copy of the Stipulation is attached hereto as **Exhibit A**.

In the Stipulation, the Archdiocese acknowledged that it did not dispute any of the contentions of the Cemetery Trust in the Cemetery Trust Litigation and that the Committee, not the Archdiocese, was in the best position to defend the allegations and claims for relief brought by the Cemetery Trust and to prosecute related claims on behalf of the Estate.  This of course is not surprising as Archbishop Listecki, as the President and Sole Member of the Archdiocese and as the sole trustee of the Cemetery Trust, controls both entities.  The Archdiocese and the Cemetery Trust have a complete identity of interest in the Cemetery Trust Litigation.  Paragraph 4 of the Stipulation provides "**The Committee is the party authorized to propose or accept a settlement of [the Cemetery Trust Litigation]…by entering into a settlement agreement subject to Court approval pursuant to Federal Rule of Bankruptcy Procedure 9019**."  There is nothing in the Stipulation that permits the Archdiocese to change its mind and take back the authority to settle. While the Stipulation allows the Archdiocese to object to a settlement proposed by the Committee, it may not do so based on the Committee's inability to exercise its business judgment in place of that of the Archdiocese.

DOCS_SF:84989.2 05058/003

3

Case 11-20059-svk    Doc 2627    Filed 04/11/14    Page 3 of 11

On February 2, 2012, the Court entered its "*Order Approving Stipulation*" [Docket No. 39] incorporating the operative language of the Stipulation into its order. A true copy of the Order Approving Stipulation is attached hereto as **Exhibit B**.

In the Plan, the Archdiocese ignores the existence of the Stipulation and Order Approving Stipulation. Moreover, the Archdiocese has not filed a motion apprising the Court or the Committee of the facts and authority that support the vacatur of the Court's order or that would entitle the Archdiocese to renege on its agreement. Without such a motion, granted by the Court, the Plan cannot be confirmed, and the Plan confirmation process should not go forward. The Committee urges the Court to require the Archdiocese to file its motion to vacate the Order and relieve it of the terms of the Stipulation, which motion apprises the Court and the Committee of the basis of this extraordinary relief and allows the Committee sufficient time to respond, before allowing the Plan confirmation process to proceed further.

The Committee notes that while counsel for the Archdiocese informed the Court at the status conference on the Disclosure Statement, that authority existed to take standing to settle away from the Committee and transfer it to the Archdiocese, the Committee's research has failed to reveal any authority that comes close to supporting such relief where committee standing was granted: (a) by agreement with the debtor; (b) the debtor and the counter- party in the litigation were controlled by the same individual and both parties have a complete identity of interest in the underlying litigation; and (c) the interests of the debtor and the counter-party were (and still are) in direct conflict with the interests of the Estate.

## The Archdiocese Should be Required to Support its Contentions Concerning the Settlement with Evidence

If the Court determines that the Archdiocese has standing to settle the Cemetery Trust Litigation, the Court should require the Archdiocese/Archbishop to present evidence to support the contentions of the Archdiocese that the proposed settlement is in the best interests of the Estate and that the Committee is unlikely to prevail in the same manner as would be required if the Archdiocese were moving to settle the litigation pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.[3] The Court must be apprised, through admissible evidence, rather than unsupported allegations, of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment. Requiring the Archdiocese to present all of the evidence it intends to rely on to support the settlement is especially important in these circumstances where: (i) the settlement is blatantly is collusive as it is nothing more than an attempt by the Archbishop to settle with himself and moot the 7th Circuit appeal; and (ii) the Archdiocese/Archbishop bears a "double burden of proof" both as the party proposing the settlement, and on the key issues in the underlying litigation.

Settlements proposed in plans of reorganization pursuant to 11 U.S.C. § 1123(b)(3)(A) are governed by the same standards as settlements for which a party seeks approval outside a plan pursuant to Federal Rule of Bankruptcy Procedure 9019. *In re Bigler LP*, 442 B.R. 537, 544 (Bankr. S.D. Tex. 2010); *See also In re Aleris Int'l, Inc.,* 2010 WL 3492664, *18 (Bankr. D. Del. May 13, 2010); *In re TCI Holdings, LLC*, 428 B.R. 117, 135 (Bankr. D.N.J. 2010). The Archdiocese, as the proponent of the Plan, has the burden of proof to establish that any

---

[3] This requirement should apply as well to the attempts of the Archdiocese in the Plan to extinguish the Estate's claims through purported settlements with De Sales (relating to whether the Cousins Center is property of the Estate) and the FIOF Trust.

settlement proposed in the Plan is reasonable, adequate, fair and equitable. *In re Tribune Co.*, 464 B.R. 126, 151 (Bankr. D. Del. 2011); *In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Or. 2002). Likewise, the proponent of a Bankruptcy Rule 9019 settlement has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986).

The Archdiocese, as the Plan proponent and the party seeking approval of the settlement, has the burden of proof to present evidence supporting the approval of the settlement under the applicable standard, and also bears the burden of proof on the key element of the Archbishop's contention regarding the merits of the underlying litigation—that the over $54,000,000 transferred to the Cemetery Trust in March 2008, was held in trust (the "**Alleged Original Trust**") at the time of the transfer (notwithstanding the fact that no trust agreement existed and the audited financial statements of the Archdiocese acknowledged that the funds were not subject to any donor restrictions and were in fact "unrestricted" at the time they were transferred. Since the funds that the Archdiocese transferred to the Cemetery Trust were titled to the Archdiocese and under its complete and unfettered control prior to the transfer to the Cemetery Trust, the funds were presumptively property of the Estate prior to the transfer. *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988); *Catholic Diocese of Wilmington v. Official Committee of Unsecured Creditors*, 432 B.R. 135,147 (Bankr. D. Del. 2010). In order to establish that the unrestricted funds the Archdiocese transferred to the Cemetery Trust were held in trust prior to being transferred to the Cemetery

Trust, the Archdiocese/Archbishop bear the burden of proof on two showings: (1) they must demonstrate the existence and legal source of the alleged trust relationship by ***clear and convincing evidence***;[4] and (2) they must identify the trust fund and, if the trust fund has been commingled with other funds, trace the trust funds. *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994); *see also Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273, 280 (3d Cir. 1991) (same); *Old Rep. Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 723 (4th Cir. 1998) (party claiming entitlement to a trust must be able to trace its assets into the fund or property that is the subject of the trust); *Bullion Reserve of North America*, 836 F.2d at 1218 (tracing is required under federal bankruptcy law to further the Bankruptcy Code's policy of equal distribution among similarly situated creditors); *Catholic Diocese of Wilmington v. Official Committee of Unsecured Creditors*, 432 B.R. 135,147 (Bankr. D. Del. 2010). Whereas the first showing is generally a question of state law, the second showing, when it pertains to the distribution of assets from an entity in bankruptcy proceedings, is exclusively a question of federal law. *Catholic Diocese of Wilmington*, 432 B.R. at147 (Bankr. D. Del. 2010); Goldberg, 932 F.2d at 280; *see also Official Comm. v. Columbia Gas Systems Inc. (In re Columbia Gas Systems Inc.)*, 997 F.2d 1039, 1063 (3d Cir. 1993) (to protect interests of secured and unsecured creditors, federal law requires that beneficiaries of trust funds bear the burden of identifying and tracing trust property); *Dameron*, 155 F.3d at 723 (tracing is an issue of federal rather than state law).

---

[4] The party asserting a trust bears the burden of proof under the "clear and convincing" standard. *Rameker v. Peterson (In re Associated Enterprises, Inc.)*, 234 B.R. 718 (Bankr. W.D. WI 1999); *Estate of James v. Kerley (In re James Estate),* 267 Wis. 105, 118, 65 N.W. 2d 9, 118 (1954) (resulting trust "must be established by clear and convincing proof.").

Without reviewing the documents, testimony and other evidence the Archdiocese intends to rely on to support the proposed settlement, among other things, the Committee cannot determine what facts or theories the Archdiocese and Archbishop are relying on to establish the transferred funds were held in trust at the time of the transfer. For example, the Archbishop has pleaded inconsistent theories in its Amended Complaint [Docket No. 34 in the Adversary Proceeding] concerning the formation and funding of the Alleged Original Trust. On the one hand, the Archbishop contends that for decades individuals that wished to be interred in the Cemeteries ("**Cemetery Customers**") delivered funds to the Archdiocese entitling them to perpetual care of their plot, crypt or niche and that the "interactions" between the Archdiocese and the "purchasers of graves, crypts and mausoleums resulted in the creation of a resulting trust based on the nature of those transactions and the intentions manifested by the parties." Amended Complaint at paragraphs 17 and 55. Therefore, the Archbishop is contending that the intention of Archdiocese and the Cemetery Customers to create the trust establishes the trust relationship and the Alleged Original trust was funded by the money the Archdiocese received from the Cemetery Customers. However, at paragraphs 61-65 of the Amended Complaint, the Archbishop makes contradictory contentions that it was the Archdiocese itself rather than the Cemetery Customers that funded the alleged Original Trust.

These two conflicting theories are based on inconsistent facts and while a party may be permitted to plead inconsistent theories, when it comes to proof, the Archbishop and Archdiocese must choose which version of the facts they intend to attempt to prove. Until they do this, and show the Court and the Committee the evidence they rely to support their

contentions, it is impossible for the Court to evaluate the "facts" or for the Committee to conduct needed discovery concerning the Cemetery Trust Settlement with any focus or precision.

Moreover, the decision of the Archbishop/Archdiocese as to which of these factually inconsistent theories will be used to attempt to establish the Alleged Original Trust has profound implications both in terms of the proof that will be necessary and with respect to whether the funds transferred to the Cemetery Trust are assets of the Estate, even if they were held in trust at the time they were transferred. Under the first theory, that the trust res is made up of the funds contributed by the Cemetery Customers, the Archdiocese/Archbishop must present evidence of both the alleged intent of itself and the Cemetery Customers, and critically, also must show that the funds received from the Cemetery Customers were never commingled with the funds of the Archdiocese, and if they were, then the Archdiocese/Archbishop must trace those funds from the commingled accounts into the Alleged Original Trust under the lowest intermediate balance test. *Catholic Diocese of Wilmington v. Official Committee of Unsecured Creditors*, 432 B.R. 135, 151-162 (Bankr. D. Del. 2010) (in depth discussion of the lowest intermediate balance test and its application). The Committee believes that the Archbishop has plead the alternative theory (that the Archdiocese itself funded the Alleged Original Trust by transferring its own funds into an allegedly segregated account) in the hopes of avoiding its obligation to trace the funds of the Cemetery Customers and the requirement to prove the intent of the Cemetery Customers. However, whether or not this theory excuses proof of the intent of the Cemetery Customers and the tracing requirement, it presents another major issue. If the Archdiocese itself created and funded the Alleged Original Trust and the Cemetery Trust for the purpose of fulfilling its alleged

obligations to provide perpetual care for its Cemeteries, then both the alleged Original Trust and the Cemetery Trust are self-settled trusts for which the Archdiocese was and is a beneficiary. Under, Wisconsin law, the assets in self-settled trusts in which the settlor is the beneficiary, are available to creditors. See Wis. Stats. § 701.06(6)(a).[5]

The Committee requests that the Court require the Archdiocese to present testimony, by affidavit, along with any documents the Archdiocese is relying on to meet its evidentiary burdens, under whatever theory it chooses to proceed under, in the same manner as would be required in a Rule 9019 motion, so that the Court can apprise itself of the actual facts and the Committee can determine and conduct necessary discovery prior to any evidentiary hearing on the Cemetery Trust Settlement.

The forgoing summary of only some of the multiple and complex issues that will need to be dealt with by the parties and the Court in order for the Court to evaluate the proposed settlement of the Cemetery Trust Litigation, highlights the practical necessity of addressing the "standing" issue first.

---

[5] *Wis. Stats. § 701.06(6)(a) provides: "**Settlor As Beneficiary**. (a) Not withstanding any provision in the creating instrument and in addition to the remedies available under subs. (4) and (5) where the settlor is a beneficiary, upon the application of a judgment creditor of the settlor, the court may, if the terms of the instrument require or authorize the trustee to make payments of income or principal to or for the benefit of the settlor, order the trustee to satisfy part of all of the judgment out of part or all of the payments of income or principal as they are due, presently or in the future, or which are payable in the trustee's discretion, to the extent in either case of the settlor's proportionate contribution to the trust."*

Dated: April 11, 2014

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Kenneth H. Brown*
James I. Stang (CA Bar No. 94435)
Kenneth H. Brown (CA Bar No. 100396)
Gillian N. Brown (CA Bar No. 205132)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jstang@pszjlaw.com
kbrown@pszjlaw.com
gbrown@pszjlaw.com

-and-

Albert Solochek (State Bar No. 1011075)
Jason R. Pilmaier (State Bar No. 1070638)
Howard, Solochek & Weber, S.C.
1845 N. Farwell Avenue, Suite 301
Milwaukee, Wisconsin 53202
Telephone: (414) 272-0760
Facsimile: (414) 272-7265
E-mail: asolochek@hswmke.com
jpilmaier@hswmke.com

Attorneys for the Official Committee of Unsecured Creditors