IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                              Case No. 11-20059-svk

**ARCHDIOCESE OF MILWAUKEE,**                       Chapter 11

        Debtor.                                 Hon. Susan V. Kelley

**DEBTOR'S RESPONSE TO THE OBJECTIONS TO THE DISCLOSURE STATEMENT**

The Archdiocese of Milwaukee, debtor and debtor-in-possession, (the "Archdiocese" or the "Debtor") by and through its counsel, Whyte Hirschboeck Dudek S.C., hereby submits this response to the objections filed by the Official Committee of Unsecured Creditors (the "Committee") and Certain Abuse Survivors Represented by Jeff Anderson & Associates PA (the "Anderson Law Firm") [Dkt. No. 2614], Certain Insurers [Dkt. No. 2613], and OneBeacon Insurance Company [Dkt. No. 2616] (collectively, the "Objections"). In support of its Response, the Archdiocese respectfully states as follows:

**I.     THE COMMITTEE'S OBJECTIONS**

1.     The changes proposed by the Committee and the Anderson Law Firm often include inappropriate and inflammatory comments, factual inaccuracies, speculative legal theories with no factual support, and the rearguing of matters previously resolved by this Court. Inclusion of these proposed changes creates a seriously misleading description of the state of the

Daryl L. Diesing
Bruce G. Arnold
Francis H. LoCoco
Whyte Hirschboeck Dudek S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone:  (414) 978-5523
Facsimile:   (414) 223-5000
Email:ddiesing@whdlaw.com

Chapter 11 Case and the prospect of future recovery outside of confirmation of the Debtor's proposed Plan.

2. To expedite the Court's and the Parties' consideration of the Disclosure Statement, the Debtor is attaching hereto, as **Exhibit A,** a redline to the "Revised Disclosure Statement" submitted by the Committee and the Anderson Law Firm (the "Redline"). The Redline shows the Debtor's proposed revisions to the Disclosure Statement, which are intended to account for the comments of the Committee and the Anderson Law Firm, but to omit information that would make the Disclosure Statement misleading.

3. The Committee's comments were either retained and set out clearly with the phrase "Committee Comment," or deleted because their inclusion would be misleading to creditors.

4. The types of comments that the Debtor deleted fall into the following four categories:

    (a) Information that is factually inaccurate;

    (b) Statements that are inflammatory rhetoric;

    (c) Allegations and theories that are unsupported by the facts and are merely speculative; and

    (d) Comments that are aimed at re-litigating issues that were already decided by the Bankruptcy and District Courts.

5. The Debtor did not incorporate some of the Committee's changes regarding such matters as the calculation of the value of the claim for perpetual care, the FIOF Trust, and the Cemetery Trust history because the proposed changes are factually inaccurate and render the descriptions misleading. Where appropriate, the Debtor added additional information to correct the Committee's apparent misconceptions.

6. It is inappropriate to include speculative theories about potential asset recoveries in the Disclosure Statement because it distorts the potential for recovery for creditors outside the Plan. Most troubling among these are the Committee's assertions about potential recovery from the Fiduciary Income Investment Account (the "FIIA") and the Faith in Our Future Trust (the "FIOF Trust").

7. As has been previously explained to the Committee and addressed with this Court, *see Reply in Support of Debtor's Motion to Amend the Order Granting Debtor's Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1539] (the "Interim Compensation Reply"), the FIIA is comprised generally of funds held for others, restricted assets, and the Archdiocese's cash-savings. The vast majority of the funds are restricted assets.

8. As the Debtor stated over a year ago, there is no theory that the Debtor is aware of, and the Committee has not identified one, to make the restricted assets of the FIIA legally available to pay claims. The Debtor has long ago supplied the Committee's financial advisor and Committee counsel with information about the funds held in the FIIA. The Committee has never discussed a possible theory of recovery with the Debtor. Moreover, even though the Committee has never pursued the issues after the Debtor pointedly told all parties in interest in its Interim Compensation Reply [Dkt. No. 1539] a year ago that the Committee has no theory of how to include FIIA funds in the Estate, the Committee still offers no theory for how these limited assets could **_legally_** be made available to pay claims. Instead, the Committee appears to believe that is sufficient to state that there is an asset, of undetermined amount, that could be recovered. If the Committee believes that there is any potential for recovery from the FIIA, it should identify how much money is potentially recoverable, the legal theory for doing so, and the cost for doing so.

It would be irresponsible of the Debtor to incorporate the Committee's proposed changes regarding the FIIA because it would create false hope about a recovery, when there is no legal basis for any such recovery.

9. It would be equally irresponsible to adopt the Committee's changes regarding the FIOF Trust because the proposed changes are based on facts, that, even if remotely accurate, could not support a claim against the FIOF Trust. The factual and legal inaccuracies raised by the Committee were addressed previously in correspondence to the Committee when it sought derivative standing to pursue the FIOF Trust, *see* Exhibit A to the Interim Compensation Reply [Dkt. No. 1539], and in the original Disclosure Statement.

10. The Debtor cannot incorporate any of the changes regarding claims against the Parishes, because this Court has already ruled that the Committee cannot pursue any claims against the Parishes individually or against the Parish Deposit Fund. To include these changes, despite the Court's rulings to the contrary, would misstate the posture of the Chapter 11 Case, create unnecessary confusion for the parishes and their members, and inflate expectations about potential remaining claims.

11. The Committee also raised a concern about the amount of the claim for perpetual care. The amount of the claim for perpetual care is based on the present value of the future payments that the Archdiocese is obligated to make to provide for perpetual care. In very general terms, the Keegan analysis seeks to determine the present value of a promise to pay approximately $3,000,000 every year for perpetuity, i.e., forever. The analysis uses a 4.2% interest rate because that accounts for the risk of fluctuation in the costs of providing perpetual care – it is a relatively low number because there is a low likelihood that the cost of providing perpetual care will change over time. A higher number would indicate that there is likely to be

great fluctuation in the cost to provide perpetual care. The 4.2% interest rate is an indicator of risk, it is not a rate of return. The Committee does not dispute that this is the proper way to compute the present value of a future stream of payments.

12. The fact that, eight years ago, the Debtor asked the Keegan Linscott Firm to undertake a different analysis – how much money is required now, assuming a set rate of return, to generate a certain amount of revenue every year while accounting for inflation – does not change how one determines the present value of a future stream of payments. Further, it does not require much to understand that a lump sum payment now and lump sum payment that pays a guaranteed interest rate over time are not the same thing.

13. Lastly, the Committee requested that the Debtor remove certain estimates regarding the costs already incurred in connection with certain matters in the Chapter 11 Case. Because the Committee does not dispute the accuracy of the estimates and because this information is necessary to address the questions regarding the expenditures incurred in the Chapter 11 Case, the Debtor did not delete this information.

14. The Debtor also incorporated comments that the London Market Insurers (LMI) requested to be incorporated.

## II. CERTAIN INSURER'S OBJECTIONS

15. The Objection of Certain Insurers [Doc. 2613] ("Objection of Certain Insurers") is clearly a ruse to derail the Plan of Reorganization. Tellingly, the Objection of Certain Insurers focuses on what other creditors might worry about rather than anything the Certain Insurers would have standing or legitimate reason to raise.

16. Material Risks. The Objection of the Certain Insurers deceptively appears to complain on behalf of other creditors that the Debtor does not explain enough about the risk that Insurance Litigation Trust may not be successful in its pursuit of Non-Settling Insurers and may

spend money in the pursuit of claims. The Debtor is well aware of the potential litigation costs for the Insurance Litigation Trust and the potential for future recovery from the Non-Settling Insurers. For this reason, the Debtor provided an estimate of the amount that would be distributed per claim if there was no further litigation, and therefore, no additional recovery from the Insurance Companies – i.e., the Debtor only provided an estimate based on the amount of money that was certain to be available to Abuse Survivors, not hypothetical future recoveries. While there are numerous recoveries that could occur in future litigation with the Insurance Companies, the Debtor purposefully did not estimate such recoveries to avoid creating confusion about the amount that is certain to be available. Further, concerns about the litigation costs eroding the amount available to pay Class 9 and Unknown Abuse Survivor Claims are mitigated by the fact that the Claimants themselves will have an opportunity to determine how much is allowed to be used for future litigation, and that amount, in any event, cannot exceed $1,000,000.

17. Ironically, the Certain Insurers also seem to be concerned that <u>they</u> may have a defense (lack of duty to cooperate) that may let them off the liability hook. While the Committee and the Debtor have been very careful in their pursuit of coverage not to breach the duty to cooperate, it is ironic that the Certain Insurers, rather than the Committee, are concerned about this issue. Nevertheless, given the Debtor's objections to claims in this case, there cannot be a realistic concern that insurance rights have been waived by litigation to determine if there is coverage.

18. <u>Insurance Neutrality.</u> The Certain Insurers complain about the "insurance neutrality" language in the Plan. This language is the same or similar to language found in plans in such cases as the Diocese of Wilmington, *see Conformed Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D.

Delaware July 28, 2011 [Dkt. No. 1493], and certain asbestos related cases. It was carefully created by LMI's counsel, some of the most knowledgeable counsel in the country on this issue. In any event, this is a Plan confirmation issue. If additional language is needed, the Certain Insurers should propose it to the Debtor and LMI because both believe they have achieved such "neutrality" to the greatest extent allowed by law.

19. <u>Effects of Settlement.</u> The Objection first complains there is a lack of clarity about the amount of the LMI Settlement. Surely, this does not matter to the Certain Insurers and, in any event, it is clear they understand the details. However, there is nothing unclear about the settlement and amount of the payment pursuant to the LMI Settlement Agreement. The LMI Settlement Agreement entitles the Archdiocese to payment of $8,000,000, of which approximately $7,400,000 is immediately payable from the solvent LMI. The Debtor will seek to recover the remaining balance from a fund for insolvent insurers. As is clearly explained to the Disclosure Statement, 50% of the immediate payment and of any future recovery from the fund for insolvent insurers will be paid to Insurance Litigation Trust for the benefit of Class 9 and Unknown Claimants. The remaining 50% will be used to pay administrative expenses.

20. In its purported concerns over the effects of settlement, the Certain Insurers point to two provisions of the LMI Settlement that essentially require the Settlement to be approved by the Court in a Plan Confirmation Order without a change in the stated terms. The fact that the Settlement is contingent upon Plan Confirmation is repeatedly set forth in the Disclosure Statement.

21. <u>Post Confirmation Projections.</u> The post-confirmation projections are clearly set forth in Exhibit C to the Disclosure Statement. While it strains credibility to even ask why the Certain Insurers care about the projections when their only post-confirmation involvement will

be responding to the claims brought against them by the independent Insurance Litigation Trust post confirmation, the purported concern is completely unfounded. The Certain Insurers question the Archdiocese's conservative projected increase in giving and revenue from Parishes during the first year of the Plan. Because the first year of the projections is already three-fourths concluded, this is hardly speculative and the Archdiocese will demonstrate the appropriateness of the projections at the Plan Confirmation hearing.

22. Attached as **Exhibit B** and **Exhibit C** are a clean and redline copy of the Therapy Payment Process document, which was amended to include a draft authorization for release of medical records and updated compliance with various federal and state laws regarding disclosure of health information. It also deletes the requirement of references for professional therapists.

Dated this 15th day of April, 2014.

                              Respectfully submitted,

                              ARCHDIOCESE OF MILWAUKEE
                              Debtor and Debtor in Possession
                              By its counsel,
                              Whyte Hirschboeck Dudek S.C.

                      By:  /s/ Daryl L. Diesing
                              Daryl L. Diesing
                              Bruce G. Arnold
                              Francis H. LoCoco

<u>P.O ADDRESS:</u>
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Email: ddiesing@whdlaw.com
       barnold@whdlaw.com
       flococo@whdlaw.com