IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 11-20059-svk |
| ARCHDIOCESE OF MILWAUKEE, | Chapter 11 |
| Debtor. | Hon. Susan V. Kelley |

**DEBTOR'S RESPONSE TO REQUEST FOR STATUS CONFERENCE ON PLAN CONFIRMATION ISSUES AND STATUS CONFERENCE STATEMENT BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

On April 11, 2014, the Official Committee of Unsecured Creditors (the "Committee") filed a *Request for Status Conference on Plan Confirmation Issues and Status Conference Statement* [Dkt. No. 2627] (the "Request"). The Debtor does not believe that a status conference is necessary, nor is the Request in the best interest of the estate. The Debtor urges the Court not to accept the Committee's request to bifurcate plan confirmation issues into separate trials.

Section 105(d)(1) of the Bankruptcy Code permits a court to hold "status conferences as are necessary to further the expeditious and economical resolution of the case." Here, a status conference is unnecessary because the considerations raised by the Request can be consolidated with the Court's consideration of the scheduling associated with the Plan. Further, section 105(d)(2) permits a Court to court to enter "orders at such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." Bifurcating plan confirmation into separate trials is neither expeditious nor economical.

Daryl L. Diesing
Bruce G. Arnold
Francis H. LoCoco
Whyte Hirschboeck Dudek S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: (414) 978-5523
Facsimile: (414) 223-5000
Email:ddiesing@whdlaw.com

The Committee devotes substantial energies creating a "paper tiger" argument in an effort to convince the Court that the Archbishop's fiduciary duties to both the Archdiocese and the Cemetery Trust are at issue. They are not. The Debtor's audited financial statements, the Debtor's Chapter 11 disclosures, and the voluminous pleadings filed in the Cemetery Trust adversary proceeding make full disclosure of the Archbishop's civil and canonical roles. The Archdiocese's willingness to enter into the Stipulation puts to rest the unfounded inferences the Committee purports to draw. The Debtor's inherent rights as a debtor-in-possession and the Debtor's fiduciary obligations to the estate and creditors do not cease because of the Stipulation.

The more pertinent question is not whether the Archbishop's roles are relevant, but rather whether the Committee is acting as a fiduciary for all creditors, particularly in light of the Committee's relationships with State Court Counsel. For example, additional disclosures made under pressure from the Debtor have highlighted relationships between the Committee's counsel, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), the Committee's special constitutional counsel, Marci Hamilton, and State Court Counsel, especially the law firm of Jeff Anderson & Associates (the "Anderson Firm"). These disclosures include the fact that the Anderson Firm was paying $60,000 a year to Ms. Hamilton, that Ms. Hamilton is/was co-counsel on over 30 separate lawsuits with the Anderson Firm, and that the Committee has been retained by State Court Counsel in nearly all religious entity chapter 11 proceedings that have been filed, including retention post-petition by the post-petition litigation trusts. Only after the Debtor and the Office of the United States Trustee pressed the issue did Ms. Hamilton, who is acting as lead counsel on the Cemetery Trust appeals, make additional disclosures. She still fails to disclose the extent of her advocacy work with respect to RFRA and the First Amendment, and how such work, and the decision in this case on RFRA and the First Amendment, would affect the cases on which she is

co-counsel with the Anderson Firm. The Debtor requested this additional disclosure because the Debtor is concerned that the Committee's and its counsel's personal and economic conflicts are impeding the resolution of this case. Committee counsel will not disagree with the Anderson Firm on any issue because doing so would likely hamper PSZJ's ability to be retained in subsequent cases -- work that has proven lucrative for PSZJ, because it has demonstrated that it is willing to litigate every issue without regard to the chance of success because the estate is paying for both its own attorneys and the Committee's attorneys. This is best exemplified by the fact that, to the Debtor's knowledge, the Committee refused to make a settlement offer to counsel for the Cemetery Trust to settle the Cemetery Trust litigation in the nearly nine (9) months since the District Court decided against the Committee in the Cemetery Trust litigation.

Further, the Anderson Firm has worked diligently to avoid disclosing that it stands to reap large fees from its contingency recoveries in this type of case. It even goes so far as to file, without precedent, its mandatory Bankruptcy Rule 2019 disclosures under seal to keep its fee arrangements from the public. The obvious inference is that the Anderson Firm would prefer that the details regarding allocation of the recoveries made possible by the LMI Settlement remain unknown. The Anderson Firm's Bankruptcy Rule 2019 statement would have told the creditors in this case and the public the truth about how much of any recovery in this case for any abuse survivor class will go to the Anderson Firm, not the abuse survivors.

The Anderson Firm promised large recoveries in this case to the abuse survivors, and that is not reality. The Anderson Firm and the Committee Counsel have a pattern that they demand in all these cases -- to ignore legal rights and pressure the constituents to ignore such legal rights, while demanding that other creditors of the Debtor turn all money over to and allow the State Court Counsel to decide how that money should be split up among the abuse survivors.

Tellingly, in other religious entity cases, the State Court Counsel have taken their contingent fees out of plan distributions before division among creditors, thereby making the unrepresented creditors share in the payment of the State Court Counsel claimants' fees.

The Committee is using its status as a Committee with derivative standing to hold the case hostage and prevent the Debtor and the Court from considering a settlement proposal that is in the best interest of the estate. Taken to its extreme, the Committee's position would prevent this Court, despite its broad equitable powers from ever approving a settlement over the Committee's objection simply because the Committee obtained derivative standing.

In this vein, the Committee misrepresents the case law regarding the Debtor's ability to settle the Cemetery Trust adversary proceeding. The Committee professes that despite all of its research it has been unable to discover "any authority" permitting the Debtor to settle the adversary proceeding. (Request at 4.) This is untrue. First, in a July 2013 decision from the District Court in the Cemetery Trust litigation, Judge Randa expressly informed the Committee that that the grant of derivative standing can be unilaterally withdrawn if such a withdrawal is in the best interests of the bankruptcy estate. *In re Archdiocese of Milwaukee*, 469 B.R. 905, 918 (E. D. Wis. 2013). In so doing, Judge Randa directed the Committee's attention to *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 423 (2d Cir. 2008), and even provided a quotation from that case that "a court may withdraw a committee's derivative standing and transfer the management of its claims, even in the absence of that committee's consent, if the court concludes that such a transfer is in the best interests of the bankruptcy estate." *Id.*

Second, the Committee itself has acknowledged the inherent settlement authority of debtors over adversary proceedings regardless of the grant derivative standing. On December 6, 2012, during the Committee's attempt to convince the Court that derivative standing was

WHD/10323929.1                                     4

Case 11-20059-svk    Doc 2635    Filed 04/16/14    Page 4 of 6

warranted to pursue two separate pieces of litigation against the parishes, the Committee acknowledged that "there's lots of authority out there that says that, even if the committee has standing to file an adversary proceeding that would otherwise be in the debtor's realm, that it could be settled through a 9019 motion or through a diocese -- or through a plan." (Transcript of Oral Argument, 92:3-9 (Apr. 19, 2013) [Dkt. No. 1808].)

Finally, the Committee's professed inability to locate "any authority" is at best a refusal to read or internalize the teaching of the District Court in this case and to give careful study to the cases cited in the District Court's opinion, and at worst an attack on the actual statutory powers of both this Court and the Debtor. The *Adelphia* decision makes clear that the Committee's position is tantamount to creating "a veto over both the court and the debtor-in-possession" -- something that is wholly unsupported by the Bankruptcy Code and rightfully rejected by the *Adelphia* court. *Adelphia*, 544 F.3d at 425. Despite the Bankruptcy Code's broad grant of powers to the Debtor and the Court, including the Court's general equitable powers, the Committee has not offered any basis for its position that the Court cannot approve the settlement proposal when it is in the best interest of the estate. The Committee's lack of candor on the Debtor's settlement authority is troubling, and it further underscores the Debtor's position that the Committee's conflicts prevent it from being objective in this case and that the Committee will say and do anything to delay the resolution of this case.

Bifurcating plan issues into separate trials and hearings will only serve to further delay this case. The Debtor's ability to settle the Cemetery Trust litigation through the Plan is only one of the issues that the Committee has suggested the Court should resolve before considering Plan confirmation. The Committee has hinted at two other such issues, and the Debtor would not be surprised if the Committee somehow identified other issues in a further attempt to delay

WHD/10323929.1                                5

Case 11-20059-svk    Doc 2635    Filed 04/16/14    Page 5 of 6

confirmation of the Plan. The Committee's proposal would mean three separate hearings, three separate discovery requests, and three separate appeals -- to both the District Court and Seventh Circuit, presumably -- before this Court could consider plan confirmation. This cost and delay is not in the best interest of the estate or creditors. Accordingly, the Debtor respectfully urges this Court to avoid piecemeal litigation of plan issues -- many of which are interrelated and should not be considered on such a solitary basis -- and alternatively suggests that this Court address the standing issue of these issues at the plan confirmation hearing.

Dated this 16th day of April, 2014.

                           Respectfully submitted,

                           ARCHDIOCESE OF MILWAUKEE
                           Debtor and Debtor in Possession
                           By its counsel,
                           Whyte Hirschboeck Dudek S.C.

                  By:  s/ Daryl L. Diesing
                         Daryl L. Diesing
                         Bruce G. Arnold
                         Francis H. LoCoco

<u>P.O ADDRESS:</u>
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: (414) 978-5523
Facsimile: (414) 223-5000
Email: ddiesing@whdlaw.com
       barnold@whdlaw.com
       flococo@whdlaw.com