UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                           Chapter 11
Archdiocese of Milwaukee,                                       Case No. 11-20059-svk
                Debtor.

**MEMORANDUM DECISION ON DEBTOR'S OBJECTION
TO CLAIM FILED BY MARVIN THOMAS KNIGHTON**

The issue is whether the proof of claim of Marvin Thomas Knighton ("Mr. Knighton") should be disallowed as barred by either the First Amendment or the statute of limitations. The Court has authority to enter a final order on this dispute pursuant to 28 U.S.C. § 157(b)(2)(B).

Statement of Facts

The Archdiocese of Milwaukee (the "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 4, 2011. Mr. Knighton timely filed Proof of Claim No. 119 in the amount of $475,745 (the "Claim"), alleging that he is owed back-pay resulting from his wrongful termination as a Catholic priest. The Claim specified that $414,903 was for "Gross Compensation," $21,866 was for "Retirement Savings Supplement," and $38,976 was for "Professional Expenses."

On February 12, 2014, the Debtor filed an objection to the Claim, urging disallowance under 11 U.S.C. § 502(b)(1) because the Claim is "unenforceable against the debtor . . . under any agreement or applicable law." (Debtor's Obj. to Proof of Claim 119 ¶ 8.) Specifically, the Debtor's objection is based on the Seventh Circuit Court of Appeals' ruling in *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013), and the applicable statute of limitations. (*Id.*)

Mr. Knighton responded to the Claim objection in correspondence filed on March 17, 2014. He alleged that the Debtor wrongfully terminated him from the priestly ministry and refused to compensate him. (Docket No. 2589, at 1-2; Aff. Marvin Thomas Knighton Ex. C.) Even though Mr. Knighton was found not guilty of second degree sexual assault of a child in a jury trial in Milwaukee County, he was terminated as a Catholic cleric following two canonical trials. (Aff. Marvin Thomas Knighton Ex. D, Ex. C.) Mr. Knighton suggests that he was the victim of defamation, slander, libel, "Refusal of employment," racial discrimination, and a violation of the Privacy Act of 1974. (Docket No. 2589, at 3-4.) Finally, Mr. Knighton notes that the Debtor did not abide by Canon Law, and "simply chose to do it their way." (*Id.* at 4.)

After a preliminary hearing, the Debtor moved for summary judgment, claiming that even if all Mr. Knighton's factual allegations are presumed true, his Claim cannot be allowed as a matter of law. The Debtor's supporting brief argues that Mr. Knighton's claims are barred by both the First Amendment of the United States Constitution and the applicable statute of limitations. (Debtor's Br. Supp. Mot. Summ. J. (hereinafter "Debtor's Brief") 2.)

<u>Summary Judgment Standard</u>

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and should be granted if the Debtor can establish that there is no genuine issue of material fact and that the Debtor is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are facts that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should grant the Debtor's summary judgment motion if Mr. Knighton failed to establish an essential element of his claim on which he bears the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The non-moving

2

party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004).

Analysis

Mr. Knighton claims that the Debtor, a religious organization, wrongfully terminated him from the Catholic ministry as well as violated his state and federal rights. It is undisputed that Mr. Knighton served as a cleric in the Catholic Church in the Milwaukee Archdiocese, and that the Debtor removed Mr. Knighton from ministry following a canonical trial. In determining whether to allow the Claim, the Court must consider the scope of the rule precluding federal courts from interfering with a religious organization's ability to choose its own ministers. And, assuming that the First Amendment does not bar the allowance of Mr. Knighton's Claim, the Court must apply the statute of limitations to determine if the Claim is time-barred.

The First Amendment

The First Amendment to the United States Constitution begins, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The Debtor principally relies on the ministerial exception as an affirmative defense to Mr. Knighton's otherwise cognizable claim. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 705 (2012) ("[T]he Courts of Appeals have uniformly recognized the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers."). In *Hosanna-Tabor*, the Supreme

3

Court found such an exception when a minister sued her former employer under the Americans with Disabilities Act. The Equal Opportunity Employment Commission and Cheryl Perich brought suit against Hosanna-Tabor Evangelical Lutheran Church and School, claiming unlawful retaliation. Hosanna-Tabor moved for summary judgment, and the district court granted the motion because the suit was barred by the ministerial exception. The Sixth Circuit Court of Appeals vacated the district court decision and remanded the case, directing the district court to reach the merits on the retaliation claim. The Supreme Court reversed the judgment of the court of appeals.

In analyzing the historical underpinnings of the First Amendment, the Court explained, "The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." *Id.* at 703. According to the Court, "Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision." *Id.* at 706. The Court noted that at the time of the decision, Perich was no longer seeking reinstatement of her position; however, she continued to seek back-pay, compensatory and punitive damages, and attorneys' fees. Importantly for this case, the Court stated,

> An award of such relief would operate as a penalty on the Church for terminating an unwanted minister, and would be no less prohibited by the First Amendment than an order overturning the termination. Such relief would depend on a determination that Hosanna-Tabor was wrong to have relieved Perich of her position, and it is precisely such a ruling that is barred by the ministerial exception.

*Id.* at 709.

The Supreme Court favorably cited *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696 (1976), which addressed the propriety of a state court civil action challenging a church's decision to terminate a cleric. In *Milivojevich*, the Illinois

4

Supreme Court essentially reinstated the respondent as diocesan bishop, finding that the church failed to comply with its own laws and regulations when it removed him for defying the church hierarchy.  In reversing the judgment, the Supreme Court explained that the First Amendment allows "hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters.  When this choice is exercised . . . the Constitution requires that civil courts accept their decisions as binding upon them."  *Id.* at 724.  According to the Court, by investigating whether the church had properly adhered to its own church laws, the Illinois Supreme Court had "unconstitutionally undertaken the resolution of quintessentially religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals" within the church.  *Id.* at 720.

The Seventh Circuit Court of Appeals also addressed the ministerial exception in *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006).[1]  In that case, Richard Tomic served as the music director and organist for the Peoria diocese, but after a dispute over the selection of Easter music, Tomic was dismissed and replaced with a much younger person.  Tomic sued the diocese, claiming age-discrimination.  He noted that the diocesan employment handbook specifically described the diocese as "'an Equal Opportunity Employer' that does not discriminate on account of race, sex, etc. – including age," which Tomic argued subjected the diocese to employment discrimination laws.  *Id.* at 1037.  The district court dismissed Tomic's suit, and the court of appeals affirmed.  After determining that the ministerial exception applied to a diocesan music director, the court of appeals explained that federal courts are secular agencies that are precluded from exercising jurisdiction over the employment decisions of

---

[1] The Debtor also cites *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013); however, the court of appeals' decision in *McCarthy* does not add more to the analysis than already provided by the court of appeals' decision in *Tomic*.

5

religious organizations.[2]  *Id.* at 1042.  The court of appeals noted that "in investigating employment discrimination claims by ministers against their church, secular authorities would necessarily intrude into church governance in a manner that would be inherently coercive, even if the alleged discrimination were purely nondoctrinal."  *Id.* at 1039.

Mr. Knighton argues that he was wrongfully dismissed from the church after canonical trials conducted by the Debtor and the Archdiocese of Cincinnati.  (Docket No. 2589, at 1-2; Aff. Marvin Thomas Knighton Ex. C.)  Mr. Knighton complains about "violations within the canonical process."[3]  (Docket 2589, at 2.)  Mr. Knighton also claims that "this matter at hand does not have anything to do with the First Amendment of the Constitution.  This matter has to do with the responsibilities of an Employer following through on their written rules and laws as an Employer to their employees."  (Knighton Response 2.)  He cites several excerpts from Canon Law, suggesting that the Debtor violated these laws.  (Knighton Response 3-4.)  Specifically, Mr. Knighton argues that the Debtor's failure to compensate him for the period from 2002 until his dismissal from the clerical state on June 10, 2011, was the most serious violation of Canon Law committed by the Debtor.  (Knighton Second Response 2.)  Finally, Mr. Knighton claims racial discrimination, arguing that "I believe that this matter was somewhat racially motivated." (Docket No. 2589, at 3.)

Mr. Knighton misunderstands the law – this case is unquestionably governed by the First Amendment and applicable case law, including *Hosanna-Tabor*, *Milivojevich*, and *Tomic*. Federal courts cannot assert themselves into the internal employment decisions of religious organizations.  To allow Mr. Knighton's Claim, this Court would be required to determine that

---

[2] In *Hosanna-Tabor*, the Supreme Court declared the ministerial exception an affirmative defense, rather than a jurisdictional bar.  132 S. Ct. at 709 n.4.

[3] Mr. Knighton claims unfairness and partiality within the proceedings, and he also suggests that transcripts from the trial were altered and that information was omitted.  (Docket No. 2589, at 2.)

the Debtor violated Canon Law and canonical trial procedures in its employment decisions. This is prohibited by the ministerial exception.

Mr. Knighton stresses the importance of the Debtor's role as an employer and the necessity of following the law governing that relationship. (Knighton Response 2.) He also alleges that his termination from the clerical state was possibly racially motivated. (*Id.* at 2-3; Docket No. 2589, at 3.) However, this Court is bound to follow Supreme Court precedent which clearly provides that, with respect to its ministers, the Debtor is not subject to the same rules and regulations as non-religious employers. *See Hosanna-Tabor*, 132 S. Ct. at 705 ("Since the passage of Title VII of the Civil Rights Act of 1964, and other employment discrimination laws, the Courts of Appeals have uniformly recognized the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers."); *see also Tomic*, 442 F.3d at 1040 ("But [the church] would not be constrained . . . by employment laws that would interfere with the church's internal management, including antidiscrimination laws."); *Rweyemamu v. Cote*, 520 F.3d 198 (2nd Cir. 2008) (applying the ministerial exception to an African-American Catholic priest's racial discrimination claim against the bishop and the Diocese of Norwich). This Court cannot revisit the decisions of the Canon Law tribunals. As the Supreme Court stated in *Milivojevich*:

> In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

7

426 U.S. at 724-25.  Accordingly, this Court cannot second-guess whether the Debtor followed applicable law – whether Canon Law or federal employment discrimination law – in terminating or failing to compensate Mr. Knighton.

Finally, allowing Mr. Knighton's Claim would signify that the Debtor was wrong to have dismissed Mr. Knighton from the clerical state – a ruling strictly prohibited by the ministerial exception.  Like the minister in *Hosanna-Tabor*, Mr. Knighton is essentially seeking back-pay after an allegedly wrongful termination.  However, the First Amendment ensures that religious organizations have complete "authority to select and control who will minister to the faithful." *Hosanna-Tabor*, 132 S. Ct. at 709.  Since the church alone decides the employment and termination of its ministers, this Court cannot find the Debtor liable for making a decision that Mr. Knighton disputes.  In this case, if the Court allows Mr. Knighton's Claim, it would "operate as a penalty on [the Debtor] for terminating an unwanted minister, and would be no less prohibited by the First Amendment than an order overturning the termination." *Id.*  Mr. Knighton's claims mimic the claims of the minister in *Hosanna-Tabor* and the choir director in *Tomic,* who complained about churches' violations of employment laws and disputed the fairness of the process used to terminate them.  But they could not find relief in civil court, and neither can he.  The ministerial exception applies to bar Mr. Knighton's Claim against the Debtor.

Statute of Limitations

Given the application of the ministerial exception, arguably the Court does not need to reach the Debtor's statute of limitations argument.  Nevertheless, to the extent that Mr. Knighton raises allegations that are not covered by the ministerial exception, the Court notes that Mr. Knighton's Claim is time-barred.  First, Mr. Knighton argues that the Debtor committed

"Defamation/Slander/Libel," noting that the Debtor's website has "me down as a sex offender which I am not!"[4] (Docket No. 2589, at 3.) Mr. Knighton also suggests that the Debtor contacted the Arizona Department of Education regarding the sexual abuse allegations against him in order to "thwart, destroy not only me as a person but this ministry I treasure along with my financial livelihood." (*Id.*)

The Wisconsin statute of limitations for intentional tort claims is straightforward. According to the statute, "An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 3 years after the cause of action accrues or be barred." Wis. Stat. § 893.57. In this case, Mr. Knighton's name was first published on the Debtor's website on July 9, 2004. (Aff. of Lindsey M. Greenawald ¶ 4, Ex. A.) Accordingly, to be timely, Mr. Knighton's suit against the Debtor must have been filed by July 2007. *See Ladd v. Uecker*, 2010 WI App 28, ¶ 12, 323 Wis. 2d 798, 780 N.W.2d 216 (applying the single-publication rule specifically to publication on the Internet in Wisconsin).

Mr. Knighton also claims that the Debtor contacted the Arizona Department of Education regarding the sexual abuse allegations against Mr. Knighton. The record is ambiguous on the date of the alleged contact but indicates that the Professional Practice Advisory Committee recommended that Mr. Knighton's teacher certification application be granted on January 4, 2005. (Aff. Marvin Thomas Knighton, Ex. E.) Presumably, if Mr. Knighton's allegations are correct, the Debtor would have contacted the Arizona Department of Education close to that date, setting the statute of limitations for Mr. Knighton's cause of action in approximately

---

[4] Mr. Knighton also notes that his picture and name were printed in the newspaper as well. (Docket No. 2589, at 3.)

January 2008.  Since he did not file a suit prior to that time, Mr. Knighton's Claim arising from this activity is also time-barred.

Mr. Knighton cites the "Privacy Act of 1974" as support for his Claim.  (Docket No. 2589, at 4.)  According to Mr. Knighton, "These past eleven years the Archdiocese of Milwaukee simply violated my privacy by altering information from my records with the Archdiocese to shamefully disgrace me." (*Id.*)  First, as the Debtor correctly notes, the Privacy Act of 1974 is not applicable to the Debtor because the Debtor is a religious organization that does not fall within the statute's definition of "agency".  *See, e.g., Ehm v. Nat'l R.R. Passenger Corp.,* 732 F.2d 1250, 1255 (5th Cir. 1984) (despite Amtrak's definition as a "mixed ownership Government corporation," Amtrak is not an "agency" subject to the Privacy Act); *Ryans v. New Jersey Comm'n for the Blind & Visually Impaired*, 542 F. Supp. 841 (D.N.J. 1982) (Federal Privacy Act governs federal agencies only).

Additionally, claims under the Privacy Act are subject to a two-year statute of limitations.  5 U.S.C. § 552a(g)(5) ("An action to enforce any liability created under this section may be brought in the district court of the United States . . . within two years from the date on which the cause of action arises . . . .").  Mr. Knighton's specific allegations under the Privacy Act are unclear, and other than his vague reference to the past eleven years, there is no indication that this cause of action arose within two years of the Debtor's bankruptcy.  Thus, either because the Privacy Act does not apply to the Debtor or because the action is time-barred, Mr. Knighton's claim under the Privacy Act of 1974 fails.

Finally, Mr. Knighton alleges racial discrimination, arguing that he was one of the "first Black priest[s] for the Archdiocese of Milwaukee" and that "this matter was somewhat racially motivated."  (Docket No. 2589, at 3.)  Although Mr. Knighton does not specify the statutory

10

Case 11-20059-svk    Doc 2772    Filed 08/06/14    Page 10 of 12

authority for his racial discrimination claim, the Debtor's brief assumes that Mr. Knighton's claim arises under 42 U.S.C. § 1983.[5] In *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989), the Seventh Circuit Court of Appeals held that a discrimination claim under § 1983 is subject to Wisconsin's six-year statute of limitations for personal rights.

According to the Debtor, Mr. Knighton was terminated in 2002, requiring him to file his claim by January 1, 2009. (Debtor's Brief 7.) Mr. Knighton does not dispute the 2002 termination, as his correspondence to the Court states: "I have not officially worked or serve [sic] for the Archdiocese of Milwaukee since March of 2002." (Docket No. 2589, at 3.) Even assuming that Mr. Knighton's claim did not accrue until all of his appeal rights were exhausted in 2011, the Court would still disallow his § 1983 claim, as the Debtor is not a state actor and was not acting under color of law when it terminated Mr. Knighton.

Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

For liability to attach under § 1983, there must be state action or the defendant must be acting under the color of state law. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'"). The actions of the Debtor, a religious

---

[5] An alternative theory would be Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. But that statute carries a prerequisite of filing a charge with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). There is no evidence that such a charge was filed in this case.

11

organization, cannot constitute state action, and the Debtor does not act under color of law for purposes of this statute. Accordingly, Mr. Knighton's claims against the Debtor under § 1983 must fail.

## Conclusion

For the reasons stated above, Mr. Knighton's Claim is barred by the ministerial exception, the statute of limitations, and the plain meaning of the applicable statutes. The Court will enter a separate order disallowing the Claim.

Dated: August 6, 2014

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge