THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: November 13, 2015



Susan V. Kelley
Chief United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 11-20059-svk |
| **ARCHDIOCESE OF MILWAUKEE,** | Chapter 11 |
| Debtor. | Hon. Susan V. Kelley |

### ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH LAMORAK INSURANCE COMPANY, FORMERLY KNOWN AS ONEBEACON AMERICA INSURANCE COMPANY, FORMERLY KNOWN AS COMMERCIAL UNION INSURANCE COMPANY INCLUDING THE SALE OF INSURANCE POLICIES AND (II) DEEMING LAMORAK INSURANCE COMPANY, FORMERLY KNOWN AS ONEBEACON AMERICA INSURANCE COMPANY, FORMERLY KNOWN AS COMMERCIAL UNION INSURANCE COMPANY A SETTLING INSURER

Upon consideration of the settlement agreement by and between the Archdiocese of

Milwaukee (the "Archdiocese" or the "Debtor") and Lamorak Insurance Company, formerly

known as OneBeacon America Insurance Company, formerly known as Commercial Union

Daryl L. Diesing
Bruce G. Arnold
Francis H. LoCoco
Lindsey M. Greenawald
Whyte Hirschboeck Dudek S.C.
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: (414) 978-5305
Facsimile: (414) 223-5000
Email:flococo@whdlaw.com

Insurance Company (the "Settling Insurer") (the "Settlement Agreement"),[1] it is hereby ordered that:

1. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

2. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

3. The Court has jurisdiction over the Settlement Agreement pursuant to 28 U.S.C. § 157(a)-(b) and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Venue of this proceeding is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

6. The statutory predicates for the relief sought are 11 U.S.C. §§105(a), 363, and 1123(b)(6), and Fed. R. Bankr. P. 2002, 6004, and 9019.

### Findings of Fact and Conclusions of Law

7. The Archdiocese demonstrated sound business reasons for the sale of the Subject Insurance Policies to the Settling Insurers.

8. The Settlement Agreement was negotiated extensively, at arms-length, and in good faith between the Archdiocese and the Settling Insurer. The Settling Insurer is a purchaser

---

[1] Terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

in good faith within the meaning of 11 U.S.C. § 363(m), and is entitled to all of the protections of that statute.

9. The Settling Insurer is a bona fide good faith purchaser of the Subject Insurance Policies, for value.

10. The terms of the transactions contemplated by the Settlement Agreement, as well as the genesis and background of the Settlement Agreement, have been disclosed to the Bankruptcy Court.

11. The terms and conditions of the Settlement Agreement (including the consideration to be realized by the Archdiocese's bankruptcy estate) are fair and reasonable.

12. The transactions contemplated by the Settlement Agreement are in the best interests of the Archdiocese's bankruptcy estate, its creditors, and other stakeholders.

13. The only potential holders of Interests in or against the Subject Insurance Policies are the Catholic Entities and Persons who hold Claims against the Catholic Entities, whose Claims might be covered by the Subject Insurance Policies.

14. The Related Entities are parties to the relief sought in the motion to approve the Settlement Agreement, and hence are deemed to have consented to the sale within the meaning of 11 U.S.C. § 363(f)(2).

15. The Abuse Claims and the Claims of the Catholic Entities against the Subject Insurance Policies are subject to a bona fide dispute, hence the Subject Insurance Policies may be sold free and clear of such Claims pursuant to 11 U.S.C. § 363(f)(4).

16. All holders of Claims against the Subject Insurance Policies could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Claims, therefore the

Subject Insurance Policies may be sold free and clear of such Claims pursuant to 11 U.S.C. § 363(f)(5).

17. Other than the Debtor, some or all of the Catholic Entities are not insureds under the Subject Insurance Policies, hence such Catholic Entities do not hold an interest in the Subject Insurance Policies within the meaning of 11 U.S.C. § 363(b).

18. The compromises and settlements embodied in the Settlement Agreement have been negotiated in good faith, and are reasonable, fair and equitable.

19. In light of the: (1) probability of success in the litigation of the Declaratory Judgment Action; (2) difficulties, if any, to be encountered in the matter of collection; (3) complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) paramount interest of the creditors and a proper deference to their reasonable views, the Settlement Agreement is fair and equitable and in the best interest of the Archdiocese's bankruptcy estate and its creditors.

20. The Buy-Back Payment is fair, adequate, and reasonable consideration for (1) the sale and buy-back by the Settling Insurer of all of the Catholic Entities' Interests in the Subject Insurance Policies and any Interests of holders of Abuse Claims or other Claims in the Policies, directly or indirectly, and (2) the release of the Settling Insurer contained in the Plan.

21. The Archdiocese provided due and adequate notice of the (1) sale of the Subject Insurance Policies; (2) terms and conditions of the Settlement Agreement; and, (3) hearing on the sale, in accordance with Fed. R. Bankr. P. 2002 and 6004 to all known and unknown creditors.

22. It would be impractical to divide the Subject Insurance Policies between the Archdiocese and the Related Entities, therefore, to realize the value of the Subject Insurance

Policies for the Archdiocese's bankruptcy estate requires that the sale include all Persons' Interests in the Subject Insurance Policies.

23. The sale of the Subject Insurance Policies outside the ordinary course of business satisfies the requirements of 11 U.S.C. § 363(b).

24. The sale of the Subject Insurance Policies free and clear of Interests satisfies the requirements of 11 U.S.C. § 363(f).

25. The Claims of any Persons holding Claims that would be covered by the Subject Insurance Policies that are being acquired by the Settling Insurer pursuant to the Settlement Agreement are deemed to be "interests" as that term is used in 11 U.S.C. § 363(f).

26. The Settlement Agreement falls within the range of litigation possibilities, and may be approved pursuant to Fed. R. Bankr. P. 9019(a).

For all of the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

27. The Settlement Agreement, in its entirety, is approved pursuant to §§ 363(b), (f), and (m) and, if applicable, 105(a) and 1123(b)(6) of the Bankruptcy Code, and Fed. R. Bankr. P. 6004 and 9019.

28. Any objections to the Settlement Agreement that have not been withdrawn or waived are hereby overruled.

29. The Debtor is authorized, empowered, and directed to sell the Subject Insurance Policies pursuant to §§ 363(b), (f) and (m) and 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 6004 and 9019 to the Settling Insurer free and clear of all Interests of all Persons, with all rights under and Claims against the Subject Insurance Policies being fully extinguished without reservation.

30. The Debtor and the Settling Insurer are authorized and directed to perform their respective obligations under the Settlement Agreement.

31. All Persons are barred, estopped, and permanently enjoined from asserting any (a) Claims against the Subject Insurance Policies; (b) Claims against the Settling Insurer relating to the Subject Insurance Policies; and (c) Medicare Claims.

32. All Claims against and Interests in the Subject Insurance Policies are extinguished upon the date of entry of this Order.

33. Any Claims or Interests that any Person, including "CMS," might have against the Subject Insurance Policies or the Settling Insurer relating to Claims paid or to be paid from the Buy-Back Payment attach to the Buy-Back Payment.

34. Any trustee appointed to administer any post-confirmation trust, including the Plan Trust, is ordered and directed to perform the obligations imposed upon him or her, if any by the Settlement Agreement.

35. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and its provisions shall not be stayed under Fed. R. Bankr. P. 6004(h) or any other applicable provision.

36. Notwithstanding anything to the contrary herein, the timing of the effectiveness of the injunctions, releases, discharges and dismissals to which each Settling Insurer, the Debtor, the Reorganized Debtor and the Related Entities are entitled pursuant to the Settlement Agreement and the Amended Plan shall be as provided for in the applicable paragraphs 45 and 46 of the Confirmation Order.

37. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Settlement Agreement and this Order in all respects and further to hear and

determine any and all disputes between the Archdiocese and/or the Related entities and/or the Settling Insurer, as the case may be, and any other Person; provided, however that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Settlement Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. In the event this case has been closed, there shall be a right to have this case reopened upon *ex parte* motion or application for such purposes.

38. The failure to specifically include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Settlement Agreement be authorized and approved in its entirety.

39. The provisions of this Order are nonseverable and mutually dependent.

#####