# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter: 11 |
| ARCHDIOCESE OF MILWAUKEE, | |
| Debtor(s). | Case No: 11-20059 |

## MOTION OF WISCONSIN DEPARTMENT OF JUSTICE FOR ACCESS TO CERTAIN SEALED RECORDS

In connection with its ongoing Clergy and Faith Leader Abuse Initiative (the Initiative), the Wisconsin Department of Justice (DOJ) moves for access by DOJ to filings that are under seal in this case.

Over two years ago, DOJ commenced the Initiative. As part of the Initiative, DOJ seeks (1) to the extent possible to assess the completeness of faith organizations' public disclosures of individuals credibly accused of abuse; (2) to assess faith leaders' responses to reports of abuse; and (3) to review allegations for possible investigation.

DOJ has asked the Debtor Archdiocese of Milwaukee (Archdiocese) for disclosure of records relating to abuse allegations. As the Archdiocese has acknowledged, "[c]lergy sexual abuse of minors has been a sad and painful chapter in the history of the Church and in the lives of many innocent

S. Michael Murphy
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
608/266-5457
608/294-2907 (Fax)
murphysm@doj.state.wi.us

children." (Dkt.[1] 3277:24.) With narrow exceptions, however, the Archdiocese has declined to voluntarily provide non-public records requested by DOJ.

Church leaders provided meaningful cooperation in response to inquiries in some other states. In Illinois, church leadership pledged to assist the state with its investigation and "[e]ach ultimately fulfilled their pledge, not only by providing access to records and representatives, but by working with the Attorney General in an effort to improve the Illinois Dioceses' policies and procedures relating to allegations of child sex abuse by members of the Catholic clergy." Report on Catholic Clergy Child Sex Abuse in Illinois 2023, Off. of the Ill. Att'y Gen., 15 (the "Illinois Report").[2] In Iowa, when the Attorney General asked the state's dioceses to submit documents related to clergy sexual abuse, Iowa Bishops responded that "[e]ach diocese, in the interest of transparency and accountability, plans to comply with the Attorney General's request."[3] And, in Colorado, all the dioceses in the state entered into an agreement that allowed Colorado to conduct fact-finding including interviews to evaluate clergy child sexual abuse allegations and gave Colorado access to files related to sexual misconduct of each deceased or inactive priest who was in ministry

---

[1]     Citations to "Dkt." refer to the docket in this Archdiocese of Milwaukee bankruptcy case, Eastern District of Wisconsin Bankruptcy case number 11-20059.
[2]     Available at: https://clergyreport.illinoisattorneygeneral.gov/ (last visited August 8, 2023).
[3]     https://www.dmdiocese.org/news/news-iowa-dioceses-to-comply-with-ia-attorney-generals-request (last visited August 8, 2023.)

- 2 –

in Colorado at any time after 1950; files of religious-order priests in the possession of Colorado dioceses; and all audit reports, policies, procedures, training materials, review board materials, survivor files, personnel charts, and other documents related to clergy sexual misconduct with children.[4]

The Archdiocese has taken a markedly different approach, even accusing DOJ of bigotry in connection with its work on the Initiative. DOJ remains undeterred and now asks this Court for permission to review claims and related documents filed under seal.

To be clear, DOJ does not ask for any documents to be made public. Instead, DOJ requests authorization for a confidential review of sealed claims by survivors, objections to those claims, briefing on such objections, and rulings on the objections. Information from these documents will be used in connection with the Initiative, as set forth below, but personally identifiable information about a survivor obtained exclusively from the documents will not be made public without that survivor's consent. Authorizing DOJ to access those filings is in the public interest and the interest of survivors of faith leader abuse, and this Court should grant the requested access.

---

[4]     https://coag.gov/app/uploads/2019/10/Special-Masters-Report_10.22.19_FINAL.pdf (page 3) (last visited August 8, 2023.)

- 3 –

## BACKGROUND

### I. Background of sexual abuse of young people by trusted adult spiritual leaders.

The tragic history of widespread child sexual abuse in faith organizations, and coverups of that abuse, is now generally well known, but a summary can give context to this motion. In January 2002, an investigative journalism series in the *Boston Globe*, headlined "Church Allowed Abuse By Priest For Years," told the story of Boston-area priests who had abused young boys for decades. Abusing officials were transferred to parishes throughout the diocese despite church officials' knowing their history. *See* Michael Rezendes, *Church Allowed Abuse by Priest for Years*, Boston Globe, Jan. 6, 2002.

Following that publication and other public revelations, a national report was conducted by researchers at the John Jay College of Criminal Justice. John Jay Coll. of Crim. Just., *The Nature and Scope of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States 1950-2002*, 246–72 (2004). This report, commonly known as the John Jay Report, included findings that, from 1950 to 2002, 4,392 priests in the U.S. had credible allegations of sexual misconduct against them. Of them, 143 priests had credible allegations of abuse in more than one diocese. *Id.* at 4.

In the wake of such public disclosures, the U.S. Council of Catholic Bishops implemented the Charter for the Protection of Children and Young

People.[5] The charter includes promises to offer help and support to survivors and to investigate all allegations of abuse. It specifically calls for "outreach to every person who has been the victim of sexual abuse as a minor by anyone in church service, whether the abuse was recent or occurred many years in the past."[6]

Child sexual abuse occurred in the Archdiocese of Milwaukee. As the Archdiocese has explained in this case, the tragedy "has unfolded in the Church as a whole and in the Archdiocese in particular." (Dkt. 6 ¶ 23.) Abuse was not limited to clergy. As the Archdioceses has stated, "clergy *and others* took advantage of their positions of trust and respect in the community to sexually abuse children." (Dkt. 6 ¶ 23 (emphasis added).)

This is important because the reach of the Archdiocese goes far beyond priests working at churches. According to its filings in this case, the Archdiocese served 210 parishes, 114 elementary and middle schools, 13 high schools, 5 colleges, and 9 hospitals. (Dkt. 6 ¶ 12.) There were 657,519 registered Catholics in the Archdiocese region as of the commencement of this case, spanning Dodge, Fond du Lac, Kenosha, Milwaukee, Ozaukee, Racine, Sheboygan, Walworth, Washington, and Waukesha counties. (Dkt. 6 ¶¶ 8–9.)

---

[5]     https://www.usccb.org/resources/Charter-for-the-Protection-of-Children -and-Young-People-2018-final%281%29.pdf (hereinafter the "Charter") (last visitedAugust 8, 2023.)

[6]     Charter, Article 1.

- 5 —

On July 9, 2004, the Archdiocese published a list of diocesan priests restricted from ministry for reasons related to child sexual abuse. (Dkt. 6 ¶ 34.) As of 2023, that list includes 48 diocesan priests, but does not include any others, such as priests or nuns from religious orders who were serving within the Archdiocese region or lay staff such as teachers.[7]

## II. The Archdiocese of Milwaukee bankruptcy and sealing of abuse-related bankruptcy filings.

### A. The Archdiocese bankruptcy filing.

Child sexual abuse in the Archdiocese led to lawsuits that took a financial toll. The Archdiocese reported that the financial impact of abuse of minors by priests or deacons had exceeded $29 million as of June 2010. (Dkt. 6 ¶ 38.) In 2006, the Archdiocese settled in a California mediation for $16.65 million relating to claims against priests who formerly served in the Archdiocese. (Dkt. 6 ¶ 36.) In a different mediation program that commenced in 2004, the Archdiocese reported settling 192 sexual abuse survivor claims. (Dkt. 165 ¶ 10.) In the 2009–2010 fiscal year alone, the Archdiocese reported paying $882,129 in settlements and therapy payments for survivors. (Dkt. 6 ¶ 28.)

---

[7] https://www.archmil.org/clergy-abuse-response/restricted-priests.htm (last visited August 8, 2023.)

The Archdiocese filed a Chapter 11 Bankruptcy Petition on January 4, 2011. (Dkt. 1.) The Archdiocese's list of top unsecured creditors consisted primarily of pending lawsuits by abuse survivors. (*See* Dkt. 2.) A goal of the bankruptcy filing was to resolve the Archdiocese's financial liabilities. (Dkt. 3277:10.) As the Archdiocese stated: "For the preservation of the Church and the well-being of all constituencies, especially the Abuse Survivors, the Archdiocese must find a way to move forward with the scarce resources available." (Dkt. 3277:10.)

The Archdiocese's confirmed plan included an injunction prohibiting parties from asserting or enforcing prepetition sexual abuse claims against the Archdiocese and its agents: "Persons who have held or asserted, hold or assert, or may in the future hold or assert a Discharged Claim shall be permanently stayed, enjoined, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Discharged Claim." (Dkt. 3322:18–20, 38; 3277:83–84.)

Filings from the case indicate that 579 abuse survivor claims were submitted. (Dkt. 3277:24.) Of those, 150 alleged abuse "by persons who are not employed or controlled by the Archdiocese," most likely lay persons or members of religious orders who are therefore presumably not included on the Archdiocese's public disclosure of restricted priests. (Dkt. 3277:24.) Nearly all

- 7 –

claims against priests involved a priest who is deceased or who was no longer in ministry. (Dkt. 3277:25.)

## B. Confidentiality protocols and sealing of documents in the bankruptcy case.

On March 14, 2011, the Archdiocese filed a Motion for Order Authorizing Special Confidentiality Procedures to Protect Victims/Survivors. (Dkt. 165.) That motion asked to limit certain notices, send certain notices through proxies, and omit certain survivor information from service lists and schedules to prevent psychological and emotional damage or embarrassment to survivors. (Dkt. 165 ¶¶ 17, 36–39.) This Court granted the motion in part, and the mailing matrix, schedules, and affidavits were redacted and sealed to protect the identity of abuse survivors. (Dkt. 327 ¶¶ 2–3, 7–8, 12.)

The Archdiocese also sought a confidentiality protocol for proofs of claim filed by survivors. (Dkt. 211.) That request was clear that the protocols were intended to benefit survivors, not the Archdiocese. (Dkt. 211 ¶ 21.) Upon that motion, this Court entered claims protection protocols. (Dkt. 241, 331.) Like the Archdiocese, this Court was clear that "The Confidentiality Protocol is for the benefit of the Abuse Survivors." (Dkt. 331 ¶ 24(v).)

The information was made confidential under 11 U.S.C. § 107(b), Fed. R. Bank. P. 9018 (Dkt. 165 ¶¶ 36–37), and Fed. R. Bankr. P. 3003(c)(3) (Dkt. 211 ¶ 8). Section 107 of the bankruptcy code presumes public access to all

- 8 –

bankruptcy court filings but allows a court to "protect a person with respect to scandalous or defamatory matter." 11 U.S.C. § 107(b)(2). Rule 9018 mirrors that section by allowing the court "to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code." Fed. R. Bank. P. 9018. And Rule 3003 concerns procedures for filing proof of claims. Fed. R. Bankr. P. 3003.

Taken together, these authorities permit a court to restrict access to bankruptcy filings to protect a party. *See In re Gitto Glob. Corp.*, 422 F.3d 1, 8–14 (1st Cir. 2005). Under that authority, this Court restricted access to proofs of claim to certain specific entities and "[s]uch other persons as the Court determines should have the information in order to evaluate Abuse Survivor Claims." (Dkt. 331 ¶ 24(vii).) DOJ supports protecting survivor information and believes that survivor bankruptcy filings should not be part of the public domain.

Survivors used a proof of claim that was different than ordinary creditors, referred to as an "Abuse Survivor Proof of Claim Form." (Dkt. 331 ¶¶ 23–24.) The form was presumed to be confidential but gave a survivor claimant an option to opt out of the confidentiality protocols. (Dkt. 331:29.) Survivor proofs of claim were not electronically filed; they were either mailed or delivered in person to the bankruptcy court. (Dkt. 331 ¶ 24(i)–(ii).) Such

claims were permanently sealed and identified by a number rather than the name of the claimant. (Dkt. 331 ¶ 24(iv).)

Only certain permitted parties were allowed access to the proofs of claim: counsel for the Archdiocese; counsel for the creditors' committee; certain insurance companies; a claims representative appointed under a plan; an arbitrator or claims reviewer; any settlement trustee; members of the creditors' committee subject to certain redactions; and "[s]uch other persons as the Court determines should have the information in order to evaluate Abuse Survivor Claims." (Dkt. 331 ¶ 24(vii).)

In 2013, the Archdiocese published certain documents that were produced in connection with Rule 2004 examinations in this case. (*See* Dkt. 1792.) Those documents were published in connection with the Archdiocese's "List of Abusive Priests" to further the goals of transparency and healing for abuse survivors. (Dkt. 1792 ¶¶ 2, 5.) This was initiated by a request from counsel for survivors. (Dkt. 1792 ¶ 2.) The published documents relate to Archdiocese priests that are on the public list of restricted priests. Specifically, for each person on the list, there is an associated set of documents on the Archdiocese's website.[8] The published documents are redacted to remove

---

[8] *See e.g.* https://www.archmil.org/ArchMil/Resources/COMM/Reorg/Doc-Release/Adamsky.pdf (last visited August 8, 2023.)

information about "non-perpetrator reporters who are not or were not employed by the Archdiocese of Milwaukee." (Dkt. 1792 ¶ 7.)

### C.    Continuing non-financial obligations of the Archdiocese.

In addition to resolving financial liabilities and imposing an injunction, the stated purpose of the bankruptcy included continuing outreach to survivors, including those who had not yet come forward as of the time of the bankruptcy filings. (Dkt. 6 ¶ 45.) The Archdiocese expressed a commitment to "providing for all victims/survivors of Abuse, known and yet to be known, in a fair, just and equitable manner with the available resources of the Archdiocese." (Dkt. 6 ¶ 24.) The Archdiocese promised continuing diligence to ensure that the tragedy of clerical sexual abuse of minors is a "historical event." (Dkt. 3277:25.)

In addition, the plan that was confirmed on September 25, 2015, included several specific obligations for the 10 years following confirmation. They included: complying with the Charter; annual independent audits; that a review board will review all allegations of sexual abuse of a minor by a member of the clergy; and that the Archdiocese "will publish the names of diocesan priests of the Archdiocese who have been (or would be if they were still alive) restricted from all priestly ministries, [and] [i]f cases are substantiated regarding a member of the clergy not previously listed, the name(s) will be added to the list." (Dkt. 3322:81–84.) This particular promise to add diocesan

- 11 –

priests to the list is not limited to living priests, and specifically includes those who would be restricted if they were still alive.

## III. The Clergy and Faith Leader Abuse Initiative.

### A. Inquiries by Attorneys General into faith leader abuse.

Since the John Jay report, Attorneys General in over 20 states have conducted inquiries into faith leader sexual abuse.[9] Pennsylvania was among the first to complete its review and issue a report. Commonwealth of Pa. Off. of the Att'y Gen., Report of the 40th Statewide Investigating Grand Jury 1 (2018).[10] Pennsylvania's report found that internal church records showed credible allegations against over 300 predator priests and over 1,000 child victims. *Id.* at 1. Because allegations had been "brushed aside," most were too old to prosecute due to statutes of limitations. *Id.* at 1–2.

More recently, Illinois released its report in 2023. The Illinois Attorney General's Office reviewed over 100,000 pages of documents that were voluntarily provided by the church, and the Illinois Report revealed information concerning 451 Catholic clerics and religious brothers who abused at least 1,997 children in Illinois. Illinois Report 3–4.

---

[9] https://childusa.org/wp-content/uploads/2021/08/2021-08-04-State-AGs-Investigating-Sexual-Abuse-in-Catholic-Church.pdf (last accessed July 27, 2023.)

[10] Available at: https://www.attorneygeneral.gov/report/ (last visited August 8, 2023.)

DOJ's Initiative is, in summary, an independent review of sexual abuse committed by clergy and faith leaders in Wisconsin, no matter when that abuse occurred. The Initiative offers confidential reporting, either online and through a phone number. DOJ has received over 260 completed reports of abuse.[11]

One purpose of the Initiative is to assess, to the extent possible, whether the lists of credibly accused priests published by dioceses throughout the state are complete. To the extent that names of abusers who should be on these lists are not—even if those abusers are deceased—their survivors may have lived not only with the trauma from the abuse but also with the compounding harm of not having their abuse acknowledged. Having their abuser named, and their abuse recognized, can provide a sense of healing for survivors of abuse.

Notably, the Illinois Attorney General's Office found that the "importance of accurate and detailed public lists of abusers published by Catholic sources cannot be overstated." Illinois Report 661. It identified seven benefits of complete and accurate public lists of abusers:

1. Public Proclamation. A public release of information acknowledges the abuse in a way that private correspondence cannot.

---

[11] Additional statistical information about the Initiative as of April 17, 2023, is available at: https://www.doj.state.wi.us/news-releases/attorney-general-kaul-releases-update-advance-two-year-anniversary-clergy-and-faith (last visited August 8, 2023.)

2. Validation. "Public listing is an announcement by the church to survivors that 'we believe you.'"

3. Invitation for Healing. "After a name goes up, other victims of that abuser are more likely to come forward for the healing the church says it wants to provide."

4. Transfer of Guilt and Shame. "Someone carries the guilt and shame. When the name goes up, the survivor can finally put down the guilt and shame, transferring it to the abuser."

5. Accountability. "The church is taking action for its past failures in protecting children."

6. Transparency. "The church is no longer hiding and covering up."

7. Prioritizing. "The needs of survivors finally outweigh those of guilty priests."

Illinois Report 661.

Given the decades of secrecy and subversion surrounding abuse reports and the findings in other states in which inquiries into faith leader abuse were conducted, DOJ's independent review of the lists of credibly accused priests published by dioceses in Wisconsin is amply justified.

### B.    The Archdiocese response to the Wisconsin Initiative.

The Archdiocese has attacked the Initiative. After the Wisconsin Attorney General announced the Initiative, counsel for the Archdiocese

- 14 –

accused DOJ of bigotry: "The investigation improperly targets the Roman Catholic Church and appears to be a product of anti-Catholic bigotry."[12] Counsel alleged that DOJ has no authority to conduct the Initiative, and that DOJ's conduct was unconstitutional. The Archbishop issued a response, stating that "[t]here is significant doubt that the Attorney General has the legal authority to conduct such an investigation" and asserting that "the Church [ ] is continually targeted."[13]

The Archdiocese has sought to use this bankruptcy case as a shield against DOJ's efforts, claiming that "[t]his investigation violates the Discharge and Channeling Injunctions" issued in this bankruptcy case.[14] The allegation is meritless, given that the Initiative does not seek financial compensation for survivors or otherwise pursue an enjoined claim. DOJ's objectives of supporting survivors of clergy and faith leader abuse, helping to prevent clergy and faith leader abuse in the future, and, where appropriate, pursuing criminal investigations are entirely consistent with the forward-looking commitments made by the Archdiocese in this bankruptcy case.

---

[12]    https://wpr-public.s3.amazonaws.com/wprorg/aom_response_to_ag_letter_request_for_document.pdf p. 8. (last visited August 8, 2023.) (hereinafter the "June 1, 2021 Archdiocese response.")
[13]    https://www.archmil.org/Our-Faith/Blogs/Archbishop-Listecki/2021/JEL-20210601.htm (last visited August 8, 2023.)
[14]    June 1, 2021 Archdiocese response p. 10.

- 15 –

Regarding production of documents, the Archdiocese has indicated that it will turn over non-public documents related to an alleged perpetrator only if DOJ first independently obtains information about an allegation against that alleged perpetrator and identifies that alleged perpetrator to the Archdiocese: "If you were to receive the name of an alleged perpetrator from the ranks of the [Archdiocese]'s living diocesan priests [and] if you provide that information to us, on behalf of the [Archdiocese], the [Archdiocese] will promptly provide access to any available information to your office."[15] This was expressly limited to only clergy who are living: "there is no legal basis to undertake any investigation related to alleged abuse by now-deceased [Archdiocese] priests or any other deceased alleged perpetrators."[16] The limited offer of cooperation is also restricted to diocesan clergy, which means that the Archdiocese will share nothing about, for example, religious order priests who served in the archdiocese or elementary school teachers at schools of the Archdiocese who may have sexually abused students.

These limitations hamper the Initiative and are inconsistent with the Charter's requirement for "outreach to every person who has been the survivor

---

[15]     June 1, 2021 Archdiocese response 1–2.
[16]     June 1, 2021 Archdiocese response n.1.

- 16 –

of sexual abuse as a minor by anyone in church service, whether the abuse was recent or occurred many years in the past."[17]

## IV. Specific relief requested: DOJ seeks to conduct a confidential review of sealed claims and related documents.

DOJ requests that the Clerk of Court make available to DOJ hard copies of all Claims of Abuse Survivors, including the sealed claims, objections to those claims, briefings on those objections, and rulings on the objections. At the clerk's convenience, DOJ can arrange to pick up hard copies of the documents at the clerk's office. The documents will be securely transferred to DOJ, and DOJ will store them securely. A limited number of DOJ staff—which may include attorneys, crime victim service professionals, and criminal investigators—will review the documents.

Information in the documents will be used to assess the accuracy of published lists of credibly accused faith leaders. It may be used for investigative leads, such as determining the identity of an unidentified abuser. Information from documents may be used to help evaluate commitments made by the Archdiocese in its bankruptcy plan. It may also inform the content of the Initiative's final report, though personally identifiable information about a survivor obtained exclusively from the documents will not be made public without that survivor's consent.

---

[17]    Charter, Article 1.

If a person who filed a confidential claim has also reported abuse to DOJ, DOJ may ask permission from that claimant to have the claim form and any related documents become part of an investigative and/or prosecutorial file. If permission is granted, those documents will become part of an investigative file and may become part of a prosecutorial file in the event of a prosecution.

The proposed order that accompanies this motion includes terms that will prevent any such documents from being provided in response to a public records request. Additionally, no document made available to DOJ will be produced in any proceeding, including in any criminal proceeding, absent an order from a court of competent jurisdiction requiring such disclosure following appropriate notice.

## ARGUMENT

This Court has authority under the bankruptcy code and its prior orders to grant DOJ access to sealed claims and related documents. The specific relief requested is narrowly tailored to benefit survivors while protecting confidential information. DOJ does not ask for anything to be unsealed; it only asks that DOJ be included among those that are permitted to confidentially review sealed claims and related documents. Granting DOJ access to these documents is in the interest of abuse survivors and the public interest.

- 18 –

## I.   This Court has authority to authorize a review of sealed claims and related documents by DOJ.

DOJ requests an order that it may access sealed claims and documents related to those claims. This Court's prior order expressly left open the possibility of allowing such relief when it contemplated access by "[s]uch other persons as the Court determines should have the information in order to evaluate Abuse Survivor Claims." (Dkt. 331 ¶ 24(vii).) This Court should find that DOJ should have the information.

This Court has jurisdiction to interpret and enforce its own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). Under that authority, this Court can issue an order determining that DOJ is permitted to review the sealed claims and documents related to the claims. As described herein, authorizing DOJ to review these documents would likely further goals of the Initiative. Such a review is in the interest of survivors of abuse and the public interest. Further, permitting DOJ access has presents no material likelihood of harm to the individuals who submitted abuse survivor claims given the approach that DOJ will take with respect to confidentiality, as set forth above.

Additionally, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A core purpose of this case has been the "well-being of all constituencies, especially the Abuse Survivors." (Dkt. 3277:10.) That purpose

is served by permitting DOJ to obtain information from survivor claims in this case.

## II. Information from sealed records can be used to corroborate reports that DOJ has received independently of the bankruptcy.

While DOJ has received many completed reports of sexual abuse through the Initiative, reports often lack the degree of detail needed for DOJ to move forward. This is not a surprise. The events underlying reports often happened when the reporting person was a child and did not have a full understanding of what occurred; the events are often highly traumatic, which affects memory; and some occurred long ago.

The sealed bankruptcy records provide a unique opportunity to corroborate reports from survivors. A hypothetical example demonstrates the point. Suppose that DOJ received a call from a person reporting that he was sexually abused as a child at a religious school in the Milwaukee area by a person he knew only as "Father Joe." The reporting person remembers that this happened when he was called to the school office when he was in approximately fourth grade. Suppose also that there is no record of an Archdiocese priest by that name in that timeframe. At that point, DOJ has little to go on for either evaluating a possible criminal complaint or demonstrating that a name should be added to a list of abusers.

- 20 –

Now suppose that three other people, who did not report to DOJ, filed claims in the Archdiocese bankruptcy explaining how a visiting teacher with a very similar name, "Father Doe," called them to the school's office and abused them in the same way as the DOJ-reporting survivor indicated and in the same timeframe. That fact could be learned by a review of the bankruptcy claims without identifying any of the claimants and provide a critical lead to identify the abuser that has been reported to DOJ.

Further suppose that the visiting "Father Doe" can be identified by public records and DOJ can confirm with the DOJ-reporting survivor that this priest is the person he or she reported about. And perhaps that abuser left Wisconsin shortly after the abuse and never returned, such that the criminal statute of limitations has tolled and is not expired. Wis. Stat. § 939.74(3). This could result in confirmation of the reported abuse, which is critical for helping bring finality to the survivor, and perhaps criminal investigation and charges.

Notably, if the visiting "Father Doe" was a non-diocesan priest from a religious order, the Archdiocese's position in the bankruptcy case was that such a report was against a person not employed or controlled by the Archdiocese.[18]

---

[18]     DOJ does not agree with this position of the Archdiocese as it relates to the Initiative. Visiting clergy and religious brothers were under the apparent control of the Archdiocese, which is particularly important here because survivors of abuse of such non-diocesan abusers would have most likely reported abuse to the Archdiocese.

- 21 –

(Dkt. 3277:25.) Additionally, any such reports would not be voluntarily disclosed by the Archdiocese now because the abuser—according to the position the Archdiocese has taken in response to the DOJ Initiative—is not "from the ranks of the AOM's living diocesan priests."[19]

While this is only one hypothetical variant of many possible benefits of authorizing DOJ to review the sealed claims, it illustrates how claim documents can corroborate and potentially bring resolution to reports of abuse. Importantly, the value of reviewing the claim information goes beyond abusers that may have been affiliated with the Archdiocese. It is likely that claimants filed reports about others such as visiting priests, religious brothers unaffiliated with the Archdiocese, and/or lay staff such as teachers and volunteers. That information was not central to the Archdiocese bankruptcy but is plainly relevant to a comprehensive understanding of clergy and faith leader abuse in Wisconsin.

## III. The information may contain investigative leads for criminal cases within the statute of limitations.

The claim information that DOJ seeks to review include allegations of sexual abuse of minors. Many of those allegations have also been previously reported to local law enforcement but were not charged for various reasons, including statute of limitations challenges. The Initiative is thoroughly

---

[19]     June 1, 2021 Archdiocese response 1–2.

reviewing allegations and closely examining charging possibilities. These efforts include evaluating corroborating evidence from new sources and scrutinizing statutes of limitations, including tolling provisions where an accused individual has left the state. *See* Wis. Stat. § 939.74(3).

Review of the sealed claim documents may reveal information that could provide investigative leads for criminal cases still within the statute of limitations. Examples include: information that an abuser was a visiting cleric such that he or she was not a Wisconsin resident for statute of limitation purposes; information that an abuser was removed from his or her job and left the state following an allegation such that statute of limitations was tolled; information showing patterns of abuse that corroborate reports received by DOJ; and information that could help identify an abuser that is currently unidentified, such as a full name or a physical description. In this way, information from claim documents could be a valuable investigative tool to create leads for new investigations or to help fill gaps in existing investigations.

## IV.    Input of the Creditors' Committee and Notice of this Motion.

The Official Committee of Unsecured Creditors had substantial input in the protection of information in bankruptcy filings. (*See, e.g.,* Dkt. 241, 1792.) In advance of filing this motion, counsel for DOJ contacted a creditors' committee attorney, who noted that the committee was dissolved upon

confirmation of the plan in this case and no longer exists to opine on the relief requested. (*See* Dkt. 3277 ¶ H.1.) Therefore, DOJ has not received input from the creditors committee on the relief requested in this motion.

Regarding notice, this motion requires that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). The relief sought in this motion is not "against" anyone, but the parties most affected are those who filed sealed claims. Privacy protections in this case included sealing the portions of the matrix and schedules that include the identities of abuse survivors. (Dkt. 327 ¶¶ 2, 5, 8.) The publicly available mailing matrix includes only creditors who have no interest in this issue, such as utility companies, a flower shop (Alfa Flower Shop, Inc.), and a liquor store (Avenue Wine and Liquor.) In other words, DOJ does not have the information necessary to serve this motion on claimants who filed sealed claims. Procedures were put in place for the Archdiocese to provide certain notices to abuse survivors without publicly disclosing the service list. (Dkt. 327 ¶¶ 5–7, 11–12.)

Accordingly, DOJ is serving this motion and the contemporaneously filed motion to reopen this case via the court's electronic filing system and additionally by mail upon (i) counsel for the Archdiocese, (ii) the office of the U.S. Trustee, (iii) counsel for chair of the creditors' committee, and (iv) counsel for the creditors' committee. DOJ will adhere to providing whatever additional

- 24 –

notice the Court deems appropriate. In advance of the filing, counsel for DOJ contacted counsel for the Archdiocese and explained the relief sought through this motion. Counsel for the Archdiocese responded with a letter, a copy of which is attached to this motion as Exhibit A.

## CONCLUSION AND RELIEF REQUESTED

DOJ respectfully requests access to sealed claims as follows:

1. Within 14 days of entry of this order, the Clerk of Court shall make available to the Wisconsin Department of Justice (DOJ) hard copies of all sealed claims and attachments, including Claims of Abuse Survivors, together with any objection to such claims, briefing on such objections, and ruling on such objections. Any documents made available to DOJ will not be entered on the public docket.

2. Information in documents made available to DOJ may be used to assess the accuracy of published lists of credibly accused faith leaders. It may be used for investigative leads, such as, but not limited to, determining the identity of an unidentified abuser. Such information may also be used to assess the scope of abuse in the Archdiocese and to assess commitments made by the Archdiocese in this bankruptcy proceeding. Information in such documents may also inform the content of the Initiative's report, but personally identifiable information about a survivor obtained exclusively from the documents will not be made public without that survivor's consent.

3. If a person who filed a claim in the bankruptcy case, including a sealed claim, has also reported abuse to DOJ, DOJ may ask permission from that claimant to have documents made available to DOJ related to the claim become part of an investigative and/or prosecutorial file. If permission is granted, those documents may become part of an investigative and/or prosecutorial file.

4. Except as otherwise provided herein, DOJ shall keep all sealed documents confidential. DOJ may not publish any such documents or release copies. Any sealed document made available to DOJ may not be released in response to a public records request.

5. No document made available to DOJ will be produced in any proceeding, including in any criminal proceeding, absent an order from a court of competent jurisdiction requiring such disclosure following appropriate notice.

Dated this 9th day of August 2023.

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

S. Michael Murphy
S. MICHAEL MURPHY
Assistant Attorney General
State Bar #1078149

Attorneys for Wisconsin Department
of Justice

- 26 –

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-5457
(608) 294-2907 (Fax)
murphysm@doj.state.wi.us

- 27 –

UNITED STATES BANKRUPTCY COURT<br>
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:             Chapter: 11

ARCHDIOCESE OF MILWAUKEE,    Case No: 11-20059

       Debtor(s).

## NOTICE OF MOTION OF WISCONSIN DEPARTMENT OF JUSTICE FOR ACCESS TO CERTAIN SEALED RECORDS

TO     Bruce G. Arnold, Daryl L. Diesing, and Lindsey M. Greenawald
Husch Blackwell LLP
555 E. Wells Street, Suite 1900
Milwaukee, WI 53202
*Attorneys for Debtor*

Michael E Gosman, Lindsay M. Greenawald and Francis H. LoCoco
Whyte Hirschboeck Dudek S.C
3030 W. Highland Blvd.
Milwaukee, WI 53208
*Attorneys for Debtor*

Mark L. Metz
Leverson Lucey & Metz S.C.
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
*Attorneys for Debtor*

Michelle S. Y. Cramer, U.S. Trustee
Debra L. Schneider, U.S. Trustee
David W. Asbach, Assistant U.S. Trustee
517 E. Wisconsin Ave., Suite 430
Milwaukee, WI 53202
*Attorneys for U.S. Trustee*

Gillian N. Brown, Kenneth H. Brown, and James I. Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
*Attorneys for Official Committee of Unsecured Creditors*

Jason R. Pilmaier, Eric S. Teske, and Albert Solochek
Howard, Solochek & Weber S.C.
324 E. Wisconsin Ave., Suite 1100
Milwaukee, WI 53202
*Attorneys for Official Committee of Unsecured Creditors*

Charles Linneman
c/o Jeff Anderson
366 Jackson Street
St. Paul, MN 51101
*Creditor Committee Chair*

**Please take Notice**, the State of Wisconsin, Department of Justice ("the State") by its attorneys, Attorney General Joshua L. Kaul, and Assistant Attorney General S. Michael Murphy, has filed a motion with the Court asking for access to certain sealed records.

<u>**Your rights may be affected**</u>. **You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the State's Motion, or if you want the Court to consider your views on the Motion, then **on or before twenty-one (21) days after the date of this Notice, August 30 2023,** you or your attorney must file an original written "Request For Hearing And Object To Motion To Reopen" with the Court at:

Clerk, U. S. Bankruptcy Court
517 East Wisconsin Avenue
Milwaukee, WI 53202

and send a copy to:

Assistant Attorney General S. Michael Murphy
Wisconsin Department of Justice
P O Box 7857
Madison, WI 53707-7857

**IF NO OBJECTIONS ARE TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF SOUGHT IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated this 9th day of August, 2023

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ S. Michael Murphy
S. MICHAEL MURPHY
Assistant Attorney General
State Bar #1078149

Attorneys for State of Wisconsin

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-5457
(608) 294-2907 (Fax)
murphysm@doj.state.wi.us