UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:                              Chapter:  11

ARCHDIOCESE OF MILWAUKEE,
                                    Case No:  11-20059
            Debtor(s).

---

## AFFIDAVIT OF SHIRA R. PHELPS

---

STATE OF WISCONSIN          )
                            ) ss.
PORTAGE COUNTY              )

Shira R. Phelps, being first duly sworn, upon oath deposes and says that:

1.    I am the Executive Director of the Office of Crime Victim Services (OCVS) in the Wisconsin Department of Justice (DOJ). I have held this position since March 13, 2023.

2.    Prior to becoming the Executive Director of OCVS, I spent over 20 years working in the field of victim services locally, statewide, and nationally. I have provided direct services to survivors of human trafficking, sexual assault, and domestic violence throughout Wisconsin; provided training and coaching to Tribes across the country regarding human trafficking response; and served as staff attorney for a national organization providing legal information to survivors of sexual assault and domestic violence. Prior to my current role, I served as the Violence Against Women Program and Policy

1

Analyst in OCVS for over seven years. I also have personal experience with the issues faced by victims of sexual abuse because I am a survivor of violent sexual abuse.

3.     As Executive Director, I am familiar with and have reviewed the records of OCVS with respect to this matter.  I make this affidavit based upon my personal knowledge and review of the records maintained by DOJ.

## OCVS Background

4.     OCVS was created over 40 years ago, shortly after Wisconsin became the first state to create a Crime Victim's Bill of Rights. *See* 1979 Wis. Act 219.

5.     OCVS houses statewide resources and programs for crime victims, victim's families, as well as professionals in the victim services field. OCVS manages a toll-free telephone line that connects victims to OCVS programs, including the Crime Victim Compensation program, the Victim Resources Center, the Safe at Home Address Confidentiality Program, and Victim Appellate Notification Services. OCVS also manages and administers federal grant programs and state funding streams for victim service agencies and county Victim/Witness programs throughout Wisconsin and coordinates technical assistance training for a broad range of service providers and stakeholders.

2

6.     The mission of OCVS is to provide and support the provision of trauma-informed, victim-centered, and culturally responsive victim services. OCVS strives to accomplish this by treating all victims and survivors with fairness, dignity, and respect; identifying barriers and promoting equitable access to information, resources, rights, services, and training; and collaboratively implementing policies and practices that serve the needs of victims, survivors, and communities impacted by inequity.

### Rights of Crime Victims in Wisconsin

7.     Both the Wisconsin Constitution and Wisconsin Statutes expressly provide numerous rights to victims of crime. *See e.g.,* Wis. Const. art. I, § 9; Wis. Stat. chs. 949 & 950.

8.     Under Wisconsin law, a person's rights as a victim of crime do not depend on a crime being charged or whether the person who allegedly committed the crime is alive or deceased. Wisconsin defines "victim" as "a person against whom an act is committed that would constitute a crime if committed by a competent adult." Wis. Const. art. I, § 9m(1)(a)1; *see also* Wis. Stat. § 950.02(1m), (4)(a)1. The rights of a "victim" "vest at the time of victimization" and are "protected by law in a manner no less vigorous than the protections afforded the accused." Wis. Const. art I, § 9m(2).

3

9.     Wisconsin law affords victims numerous rights within and outside of the criminal justice process. Those rights include, but are not limited to, being treated with dignity and respect, and the right to receive compensation afforded by law. Wis. Const. art I, § 9m(2); Wis. Stat. § 950.04(1v).

10.     Wisconsin law assigns DOJ several duties related to providing services and compensation to victims, which are mainly administered by OCVS.

## Crime Victim Compensation Program

11.     DOJ, through OCVS, administers Wisconsin's Crime Victim Compensation Program, which provides awards to innocent crime victims injured or killed in relation to the commission of a crime. *See* Wis. Stat. ch. 949; Wis. Stat. § 949.02.

12.     DOJ's duties in administering the Crime Victim Compensation Program include conducting investigations, making awards, and promulgating rules to implement the program. Wis. Stat. §§ 949.01(1m), 949.02, 949.06, 949.115, 949.13.

13.     DOJ frequently receives and processes applications for compensation from sexual abuse victims, including victims who were assaulted as children. Applicants who were children at the time they were injured are eligible to receive repayment for expenses incurred not more than one year before they apply for compensation through four years after the application

4

date. *See* Wis. Stat. § 949.08(1m)(b). Their eligibility for an award does not depend on whether criminal charges were filed in connection with the sexual abuse, whether the statute of limitations has expired for any such charges, or whether the person who committed the abuse is alive or deceased. *See* Wis. Stat. §§ 949.06(4)(a), 949.08(1m)(b). Eligible expenses can include, but are not limited to, counseling that sexual abuse survivors receive in connection with the trauma they continue to endure because of the abuse, even if the abuse occurred in the distant past when the victim was a child.

14.    Through its history, the Crime Victim Compensation Program has awarded millions of dollars to crime victims, including victims of sexual abuse. From January 2020 to present, the Crime Victim Compensation Program has received more than 1,200 applications related to child sexual abuse and awarded more than $600,000 to eligible victims of child sexual abuse.

**Information and Mediation Services for Crime Victims**

15.    DOJ, through OCVS, provides services directly to victims through a toll-free telephone service and runs a general information program regarding crime victim rights.

16.    DOJ maintains a toll-free phone number to provide crime victims and witnesses with services. *See* Wis. Stat. § 950.08(1). The services the DOJ provides through the toll-free number include information about and referral

to available services, crisis counseling, emotional support, and assistance securing resources and protection.

17.    As required by statute, DOJ also maintains a general informational program to inform crime victims, the public, and criminal justice officials about crime victim rights and services. *See* Wis. Stat. § 950.08(2).

## Funding of County Victim-Witness Programs

18.    Since 1980, DOJ, through OCVS, has administered the program to provide reimbursement to counties for services counties are required to provides victims and witnesses. Wis. Stat. § 950.06(2). Counties are required to provide services to victims and witnesses, including but not limited to court appearance notifications, victim compensation and social services referrals, transportation related to investigation or prosecution of the case, case progress notifications, employer intercession, expedited return of property, childcare, and protective services. Wis. Stat. § 950.06(1m). Although the actual reimbursement rate is dependent on incurred costs and revenues received by DOJ, counties are eligible to receive up to 90 percent reimbursement from the State for services provided. Wis. Stat. § 950.06(2).

19.    As required by statute, DOJ determines the level of services for which a county may be reimbursed, receives claims from counties for reimbursement, and makes reimbursement to the counties through designated appropriations. Wis. Stat. §§ 20.455(5), 950.06(2). DOJ also reviews the county

6

programs and may suspend or terminate reimbursement if a county fails to provide the required services. Wis. Stat. § 950.06(5). DOJ is also responsible for promulgating rules for implementing and administering county programs for victims and witnesses. Wis. Stat. § 950.06; *see* Wis. Admin. Code ch. Jus. 12.

20.    The services counties provide to victims and witnesses help ensure that the rights of sexual abuse victims are honored and upheld. The services also help ensure that victims are referred to appropriate resources to assist with the impacts of the trauma incurred they have incurred.

21.    The actual percentage of county costs reimbursed by DOJ varies each year depending upon the availability of state funds, cost of the counties approved programs, and the number of counties operating approved programs. In 2021–22, counties reported aggregate costs of $12,634,200 under the program. That year, DOJ provided a total of $5,489,600 in reimbursement to counties for approved victim and witness service programs.

**Safe at Home Address Confidentiality Program**

22.    DOJ, through OCVS, also administers Wisconsin's Safe at Home Address Confidentiality Program, as set forth in state statute. *See* Wis. Stat. § 165.68. The Program provides an avenue for victims of defined abuse, which includes sexual abuse and stalking, to keep their address confidential if they

fear for their physical safety. There is no charge to victims for applying or participating in this program. Wis Stat. § 165.68(3)(a).

23.    DOJ assigns each participant in the program an address different from the participant's real address. The participant can use the assigned address for all purposes and DOJ forwards the participant's mail to their real address. Wis. Stat. § 165.68(4), (5).

24.    Department employees work with program participants to develop a safety plan. Wis. Stat. § 165.68(3)(b)4.c. In addition to safety planning, these individuals can assist with other victim needs, such as legal advocacy, securing emergency or temporary housing, providing shelter services directly, group or individual counseling, assistance with restraining orders, and other referrals.

25.    Department employees also provide Safe at Home training to existing victim service providers at agencies and organizations throughout the state. DOJ certifies victim service providers who successfully complete the training as Safe at Home program assistance or application assistants under the program.

## Wisconsin Sexual Assault Kit Initiative

26.    Wisconsin's Sexual Assault Kit Initiative (WiSAKI) began as a state-wide effort to address the accumulation of unsubmitted sexual assault kits in possession of local law enforcement agencies and hospitals. In September 2015, DOJ was awarded a total of $4 million from two separate

8

grants to implement WiSAKI, one grant from the U.S. Bureau of Justice Assistance and one grant from the District Attorney's Office of New York. DOJ subsequently received five additional grants from the U.S. Department of Justice for WiSAKI, totaling more than $11 million.

27. The main goal of WiSAKI is to improve the system-wide response to sexual assault, at both the state and local level, and to be more victim-centered and trauma-informed in practice. To accomplish this, the project utilizes the accumulation of previously unsubmitted sexual assault kits as the starting point to engage with local jurisdictions and communities to help with various objectives, such as developing victim notification protocols, pursuing investigations, and prosecuting cases from previously unsubmitted sexual assault kits.

28. WiSAKI is a cross-divisional effort within DOJ that consists of several DOJ divisions collaborating to accomplish WiSAKI's goals. DOJ divisions that assist with WiSAKI include OCVS, the Division of Law Enforcement Services, Division of Criminal Investigation, Division of Legal Services (and specifically its Criminal Litigation Unit), and the Division of Forensic Sciences.

29. OCVS serves as the official point of contact for WiSAKI training and technical assistance providers throughout Wisconsin, provides outreach to WiSAKI-related issues for local multidisciplinary teams, provides victim

9

support services for WiSAKI team activities, and responds to victim inquiries from WiSAKI-related issues.

30.     In July 2022, WiSAKI best practice recommendations for the collection and processing of sexual assault kits were codified as Wis. Stat. §§ 165.775 and 165.776. These statutes define the requirements for the handling of sexual assault kits by health care professionals, Wisconsin law enforcement agencies, and the state crime lab. Wis. Stat. § 165.775. The statutes also required DOJ to establish the Wisconsin Sexual Assault Kit Tracking System, which provides victims access to information about the status of any sexual assault kit the victim has provided. Wis. Stat. § 165.776. DOJ is responsible for administering both statutes. *See* Wis. Stat. §§ 165.775(6), 165.776(4).

## State Grant Programs for Sexual Assault Victims

31.     DOJ, through OCVS, also administers the State of Wisconsin Sexual Assault Victim Services Grant Program (SAVS). SAVS provides grants for the provision of services to sexual assault victims by nonprofit organizations and public agencies. Wis. Stat. § 165.93(2)(a). SAVS is a state-funded grant program to help enhance, develop, and sustain sexual assault services in Wisconsin. *See* Wis. Stat. §§ 20.455(5)(e), (gj), 165.93.

10

32.    Organizations are eligible for SAVS grants if they provide sexual assault victims: advocacy and counseling services, an around the clock crisis telephone line, education about intervention for sexual assault victims, and education programs to prevent sexual assault. Wis. Stat. § 165.93(2).

33.    As part of its administration of the program, DOJ certifies a list containing the organizations that are eligible to receive SAVS grants and makes that list available to local law enforcement agencies. Wis. Stat. § 165.93(4).

### Federally-Funded Programs to Assist Victims

34.    DOJ has been designated as the State Administering Agency responsible for administering all money received from the federal government for crime victims to carry out the purposes for which the federal funds were received. *See* Wis. Stat. § 20.455(5)(m), (ma), (mh). DOJ administers these grant programs through OCVS. The grant programs fund a wide range of services for victims, including community- and systems-based victim services, statewide initiatives, and statutorily mandated statewide victim services.

35.    The U.S. Department of Justice's Office for Victims of Crime Victims of Crime Act (VOCA) grants are awarded to private and public agencies to support direct services to victims of violent crime through OCVS administration. Services provided under this program include safety planning, community service referrals, counseling, crisis intervention and legal

11

advocacy. 34 U.S.C. § 20103(a). DOJ, through OCVS, has administered federal VOCA funding for the State of Wisconsin since 1984.

36.    Since 2013, DOJ, through OCVS, has administered two federal grant programs from the U.S. Department of Justice's Office on Violence Against Women: the Violence Against Women Act STOP Formula Grant Program (VAWA STOP) and the Violence Against Women Act Sexual Assault Services Grant Program (VAWA SASP). VAWA STOP aims to develop and strengthen effective responses to sexual assault, domestic violence, dating violence, and stalking. 34 U.S.C. §§ 10441, 10446–10451. VAWA SASP is available to provide core services, direct intervention, and related assistance to survivors of sexual assault. 34 U.S.C § 12511.

37.    Collectively, the grant programs administered by DOJ through OCVS provide funding to victim service organizations that deliver critical services to their respective communities throughout Wisconsin. Services to sexual abuse victims include, but are not limited to, 24/7 crisis hotlines, medical advocacy, legal advocacy, counseling and/or therapy, and prevention education.

38.    DOJ uses VOCA funds, with approval pursuant to Wis. Stat. § 16.54(8), to fund Victim Services Specialists in OCVS. This includes funding for the Victim Services Specialist assigned to the Clergy and Faith Leader Abuse Initiative.

39.    Victim Services Specialists are dedicated to working with victims of sexual assault and sexual abuse. The position provides victims with support, information, and referrals to local advocacy agencies. The position participates as a member of DOJ's multi-disciplinary teams on initiatives relating to sexual assault and abuse, review cases of sexual assault and abuse reported to DOJ, and provide recommendations to internal and external criminal justice professionals about trauma-informed investigations and prosecutions. The position also serves as a liaison between victims, criminal justice professionals, and community-based victim advocates in sexual abuse and assault cases under review by DOJ. In cases investigated and prosecuted by DOJ, the position also provides victim witness services both before and after the case is charged. Throughout, Victim Services Specialists serve as a victim advocate as appropriate. The Victim Service Specialist assigned to the Clergy and Faith Leader Abuse Initiative serves as a primary point of contact for victims reporting sexual assault or abuse to the Initiative.

## Training Specific to Sexual Assault

40.    OCVS provides subject matter expertise on sexual assault dynamics, the trauma impact on victims, and survivor-centered responses within the criminal justice system during trainings for prosecutors and law enforcement on the "Trauma Informed Law Enforcement Response to Sexual Assault" and "Conducting Trauma-Informed Sexual Assault Investigations."

13

## Review of Sexual Assaults in the Wisconsin National Guard

41.     In January 2020, Governor Tony Evers asked DOJ to conduct a review of certain unrestricted reports of sexual abuse identified in the Federal National Guard Bureau Office of Complex Investigations (OCI) independent review of the Wisconsin Army National Guard's (WING) handling of allegations of sexual assault and harassment.

42.     To conduct this review, DOJ assembled two separate multi-disciplinary teams (MDT) to thoroughly review every unrestricted report of sexual assault made to WING between 2009 and 2019. Each MDT consisted of a prosecutor from DOJ's Criminal Litigation Unit, a special agent from the Division of Criminal Investigations, and a Victim Services Specialist from OCVS. DOJ selected each member of the MDTs because of their extensive experience working on sexual assault cases. The MDTs met numerous times, collectively reviewing thousands of pages of documents. In certain cases, DOJ referred a case to a district attorney for further review. Ultimately, no criminal charges were filed in the cases reviewed by DOJ.

## The Clergy and Faith Leader Abuse Initiative

43.     DOJ's Clergy and Faith Leader Abuse Initiative (the Initiative) was announced in April 2021. The primary goal of the Initiative is to provide victims of clergy and faith leader sexual abuse with an independent and thorough review of those allegations, no matter when the abuse occurred, and with the support they may need as result of the abuse.

44.     Through the Initiative, DOJ provides victims with a safe and confidential means to obtain support from OCVS and referrals to available services. The Initiative also provides an avenue for victims and witnesses to report sexual abuse by clergy and faith leaders.

45.     Victims may report abuse to DOJ through the Initiative's toll-free telephone number or through an online form. If a victim or other individual makes an online report of abuse and provides their name and contact information, as well as consent to be contacted, the Victim Services Specialist assigned to the Initiative reaches out to the reporting party. The Victim Services Specialist provides support, gathers additional information when appropriate, provides additional referrals to victim services, and provides information on victim compensation when appropriate. If a person makes a report using the toll-free line, the Victim Services Specialist provides the same support, gathers information from the caller when appropriate, provides

15

additional referrals to victim services, and provides information on victim compensation when appropriate.

46. With consent from the victim, each case reported to the Initiative is reviewed and discussed by MDT. The MDT consists of a prosecutor from DOJ's Criminal Litigation Unit, a special agent from DOJ's Division of Criminal Investigation (DCI), and a victim specialist from OCVS. MDT activities are coordinated by the OCVS Executive Director and the Initiative's Victim Services Specialist. The MDT confers and recommends next steps, which can include follow-up questions for the survivor, gathering of additional documents, or (with the victim's consent) coordination with local law enforcement for further investigation if the alleged abuse may be within the statute of limitations.

47. Since the beginning of the Initiative, there have been 266 reports made to DOJ. The reports allege abuse that occurred in more than 40 different counties in Wisconsin. The people who reported the abuse to the Initiative reside throughout Wisconsin, and in at least 40 different counties. In some cases, people reporting abuse to DOJ had previously reported to local law enforcement; in those circumstances, the reports were made in more than 20 different counties in Wisconsin.

16

48.     The Initiative has received reports of sexual abuse committed by clergy and faith leaders from several different faith denominations. Below is a chart documenting the reports of abuse the Initiative had received by denomination, including the number of abusers reported for each denomination and the number of victims for the reported abusers.

| Denomination | Number of Abusers | Number of Victims |
|---|---|---|
| Catholic | 178 | 212 |
| Islam | 2 | 2 |
| Jehovah's Witness | 5 | 6 |
| Lutheran | 4 | 5 |
| Methodist | 4 | 4 |
| Nondenominational Christian | 7 | 14 |
| Not Religiously Affiliated | 8 | 8 |
| Other Protestant | 3 | 4 |
| Pentecostal | 4 | 4 |
| Denomination not reported | 7 | 7 |

49.     One purpose of the Initiative is to assess, to the extent possible, whether the lists published by faith organizations of people credibly accused of sexual abuse are complete. To the extent that names of abusers who should be on these lists are not—even if those abusers are deceased—their victims may have lived not only with the trauma from the abuse but also with compounding harm of not having their abuse acknowledged. Having their abuser named, and their abuse recognized, can provide a sense of healing for victims of abuse.

17

50. If a victim reports abuse by a faith leader who is not on published credibly accused list, and DOJ deems the abuse allegations credible, DOJ asks the victim if they are interested in DOJ pursing the addition of the alleged abuser to the credibly accused list. DOJ asks the victim if they want DOJ to share the information the victim reported with a representative of the faith organization, and DOJ will not share the information provided by the victim without their consent. DOJ informs the victim that it is entirely up to the faith organization, not DOJ, whether the alleged abuser is added to the credibly accused list.

51. If the victim asks DOJ to share the report of abuse with the faith organization, often a special agent from DOJ's Division of Criminal Investigation (DCI) interviews the victim about the abuse and writes a report of that interview, for the purpose of sharing that information with the faith organization. Before DOJ shares the report, the victim reviews the report and is again asked to consent to sharing the report with the faith organization.

52. If the victim agrees to share the report, DOJ informs the victim that they can ask that a Victim Services Specialist, or victim advocate, accompany them in any interview or proceeding in accordance with the faith organization's procedures for investigating whether a name should be added to their credibly accused list.

18

53.    DOJ has shared reports of abuse made to the Initiative with faith organizations, so that organization may consider adding a name to their published credibly accused list.

54.    On certain occasions, when requested by the victim, a victim advocate from DOJ has accompanied the victim for the interview conducted during the faith organization's investigation of whether the name should be added to the credibly accused list.

55.    Through this process, and because of the Initiative, one faith organization has added the name of a deceased faith leader to their credibly accused list.[1]

56.    During the Initiative, DOJ has received credible reports of sexual abuse committed by Diocesan priests of the Archdiocese of Milwaukee who are not on the Archdiocese's published list of Restricted Priests. Several of the victims who made these credible reports have asked DOJ to pursue adding their abuser's name to the Archdiocese's credibly accused list. DOJ has shared one of these reports with the Archdiocese and is in the process of gathering information and obtaining permission for the purpose of sharing additional reports with the Archdiocese.

---

[1] Laura Schulte, *DOJ Investigation Leads to Discovery of Additional Credibly Accused Priest in La Crosse Diocese*, Milwaukee Journal Sentinel (Mar. 17, 2023, updated 2:25 PM), https://www.jsonline.com/story/news/politics/2023/03/17/doj-investigation-leads-to-discovery-of-credibly-accused-priest/70008790007/.

## Use of Sealed Bankruptcy Claims by the Initiative

57.     Many of the victims who have reported sexual abuse to the Initiative do not know the name of their abuser or cannot recall other important details about what happened to them. This includes several victims who reported sexual abuse committed by priests and others that occurred within the Archdiocese of Milwaukee. In my professional experience from working with victims, this is a common experience for victims of child sexual abuse because of their age at the time of the abuse and the trauma they experienced.

58.     Access to the sealed claims in the bankruptcy will give DOJ an important data source to piece together information for victims who do not know the name of their abuser or are missing important details about what happened. Comparing information the victim was able to report to the Initiative with information contained in the sealed records could help identify patterns or fill in missing pieces of information that are likely to help identify currently unknown abusers or fill in missing pieces of information.

59.     In my experience working with survivors, and as a survivor myself, knowing the identity of the person who abused them and key details about what happened to them is important to the healing process and closure for a victim.

60.    Access to the sealed claims in the bankruptcy will also help substantiate the reports of abuse made to the Initiative by Priests of the Archdiocese who are not currently on the Archdiocese's credibly accused list, or Restricted Priests list. As stated above, DOJ has received reports of abuse committed by Diocesan Priests of the Archdiocese who are not currently on the list of Restricted Priests. Information in the sealed claims can help substantiate these claims of abuse to the victim's abuser can be added to the Restricted Priest list.

61.    In my experience, it is most important to victims of sexual abuse that they are listed to and believed. Adding the name of the victim's abuser to the Archdiocese's Restricted Priest list is meaningful to victims because it is a public acknowledgment by the faith organization that they were heard and believed.

State of Wisconsin
County of Portage
Subscribed and sworn to before me this
__26th__ day of September, 2023.

_Lisa Kimmel_

Notary Public, State of Wisconsin
My commission expires: 8-16-24

_____
SHIRA R. PHELPS

LISA KIMMEL
Notary Public
State of Wisconsin