UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter: 11 |
| ARCHDIOCESE OF MILWAUKEE, | Case No: 11-20059 |
| Debtor(s). | |

## AFFIDAVIT OF SUSAN V. HAPP

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | ) ss. |
| DANE COUNTY | ) |

Susan V. Happ, being first duly sworn, upon oath deposes and says that:

1. I am the Director of the Criminal Litigation Unit (CLU) in the Department of Justice (DOJ), Division of Legal Services. I have held this position since April 20, 2020.

2. Prior to joining DOJ, I served as District Attorney in Jefferson County for 11.5 years. In my capacity as Jefferson County District Attorney, I served on the Jefferson County Sexual Assault Response Team, Heroin Task Force, Community Coordinated Response Team, Drug Task Force Steering Committee, and the Sheriff's and Chiefs Association. Before serving as District Attorney, I was in private practice for 9 years, specializing in criminal law.

3. As Director of the CLU, I am familiar with and have reviewed the records of DOJ with respect to this matter. I make this affidavit based upon my personal knowledge and review of the records maintained by DOJ.

## Department Prosecution Authority for Sexual Abuse Cases

4. The legal authority of the Attorney General and DOJ is specifically defined and limited by laws passed by the Wisconsin Legislature. The powers and duties of the Attorney General are set forth in chapter 165 of the Wisconsin statutes.

5. DOJ can file criminal charges where it has direct statutory authority to do so, when it has been appointed as a special prosecutor by a court, and when it has been asked to assist a district attorney.

6. No statute precludes DOJ from filing charges in sexual abuse cases.

7. DOJ has direct statutory authority to represent the State in Sexually Violent Person proceedings. Wis. Stat. § 165.255.

8. In criminal cases, including sexual abuse cases, assistant attorneys general are appointed special prosecutor at the request of a judge or the district attorney under Wis. Stat. § 978.045(1g) and (1r).

9. When an assistant attorney general is appointed special prosecutor under Wis. Stat. § 978.045(1g) and (1r), that attorney acts with "all the powers of the district attorney."

10. District attorneys may also request that DOJ assign an assistant attorney general to assist under Wis. Stat. § 978.05(8)(b).

11. When an assistant attorney general is appointed to assist the district attorney under Wis. Stat. § 978.05(8)(b), that attorney "may appear and assist in the investigation and prosecution of any matter for which a district attorney is responsible . . . in like manner as assistants in the prosecutorial unit and with the same authority as the district attorney in the unit in which the action is brought."

12. In the 2019–21 Biennial Budget, the Legislature funded a temporary Sexual Assault Resource Prosecutor for DOJ.

9. **CRIMINAL PROSECUTORIAL AND INVESTIGATIVE RESOURCES**

| | Governor (Chg. to Base) | | Jt. Finance (Chg. to Gov) | | Net Change | |
|---|---|---|---|---|---|---|
| | Funding | Positions | Funding | Positions | Funding | Positions |
| GPR | $541,100 | 4.00 | -$406,300 | -3.00 | $134,800 | 1.00 |

**Governor:** Provide $231,900 in 2019-20 and $309,200 in 2020-21 and 4.0 positions annually for additional criminal prosecutorial and investigative resources. Of these proposed positions, three would support white-collar crime prosecution (one attorney, one special agent, and one forensic accountant) and one project position would be a sexual assault resource prosecutor.

JUSTICE                                                                                          Page 317

**Joint Finance:** Reduce funding by $174,100 in 2019-20 and $232,200 in 2020-21 and 3.0 positions annually for white collar crime prosecution.

3

13. In the 2023–25 Biennial Budget, the Legislature agreed to permanently fund that position.[1]

### Department Investigative Authority in Criminal Cases

14. Wisconsin Stat. § 165.50(1)(a) grants DOJ authority to investigate crimes that are statewide in nature, importance or influence.

15. Wisconsin Stat. § 968.135 also grants the attorney general authority akin to a district attorney to request a subpoena for production of documents in furtherance of any criminal investigation.

16. DOJ also has administrative subpoena power under Wis. Stat. § 165.505. DOJ can issue administrative subpoenas when it has reasonable cause to believe a crime against a child has occurred/is occurring and the internet was used in the commission of the crime. DOJ can also issue the administrative subpoenas in human trafficking investigations.

### Sexual Abuse Cases Prosecuted by DOJ

17. DOJ has a long history of prosecuting Sexual Abuse cases. In the last decade, DOJ has served as special prosecutor or assisted local district attorneys on over 130 sexual abuse investigations and cases.

---

[1] Representative Born and Senator Marklein, *Department of Justice Omnibus Motion*, https://docs.legis.wisconsin.gov/misc/lfb/jfcmotions/2023/2023_06_08/002_department_of_justice/motion_93_omnibus_motion (last visited Sept. 22, 2023).

18. The CLU presently has three prosecutors assigned exclusive sexual abuse caseloads, two prosecutors assigned partial sexual abuse caseloads, and two prosecutors assigned to prosecute Sexually Violent Person cases. Together, these prosecutors have prosecuted or assisted in the prosecutions of numerous sexual abuse cases.

19. As an example, in January 2021, a local district attorney contacted DOJ for assistance in an investigation and prosecution involving a non-Catholic faith leader. An assistant attorney general was assigned to assist with the investigation and prosecution under Wis. Stat. § 978.05(8)(b). The district attorney and the assistant attorney general then charged the suspect with Repeated First Degree Sexual Assault of the Same Child. *See State of Wisconsin v. Jeffrey Charles*, No. 22CF173 (Wis. Cir. Ct. Douglas Cnty.). The assigned assistant attorney general has filed substantive pleadings and made oral argument on behalf of the State at multiple hearings. The case is still pending.

### Department Training Related to Sexual Assault

20. DOJ is statutorily required to advise district attorneys in all matters pertaining to the duties of their office when requested. Wis. Stat. § 165.25(3).

21. Since 1976, DOJ has offered regular training and continuing legal education to prosecutors across the State.

5

22. Since 2003, DOJ has presented over 60 sessions on sexual abuse at semi-annual statewide trainings, and over 40 sessions on victims' rights and best practices for working with victims at semi-annual statewide trainings.

23. In 2022 and 2023, a member of the CLU presented at the annual Victims' Rights Conference hosted by DOJ's Office of Crime Victim Services (OCVS).

24. Last year, DOJ hosted four regional sexual abuse trainings.

**Previous Sexual Abuse Initiatives**

25. In December 2012, then Wisconsin Attorney General J.B. Van Hollen created the Attorney General's Sexual Assault Response Team (AG SART), which was composed of a multidisciplinary group of professionals knowledgeable in the complex issues surrounding sexual assault. Members of the AG SART originally appointed by the attorney general included: law enforcement, victim advocates, sexual assault nurse examiners (SANE), the state crime lab, prosecutors, hospital administrators, and policy makers. At its inception, the AG SART was tasked with, among other things, the responsibility to ensure that all sexual assault kits (SAKs) are created, distributed, used, and collected and sent to the Wisconsin State Crime Lab (WSCL) in an efficient and expedient manner. Other responsibilities included evaluating the composition of medical forensic collection kits, standardizing billing practices for SANE exams, and creating a process for a survivor to have

6

a sexual assault kit collected without reporting to law enforcement. In September 2023, AG SART released an 81-page compilation of best practices recommendations to sexual assault response teams throughout the State. The compilation provides guidance on how teams can prioritize the safety, privacy, self-determination, and wellbeing of every victim, and was funded by a grant awarded by the Office on Violence Against Women, U.S. Department of Justice.

26. Since 2015, DOJ has led the Wisconsin Sexual Assault Kit Initiative (WiSAKI). WiSAKI is a statewide effort to address the accumulation of unsubmitted SAKs in the possession of local law enforcement agencies and hospitals. WiSAKI is a collaborative effort among law enforcement, victim advocates, sexual assault nurse examiners, prosecutors, health care systems, and the WSCL.

27. WiSAKI utilizes multidisciplinary teams (MDTs) to review cases associated with unsubmitted SAKs prior to referring those cases to local jurisdictions. DOJ's Sexual Assault Kit Initiative Sexual Assault Response Team consists of a victim services specialist, two special agents with the Division of Criminal Investigation (DCI), one assistant attorney general, and a research analyst. These MDTs are available to assist local jurisdictions with victim notification protocols, as well as with investigating and prosecuting cases that may arise from the testing of unsubmitted sexual assault kits.

28. As an example, in October 2018, agents from DCI were assigned to the WiSAKI initiative reviewed cases/reports from two different jurisdictions that outlined four sexual assault cases linked together by the same offender. The offender was unidentified in all four cases and the profile was searched in the Combined DNA Index System (CODIS) with no match to a known offender. DCI agents worked with local advocacy to contact the victims of these crimes and conducted a trauma informed investigation. DNA was further examined, a suspect was developed which was later confirmed with DNA match, and the subject was arrested and prosecuted. After a plea agreement, the defendant was convicted of three counts of Second Degree Sexual Assault – Use of Force, and sentenced to 18 years initial confinement and 18 years extended supervision. *State of Wisconsin v. Matthew P. Crockett*, No. 21CF604 (Wis. Cir. Ct. Kenosha Cnty.).

29. WiSAKI is an ongoing initiative of DOJ at the time of this affidavit.

30. In January 2020, Governor Tony Evers asked DOJ to conduct a review of certain unrestricted reports of sexual abuse identified in the Federal National Guard Bureau Office of Complex Investigations (OCI) independent review of the Wisconsin Army National Guard's (WING) handling of allegations of sexual assault and harassment.

31. To conduct this review, DOJ assembled two separate MDTs to thoroughly review every unrestricted report of sexual assault made to WING

8

between 2009 and 2019. Each MDT consisted of a prosecutor from CLU, a special agent from DCI, and a victim specialist from OCVS. DOJ selected each member of the MDTs because of their extensive experience working on sexual assault cases. The MDTs met numerous times, collectively reviewing thousands of pages of documents. In certain cases, DOJ referred a case to a district attorney for further review. Ultimately, no criminal charges were filed in the cases reviewed by DOJ.

## Clergy and Faith Leader Abuse Initiative

32. In April 2021, DOJ launched the Clergy and Faith Leader Abuse Initiative (Initiative).

33. The Initiative seeks reports of abuse by any clergy or faith leader, regardless of denomination. DOJ serves as a clearinghouse for reports of abuse from across the state in connection with the Initiative.

34. When DOJ receives reports through the Initiative, a victim specialist at DOJ evaluates the report to determine what follow up is appropriate. If the reporting party has indicated a willingness for DOJ to contact them, a victim specialist will reach out to help with identifying survivor support resources.[2]

---

[2] DOJ's procedure for processing reports through the Initiative is publicly available. Wisconsin Attorney General's Office, *Clergy and Faith Leader Abuse Support for Victims and Survivors*, https://supportsurvivors.widoj.gov (last visited Sept. 22, 2023).

9

35. DOJ uses MDTs to review the report to determine what action may be appropriate. As in other initiatives of DOJ focused on sexual abuse, each MDT consists of a prosecutor from the CLU, a special agent from DCI, and a victim specialist from OCVS. The MDT confers, reviews for statute of limitations concerns, identifies investigative leads, and ensures victims' rights compliance. The MDT then recommends next steps, which can include follow-up questions for the survivor, gathering of additional documents, or (in cases of alleged abuse that may have occurred within the statute of limitations) coordination with local law enforcement and prosecutors for potential further investigation and prosecution.

36. For example, as part of the Initiative, an individual reported to DOJ that he had been abused while in the first grade in the early 1990s at a parish in the Archdiocese of Milwaukee (Archdiocese), by a Catholic priest who then served in the Archdiocese. This case is within the statute of limitations for criminal prosecution.

37. DOJ shared the reported information with the Milwaukee County District Attorney's Office. Thereafter, DOJ and the Milwaukee County District Attorney's Office filed a joint motion, on which I was a signatory, with the Milwaukee County Circuit Court, pursuant to concurrent authority under Wis. Stat. § 968.135. The motion alleged that there was probable cause to believe that the Archdiocese possessed documents that constitute evidence of the crime

10

of First Degree Sexual Assault of a Child, in violation of Wis. Stat. § 948.02(1) (1991–92). In response to the motion, the court issued a subpoena to the Archdiocese, which was then served on the Archdiocese. The court-issued subpoena ordered the Archdiocese to produce documents to DOJ. Through its counsel, the Archdiocese subsequently produced documents to DOJ responsive to the subpoena. The investigation of the matter, which is being led by DCI, remains ongoing.

38. In another matter stemming from the Initiative, an individual reported to DOJ that he had been abused repeatedly by Theodore McCarrick, a defrocked former Catholic cardinal, including while the reporting individual was staying as a guest at a Lake Geneva residence. After follow-up by a victim specialist at DOJ, and review by a MDT, DOJ reached out to local law enforcement and the local district attorney to coordinate further investigation. Together with the local sheriff's office, agents from DCI investigated the matter, interviewed the individual who reported the abuse, and referred the information to the local district attorney. The district attorney then charged McCarrick with Fourth Degree Sexual Assault. *See State of Wisconsin v. Theodore McCarrick*, No. 23CM160 (Wis Cir. Ct. Walworth Cnty.). The case is still pending.

11

39. In another matter stemming from the Initiative, an individual reported to DOJ that he had been abused as a 10-year-old by Remington Jon Nystrom, a non-Catholic faith leader who was a camp counselor. After follow-up by a victim specialist at DOJ, and review by a MDT, DOJ reached out to local law enforcement to coordinate further investigation. After this investigation occurred, the local district attorney charged Nystrom with Second Degree Sexual Assault of a Child. *See State of Wisconsin v. Remington Jon Nystrom*, No. 22CF27 (Wis. Cir. Ct. Waushara Cnty.). As part of a subsequent plea agreement, Nystrom agreed that the factual basis in the criminal complaint was accurate. The factual basis in the complaint included a description of the defendant touching the reporting victim's genitals. The court sentenced Nystrom to seven years initial confinement and ten years extended supervision. The victim in this case had not reported the assault to either church or legal authorities prior to reporting through DOJ's website for the Initiative.

40. DOJ continues to receive reports through the Initiative. DOJ follows the process outlined above for reviewing each of those reports.

41. I am aware that as part of the bankruptcy proceedings involving the Archdiocese, survivors of clergy sexual abuse filed Proofs of Claim detailing their abuse. These Proofs of Claim include important information, which may include the name of the survivor, the name of the abuser, the date of birth of

12

the survivor, the location of the sexual abuse, the dates of abuse, the age of the survivor, descriptions of the abuse, persons to whom the abuse was reported, and the impact of the abuse on survivors.

42. CLU attorneys on MDTs can compare data from Proofs of Claim to data from reports made to the Initiative to verify whether reports are within the statute of limitations, identify the proper venue for case referral, and assess the prosecutive merit of Initiative reports by identifying consistent and inconsistent statements, witnesses, and potential other acts evidence.

_____
SUSAN V. HAPP

Subscribed and sworn to before me
this _____ day of September, 2023.

_____
Notary Public, State of Wisconsin
My commission expires: 3-28-25