UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | Chapter: 11 |
|---|---|
| ARCHDIOCESE OF MILWAUKEE, | Case No: 11-20059 |
| Debtor(s). | |

## AFFIDAVIT OF TINA VIRGIL

STATE OF WISCONSIN     )
                       ) ss.
DANE COUNTY            )

Tina Virgil, being first duly sworn, upon oath deposes and says that:

1. I am the Administrator for the Division of Criminal Investigation (DCI) in the Wisconsin Department of Justice (DOJ), I have held this position since December 19, 2021. Prior to this role, I served for 3 years as the Administrator for the Division of Law Enforcement Services (DLES). In my 30 years with DOJ, I have served DCI as a Special Agent, Special Agent in Charge, Eastern Regional Director, State Fire Marshal, and Director of the Special Investigations Bureau. I have also served as Executive Director of the Office of Crime Victim Services (OCVS).

2. As the Administrator for DCI, I am familiar with and have reviewed the records of DOJ with respect to this matter. I make this affidavit based upon my personal knowledge and review of the records maintained by DOJ.

**Department Investigative Authority in Criminal Cases**

3. The powers and duties of the Attorney General are set forth in the Wisconsin Statutes, and most specifically in chapter 165.

4. Wisconsin Stat. § 165.50(1)(a) grants DOJ authority to investigate crimes that are statewide in nature, importance or influence. DOJ is invested with the powers conferred by law upon sheriffs and municipal police officers in the performance of these duties. Wis. Stat. § 165.70(2). To carry out these responsibilities, among other things, DOJ employs sworn law enforcement officers identified as Special Agents.

5. In addition to investigating crimes of statewide nature, importance, or influence, DCI Special Agents provide assistance to local law enforcement agencies and investigate crimes that require highly specialized investigative resources, including, but not limited to, investigations involving sexual abuse, which encompasses sexual assaults, sexual exploitation, internet crimes against children, and human trafficking.

6. DCI Special Agents receive training in a wide variety of investigative areas. DCI Special Agents who investigate sexual abuse receive training regarding sexual abuse investigations, and learn to pursue investigative leads, including but not limited to interviews of offenders, victims, and witnesses, requesting and reviewing medical records, locating and reviewing historic records, locating and reviewing vital records, locating and

2

reviewing public records, and requesting and reviewing privately held documents, photos, and digital records. Special Agents are trained to review records for both corroborative evidence and contradictory evidence.

## Sexual Abuse Cases Investigated by DCI

7. DCI has a long history of investigating sexual abuse cases. In the last decade alone, DCI has investigated over 130 reports of sexual abuse. Some of these cases involve investigations of the sexual abuse of minors that occurred long ago.

8. As an example, in 2009, the Juneau County Sheriff's Office requested DCI's assistance in the investigation of the sexual abuse of multiple child victims by two male adults occurring in the 1980's and 1990's. A DCI Special Agent co-led the investigation with a detective from the Juneau County Sheriff's Office. As a result of DOJ's involvement, one suspect was convicted after a jury trial of two counts of First Degree Sexual Assault of a Child and three counts of Second Degree Sexual Assault of a Child and sentenced to six years in prison followed by twenty years of probation. *See State of Wisconsin v. Daniel J. Coughlin*, No. 11CF78 (Wis. Cir. Ct. Juneau Cnty.). A second defendant was convicted after a jury trial of six counts of First Degree Sexual Assault of a Child, fourteen counts of Second Degree Sexual Assault of a Child, and one count of Repeated Sexual Assault of Same Child and sentenced to 48

3

years in prison. *See State of Wisconsin v. Donald P. Coughlin*, No. 10CF222 (Wis. Cir. Ct. Juneau Cnty.).

9. As another example, in 2013, the U.S. Department of Homeland Security contacted DCI to request assistance with an investigation of an adult male traveling to Canada to engage in sexual activity with a minor. As a direct result of DCI's investigation, the defendant was convicted of Transportation of Minors with Intent to Engage in Criminal Activity. *See United States v. Jordan, Dylan*, No. 3:13CR00160 (W.D. Wis.). Jordan was sentenced to ten years of imprisonment and ten years of supervised release.

10. As another example, in 2018, a DCI Special Agent was assigned to investigate a report of Repeated Sexual Assault of Same Child. As a result of the investigation, the defendant was charged with Repeated First Degree Sexual Assault of the Same Child. *See State of Wisconsin v. James P. Killian*, No. 19CF163 (Wis. Cir. Ct. Trempealeau Cnty.). The matter is currently pending.

**Previous Statewide Sexual Abuse Investigations**

11. In September 1998, the U.S. Department of Justice began a national Internet Crimes Against Children (ICAC) Task Force program to counter the emerging threat of predators using the internet or other online technology to sexually exploit children.

4

12. Wisconsin's ICAC Task Force has been administered by DCI since its inception in the spring of 1999 and DCI is recognized as Wisconsin's leading authority on ICAC investigations.

13. Wisconsin's ICAC Task Force presently has over 320 members. Members of the task force receive training and investigative assistance on the numerous ICAC investigation sent from the National Center for Missing and Exploited Children (NCMEC). Most investigations are initiated from CyberTips generated from online electronic service providers such as Facebook and Google. CyberTips can also be submitted by individuals and reported directly to NCMEC.

14. Since 2015, DCI has received over 29,000 CyberTips.

15. DOJ has administrative subpoena power under Wis. Stat. § 165.505. DOJ can issue administrative subpoenas when it has reasonable cause to believe a crime against a child has occurred/is occurring and the internet was used in the commission of the crime.

16. Since 2016, between task force members and DCI Special Agents assigned to investigate ICAC offenses, DOJ has issued over 10,000 administrative subpoenas in furtherance of these investigations.

17. DCI also leads Wisconsin's Anti-Human Trafficking Task Force. The Task Force emphasizes the importance of strong working relationships between law enforcement and victim services in its mission to develop and

5

implement a coordinated and collaborative, victim-centered, trauma-informed multidisciplinary response to human trafficking in Wisconsin.

18. DCI is frequently the lead and often the sole investigating agency on human trafficking cases. These investigations have led to federal and state prosecutions and convictions for sexual abuse offenses, including human trafficking, and have resulted in lengthy prison sentences for the offenders.

19. As an example, in 2018, a local law enforcement agency contacted DCI regarding a missing juvenile believed to be in another jurisdiction. DCI served as lead investigating agency, coordinating a response by multiple law enforcement agencies. DCI identified and interviewed witnesses, identified physical and electronic evidence, drafted and executed search warrants for records and residences, provided deconfliction amongst agencies, and coordinated with victim service providers. As a result of the investigation, a suspect was identified, charged, and convicted of Trafficking of a Child, Second Degree Sexual Assault of a Child, and three counts of Possession of a Firearm by a Felon, and sentenced to 10 years initial confinement and 10 years extended supervision *See State of Wisconsin v. Pedro J. Seranno Jr.*, No. 20CF2242 (Wis Cir. Ct. Milwaukee Cnty.).

## **Previous Department Sexual Abuse Initiatives**

20. In December 2012, then Wisconsin Attorney General J.B. Van Hollen created the Attorney General's Sexual Assault Response Team (AG SART), which was composed of a multidisciplinary group of professionals knowledgeable in the complex issues surrounding sexual assault. Members of the AG SART originally appointed by the attorney general included: law enforcement, victim advocates, sexual assault nurse examiners (SANEs), the state crime lab, prosecutors, hospital administrators, and policy makers. At its inception, the AG SART was tasked with, among other things, the responsibility to ensure that all sexual assault kits (SAKs) are created, distributed, used, and collected and sent to the Wisconsin State Crime Lab (WSCL) in an efficient and expedient manner. Other responsibilities included evaluating the composition of medical forensic collection kits, standardizing billing practices for SANE exams, and creating a process for a sexual assault victim to have a sexual assault kit collected without reporting to law enforcement.

21. Since 2015, DOJ has led the Wisconsin Sexual Assault Kit Initiative (WiSAKI). WiSAKI is a statewide effort to address the accumulation of unsubmitted SAKs in the possession of local law enforcement agencies and hospitals. WiSAKI is a collaborative effort among law enforcement, victim

7

advocates, sexual assault nurse examiners, prosecutors, health care systems, and the WSCL.

22. WiSAKI utilizes multidisciplinary teams (MDTs) to review cases associated with unsubmitted SAKs prior to referring those cases to local jurisdictions. DOJ's Sexual Assault Kit Initiative Sexual Assault Response Team consists of a victim services specialist, two DCI special agents, one assistant attorney general, and a research analyst. These MDTs are available to assist local jurisdictions with victim notification protocols, as well as with investigating and prosecuting cases that may arise from the testing of unsubmitted sexual assault kits.

23. As an example, in October 2018, agents from DCI assigned to the WiSAKI initiative reviewed cases/reports from two different jurisdictions that outlined four sexual assault cases linked together by the same offender. The offender was unidentified in all four cases and the profile was searched in the Combined DNA Index System (CODIS) with no match to a known offender. DCI agents worked with local victim advocates to contact the victims of these crimes and conducted a trauma-informed investigation. DNA was further examined, a suspect was developed which was later confirmed with DNA match, and the subject was arrested and prosecuted. After a plea agreement, the defendant was sentenced to 18 years initial confinement. *State of Wisconsin v. Matthew P. Crockett*, No. 21CF604 (Wis. Cir. Ct Kenosha Cnty.).

24. WiSAKI is an ongoing initiative of DOJ at the time of this affidavit.

25. In January 2020, Governor Tony Evers asked DOJ to conduct a review of certain unrestricted reports of sexual abuse identified in the Federal National Guard Bureau Office of Complex Investigations independent review of the Wisconsin Army National Guard's (WING) handling of allegations of sexual assault and harassment.

26. To conduct this review, DOJ assembled two separate MDTs to thoroughly review every unrestricted report of sexual assault made to WING between 2009 and 2019. Each MDT consisted of a prosecutor from DOJ's Criminal Litigation Unit (CLU) in the Division of Legal Services, a special agent from DCI, and a victim specialist from the Office of Crime Victim Services (OCVS). DOJ selected each member of the MDTs because of their experience working on sexual assault cases. The MDTs met numerous times, collectively reviewing thousands of pages of documents. In certain cases, DOJ referred a case to a district attorney for further review. Ultimately, no criminal charges were filed in the cases reviewed by DOJ.

## Clergy and Faith Leader Abuse Initiative

27. In April 2021, DOJ launched the Clergy and Faith Leader Abuse Initiative (Initiative).

9

28. The Initiative seeks reports of abuse by any clergy or faith leader, regardless of denomination. DOJ serves as a clearinghouse for reports of abuse from across the state in connection with the Initiative.

29. When DOJ receives reports through the Initiative, a victim specialist at DOJ evaluates the report to determine what follow up is appropriate. If the reporting party has indicated a willingness for DOJ to contact them, a victim specialist will reach out to help with identifying survivor support resources.[1]

30. DOJ uses MDTs to review the report to determine what action may be appropriate. As in other Department initiatives focused on sexual abuse, each MDT consists of a prosecutor from the CLU, a special agent from DCI, and a victim specialist from OCVS. The MDT confers, reviews for statute of limitations concerns, identifies investigative leads, and ensures victims' rights compliance. The MDT then recommends next steps, which can include follow-up questions for the survivor, gathering of additional documents, or (in cases of alleged abuse that may have occurred within the statute of limitations) coordination with local law enforcement and prosecutors for potential further investigation and prosecution.

---

[1] DOJ's procedure for processing reports through the Initiative is publicly available. Wisconsin Attorney General's Office, *Clergy and Faith Leader Abuse Support for Victims and Survivors*, https://supportsurvivors.widoj.gov (last visited Sept. 22, 2023).

31. For example, as part of the Initiative, an individual reported to DOJ that he had been abused while in the first grade in the early 1990s at a parish in the Archdiocese of Milwaukee (Archdiocese), by a Catholic priest who then served in the Archdiocese. This case is within the statute of limitations for criminal prosecution.

32. DOJ shared the reported information with the Milwaukee County District Attorney's Office. Thereafter, DOJ and the Milwaukee County District Attorney's Office obtained a subpoena directed to the Archdiocese, which was then served on the Archdiocese. The court-issued subpoena ordered the Archdiocese to produce documents to DOJ. Through its counsel, the Archdiocese subsequently produced documents to DOJ responsive to the subpoena. The investigation of the matter, which is being led by the DCI, remains ongoing.

33. In another matter stemming from the Initiative, an individual reported to DOJ that he had been abused repeatedly by Theodore McCarrick, a defrocked former Catholic cardinal, including while the reporting individual was staying as a guest at a Lake Geneva residence. After follow-up by a victim specialist at DOJ, and review by a MDT, DOJ reached out to local law enforcement and the local district attorney to coordinate further investigation. Together with the local sheriff's office, agents from DCI investigated the matter, interviewed the individual who reported the abuse, and referred the

information to the local district attorney. The district attorney then charged McCarrick with Fourth Degree Sexual Assault. *See State of Wisconsin v. Theodore McCarrick*, No. 23CM160 (Wis. Cir. Ct. Walworth Cnty.). The case is still pending.

34. In another matter stemming from the Initiative, an individual reported to DOJ that he had been abused as a 10-year-old by Remington Jon Nystrom, a non-Catholic faith leader who was a camp counselor. After follow-up by a victim specialist at DOJ, and review by a MDT, DOJ reached out to local law enforcement to coordinate further investigation. After this investigation occurred, the local district attorney charged Nystrom with Second Degree Sexual Assault of a Child. *See State of Wisconsin v. Remington Jon Nystrom*, No. 22CF27 (Wis. Cir. Ct. Waushara Cnty.).

35. DOJ continues to receive reports through the Initiative. DOJ follows the process outlined above for reviewing each of those reports.

36. I am aware that as part of the bankruptcy proceedings involving the Archdiocese, survivors of clergy sexual abuse filed Proofs of Claim detailing their abuse. These Proofs of Claim include important information, which may include the name of the survivor, the name of the abuser, the date of birth of the survivor, the location of the sexual abuse, the dates of abuse, the age of the survivor, descriptions of the abuse, persons to whom the abuse was reported, and the impact of the abuse on survivors.

37. By reviewing these Proofs of Claim, Special Agents can identify corroborative and contradictory statements and investigative leads such as additional victims, vital records, witnesses, offender names, and school records.

_____
Tina Virgil

Subscribed and sworn to before me
this ___26th___ day of September, 2023.

_____
Notary Public, State of Wisconsin
My commission expires: 3-28-25

13