United States Bankruptcy Court

Eastern District of Wisconsin

In re:                                                                                    Case No. 11-20059-gmh

Archdiocese of Milwaukee                                                                  Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0757-2 | User: adkt | Page 1 of 9 |
|---|---|---|
| Date Rcvd: Sep 30, 2024 | Form ID: pdfhrg | Total Noticed: 3 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Oct 02, 2024:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dbpos | + | Archdiocese of Milwaukee, 3501 South Lake Drive, Milwaukee, WI 53235-0912 |
| crcmch | + | Charles Linneman, c/o Jeff Anderson, 366 Jakson Steet, St. Paul, MN 55101-1925 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| intp | Email/Text: dojbankruptcynoticegroup@doj.state.wi.us | Sep 30 2024 23:56:00 | State of Wisconsin - Department of Justice, P O Box 7857, Madison, WI 53707-7857 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 02, 2024                          Signature:          /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on September 30, 2024 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Albert Solochek | |
| | on behalf of Defendant Official Committee of Unsecured Creditors alsolochek@hswmke.com  skoceja@hswmke.com |
| Albert Solochek | |
| | on behalf of Creditor Committee Official Committee of Unsecured Creditors alsolochek@hswmke.com  skoceja@hswmke.com |
| Albert Solochek | |
| | on behalf of Counter-Claimant Official Committee of Unsecured Creditors alsolochek@hswmke.com  skoceja@hswmke.com |

Anne C. Murphy
    on behalf of Interested Party State of Wisconsin-Department of Public Instruction murphyac@doj.state.wi.us
    gurholtks@doj.state.wi.us

Anthony B. Sparks
    on behalf of U.S. Trustee Office of the U. S. Trustee anthony.b.sparks@usdoj.gov

Brigid Leahy
    on behalf of Creditor Continental Casualty Company bleahy@davidchristianattorneys.com  mbloch@davidchristianattorneys.com

Bruce G. Arnold
    on behalf of Debtor In Possession Archdiocese of Milwaukee bruce.arnold@huschblackwell.com
    michelle.brandemuehl@huschblackwell.com;bruce-arnold-2623@ecf.pacerpro.com

Bruce G. Arnold
    on behalf of Plaintiff Archdiocese of Milwaukee bruce.arnold@huschblackwell.com
    michelle.brandemuehl@huschblackwell.com;bruce-arnold-2623@ecf.pacerpro.com

Catalina J. Sugayan
    on behalf of Defendant Winterthur Swiss Insurance Company catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Harper Insurance Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Dominion Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Excess Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Interested Party Certain Underwriters at Lloyd's  London and Certain London Market Companies
    catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Underwriters at Lloyd's London catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Ocean Marine Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Helvetia Swiss Insurance Company catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant River Thames Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant NRG Victory Reinsurance Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant London & Edinburgh Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant National Casualty Co. catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Stronghold Insurance Company Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Ageas Insurnace Limited catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Delta Lloyd Schadeverzekering NV catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant National Casualty Co. of America catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant National Casualty Co. of America Ltd. catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Assicurazioni Generali S.p.A. catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Select Markets Insurance Company catalina.sugayan@sedgwicklaw.com

Catalina J. Sugayan
    on behalf of Defendant Allianz Suisse Versicherungs-Gesellschaft AG catalina.sugayan@sedgwicklaw.com

Christopher Combest
    on behalf of Spec. Counsel Quarles & Brady LLP Christopher.Combest@quarles.com

Christopher J. Ahrens

on behalf of Creditor The Cemetery Union Employees cja@previant.com  mc@previant.com

Christopher J. Ahrens

on behalf of Creditor Milwaukee Laborer's Local 113 cja@previant.com  mc@previant.com

Christopher J. Schreiber

on behalf of Creditor Mork Mausoleum Construction  Inc. cjschreiber@michaelbest.com, jcalmes@michaelbest.com;courtmail@michaelbest.com

Craig K. Vernon

on behalf of Creditor Various Creditors cvernon@jvwlaw.net

Daniel Fasy

on behalf of Creditor Various Creditors dan@kosnoff.com  lynn@kosnoff.com

Daniel Fasy

on behalf of Creditor Various Creditors dan@kosnoff.com  lynn@kosnoff.com

Daryl L. Diesing

on behalf of Spec. Counsel Buelow Vetter Buikema Olson & Vliet daryl.diesing@huschblackwell.com sherri.fonte@huschblackwell.com;daryl-diesing-5396@ecf.pacerpro.com

Daryl L. Diesing

on behalf of Plaintiff Archdiocese of Milwaukee daryl.diesing@huschblackwell.com sherri.fonte@huschblackwell.com;daryl-diesing-5396@ecf.pacerpro.com

Daryl L. Diesing

on behalf of Debtor In Possession Archdiocese of Milwaukee daryl.diesing@huschblackwell.com sherri.fonte@huschblackwell.com;daryl-diesing-5396@ecf.pacerpro.com

Daryl L. Diesing

on behalf of Interested Party Kurtzman Carson Consultants LLC daryl.diesing@huschblackwell.com sherri.fonte@huschblackwell.com;daryl-diesing-5396@ecf.pacerpro.com

David C. Christian, II

on behalf of Creditor Continental Casualty Company dchristian@davidchristianattorneys.com

Dawn M. Maguire-Bayne

on behalf of Creditor David A. Birdsell dbayne@asbazlaw.com  mbaca@asbazlaw.com

Debra L. Schneider

on behalf of U.S. Trustee Office of the U. S. Trustee debra.schneider@usdoj.gov

Eric S. Teske

on behalf of Creditor Committee Official Committee of Unsecured Creditors eric@welcenbachlaw.com

Francis H. LoCoco

on behalf of Debtor In Possession Archdiocese of Milwaukee frank.lococo@huschblackwell.com jillian.smith@huschblackwell.com;francis-lococo-1187@ecf.pacerpro.com

Francis H. LoCoco

on behalf of Plaintiff Archdiocese of Milwaukee frank.lococo@huschblackwell.com jillian.smith@huschblackwell.com;francis-lococo-1187@ecf.pacerpro.com

Gillian N. Brown

on behalf of Creditor Committee Creditors Committee gbrown@pszjlaw.com  pdoyle@pszjlaw.com

Gillian N. Brown

on behalf of Defendant Official Committee of Unsecured Creditors gbrown@pszjlaw.com  pdoyle@pszjlaw.com

Gillian N. Brown

on behalf of Creditor Committee Official Committee of Unsecured Creditors gbrown@pszjlaw.com  pdoyle@pszjlaw.com

Gillian N. Brown

on behalf of Counter-Claimant Official Committee of Unsecured Creditors gbrown@pszjlaw.com  pdoyle@pszjlaw.com

James I. Stang

on behalf of Creditor Committee Official Committee of Unsecured Creditors jstang@pszjlaw.com  dhinojosa@pszjlaw.com

James I. Stang

on behalf of Other Prof Eric Schwarz jstang@pszjlaw.com  dhinojosa@pszjlaw.com

James I. Stang

on behalf of Defendant Official Committee of Unsecured Creditors jstang@pszjlaw.com  dhinojosa@pszjlaw.com

James I. Stang

on behalf of Counter-Claimant Official Committee of Unsecured Creditors jstang@pszjlaw.com  dhinojosa@pszjlaw.com

James P. Scoptur

on behalf of Attorney Jeffrey R. Anderson james@aikenandscoptur.com

James S. Smith

on behalf of Interested Party Michele Marsh jsmith@sgr-law.com  droth@sgr-law.com

James S. Smith

on behalf of Interested Party James S. Smith jsmith@sgr-law.com  droth@sgr-law.com

James S. Smith

on behalf of Creditor Various Creditors jsmith@sgr-law.com  droth@sgr-law.com

James S. Smith

on behalf of Interested Party Wendy Gunderson jsmith@sgr-law.com  droth@sgr-law.com

James T. Murray, Jr.

on behalf of Witness Rembert G. Weakland jmurray@pjmlaw.com  mfroiland@pjmlaw.com

Jason R. Pilmaier

on behalf of Creditor Committee Creditors Committee jpilmaier@hswmke.com

Jason R. Pilmaier

on behalf of Other Prof Eric Schwarz jpilmaier@hswmke.com

Jason R. Pilmaier

on behalf of Defendant Official Committee of Unsecured Creditors jpilmaier@hswmke.com

Jason R. Pilmaier

on behalf of Counter-Claimant Official Committee of Unsecured Creditors jpilmaier@hswmke.com

Jason R. Pilmaier

on behalf of Creditor Committee Official Committee of Unsecured Creditors jpilmaier@hswmke.com

Jeff D Kahane

on behalf of Defendant NRG Victory Reinsurance Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Ageas Insurnace Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Select Markets Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Stronghold Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Bishopsgate Ins. Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Winterthur Swiss Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Interested Party Certain Underwriters at Lloyd's  London and Certain London Market Companies jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant London & Edinburgh Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Turegum Insurance Co. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant National Casualty Co. of America Ltd. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant National Casualty Co. of America Ltd. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant National Casualty Co. of America jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant River Thames Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Underwriters at Lloyd's London jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Stronghold Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Dominion Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Ageas Insurnace Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Excess Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

District/off: 0757-2

Date Rcvd: Sep 30, 2024

User: adkt

Form ID: pdfhrg

Page 5 of 9

Total Noticed: 3

on behalf of Defendant Stronghold Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Dominion Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant NRG Victory Reinsurance Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Helvetia Swiss Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Assicurazioni Generali S.p.A. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Allianz Suisse Versicherungs-Gesellschaft AG jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Excess Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Ocean Marine Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Delta Lloyd Non Life jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Helvetia Swiss Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Allianz Suisse Versicherungs-Gesellschaft AG jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant National Casualty Co. of America jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant National Casualty Co. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Harper Insurance Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Excess Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Select Markets Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant London & Edinburgh Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant River Thames Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Interested Party Underwriters at Lloyd's  London jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant National Casualty Co. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Ocean Marine Insurance Company Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Harper Insurance Limited jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Delta Lloyd Schadeverzekering NV jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Winterthur Swiss Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Delta Lloyd Schadeverzekering NV jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Assicurazioni Generali S.p.A. jkahane@duanemorris.com

Jeff D Kahane

on behalf of Defendant Dominion Insurance Company jkahane@duanemorris.com

Jeff D Kahane

on behalf of Counter-Claimant Underwriters at Lloyd's London jkahane@duanemorris.com

District/off: 0757-2

Date Rcvd: Sep 30, 2024

User: adkt

Form ID: pdfhrg

Page 6 of 9

Total Noticed: 3

Jeffrey Anderson
on behalf of Plaintiff Dean Weissmuller jeff@andersonadvocates.com
therese@andersonadvocates.com;erin@andersonadvocates.com

Jeffrey Anderson
on behalf of Plaintiff Donald Marshall jeff@andersonadvocates.com
therese@andersonadvocates.com;erin@andersonadvocates.com

Jeffrey Anderson
on behalf of Attorney Jeffrey R. Anderson jeff@andersonadvocates.com
therese@andersonadvocates.com;erin@andersonadvocates.com

Jeffrey K. Paulsen
on behalf of Interested Party Stonewall Insurance Company jpaulsen@wfactorlaw.com
gsullivan@wfactorlaw.com;gsullivan@ecf.inforuptcy.com;jpaulsen@ecf.inforuptcy.com;nbouchard@wfactorlaw.com

Jeffrey K. Paulsen
on behalf of Interested Party OneBeacon Insurance Company jpaulsen@wfactorlaw.com
gsullivan@wfactorlaw.com;gsullivan@ecf.inforuptcy.com;jpaulsen@ecf.inforuptcy.com;nbouchard@wfactorlaw.com

Jeffrey K. Paulsen
on behalf of Defendant OneBeacon Insurance Company jpaulsen@wfactorlaw.com
gsullivan@wfactorlaw.com;gsullivan@ecf.inforuptcy.com;jpaulsen@ecf.inforuptcy.com;nbouchard@wfactorlaw.com

Jeffrey K. Paulsen
on behalf of Interested Party Commercial Union Insurance Company jpaulsen@wfactorlaw.com
gsullivan@wfactorlaw.com;gsullivan@ecf.inforuptcy.com;jpaulsen@ecf.inforuptcy.com;nbouchard@wfactorlaw.com

John A. Rothstein
on behalf of Plaintiff Archdiocese of Milwaukee jar@quarles.com

Justinann B S Koenings
on behalf of Spec. Counsel O'Neil  Cannon, Hollman, Dejong & Laing, S.C. jb.koenings@wilaw.com

Kenneth H. Brown
on behalf of Defendant Official Committee of Unsecured Creditors kbrown@pszjlaw.com

Kenneth H. Brown
on behalf of Counter-Claimant Official Committee of Unsecured Creditors kbrown@pszjlaw.com

Kenneth H. Brown
on behalf of Creditor Committee Official Committee of Unsecured Creditors kbrown@pszjlaw.com

Leander L. James
on behalf of Creditor Various Creditors ljames@jvwlaw.net

Leonard G. Leverson
on behalf of Spec. Counsel Leverson & Metz S.C. lgl@levmetz.com  dbk@levmetz.com

Linda S. Schmidt
on behalf of Counter-Defendant Archbishop Jerome E. Listecki  Archbishop of Milwaukee, in his capacity as sole Trustee of the
Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust lschmidt@gklaw.com, lehill@gklaw.com

Lindsey M. Greenawald
on behalf of Plaintiff Archdiocese of Milwaukee lindsey.greenawald@huschblackwell.com
sherri.fonte@huschblackwell.com;lindsey-greenawald-5638@ecf.pacerpro.com;toi.pulliam@huschblackwell.com

Lindsey M. Greenawald
on behalf of Interested Party Kurtzman Carson Consultants LLC lindsey.greenawald@huschblackwell.com
sherri.fonte@huschblackwell.com;lindsey-greenawald-5638@ecf.pacerpro.com;toi.pulliam@huschblackwell.com

Lindsey M. Greenawald
on behalf of Debtor In Possession Archdiocese of Milwaukee lindsey.greenawald@huschblackwell.com
sherri.fonte@huschblackwell.com;lindsey-greenawald-5638@ecf.pacerpro.com;toi.pulliam@huschblackwell.com

Marcos G. Cancio
on behalf of Defendant Dominion Insurance Company Limited marcos.cancio@sedgwicklaw.com
linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio
on behalf of Defendant Excess Insurance Company Limited marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio
on behalf of Defendant Allianz Suisse Versicherungs-Gesellschaft AG marcos.cancio@sedgwicklaw.com
linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio
on behalf of Defendant Harper Insurance Limited marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio
on behalf of Defendant Ocean Marine Insurance Company Limited marcos.cancio@sedgwicklaw.com
linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant National Casualty Co. marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Delta Lloyd Schadeverzekering NV marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Select Markets Insurance Company marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Ageas Insurnace Limited marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Interested Party Certain Underwriters at Lloyd's  London and Certain London Market Companies marcos.cancio@sedgwicklaw.com, linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Assicurazioni Generali S.p.A. marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant London & Edinburgh Insurance Company Limited marcos.cancio@sedgwicklaw.com linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant National Casualty Co. of America marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Stronghold Insurance Company Limited marcos.cancio@sedgwicklaw.com linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Helvetia Swiss Insurance Company marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Underwriters at Lloyd's London marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant Winterthur Swiss Insurance Company marcos.cancio@sedgwicklaw.com linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant River Thames Insurance Company Limited marcos.cancio@sedgwicklaw.com linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant National Casualty Co. of America Ltd. marcos.cancio@sedgwicklaw.com linda.ehrhart@sedgwicklaw.com

Marcos G. Cancio

on behalf of Defendant NRG Victory Reinsurance Limited marcos.cancio@sedgwicklaw.com  linda.ehrhart@sedgwicklaw.com

Mark Bromley

on behalf of Creditor State of Wisconsin - Department of Transportation bromleyfm@doj.state.wi.us  radkeke@doj.state.wi.us

Mark L. Metz

on behalf of Debtor In Possession Archdiocese of Milwaukee mlm@levmetz.com

Mark S. Nelson

on behalf of Defendant OneBeacon Insurance Company mnelson@ncctslaw.com

Mark S. Nelson

on behalf of Interested Party Stonewall Insurance Company mnelson@ncctslaw.com

Mark S. Nelson

on behalf of Defendant Stonewall Insurance Company mnelson@ncctslaw.com

Mark S. Nelson

on behalf of Interested Party OneBeacon Insurance Company mnelson@ncctslaw.com

Matthew M. Wuest

on behalf of Counter-Defendant Archbishop Jerome E. Listecki  Archbishop of Milwaukee, in his capacity as sole Trustee of the Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust mwuest@gklaw.com, traymond@gklaw.com

Michael Finnegan

on behalf of Creditor Various Creditors mike@andersonadvocates.com  therese@andersonadvocates.com

Michael Finnegan

on behalf of Creditor Various Creditors mike@andersonadvocates.com  therese@andersonadvocates.com

Michael Finnegan

on behalf of Plaintiff Donald Marshall mike@andersonadvocates.com  therese@andersonadvocates.com

Michael Finnegan

on behalf of Plaintiff Dean Weissmuller mike@andersonadvocates.com  therese@andersonadvocates.com

Michael Finnegan

on behalf of Attorney Jeffrey R. Anderson mike@andersonadvocates.com  therese@andersonadvocates.com

Michael E Gosman

on behalf of Interested Party Kurtzman Carson Consultants LLC mgosman@whdlaw.com
cgibbs@whdlaw.com;flococo@whdlaw.com

Michael E Gosman

on behalf of Debtor In Possession Archdiocese of Milwaukee mgosman@whdlaw.com
cgibbs@whdlaw.com;flococo@whdlaw.com

Michelle S. Y. Cramer

on behalf of U.S. Trustee Office of the U. S. Trustee michelle.cramer@usdoj.gov  Carrie.Jekelis@usdoj.gov

Office of the U. S. Trustee

ustpregion11.mi.ecf@usdoj.gov

Patrick C. Brennan

on behalf of Creditor Various Creditors pbrennan@brennanlawllc.com

Patrick C. Brennan

on behalf of Creditor Various Creditors pbrennan@brennanlawllc.com

Paul A. Richler

on behalf of Creditor Committee Creditors Committee prichler@richlerlaw.com

Paul A. Richler

on behalf of Creditor Committee Official Committee of Unsecured Creditors prichler@richlerlaw.com

Philip J. Tallmadge

on behalf of Defendant Stonewall Insurance Company ptallmadge@ncctslaw.com

Philip J. Tallmadge

on behalf of Interested Party Stonewall Insurance Company ptallmadge@ncctslaw.com

Philip J. Tallmadge

on behalf of Defendant OneBeacon Insurance Company ptallmadge@ncctslaw.com

Rachel M. Blise

on behalf of Creditor Milwaukee Bucks  Inc. rblise@foley.com, nkujath@foley.com

Randall D. Crocker

on behalf of Creditor Saint Francis De Sales Seminary  Inc. rcrocker@vonbriesen.com, rmalehorn@vonbriesen.com

Randall D. Crocker

on behalf of Creditor De Sales Preparatory Seminary  Inc. rcrocker@vonbriesen.com, rmalehorn@vonbriesen.com

Robert L. Elliott

on behalf of Interested Party Robert L. Elliott deb@attorneyelliott.com

Sean M. Murphy

on behalf of Creditor State of Wisconsin - Department of Transportation murphysm@doj.state.wi.us
johnsonae@doj.state.wi.us;radkeke@doj.state.wi.us;kennedyms@doj.state.wi.us

Sean M. Murphy

on behalf of Interested Party State of Wisconsin - Department of Justice murphysm@doj.state.wi.us
johnsonae@doj.state.wi.us;radkeke@doj.state.wi.us;kennedyms@doj.state.wi.us

Shawn M. Govern

on behalf of Witness Daniel Budzynski smg@dewittllp.com  hmcgowen@dewittllp.com

Timothy D. Kosnoff

on behalf of Creditor Various Creditors tim@kosnoff.com  martha@kosnoff.com

Timothy F. Nixon

on behalf of Counter-Defendant Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust  on behalf of itself and its
beneficiaries tnixon@gklaw.com, kboucher@gklaw.com,sstrack@gklaw.com

Timothy F. Nixon

on behalf of Plaintiff Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust  on behalf of itself and its beneficiaries
tnixon@gklaw.com, kboucher@gklaw.com,sstrack@gklaw.com

Timothy F. Nixon

on behalf of Interested Party Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust tnixon@gklaw.com
kboucher@gklaw.com,sstrack@gklaw.com

Timothy F. Nixon

on behalf of Counter-Defendant Archbishop Jerome E. Listecki  Archbishop of Milwaukee, in his capacity as sole Trustee of the
Archdiocese of Milwaukee Catholic Cemetery Perpetual Care Trust tnixon@gklaw.com,
kboucher@gklaw.com,sstrack@gklaw.com

Wendy G. Gunderson

on behalf of Interested Party Wendy Gunderson wgunders@sgr-law.com

William J. Factor

on behalf of Interested Party Stonewall Insurance Company wfactor@wfactorlaw.com
bsass@wfactorlaw.com,wfactor@ecf.courtdrive.com,factorwr43923@notify.bestcase.com

William J. Factor

on behalf of Interested Party Commercial Union Insurance Company wfactor@wfactorlaw.com
bsass@wfactorlaw.com,wfactor@ecf.courtdrive.com,factorwr43923@notify.bestcase.com

William J. Factor

on behalf of Defendant OneBeacon Insurance Company wfactor@wfactorlaw.com
bsass@wfactorlaw.com,wfactor@ecf.courtdrive.com,factorwr43923@notify.bestcase.com

William J. Factor

on behalf of Interested Party OneBeacon Insurance Company wfactor@wfactorlaw.com
bsass@wfactorlaw.com,wfactor@ecf.courtdrive.com,factorwr43923@notify.bestcase.com


TOTAL: 188

So Ordered.

Dated: September 30, 2024



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

      Archdiocese of Milwaukee,          Case No. 11-20059-gmh
                                                 Chapter 11

          Debtor.

**OPINION AND ORDER DENYING REQUESTS TO
REOPEN CASE AND FOR ACCESS TO SEALED RECORDS**

The Archdiocese of Milwaukee commenced this case under chapter 11 of the
Bankruptcy Code over thirteen years ago, after a yearslong effort to resolve numerous
sexual abuse claims against it failed. ECF No. 6, at 8–10. This case was extensively
litigated—in this court (before now-retired United States Bankruptcy Judge Susan V.
Kelley), in the district court, and in the Seventh Circuit—over nearly five years before
the court confirmed the debtor's second amended chapter 11 plan in November 2015.[1]

---

      1.      Adversary proceedings in this case included *Archdiocese of Milwaukee Catholic Cemetery
Perpetual Care Trust v. Official Committee of Unsecured Creditors*, No. 11-02459; *Archdiocese of Milwaukee v.
Stonewall Insurance Co.*, No. 12-02835; and *Archdiocese of Milwaukee v. OneBeacon Insurance Co.*,
No. 14-02031. Proceedings in the district court included *Archdiocese of Milwaukee vs. Doe*, No. 12-CV-288;
*Listecki v. Official Committee of Unsecured Creditors*, No. 13-CV-179; *Archdiocese of Milwaukee v. Official*

ECF No. 3322. The court closed the case on June 30, 2016, following full administration of the bankruptcy estate. ECF No. 3465.

More than seven years after this case was closed, and over twelve years after the court entered confidentiality orders to protect the identities and claims of Abuse Survivors[2] in this case, the State of Wisconsin Department of Justice moved this court to reopen the case and grant it access to "hard copies of all Claims of Abuse Survivors, including the sealed [proofs of] claim[], objections to those claims, briefings on those objections, and rulings on the objections." ECF No. 3476, at 17. The State requests access to these sealed filings as part of its Clergy and Faith Leader Abuse Initiative, launched in 2021 with the proclaimed goal of "provid[ing] victims and survivors with an independent and thorough review of the sexual abuse committed by clergy and faith leaders in Wisconsin, no matter when that abuse occurred." *FAQs*, Wis. Att'y Gen.'s Off.: Clergy & Faith Leader Abuse, https://supportsurvivors.widoj.gov/faqs (last visited Sept. 27, 2024); ECF No. 3476, at 1–3 & 12–14. The State asserts that, if the court gives it

---

*Committee of Unsecured Creditors*, No. 14-CV-848; and *Claimant A-14 v. Archdiocese of Milwaukee*, No. 15-CV-409. Proceedings in the Seventh Circuit included *Doe v. Archdiocese of Milwaukee*, No. 12-3689; *Official Committee of Unsecured Creditors v. Listecki*, No. 13-2881; and *Doe v. Archdiocese of Milwaukee*, No. 13-3783.

    2.    The present dispute centers on one of these confidentiality orders, entered July 14, 2011, which defines "Abuse Survivor" as "anyone who has experienced Abuse" and defines "Abuse" as

> any and all acts or omissions that the Archdiocese may be legally responsible for that in any way arise out of, are based upon, or involve sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually related psychological or emotional harm or contacts or interactions of a sexual nature between a child and an adult, or a non-consenting adult and another adult. A child or non-consenting adult may be Abused whether or not this activity involves explicit force, whether or not this activity involves genital or other physical contact and whether or not there is physical, psychological or emotional harm to the child or non-consenting adult.

ECF No. 331, at 4; see also ECF No. 327, at 2 n.3 (defining "Abuse Survivor", in a related order entered July 7, 2011, more broadly as "any person who brings or may bring a tort claim in this bankruptcy case based on abuse").

access to the sealed filings, "[a] limited number of DOJ staff—which may include attorneys, crime victim service professionals, and criminal investigators—will review the[m]", and "[i]nformation in the[m] . . . will be used to assess the accuracy of published lists of credibly accused faith leaders", though the State may also use the information in these filings "for investigative leads, such as determining the identity of an unidentified abuser"; "to help evaluate commitments made by the Archdiocese in its bankruptcy plan"; and to "inform the content of the Initiative's final report". ECF No. 3476, at 17.

The Archdiocese objects, observing generally that Abuse Survivors filed the sealed proofs of claim at issue after the court ordered that they be received and maintained in the strictest confidence, under permanent seal, and that access to them be given only to a small and specified number of individuals who agreed in writing to comply with detailed confidentiality protocols with respect to the use of information in those filings, who were subject to the court's jurisdiction and authority to hold them in contempt for violating those protocols, and whose review of the proofs of claim was necessary for assessing and administering the relevant claims against the bankruptcy estate. See ECF No. 3486, at 1–2. The related filings (such as objections to these claims) are also sealed because they contain information from these proofs of claim.

The sheer magnitude of the State's request is staggering, and that is without even considering the *substantial* logistical hurdles that would need to be cleared (and the monetary and other costs that would need to be incurred) to provide Abuse Survivors with adequate notice of the State's request in this complex case that has been closed since 2016. See *id.* at 15–18 (objecting to the State's motions, the reorganized debtor described several significant problems with obtaining and verifying mailing addresses for Abuse Survivors given how much time has passed since the case was closed). The bankruptcy clerk received proofs of claim for over 580 claims of Abuse Survivors. For over 550 of those claims, the proofs of claim were filed confidentially and remain

permanently under seal.[3] As mentioned above, in addition to these hundreds of proofs of claim, the State seeks access to all "objections to those claims, briefings on those objections, and rulings on the objections", as these filings also remain under seal. ECF No. 3476, at 17. A preliminary review of the docket revealed over 1,000 filings (in addition to the hundreds of sealed proofs of claim) that are likely within the scope of the State's request for access.[4]

Even ignoring the logistical difficulties and costs of giving (or merely attempting to give) notice to Abuse Survivors of the State's motions, if the court were to grant the State the access it seeks, the clerk would have to devote untold hours of staff time to a painstaking review of every page of every document filed under seal in this case (to determine whether each such document relates to a claim of an Abuse Survivor and thus falls within the scope of the State's request) and somehow provide all of (and only) the correct documents to the State in a secure manner, leaving the court to somehow supervise the State's use of those documents (and the information they contain) for purposes wholly unrelated to the long-concluded case- and claims-related processes for which those documents were filed and limited access to them was granted in the first place. The burden of justifying all of this is an unusually and exceedingly heavy one, and for the reasons that follow, the State does not come close to carrying that burden.

I

A brief review of this bankruptcy case is required to appreciate the enormity of the State's requests, including its request to alter the strict confidentiality protections afforded to Abuse Survivors in this case over thirteen years ago.

_____

3. In other words, the filings associated with only about 30 of the claims of Abuse Survivors are in the public record, because for each of those claims, the filer of the proof of claim opted out of confidentiality in the manner specified in the July 14, 2011 confidentiality order. See ECF No. 331, at 11.

4. This count reflects filings described on the docket as having been filed under seal that (1) appear from the docket text to relate to a claim of an Abuse Survivor and (2) are not identified as sealed certificates of service.

A

The Archdiocese filed its bankruptcy petition primarily to address unresolved claims of Abuse Survivors.[5] Shortly after the Archdiocese filed its bankruptcy petition, the United States trustee appointed a committee of unsecured creditors under 11 U.S.C. §1102(a)(1), composed of Abuse Survivors who were individually represented by counsel (the "Committee"). ECF No. 86; see also ECF No. 3277, at 33–34. With the court's approval, the Committee retained separate counsel—to be compensated by the bankruptcy estate—with experience representing tort claimants in chapter 11 cases of other Catholic dioceses. ECF Nos. 108 & 153; see also ECF No. 3277, at 34.

The confidentiality concerns of Abuse Survivors were of the utmost importance in the first several months of this case. During that time, the Archdiocese—acting on behalf of the bankruptcy estate as the debtor in possession under 11 U.S.C. §1107—filed two motions seeking to protect the identities and disclosures of Abuse Survivors throughout the proceedings, subject to the right of each survivor to opt out of such protections. In the first motion the Archdiocese sought the court's implementation of "special confidentiality procedures" with respect to (1) portions of its own filings, including its schedule F, listing creditors holding unsecured claims, and the "Master Mailing List", also called the creditor matrix, which is ordinarily a public list of parties in interest to a bankruptcy case, and (2) notices to be given to Abuse Survivors, among other things.[6] ECF No. 165, at 1 & 6–11. The second motion asked the court, in relevant

_____

5. On the petition date, John J. Marek, then the Treasurer and Chief Financial Officer of the Archdiocese, filed an affidavit explaining that "[t]he Archdiocese ha[d] struggled for several years to remain financially viable while funding compensation for Abuse [Survivors] and continued . . . litigation" and that "[t]he litigation involving Abuse [Survivors] ha[d] substantially depleted the Archdiocese's assets" and was "adversely impact[ing] the Archdiocese's fundraising efforts". ECF No. 6, at 8 & 10. He further explained that the Archdiocese filed the chapter 11 petition "[t]o provide compensation for the unresolved claims of []survivors of Abuse including those . . . who ha[d] not yet come forward", among other things. _Id._ at 10.

6. The State was served with this motion and notice of the deadline to object to it and was given notice of the hearings on the motion held on April 5 and June 1, 2011. ECF Nos. 167, 169, 218 & 219.

part, to "approv[e] procedures for maintaining the confidentiality of proofs of claim filed by" Abuse Survivors.[7] ECF No. 211, at 1.

Both motions are exhaustively detailed (addressing a range of related issues), and some of their finer points drew objections from the Committee and two separate groups of Abuse Survivors represented by the attorney Robert L. Elliott and the firm of Jeff Anderson & Associates. ECF Nos. 177, 180, 191, 241 & 248. The disputes were limited to narrow matters, and the participating parties all agreed that Abuse Survivors should be afforded substantial confidentiality with respect to their identities, contact information, and filings in this case. See ECF No. 170, at 1 ("[C]ertain victim creditors represented [by] Attorney Robert L. Elliott . . . join in th[e] request . . . that the Court issue . . . a Confidentiality Order with regard to all victim creditors of the Archdiocese of Milwaukee."); ECF No. 177, at 3 (summarizing the Committee's objections to specific "relief sought by the Debtor" and suggesting that the court instead use "established methods" from "other church bankruptcy cases involving sex abuse", by which "survivors have been shielded from public disclosure of their identities without undermining transparency and accountability", such as "[r]edacted and sealed filings, along with confidentiality protocols"); ECF No. 241, at 5 ("The Committee agrees that Abuse Survivors should be able to elect to keep their proofs of claim private . . . .").

The court held multiple hearings on these motions and the objections to them. At the first hearing, on April 5, 2011, counsel for the debtor in possession, the Committee, and the United States trustee reported ongoing negotiations and discussions between them about the confidentiality procedures requested in the first motion. ECF Nos. 183

---

7. The record does not show that the debtor in possession served this second motion or notice of it on anyone, but the debtor in possession did file proof of service on the State of a notice of the June 22, 2011 hearing on the motion, and that notice refers to the motion by its docket number. ECF Nos. 256 & 261. Moreover, the State received electronic notice of the filing of each of these motions because, months earlier, it entered a notice of appearance in this case on behalf of the State of Wisconsin Department of Public Instruction. ECF No. 88.

& 184. On June 1, 2011, at the second hearing on that motion, the same parties appeared by counsel, along with attorneys from Jeff Anderson & Associates and the firm of Smith, Gunderson & Rowen, representing different groups of Abuse Survivors, and the court heard testimony from several witnesses, including two Abuse Survivors. ECF Nos. 262–65.

The court held a third and final hearing on June 22, 2011, at which it considered the second motion, and the debtor in possession, the Committee, the group of Abuse Survivors represented by Jeff Anderson & Associates, and the United States trustee again appeared by counsel. ECF No. 302, at 1. The parties described an agreement to resolve their disputes about giving notice to Abuse Survivors of the need to file proofs of claim, the deadline to do so, the forms to be used, and the procedures to be followed, as well as how such proofs of claim were to be submitted, received, and kept. See ECF Nos. 300–02. Among other things, the parties agreed to "[a] claims bar date for abuse survivors" and "that proofs of claim of abuse survivors w[ould] not be filed on the docket but . . . be marked personal and confidential to the attention of the Clerk's Office." ECF No. 302, at 1.

The court entered an order on the first confidentiality motion on July 7, 2011, and an order on the second confidentiality motion a week later, on July 14, 2011. ECF Nos. 327 & 331. The debtor in possession filed proof of service by mail of both orders on the State. ECF No. 330, at 1 & 3; ECF No. 342, at 1 & 36. The July 7 order set forth the general procedures to maintain, in confidence, information relating to Abuse Survivors and their claims. The order directed the debtor in possession to file the names of Abuse Survivors and all related schedules under seal, provided that documents filed under seal were "permanently sealed", and substantially restricted access to those documents:

> Unless otherwise specifically ordered by this Court, access to any documents filed under seal pursuant to this Order shall be limited to the Debtor, Debtor's counsel, the U.S. Trustee's Office, counsel for the

Committee, and Court personnel. **No other individuals**, including Committee members and their personal counsel, **may be permitted access to documents filed under seal pursuant to this Order**.

ECF No. 327, at 2 & n.2 (emphasis added). Although the court approved the debtor in possession's employment of a third party, Kurtzman Carson Consultants LLC, as its general noticing agent, the July 7 order required that certain notices and other filings be served directly on Abuse Survivors by counsel for the debtor in possession in order "to protect Abuse Survivors' confidentiality". *Id.* at 3 n.4 ("The Debtor will not have Kurtzman Carson Consultants . . . , the Debtor's noticing agent, generally serve Abuse Survivors. Instead, . . . Debtor's counsel will generally serve the Abuse Survivors."); *see also* ECF No. 32 (approving the debtor in possession's employment of Kurtzman Carson Consultants as its noticing agent). The order directed the debtor in possession to file under seal "the names and addresses of Abuse Survivors" (the "Survivor Service List") and to provide that information "only to counsel for the Committee and to the U.S. Trustee's Office", again explicitly directing that "[n]o other person may have access to" that information. ECF No. 327, at 4.

The court's subsequent order, entered on July 14, set forth the "Confidentiality Protocol" for the filing, maintenance, and administration of Abuse Survivors' proofs of claim. ECF No. 331, at 9. The order instructed Abuse Survivors, unlike the holders of other claims, not to file their proofs of claim electronically, but instead to hand-deliver or mail them to the clerk of the bankruptcy court. *Id.* Like the July 7 order, the July 14 order stated, "The confidential Abuse Survivor Proofs of Claim shall be filed under permanent seal and kept confidential. The confidential Abuse Survivor Proofs of Claim will be sealed permanently and will <u>not</u> be unsealed at the conclusion of this case." ECF No. 331, at 9–10. The order directed "[t]he Clerk of Court [to] identify confidential Claims of Abuse Survivors on the Official Claims Register as confidential Claims and

[to] mark all Abuse Survivor Claims 'Claim No. A-___' and give each Claim a unique number in numerical order as they are received by the Court." *Id.* at 10.

The July 14 order explicitly provided that "[t]he Confidentiality Protocol is for the benefit of the Abuse Survivors", and under that order, when filing a proof of claim, an Abuse Survivor could elect to have it included in the public record, either then or later. *Id.* at 10–11. Unless an Abuse Survivor affirmatively elected to include a proof of claim in the public record, each such proof of claim and the information contained in it would "not be available to the general public" but would instead be available only to "natural person[s]", acting on behalf of "Permitted Parties" (all of whom were necessary to the claims-allowance and -administration processes), who executed a separate "Confidentiality Agreement" attached to the order.[8] *Id.* at 10–12 & n.5. The order further provided that, "[u]pon request to the Court, the U.S. Trustee may receive copies of the Abuse Survivors Proofs of Claim." *Id.* at 12. And while the order did not require "the employees of the Office of the United States Trustee" to "sign[] the Confidentiality Agreement", it did order them "to keep Abuse Survivor Proofs of Claim which come into their possession confidential and, in connection with any Freedom of

---

8. The "Permitted Parties" are listed in the order as follows:

(a) Counsel for the Debtor;
(b) Counsel for the Official Committee of Unsecured Creditors;
(c) Insurance companies that provided insurance that may cover the claims described in the Abuse Survivor Proofs of Claim;
(d) Any future claims representative appointed under a plan of reorganization or by the Court;
(e) Any special arbitrator/claims reviewer appointed to review and resolve the claims of Abuse Survivors;
(f) Any settlement trustee appointed to administer payments to Abuse Survivors;
(g) Members of the Committee and their personal counsel (after the Abuse Survivor Proof of Claim has been redacted to remove the Abuse Survivor's name, address and any other information identified in Part 2(A) of the Abuse Survivor Proof of Claim); and
(h) Such other persons as the Court determines should have the information in order to evaluate Abuse Survivor Claims.

ECF No. 331, at 11–12.

Information Act request, to seek approval of the Court before responding to any such request." *Id.*

The July 14 order also approved a form "Abuse Survivor Proof of Claim" that summarized the confidentiality afforded by the order as follows:

> **UNLESS YOU INDICATE OTHERWISE IN PART I BELOW, YOUR IDENTITY WILL BE KEPT STRICTLY CONFIDENTIAL, UNDER SEAL AND OUTSIDE THE PUBLIC RECORD BY THE UNITED STATES BANKRUPTCY COURT. THIS CLAIM WILL BE PROVIDED PURSUANT TO COURT-APPROVED GUIDELINES TO THE ARCHDIOCESE, COUNSEL TO THE ARCHDIOCESE, COUNSEL FOR [THE] COMMITTEE OF UNSECURED CREDITORS AND TO SUCH OTHER PERSONS AS THE COURT DETERMINES NEED THE INFORMATION IN ORDER TO EVALUATE THE CLAIM[.]**

*Id.* at 29.

The July 14 order prescribed the form in which the debtor in possession was required to give notice to Abuse Survivors of the need to file a proof of claim and the deadline for doing so (February 1, 2012, at 4:00 p.m. Central Time). *Id.* at 41. The required notice clearly explained how "[t]o submit an Abuse Survivor Proof of Claim Form" to ensure that it would "remain confidential in this bankruptcy case" and accessible only to certain parties, for limited purposes, and even then, "only after each party agree[d] to keep the information in the Abuse Survivor Proof of Claim Forms confidential". *Id.* at 43–45.

The court rigorously implemented and has long preserved these protections. For example, when the debtor in possession filed (before plan confirmation) a "Motion for Clarification of the Court's Orders on Confidentiality . . . seek[ing] to release certain statistical information from the claims filed under seal by the abuse claimants", the court denied the motion, determining in part that "allowing the Debtor to release the statistical information would open the door to release of the proofs of claim filed by the abuse claimants", which would not be "consistent with the confidentiality procedures

meticulously developed, agreed to by the parties and approved by the Court." ECF No. 649, at 1–2. During the case only Judge Kelley, her staff, and a few members of the clerk's staff had access to those filings, in addition to the United States trustee and the aforementioned "natural persons", acting on behalf of Permitted Parties, who executed the Confidentiality Agreement. ECF No. 331, at 10–12 & n.5. Neither the current presiding judge nor any member of his staff has accessed the sealed filings because, as this opinion makes clear, there is no bankruptcy-related reason for them to do so.

B

The enforceability of the Abuse Survivors' claims was a matter of significant contention during this case. Litigation over claims allowance was extensive, and as noted above, more than 1,000 entries on the docket seem to represent sealed documents filed in this case with respect to Abuse Survivors' claims.[9] Aside from litigating the claims of Abuse Survivors, the debtor in possession and various parties spent the bulk of this case in extensive litigation over a host of other fiercely disputed and complicated matters, including what assets comprised the bankruptcy estate and were available for liquidation and distribution to creditors and whether to release certain documents and summaries to the public. See, e.g., ECF No. 1792; see generally ECF No. 3277, at 34–43.

The various parties also attempted, multiple times, to resolve their disputes outside of the courtroom, and mediation efforts eventually led to a confirmable plan that created a trust for the payment of allowed claims of Abuse Survivors. See ECF No. 3277, at 10 & 43. This plan—the result of years of work by the parties, courts, mediators, and others—"propose[d] a global settlement, resolving all of the pending litigation and distributing the [available] assets [of the bankruptcy estate] as equitably

_____

9.      As late as October 2015, nearly five years into this case and shortly before a plan was confirmed, the debtor in possession asserted its "belie[f] that the Abuse Survivor Claims are all legally unenforceable" and maintained that it could not "afford to pay hundreds of legally unenforceable Claims". ECF No. 3277, at 36.

as possible." *Id.* at 10. The court confirmed the plan on November 13, 2015. ECF No. 3322.

The confirmed plan created a "Plan Trust", funded as specified in the plan; appointed a "Plan Trustee" to administer the trust; and generally provided that each Abuse Survivor with an allowed claim would "receive, in full satisfaction, settlement, and release of his or her Claim" either "a claim against the Plan Trust for a distribution" or "$2,000", depending on how each claim was classified. ECF No. 3322, at 15–16 & 53–55; ECF No. 3277, at 10, 13–14 & 54–55. The order confirming the plan provided that the debtor in possession would continue as the reorganized debtor, "a separate entity", after the plan's "Effective Date" and further provided:

> On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs . . . without supervision or approval by the Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Court, other than those restrictions expressly imposed by the Amended Plan or the Confirmation Order.

ECF No. 3322, at 25–26. That order also provided for the automatic dissolution of the Committee "[o]n the Effective Date" but made clear that "its members, Professionals and agents" would "continue to be bound by any obligations arising under confidentiality agreements and protective orders entered during the Chapter 11 Case, which . . . remain in full force and effect according to their terms". *Id.* at 18.

On June 15, 2016, the Archdiocese, as the reorganized debtor, filed a motion pursuant to 11 U.S.C. §350 and Federal Rule of Bankruptcy Procedure 3022 for a final decree closing the case. ECF No. 3454; see §350(a) ("After an estate is fully administered and the court has discharged [any case] trustee, the court shall close the case."); Fed. R. Bankr. P. 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."). In that motion, the reorganized debtor reported that "[a]ll payments

required by the Plan ha[d] been made" and that "[t]he Reorganized Debtor [wa]s informed that the Plan Trustee [had] sent payments to substantially all of the holders of [Abuse Survivor Claims]". ECF No. 3454, at 3 n.1.

On June 30, 2016, the court entered an order determining that the confirmed plan "ha[d] been fully consummated and that the estate ha[d] been fully administered with the sole exception of determination of the validity of one abuse survivor claim." ECF No. 3465, at 2. The court closed the case, retaining jurisdiction to consider the Plan Trustee's remaining challenge to allowance of a single Abuse Survivor claim, ordering:

> The . . . Chapter 11 case is hereby closed pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022, subject only to the Court's consideration of the allowance of the claim of Claimant A-151 and the Court's continued jurisdiction with respect to such matters as may be prescribed by the Plan, including but not limited to, the enforcement of the Plan (including all related documents contemplated by the Plan) and the Confirmation Order and the entry of orders in aid of confirmation and consummation of the Plan.

*Id.*; see ECF No. 3449. An August 4, 2016 docket entry afforded notice that the court had entered a sealed order "[d]isallowing [the] Claim [f]iled by Claimant A-151". ECF No. 3467. Consequently, as of August 2016, the case was closed, as required by §350(a), and concluded in all respects.

## II

Given the court's final decree closing this bankruptcy case, the court cannot undertake further proceedings, including adjudicating the State's request that the court turn over to its staff (whether lawyers or other employees) sealed portions of the record, unless there is cause to reopen the case under §350(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 5010, which implements that Code section.

Section 350(b) provides, "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

Rule 5010 states, "A case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code". But even when the debtor or a party in interest shows cause to reopen, "[t]he decision to reopen is within the broad discretion of the bankruptcy court." *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010) (citing *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993)).

Nothing in the record suggests that there are any assets to administer, and the debtor is not seeking relief, so the only possible basis for reopening the case must be some "other cause". "A bankruptcy court may, for example, reopen a case for 'the correction of errors, amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge.'" *Id.* (quoting *In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002)); see also, e.g., *In re Kleynerman*, 93 F.4th 1071, 1074 (7th Cir. 2024) (holding that the bankruptcy court did not abuse its discretion by reopening a case under chapter 7 to grant the debtor relief with respect to a prepetition debt and lien); *In re Bartlett*, 326 B.R. 436, 438 (Bankr. N.D. Ind. 2005) (noting that reopening "is usually done in order to take care of some detail that was overlooked or left unfinished at the time the case was closed"). But "other cause" must mean something similar to "administering assets" or "affording relief to the debtor", which is to say, at a minimum, there must be some bankruptcy-related reason to reopen the case. See *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512 (2018) (quoting *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)) (citing *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 121 (2018)) ("[W]here . . . a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'"); cf. *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2082 (2024) (quoting *Epic Sys.*, 584 U.S. at 512) ("[W]e generally appreciate that the catchall [11 U.S.C. §1123(b)(6)] must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it.").

A

The State fails to identify any "other cause" to reopen this case under §350(b). The State asserts that there is "cause for reopening this case for the limited purpose of deciding" its "Motion . . . for Access to Certain Sealed Records", but that begs the question: what *bankruptcy* purpose is there in deciding that motion? ECF No. 3473, at 1–2. As noted above, the State seeks access to the Abuse Survivors' sealed records mainly for its own purposes: "to assess the accuracy of published lists of credibly accused faith leaders"; "for investigative leads, such as determining the identity of an unidentified abuser"; and to "inform the content of the Initiative's final report". ECF No. 3476, at 17. None of this has anything to do with this long-closed bankruptcy case.

The closest that the State gets to attributing a bankruptcy purpose to its motion is to suggest that the State may use any information it manages to obtain from the court to "to help evaluate commitments made by the Archdiocese in its bankruptcy plan." *Id.* Specifically, the motion suggests that the State *might* use any such information to scrutinize the reorganized debtor's compliance with continuing non-financial obligations imposed on it by the confirmed plan. The State does not clearly specify which of those obligations, if any, are at issue, but the State is most likely referring to the final "non-monetary undertaking[]" listed in section 13.5 of the plan, which requires the reorganized debtor, for at least 10 years, to "publish the names of diocesan priests of the Archdiocese who have been (or would be if they were still alive) restricted from all priestly ministries, may not celebrate the sacraments publicly, or present themselves as priests in anyway." ECF No. 3322, at 81–84; see ECF No. 3476, at 13 ("One purpose of the Initiative is to assess, to the extent possible, whether the lists of credibly accused priests published by dioceses throughout the state are complete.").

The State offers nothing to call into question the reorganized debtor's compliance with the plan. Instead, the State vaguely refers to "decades of secrecy and subversion surrounding abuse reports and . . . findings in other states in which inquiries into faith

leader abuse were conducted", later providing a two-page-long "hypothetical example" of how "authorizing [the State] to review the sealed claims" *might* allow it to "corroborate and potentially bring resolution to reports of abuse." ECF No. 3476, at 14 & 20–22. The State may be suspicious of the reorganized debtor, and it may think it could be useful to review the sealed documents at issue here, but that falls well short of "cause" for reopening a complex bankruptcy case nearly a decade after it ended.

The State ultimately concedes that it "is pursuing a matter of 'public safety and welfare,' not its own pecuniary interests." ECF No. 3496, at 26 (quoting 3 *Collier on Bankruptcy* ¶ 362.05[5][a] (16th ed. 2023)). This frank admission is made in support of the State's argument, first raised in a response brief, that it is entitled to relief under 11 U.S.C. §107(c)(2) because it is "acting pursuant to [its] police or regulatory power", not its rights as a creditor in or a party to this bankruptcy case.[10] If §107(c)(2) entitled the State to access the sealed records at issue, there might be a bankruptcy purpose to reopening this case. Section 107(c)(2) does not apply here, however.

Section 107(c)(2) requires the court, if cause is shown, to "provide access to [certain protected] information" upon request of "an entity acting pursuant to the police or regulatory power of a domestic governmental unit." But this mandate applies only to "information protected pursuant to [§107(c)(1)]": "means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a [bankruptcy] case", as well as "[o]ther information" in such a paper, that the court has excluded from the public record after "find[ing] that disclosure of [the] information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property". (Section 1028 of title 18, to which §107(c)(1)(A) refers, criminalizes fraud and

---

10.     The source that the State relies upon here is a treatise discussing an exception to the stay under 11 U.S.C. §362(a) for certain actions and proceedings undertaken pursuant to a "governmental unit's or organization's police or regulatory power". §362(b)(4). Because the §362(a) stay was terminated by operation of §362(c)(2) nearly a decade ago, this source is not germane to the present issues in this case, though it may bear upon the meaning of similar language in §107(c)(2).

related conduct in connection with "identification documents" and defines "means of identification", in subsection (d)(7), as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual".)

The records at issue here were not sealed under §107(c)(1). They were sealed under §107(b)—which, in relevant part, authorizes the court to restrict access to filings "to protect a person with respect to scandalous . . . matter[s]", §107(b)(2). The State acknowledged this: "The information was made confidential under 11 U.S.C. § 107(b)." ECF No. 3476, at 8 (citations omitted); see also ECF No. 165, at 11–12 (citing §107(b) as authority for the relief sought in the debtor in possession's first confidentiality motion); ECF Nos. 327 & 331 (respectively granting the debtor in possession's first and second confidentiality motions in relevant part). Because the court sealed the information under §107(b), §107(c)(2) affords the State no avenue for accessing that information.[11]

B

Even if the State had identified "other cause" to reopen this case under §350(b), it would then have to show that reopening is warranted under the circumstances. "A bankruptcy judge may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed" and

---

11.     Federal Rule of Bankruptcy Procedure 9018, together with §107(b)(2), governs the court's sealing of otherwise public documents "to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code". That rule provides, "If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion." The State is not pursuing a motion to vacate or modify the order—it insists that the order as entered permits the court to grant it access to the sealed filings at issue, see ECF No. 3496, at 36 ("[The State] does not seek to disturb a final order")—but even if it were, this rule would not authorize such relief because the order was not entered without notice: The order resulted from a motion by the debtor in possession on notice to all parties, there were limited objections to the motion filed, and the court held hearings on the motion and related requests for relief related to confidentiality. The State appeared in this case before any of that happened, mere weeks after the debtor in possession filed the chapter 11 petition. ECF No. 88. As a result, the State received notice of the motion, the objections to it, and the hearings on it. See *supra* note 7. That the State did not object to or appear at any of the hearings on the motion does not change the fact that it had notice of and an opportunity to participate in the proceedings. See ECF Nos. 184 & 265. It chose not to, and Rule 9018 is not available to it as an avenue for relief.

"(2) whether the debtor would be entitled to relief if the case were reopened". *Redmond*, 624 F.3d at 798 (citing *In re Antonious*, 373 B.R. 400, 405–06 (Bankr. E.D. Pa. 2007)). These factors weigh heavily against reopening this case.

1

This case was closed more than eight years ago, which is a long time in this context. The Seventh Circuit has affirmed orders denying motions to reopen cases that were closed for much shorter periods than this. For example, when a bankruptcy court "declined to reopen a complex bankruptcy a full *three* years after it ended, and the moving party had done nothing to protect his interests for nearly a decade", the Seventh Circuit affirmed, explaining that the "delay in moving to reopen the . . . bankruptcy was inexcusable and precludes finding an abuse of discretion" by the bankruptcy court. *In re UAL Corp.*, 809 F.3d 361, 364 (7th Cir. 2015) (emphasis added); see also *Redmond*, 624 F.3d at 799 (affirming denial of a motion to reopen a bankruptcy case filed "four years after the case had been closed"); *Bianucci*, 4 F.3d at 527 (affirming denial of a motion by the debtors to "reopen their bankruptcy case some two years after it was closed"); cf. *Kleynerman*, 93 F.4th at 1074 (affirming reopening a bankruptcy case where the movant "sought reopening 70 days after the discharge's entry").

The State argues that "the passage of time does not weigh against reopening" because it sees no prejudice, contending that "delays can be prejudicial if, during the delay, the nonmoving party suffered harm that it would not have [suffered] had the motion been filed earlier." ECF No. 3496, at 35. It asks the court to ignore the delay because the reorganized debtor has not argued "that it has incurred costs" that "stem from [its] delay" in seeking to reopen the case, distinguishing the circumstances here from those presented in the precedent. *Id.* (citing *Bianucci*, 4 F.3d at 528; *Redmond*, 624 F.3d at 799). But, as the Seventh Circuit has made clear, "delay may be prejudicial when it is combined with other factors." *Bianucci*, 4 F.3d at 528.

Here, there are obvious prejudice-causing factors that combine with the State's delay. First, there is no longer a debtor in possession responsible for affording Abuse Survivors notice of the State's request to comb through their sealed information. Second, there is no longer a bankruptcy estate to pay the administrative expenses of providing that notice. Third, the difficulties of giving such notice to Abuse Survivors (or, more accurately, the difficulties of ensuring that they actually *receive* such notice) have risen considerably over the many years since this case was closed, to the point where affording reasonable notice may now be impossible. Finally, unless the Abuse Survivors voluntarily provide their information to the State (which they are free to do without any involvement by this court), granting the State access to their sealed information is presumptively prejudicial because it would work an involuntary disclosure of information contrary to the promise of confidentiality under which the information was filed.

The Seventh Circuit has held, moreover, that "[t]he passage of time weighs *heavily* against reopening" and that "[t]he longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be." *Redmond*, 624 F.3d at 799 (emphasis added) (citing *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). This case has been closed far longer than *Redmond*, so the State has a much greater burden in showing that this case should be reopened. It has not carried that burden.[12]

The Seventh Circuit has also held that, "[i]n assessing whether a motion is timely, courts may consider" not only "the prejudice to the nonmoving party caused by

---

12. This case has been closed for so long that many of the legal professionals involved in it have changed their affiliations or left the profession. Judge Kelley retired in 2019, and according to the State Bar of Wisconsin, several of the attorneys who represented the parties, including those on whom the State tried to give notice of its motion for access to sealed records, have since left the firm or agency with which they were then associated (Michael E Gosman, Eric S. Teske, and Debra L. Schneider), no longer have an active license to practice law in this state (Mark L. Metz and Michelle S.Y. Cramer), have taken emeritus status (Albert Solochek), or have died (Daryl L. Diesing). See ECF No. 3476, at 28–29; *Lawyer Search*, St. Bar of Wis., https://www.wisbar.org/Pages/BasicLawyerSearch.aspx (last visited Sept. 27, 2024).

the delay" but "the lack of diligence of the party seeking to reopen". *Id.* (citing *In re Frontier Enters., Inc.*, 70 B.R. 356, 359 (Bankr. C.D. Ill. 1987)). Here, the State's lack of diligence is damning. The State has been a party in interest to and a participant in this case since its earliest days: mere weeks after the petition was filed, in January 2011, the State's then–Attorney General, J.B. Van Hollen, and one of his assistants, Anne C. Murphy, entered an "appearance on behalf of the State of Wisconsin, specifically . . . its Department of Public Instruction", with a request to be served with "copies of all future pleadings and notices", ECF No. 88; in the original schedules, filed that February, about a month after the petition was filed, the State's Departments of Revenue and Justice were both listed as creditors with unsecured claims against the bankruptcy estate, ECF No. 111, at 19 & 39; and that April, the State filed a proof of claim on behalf of its Department of Revenue, Claim No. 32. Most of this happened before the debtor in possession filed either of its confidentiality motions, and all of it happened before the court decided those motions. The State could have participated in the relevant proceedings—it received notice of the motions and the objections to them, as it requested—but it chose not to.[13]

As already discussed, this case was open and heavily litigated for more than five years, but the State opted out of virtually all of the proceedings.[14] The State did not seek

---

[13]     Notably, the proceedings on the debtor in possession's first and second confidentiality motions are not the only relevant proceedings of which the State had notice and in which it had an opportunity to participate but chose not to: as noted above, less than a year after the court entered its orders on those motions, when disputes arose as to the scope and alleged violations of those orders, the debtor filed a motion to clarify the scope of those orders "seek[ing] to release certain statistical information from the claims filed under seal by the abuse claimants." ECF No. 649, at 1. The court denied that request as contrary to "the confidentiality procedures meticulously developed, agreed to by the parties and approved by the Court." *Id.* at 1–2. The State received notice, by electronic means or otherwise, of the motion, the hearing that the court scheduled on that motion, the filing of a full audio recording of that hearing that was posted to the docket, and the court's summary of that hearing. ECF Nos. 614, 616 & 648–49. The State, again, opted out of these proceedings.

[14]     The one exception is that, in March 2013, the State filed a motion on behalf of its Department of Transportation, seeking relief from the stay under §362(a) with respect to real property on

relief from this court for more than seven years after the case was closed. During that time, the State launched its Clergy and Faith Leader Abuse Initiative, but it then waited another two years to finally seek reopening of this case and access to the sealed filings. During the first two years of the Initiative, the State asked the reorganized debtor to produce documents and information at least twice, but the State appears to have waited more than a year after the reorganized debtor rebuffed its first such requests to make more, and after the reorganized debtor again declined to cooperate to the State's satisfaction, the State waited most of another year to finally file its present motions in this court. See ECF No. 3476, at 14–17 & nn.12–16 (discussing the reorganized debtor's June 1, 2021 response to the Initiative and the State's initial requests for production of documents); ECF No. 3497-1 (The State's October 19, 2022 request for production of documents and the reorganized debtor's November 17, 2022 response to that request.).

The State's significant delay in seeking to reopen this case—especially when combined with both its persistent failure, for nearly thirteen years, to assert or take any action whatsoever to protect whatever interest it believes it has in accessing or reviewing the sealed filings at issue and the resulting costs of and obstacles to giving Abuse Survivors notice of and an opportunity to be heard on the State's request for access to those filings—weighs decisively against reopening this case.

2

Also weighing against reopening this case is the State's inability to show that, if the case were reopened, it would be entitled to the relief it seeks. The State offers no convincing rationale for granting it relief from the July 14, 2011 order's Confidentiality Protocol, under which nearly all of the proofs of claim filed by Abuse Survivors in this case and filings related to those claims remain under seal.

---

South 84th Street in Milwaukee, "part or all of" which was to "be acquired by the [DOT] for use in rebuilding Interstate Highway I-94." ECF No. 1782, at 1. This did not require the State to do much, however, as no one opposed its motion, and the court promptly granted it. ECF No. 1804.

In its opening brief, the State argues that it can be deemed a Permitted Party for purposes of the order and given access to the sealed filings and the information they contain because the last item in that order's list of Permitted Parties is, "Such other persons as the Court determines should have the information in order to evaluate Abuse Survivor Claims". *Id.* at 18–19 (quoting ECF No. 331, at 11–12) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)) (arguing that the court "expressly left open the possibility of allowing such relief" when it included this item in the order's list of Permitted Parties and that the court should exercise its authority "to interpret and enforce its own prior orders" to "grant DOJ access to sealed claims and related documents" by determining "that DOJ should have the information"). But this final list item has an obviously narrower meaning than the State gives it.

In context, the order's "other persons" category can only be read to encompass those whose access to the information in the sealed filings served a purpose directly related to claims allowance or administration, such as assessing the validity of claims or making payments on claims under a confirmed plan, and who did not otherwise fall into another, more specific category (e.g., "Counsel for the Debtor", "Any future claims representative appointed under a plan of reorganization or by the Court"). ECF No. 331, at 11–12.[15] This clear reading is reinforced by the order's requirement that all

_____

15.     Throughout the order, the term "claim" is plainly used not in any general sense, but in the sense specific to a bankruptcy case. 11 U.S.C. §101(5) (defining "claim" for purposes of the Bankruptcy Code); *id.* §501 (governing the filing of proofs of claim); *id.* §502 (governing allowance of claims); see ECF No. 211, at 3 n.1 (defining "claim", in the debtor in possession's underlying motion, as "ha[ving] the meaning given to it in § 101(5) of the Bankruptcy Code"); ECF No. 331, at 2 n.1 (stating, in the order, that "[c]apitalized terms not defined herein shall have the same meaning ascribed to them in the Motion"); *id.* at 5–6 (imposing a deadline for the filing of "all Claims of Abuse Survivors" and requiring the filing of a proof of claim, by that deadline, by "[a]ny Abuse Survivor who believes that he or she has a claim against the Debtor, including but not limited to Abuse Survivors who have previously filed lawsuits against the Debtor, and Abuse Survivors who have never filed a lawsuit, entered into a settlement or reported their Abuse"); see also *Black's Law Dictionary* 311–12 (12th ed. 2024) (defining "claim" in multiple senses, including generally—e.g., "[a] statement that something yet to be proved is true", "any right to payment or to an equitable remedy"—and as specific to bankruptcy); *supra* note 2

individuals seeking to access the filings at issue on behalf of any Permitted Party were required to sign the Confidentiality Agreement, binding themselves to use the information in those filings for only the limited, claims-related purposes contemplated. See *id.* at 72.[16]

Claims allowance and administration in this case ended years ago, so it is difficult to imagine any reasoned basis for newly granting anyone access to the information contained in the sealed filings at issue as a member of the final category of Permitted Parties under the July 14, 2011 order's Confidentiality Protocol. Indeed, the State does not (and cannot) contend that it seeks access for any purpose related to claims allowance or administration. Instead, the State offers a thoroughly unconvincing construction of that category that is plainly inconsistent with its actual meaning.

The State, in its opening brief, also argues broadly that this court may grant it access to the sealed information under 11 U.S.C. §105(a). Section 105(a) allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." But §105(a) is no roving license to ignore the binding effect of previous orders, law of the case, and res judicata, and the State fails to identify any

---

(describing how "Abuse Survivor" and "Abuse" are defined in the July 14, 2011 order). Even in the bankruptcy sense, the term "claim" is a broad one. E.g., *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003) (quoting *Johnson v. Home St. Bank*, 501 U.S. 78, 83 (1991)) (reiterating that the term "has 'the broadest available definition'"). But the scope of the term is still bounded, for bankruptcy purposes, by its use in the context of a particular bankruptcy *case*. See, e.g., 28 U.S.C. §157(b)(2)(B) & (C) (listing, among "core proceedings" in a case under title 11, "allowance or disallowance of claims against the estate" and "counterclaims by the estate against person filings claims against the estate"); cf. *Stern v. Marshall*, 564 U.S. 462, 499 (2011) (considering whether a state-law counterclaim of the bankruptcy estate against a creditor who filed a proof of claim "would necessarily be resolved in the claims allowance process" as part of the bankruptcy case, thereby implicitly distinguishing between a "claim" in a general legal sense and a "claim" in the context of a bankruptcy case).

16.     This reading is further bolstered by statements Judge Kelley made at the previously mentioned hearing on the debtor in possession's motion to clarify the scope of the confidentiality orders and release certain statistical information about the sealed proofs of claim, when she "gave assurances that after a review of each and every claim, no public safety concerns [we]re raised by the proofs of claim filed by the abuse claimants." ECF No. 649, at 2. Judge Kelley then "noted that the purpose of Chapter 11 is the proposal of a plan to pay valid claims", "urged the parties to focus on this purpose", and directed them to "continue to respect the confidentiality procedures in this case." *Id.*; see *supra* note 13.

"provisions of" the Bankruptcy Code that would be carried out by this court relieving the State of its obligation to comply with orders entered in a bankruptcy case that has been closed for years. Instead, the State points to what it says was "[a] core purpose of *this case*": "the 'well-being of all constituencies, especially the Abuse Survivors.'" ECF No. 3476, at 19 (emphasis added) (quoting ECF No. 3277, at 10). But, whether the debtor in possession professed to have certain aims it hoped to achieve in pursuing relief under the Bankruptcy Code, the Code's provisions remain the same, and it is only those provisions that the court is authorized by §105(a) to carry out.

Perhaps, under different circumstances, the State may have been able to seek relief from the court's July 14, 2011 order and its Confidentiality Protocol under Federal Rule of Civil Procedure 60(b). The State first disavows this course, asserting that "Rule 60(b) does not apply because [the State] does not seek to disturb a final order", but it then argues that relief is available to it under Rule 60(b)(6), purportedly a "grand reservoir of equitable power to do justice in a particular case." ECF No. 3496, at 36 (quoting *In re Woods*, 173 F.3d 770, 780 (10th Cir. 1999)). But see *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 24–25 (2000); *United States v. Noland*, 517 U.S. 535, 543 (1996); *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.").

Rule 60(b), made applicable here by Federal Rule of Bankruptcy Procedure 9024, permits the court to "relieve a party . . . from a final . . . order" for various listed reasons, including "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Such relief, though, is only available, depending on the basis for relief, for "a reasonable time" or "a year after the entry of the . . . order". Fed. R. Civ. P. 60(c)(1). Even assuming the July 14, 2011 order became a "final" order only when the case was closed—rather than when it was entered—the time for relief under Rule 60(b) expired a long time ago.

As discussed above, the State waited for years to seek relief from that order, despite ample opportunity (and reason) to do so, and given that, there is simply no way to say that the State acted within a reasonable time in seeking relief from the order.[17]

Ultimately, even if this were a purely discretionary matter, requiring the State to show nothing more than "cause", the court would not grant the State the access it seeks. Abuse Survivors provided the court and the Permitted Parties with the information at issue in reliance on an order and a form that promised them permanent confidentiality and plainly communicated how they could elect to make the information in their filings publicly available, if they wanted to do that. The overwhelming majority of them did not. Maybe some of them would be willing to grant the State the access it seeks, but there is no way to tell. Indeed, given how much time has passed, there is no feasible way to give notice of the State's request to those who provided this information without risking the inadvertent disclosure of confidential information (given the likely high error rate of providing notice to Abuse Survivors many years after the case was closed), imposing on the reorganized debtor the costs and other burdens of attempting to provide such notice (an onus that neither the plan nor anything else imposes on the reorganized debtor), having the State attempt to provide such notice (which would be impossible without first giving the State a substantial amount of the confidential information to which it seeks access), or having the bankruptcy clerk attempt to provide such notice based on addresses provided years ago (imposing an undue burden and likely resulting in a high error rate).

---

17. For the sake of completeness, "[r]elief under Rule 60(b)(6) 'is available only in "extraordinary circumstances."'" *Braun v. Village of Palatine*, 56 F.4th 542, 554 (7th Cir. 2022) (quoting *Buck v. Davis*, 580 U.S. 100, 123 (2017)). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors." *Buck*, 580 U.S. at 123. Such factors are substantially similar to the factors that bear on whether there is cause to reopen a closed bankruptcy case, and for the reasons stated elsewhere in this opinion, the State has not shown extraordinary circumstances justifying relief under Rule 60(b)(6).

And the State has not shown any particular need for any of this information: it is not as if the State has identified any particular filings or information that it needs to investigate or prosecute a particular crime.[18] Instead, it seeks a mountain of filings that it may use for multiple purposes, based on its own exercise of discretion. If the State had raised any of these issues when the debtor in possession originally filed its second confidentiality motion, or at least before the case was closed, the Abuse Survivors would have been represented, at least by the Committee, but even that is no longer the case, as the State acknowledges. See ECF No. 3476, at 23–24 ("[T]he committee was dissolved upon confirmation of the plan in this case and no longer exists to opine on the relief requested."). Consequently, the obstacles to proper notice and process seem practically (if not actually) insurmountable, in large part because the State waited so long to seek exceedingly broad access to so many filings.

The State provides no compelling reason for the access it requests: it essentially asks the court to devote substantial time and other resources to facilitating an unbounded and roving investigation (or order the reorganized debtor to do that), for no particular reason that the court can discern (and certainly not for any reason that has

---

18. The record suggests that the State has likely never had a police-power-related need for the Abuse Survivors' confidential information that outweighs maintaining that information under seal. About a year after the petition was filed, at a February 29, 2012 hearing in this case, Judge Kelley assured the parties that she had "review[ed] . . . each and every claim . . . filed by the abuse claimants" and that they raised "no public safety concerns":

> The vast majority of the claims allege abuse that occurred in the 1950's, 1960's and 1970's. For the most part, the alleged abusers named in the claims are those previously identified by the Debtor as having substantiated abuse claims made against them. Many of those individuals are deceased; the others have been removed from priestly ministry.

ECF No. 649, at 2. The debtor in possession, the Committee, and two groups of Abuse Survivors appeared by counsel at that hearing. The State did not, though it received electronic notice of the hearing and of the motion by the debtor in possession that prompted the court to schedule it, as mentioned above. And the State has never indicated, at any other point during this case or since it was closed, that it has any *specific* need for access to the sealed proofs of claim and related filings or the information those filings contain. In other words, the State essentially asks the court to devote substantial time and other resources (or order the reorganized debtor to do that) in furtherance of what appears to be a massive fishing expedition.

anything to do with this bankruptcy case), contrary to this court's assurances and consistent observation of confidentiality with respect to information provided by the Abuse Survivors that they could have but nearly unanimously declined to make available to the public.

In sum, even if the case were to be reopened, the State points to no legal authority for the relief it seeks, which is reason enough to conclude that it is not entitled to that relief. But, even if such authority did exist, the State utterly fails to provide the court with any compelling reason to grant it. The lack of available relief, too, weighs decisively against reopening the case.

C

The State suggests, though only in response to the reorganized debtor's opposition to its motions, that "courts do not need to reopen . . . closed proceeding[s]" to "consider[] requests for access [to] or unsealing of judicial records" pursuant to either "specific authority under the Bankruptcy Code" or "inherent authority to review [such] requests". See ECF No. 3496, at 27 & 29. For the most part, the State bases these assertions on caselaw that is inapposite or not binding on this court, or both.

One of the cases on which the State relies is nonprecedential and concerns permissive intervention under Federal Rule of Civil Procedure 24(b) "to vindicate the public's right to access court documents" in a closed civil action. *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 576 (5th Cir. 2023), discussed in ECF No. 3496, at 29.[19] The records the State seeks in this case were not filed and sealed in a

---

19.    In *Hernandez*, the Fifth Circuit considered an appeal from a district-court order denying a healthcare economist's motion under Rule 24(b)(1) "to intervene . . . for the limited purpose of unsealing records" that he thought would be helpful to his research and asserted were "also highly likely to be of public interest". 80 F.4th at 575–76. The State asserts, "The court considered the movant's claim without reopening the case." ECF No. 3496, at 29. That may be true, at least arguably, but it is misleading: the Fifth Circuit reversed the district court's decision denying the motion *to intervene* (not the separate motion to unseal records) and remanded the case, holding that the movant "ha[d] satisfied standing and the

requirements of Rule 24(b)(1)", but "reiterat[ing] the district court's discretion in ultimately deciding [the] motion." 80 F.4th at 579. On remand, the district court again denied the motion to intervene (by which, the district court noted, the movant sought "to reopen th[e] case, months after the parties ha[d] disbanded and memory of the case ha[d] faded") and, because the movant "ha[d] not successfully intervene[]", the district court denied his motion to unseal records as moot. *United States ex rel. Hernandez v. Team Fin., L.L.C.*, No. 2:16-CV-00432, 2024 WL 1149191, at *10 (E.D. Tex. Mar. 15, 2024) ("While the Court exists to serve the public, it is not a public library.").

      In a related discussion about the presumption of public access to court records and the burden on a party opposing such access, the State cites a similar district-court decision, concerning both a motion to intervene in a closed civil action and a motion for access to sealed filings in that action. See ECF No. 3496, at 28 (discussing *Vanda Pharms., Inc. v. FDA*, 539 F. Supp. 3d 44, 52 (D.D.C. 2021)). But the court in that case plainly took up the matter of intervention first, concluding that it would "exercise its discretion to permit intervention *in order to reach the merits* of whether that public right favors unsealing." 539 F. Supp. 3d at 51 (emphasis added). Like *Hernandez*, this case is neither binding on this court nor on point, as it concerns permissive intervention under Rule 24(b)(1), not reopening of a closed case under Bankruptcy Code §350(b). But both cases at least arguably suggest that a court either ought to or must consider, in one form or another, whether and to what extent to recommence underlying, closed litigation before the court considers whether to grant a party *relief* in that litigation, such as access to sealed filings.

      And, as noted below, whatever relevance it might otherwise have, any presumption of public access to court records does not apply to the State's request for access to sealed filings in this case, for three reasons. First, the general right of access to court records ordinarily belongs to the public and the press, not the government. See, e.g., *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (citing *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000)) ("[M]embers of the media and the public may bring third-party challenges to protective orders that shield court records and court proceedings from public view."); *id.* at 1074 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Press-Enter. Co. v. Superior Ct. of California*, 464 U.S. 501, 510 (1984)) ("[T]he public's right to access court records is not unlimited . . . ."); *Jessup*, 227 F.3d at 997 (quoting *United States v. Ladd (In re Associated Press)*, 162 F.3d 503, 508 (7th Cir. 1998)) (alteration in original) ("[R]epresentatives of the press and general public must be given an opportunity to be heard on the question of their exclusion from the proceedings or access to documents."); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (describing "the right of access belonging to the press and the general public" as "[j]ustified originally by common-law traditions predating the enactment of our Constitution" and as "also ha[ving] a First Amendment basis"); see also *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (observing that "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding"). Second, as discussed below, the State is not attempting to assert the public's (or the press's) right to access the sealed filings: given the sensitive nature of the information at issue and the fact that this court properly maintains the relevant filings under seal, the State has disclaimed any intent to make the information public, asserting that any of its employees tasked with reviewing the information would endeavor not to disclose the information to the public (unless it ends up being ordered or otherwise required to do so, e.g., if some other "court of competent jurisdiction" orders the production of such information or filings in or related to a "criminal proceeding" or state law on the production of public records requires it, notwithstanding the State's thin argument that exceptions to mandated production would apply). See ECF No. 3496, at 37–40. Third, the statutory right to access under §107 of the Bankruptcy Code does not authorize the State's request, for the reasons stated above.

civil action (or in the bankruptcy equivalent: an adversary proceeding), however.[20] They were filed and sealed, under §107(b)(2) of the Bankruptcy Code, in a bankruptcy case. The court closed the case as required by §350(a), so the case must be reopened under §350(b) before the court can entertain the State's request for access to the sealed filings.[21]

---

20. Federal Rule of Civil Procedure 24 applies in adversary proceedings, by operation of Federal Rule of Bankruptcy Procedure 7024, but it does not apply in bankruptcy cases, like this one, except in limited circumstances, none of which are present. See Fed. R. Bankr. P. 9014(c) (applying many of the rules that apply in adversary proceedings to "contested matters" in a bankruptcy case, but not Rule 7024); Fed R. Bankr. P. 1018 (applying Rule 7024, among other rules, "to all proceedings contesting an involuntary petition or a chapter 15 petition for recognition, and to all proceedings to vacate an order for relief"); see also 11 U.S.C. §301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

21. The State cites a case in which a district court "perceive[d] no need to reopen . . . closed [bankruptcy] cases" to grant a party access to sealed documents. *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 301–02 (D. Del. 2013), cited in ECF No. 3496, at 29. But the court did not explain this "perception" or attempt to reconcile it with §350, instead noting simply that the documents at issue "[we]re in the physical possession of the Bankruptcy Court" and therefore subject to the "supervisory power" that "[e]very court has . . . over its own records and files." *Id.* (quoting *Nixon*, 435 U.S. at 598). This case is neither binding nor persuasive. The *Garlock* court was not presented with circumstances like those here, in which giving reasonable and effective pre-disclosure notice to Abuse Survivors whose sealed information the State has requested is likely not possible and, in all events, would likely require herculean efforts by the bankruptcy clerk or the reorganized debtor. And even the State recognizes that reopening the case may be necessary, if "only . . . for the limited purpose" of giving Abuse Survivors notice of the State's motion for access to sealed records. ECF No. 3496, at 32–33.

The State also asserts, "Bankruptcy courts can, and routinely do, reopen closed cases for limited purposes. . . . because reopening a case is 'merely a ministerial or mechanical act [that] . . . has no independent legal significance and determines nothing with respect to the merits of the case.'" *Id.* at 33 (alteration and second omission in original) (quoting *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 198 (B.A.P. 9th Cir. 1998)). The State's chosen quote here is from a discussion, in yet another nonbinding decision, about whether reopening a closed bankruptcy case, without more, annuls the abandonment of estate property under 11 U.S.C. §554(c)—which generally provides that properly scheduled estate property that has not been administered when the case is closed "is abandoned to the debtor" and deemed to have been administered—thereby returning the technically abandoned property to the estate. See *DeVore*, 223 B.R. at 197–99. The court concluded that reopening a closed bankruptcy case does not have that effect. The State excerpts the court's explanation for that conclusion but, in doing so, makes a telling omission. The original quote from the case, consistent with other cases, reads:

> The reopening of a case is "merely a ministerial or mechanical act *which allows the court file to be retrieved from the stacks of closed cases to enable the court to receive a new request for relief*; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the case.

In this portion of the State's argument, it cites only one decision that is binding on this court, and it does so for the rather obvious point "that most documents filed in court are presumptively open to the public". *Bond*, 585 F.3d at 1073, cited in ECF No. 3496, at 28. Section 107(a) of the Bankruptcy Code says much the same thing: documents filed in bankruptcy cases "are public records and open to examination by an entity at reasonable times without charge". But, as explained in footnote 19 above, the State is not asserting the *public's* right to access the relevant filings: it has repeatedly and expressly disavowed any interest in making the filings at issue available to the public.

---

*Id.* at 198 (emphasis added) (quoting *IRS v. Germaine (In re Germaine)*, 152 B.R. 619, 624 (B.A.P. 9th Cir. 1993)); see also, e.g., *Bartlett*, 326 B.R. at 438 (citing *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 913 (B.A.P. 9th Cir. 1999); *In re David*, 106 B.R. 126, 128–29 (Bankr. E.D. Mich. 1989)) ("Reopening is supposed to be little more than an administrative function which is designed to resurrect closed files from the court's archives so that some type of request for relief can be received and acted upon."); *Menk*, 241 B.R. at 913 (citing *DeVore*, 223 B.R. at 198; *Abbott v. Daff (In re Abbott)*, 183 B.R. 198, 200 (B.A.P. 9th Cir. 1995); *Germaine*, 152 B.R. at 624) ("[T]he reopening of a closed bankruptcy case is a ministerial act that functions primarily to enable the file to be managed by the clerk as an active matter and that, by itself, lacks independent legal significance and determines nothing with respect to the merits of the case."). Electronic filing and case management has, for the most part, eliminated the need to fetch old case files from storage when a case is reopened (since, in most cases, filings are maintained only in electronic form, though that is not true here, where many filings are maintained physically), but the broader point remains: a court that is considering a request for relief should ordinarily do so only in active proceedings.

On the heels of its partial quotation from *DeVore*, the State cites *Menk* in support of this irrelevant assertion: "a court need not even reopen a closed case to exercise jurisdiction over a dischargeability proceeding." ECF No. 3496, at 33 (citing 241 B.R. at 912). In *Menk*, another nonprecedential decision, the bankruptcy court reopened a case to hear a creditor's adversary proceeding with respect to the dischargeability of a debt; "[t]he debtor . . . appealed the order reopening his bankruptcy case" but "not . . . the subsequent judgment declaring the debt to be excepted from discharge"; and the court dismissed the appeal as moot, concluding that it could not grant any effective relief to the debtor on appeal because the bankruptcy court's jurisdiction of the adversary proceeding under 28 U.S.C. §1334(b) would not be affected whether the underlying case was reopened (i.e., whether the court reversed the reopening on appeal). *Menk*, 241 B.R. at 902. Whether this case is reopened does not obviously affect this court's §1334 jurisdiction of the State's motion for access to sealed filings. But that does not necessarily mean that the case should not (or need not) be reopened before the court adjudicates that motion. The State seeks relief in a case that is not "an active matter". See *id.* at 913. Moreover, in *Menk*, unlike here, relief was sought in an *adversary proceeding*, not in the *bankruptcy case* itself. *Menk's* holding that the bankruptcy court's jurisdiction of the adversary proceeding did not depend on reopening the underlying bankruptcy case thus has no discernable bearing on whether *this case* must (or should) be reopened to afford the State relief in *this case*. The case ought to be restored to an active state (by reopening it) if the court is to consider granting the State relief in it.

See ECF No. 3476, at 3, 9 & 25 (The State "does not ask for any documents to be made public", it "supports protecting survivor information and believes that survivor bankruptcy filings should not be part of the public domain", and it asserts that "[a]ny documents made available to [it] will not be entered on the public docket.").

Even if the State were asserting (and that it has standing to assert) the public's right to access court records, that right is not without limits. See *Bond*, 585 F.3d at 1074 (discussing Fed. R. Civ. P. 26(c)(1), which allows courts to seal certain records "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). The relevant limit here is the exception to §107(a) in §107(b)(2), which permits a bankruptcy court to "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a [bankruptcy] case", e.g., by limiting access to the "paper", as the court did here. That there is an applicable *presumption* in favor of public access to court filings, including bankruptcy filings, does not negate a court-ordered application of a valid *exception* to that presumption.[22]

### III

Even if the court were to reopen this case (or determine that the case does not need to be reopened), and even if there were a legal basis for the State's request for access to the sealed filings at issue, the court would not consider granting that request

---

22. The State criticizes the reorganized debtor for relying on *In re Gentry*, No. 15-20990, 2020 WL 2479662, at *4 (Bankr. E.D. Wis. May 13, 2020), in opposing its motions, asserting that *Gentry* "has nothing to do with the issue at hand." ECF No. 3496, at 28 (discussing ECF No. 3486, at 33). *Gentry*, in relevant part, concerns the binding and preclusive effect of "[a] final order in a bankruptcy case . . . on later proceedings in the same case." 2020 WL 2479662, at *4 (citing *In re Ranieri*, 598 B.R. 450, 457 (Bankr. N.D. Ill. 2019)). Whether the State is correct that the general principles described in *Gentry* "ha[ve] nothing to do with the specific presumptions and burdens for a movant seeking documents in a closed case", ECF No. 3496, at 29, *Gentry* serves as a reminder that, while public access to court filings is the norm, so is the finality of court orders, especially after a decade or more time has passed. See 2020 WL 2479662, at *4 (citing *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 198 (1950)) ("The law of the case doctrine is a rule of practice, based upon long-standing policy that once an issue is litigated and decided, that should be the end of the matter."). If only for that reason, *Gentry* has at least as much to do with the issue at hand as many of the cases on which the State relies.

without first making every reasonable effort to ensure that notice of and a proper opportunity to be heard on that request were given to those who would be affected by the relief, if granted—the individual Abuse Survivors who provided the information in their sealed proofs of claim and other filings. Again, the State seeks sensitive information that Abuse Survivors filed in reliance on this court's assurances of confidentiality—in an order that did not authorize the State to access or review that information and did not authorize anyone to use that information other than for limited, claims-related purposes in this case, specifically claims allowance and administration, both of which concluded long ago.

Proper and effective notice to the Abuse Survivors of the State's request and a full and fair opportunity for them to be heard in opposition to that request are essential for at least two reasons: First, the order from which the State seeks relief empowered the Abuse Survivors to determine whether to permit greater disclosure (and subsequent use) of their confidential information. Second, no one who is actively participating in the present dispute represents (even virtually) their interests with respect to the State's requests. The Committee is dissolved, so it falls to the Abuse Survivors themselves to oppose the State's sweeping motion for access to information that they filed in reliance on the court's assurances that the information would be *permanently sealed*. How are the Abuse Survivors to do that if they are not given notice of the request?[23]

The parties debate the practicalities of giving the required notice, since the confidential information at issue was provided in documents that were filed many

---

23. The State filed with its motions a letter from the reorganized debtor's counsel that states:

  While the abuse survivors could have filed their claims on the public docket, approximately 98% of the 570 claims were filed under seal and off the public docket, relying on the Confidentiality Protocols approved by the Bankruptcy Court. These abuse survivors wanted their claims to be kept under seal. Therefore, each of these claimants has an interest in being heard on the motions the Attorney General intends to file . . . .

ECF No. 3477, at 1. The court agrees.

years ago by individuals who were likely already of advanced ages.[24] The State suggests that the reorganized debtor could be required to use publicly available databases to determine Abuse Survivors' current addresses and send them notice of its request for access to their confidential information. But the State misunderstands bankruptcy law. The preconfirmation debtor (which acted on behalf of the bankruptcy estate as the debtor in possession under §1107 of the Bankruptcy Code) no longer exists; it was succeeded in interest by the reorganized debtor. The reorganized debtor has duties resulting from the bankruptcy case only to the extent that the confirmed plan imposes continuing duties on it, and nothing in the plan requires the reorganized debtor to give Abuse Survivors notice of the State's request for access to the sealed filings at issue.

The State's first fallback position, an obvious nonstarter, is that it can undertake to give the Abuse Survivors notice of its own motion. The State suggests that the court provide it with the Abuse Survivors' names so that it can run the names through LexisNexis's Accurint software to update their addresses for notice purposes. ECF No. 3496, at 45. According to the State:

> [The State] can update the survivor service list without compromising confidentiality. The list can be **redacted** to disclose only names, address, and telephone number[s]. The [State] **employee** who updates the list can be **walled off** from the Initiative team members and receive the list directly from the Archdiocese or the Court.

> [The State] can then utilize the summary notice procedure already in place, with a notice stating simply that the [State] filed a motion seeking to review sealed records, that the recipient has a right to object, and provide a means to obtain a complete copy of the [State]'s motion free of cost. (See Dkt. 327 ¶ 5 (describing summary notice procedure).) Such a notice limits

---

24. A review of the claims register shows that the vast majority of the Abuse Survivors' hundreds of proofs of claim were filed more than twelve years ago and that only four were filed within the past decade. See Claim Nos. 673–76 (for creditors listed as A-471 & A-553 to -555). And, as previously noted, Judge Kelley observed, in 2012, "The vast majority of the claims allege abuse that occurred in the 1950's, 1960's and 1970's." ECF No. 649, at 2.

the risk of violating the claimant's confidentiality in the unlikely event the notice is opened by a person other than the claimant.

*Id.* at 46 (emphasis added). In other words, the State asks that it be given access to a great deal of the sealed information at issue so that it can give notice to Abuse Survivors of its request for access to that same (and even more) information.[25]

The State's second fallback position is that the court can give notice to Abuse Survivors of the State's request or redact hundreds of sealed proofs of claim and related filings to preserve their confidentiality, or both. But this would require the bankruptcy clerk and his staff to undertake a tremendously onerous administrative and logistical project for which the court would incur substantial costs (including mailing expenses and staff time), in furtherance of the State's Initiative, which serves no purpose related to this or any other bankruptcy case or bankruptcy law.

The State fails to offer any reasonable way of ensuring that the Abuse Survivors receive notice of its motion for access to their confidential and permanently sealed information in this case. Aside from that, there is simply no way to give such notice (however reasonable) with sufficient confidence that the Abuse Survivors will receive it and be afforded a genuine opportunity to be heard. Without some means of giving them notice that is both manageable and effective, the court will not consider granting the State relief from the confidentiality protections on which the Abuse Survivors relied

---

25. Indeed, the Abuse Survivors' names are among the information that the confidentiality orders went the furthest to protect. The first of those orders required the debtor in possession to "file under seal a supplement to the Master Mailing List/Matrix and to Schedule F, *which contain the names of Abuse Survivors*." ECF No. 327, at 2 (emphasis added). The second, as discussed above, listed the Permitted Parties authorized to access the sealed proofs of claim of Abuse Survivors, but not even all of them were given access to the names and other identifying information in those proofs of claim: "[m]embers of the Committee and their personal counsel" are Permitted Parties with respect to an Abuse Survivor's sealed proof of claim only "after [it] has *been redacted to remove the Abuse Survivor's name, address, and any other information identified in Part 2(A)*". ECF No. 331, at 12 (emphasis added); *see also id.* at 30 (Part 2(A) of the "Abuse Survivor Proof of Claim" form has fields for other "identifying information" of the Abuse Survivor, including phone number, email address, and birth date.).

in filing their proofs of claim under permanent seal, outside of the public record. As the court cannot discern, and the State has not identified, any such means, the court would not afford the State the access it requests, even if there were a proper legal basis for it.

Beyond all this, even if there were some reasonably manageable and relatively failsafe way to ensure proper notice to all Abuse Survivors, why should they, more than a decade after the vast majority of them made their confidential disclosures in this case, be compelled to consider whether to oppose further disclosure of that information and, if they do, come before this court to contest the matter? The State gives no compelling justification for imposing on so many the substantial burden of such an undertaking, so removed in time from the relevant proceedings (which the State consistently opted out of), contrary to their communicated preferences on disclosure.

Even if all of this could somehow be overcome, and the court were to grant the State's request for access to the sealed filings at issue, the resulting logistical difficulties and administrative burdens for the court would only grow. The State represents that, if it is given the documents, redacted or not, it can and will maintain them confidentially. How would that work? Would the State have each of its employees who are to receive the information at issue sign the Confidentiality Agreement, which every other individual who accessed those documents during the case (other than the United States trustee's staff) was required to execute, making them all subject to the court's jurisdiction, including to hold them in contempt for misusing the information? Would the State have to return to the court each time it wishes to disseminate the information, even to State prosecutors, as the State suggests is possible, or to some new Initiative employee charged with using the information however the State intends to use it? How would the court monitor the State's use of the information and compliance with the court's orders? How would such supervision—which would, again, be incredibly burdensome—be a proper use of the court's time, authority, and staff when it would, again, serve no purpose related to bankruptcy law or any bankruptcy case?

The State can and has solicited information from Abuse Survivors. The State can and has solicited information from the reorganized debtor. That the State has been unable to convince them to provide as much information as the State would like—or that the State is either unwilling or unable to use its police powers to compel them to produce that information—is an insufficient reason for this court to renege on its representations that it would not disseminate sensitive information disclosed by Abuse Survivors, except to the few Permitted Parties listed in the July 14, 2011 order's Confidentiality Protocol, for use only in connection with claims-related processes in this bankruptcy case that have been finished for years.

As has already been stated several times, the State's request has nothing to do with this bankruptcy case or with any bankruptcy matter. In effect, the State seeks relief from this court as a mere custodian of records containing information the State thinks it might find helpful in completing a project it set for itself. See ECF No. 3496, at 22 (quoting *Garlock*, 488 B.R. at 299, for its mention of a court's "supervisory power over its own records"). The State's requests are improper and, as discussed above, unsupported by the law or the facts, or both, so the court will not grant them.

IV

For these reasons, IT IS ORDERED that the State's motion to reopen this case is denied and its motion for access to sealed filings is struck from the record as improperly filed in a closed case; alternatively, the motion for access is denied on its merits.

#####